**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **DUSTIN ETTER** | § | |
| | § | |
| **v.** | § | **Adversary Case No. 25-03382** |
| | § | |
| **JEROD P. FURR, et al.** | § | |

<u>**PLAINTIFF'S NINTH AMENDED COMPLAINT**</u>

1.      This lawsuit is brought by Plaintiff **Dustin Etter** ("Etter"), directly and derivatively, for breach of fiduciary duty and other claims against Defendants **Jerod P. Furr**, **Corrina Furr**, **AE Partners Holdings, Inc.**, **AEP Asset Holdings, LLC**, **Alliance Energy Partners, LLC**, **Alliance Farm & Ranch, LLC**, **Invictus Drilling Motors, LLC** ("Furr Defendants"), **Connect Realty.com, Inc.**, **Heaven Lee Properties, LLC d/b/a Lux Group TX**, and **Jeana Lea Hurley** ("Realtor Defendants") ("Defendants").

**I. PARTIES**

2.      Plaintiff **Dustin Etter** ("Etter") is a resident of Texas.

3.      Defendant **Jerod P. Furr** is a resident of Montgomery County, Texas who has appeared and answered in state court.

4.      Defendant **Corrina Furr** is a resident of Montgomery County, Texas who has appeared and answered in state court.

5.      Defendant **Alliance Farm & Ranch, LLC** ("AFR" or "Alliance Farm") is a Texas limited liability company which has appeared and answered in state court.

6.      Defendant **AE Partners Holdings, Inc.** ("AEPH" or "AE Partners") is a Texas for-profit corporation which has appeared and answered in state court.

7.      Defendant **Alliance Energy Partners, LLC** ("AEP") is a Texas limited liability company which has appeared and answered in state court.

8.      Defendant **AEP Asset Holdings, LLC** is a Texas limited liability company which has appeared and answered in state court.

9.      Defendant **Invictus Drilling Motors, LLC** is a Texas limited liability company which has appeared and answered.

10.     Defendant **Connect Realty.com, Inc.** ("Connect Realty") is a Nevada for-profit corporation doing business in Texas which has appeared and answered in state court.

11.     Defendant **Heaven Lee Properties, LLC d/b/a Lux Group TX** ("Lux Group") is a Texas LLC which has appeared and answered in state court.

12.     Defendant **Jeana Lea Hurley** is a resident of Texas who has appeared and answered in state court.

## II. JURISDICTION

13.     This Court has jurisdiction over the controversy under 28 USC §§ 1334 and 1452 because this matter at a minimum relates to Bankruptcy Case No. 25-30155 as two of the parties are debtors in that bankruptcy action and because Plaintiff seeks to establish an interest in property of the Debtors.

## III. VENUE

14.     Venue in this Court is proper because this action relates to a bankruptcy case pending in this Court.

## IV. FACTS

15.     Plaintiff Dustin Etter and Defendant Jerod P. Furr were for many years until mid-2024 long-time business partners (in the colloquial sense of "partner"). Together Mr. Etter and Mr. Furr formed and ran various oilfield service-related ventures and entities including AE Partners Holdings, Inc. as well as AEP Asset Holdings, LLC, Alliance Energy Partners, LLC, and Invictus Drilling Motors, LLC, all of which are currently subsidiaries or affiliates

of AE Partners Holdings, Inc. ("AE Partners and its affiliates").

16.      Although Plaintiff Mr. Etter held senior titles like "vice president" at AE Partners Holdings, Inc. and its subsidiaries and affiliates, Defendant Mr. Furr was always consistently the lead partner with respect to the financial aspects of the business and had the most senior titles such as "president" and "CEO."

17.      As a part of the overall deal between Mr. Etter and Mr. Furr related to the business, Mr. Furr repeatedly reiterated that Mr. Etter could not be fired and could remain an employee of the business as long as he was a co-owner.

18.      Mr. Etter and Mr. Furr also agreed in October 2020 that they would both get equal pay and other compensation out of the business. They also discussed and reiterated the agreement to one-another multiple times thereafter without controversy.

19.      For instance, below is a January 2022 text exchange between Jerod Furr and Dustin Etter in which they discussed their comparative net payments and benefits out of the business:




20.     On 7/28/2025, Mr. Furr said with respect to salary and distributions from the business that "I tried to keep it as even as possible." Mr. Furr also said on 7/28/2025 that "what I paid myself depended on what Dustin wanted to get paid."

21.     Defendant Mr. Furr and Defendant Corrina Furr got married in or around 2019 but had a wedding/vow renewal ceremony in early 2024.

22.     Defendant Ms. Hurley is the ex-wife of Mr. Furr, a present and/or former employee and office manager of AEPH and/or AEP, and a TREC-licensed sales agent with the Lux Group working under Defendant Connect Realty as her sponsoring broker.

23.     From at least late 2021 through July 2024, Ms. Hurley would routinely communicate with Plaintiff Mr. Etter in her role at the business.

24.     Before around 4/15/2022, Plaintiff Mr. Etter and Defendant Mr. Furr were both the direct owners of AEP.

25.     Plaintiff Mr. Etter and Defendant Mr. Furr, through AEP, made substantial profits in 2021, which resulted in significant apparent tax liabilities for both partners.

26.     In around February, March, and early April 2022, Defendant Mr. Furr told Plaintiff Mr. Etter that it would be beneficial for tax purposes related to substantial profits that the business received which would otherwise be reported on the owners' personal income tax returns and other purposes to restructure the business to create AE Partners Holdings, Inc. as a parent company of which Alliance Energy Partners, LLC would become a wholly-owned subsidiary. There was no agreement, disclosure, or understanding in early 2022 about diminishing Plaintiff Mr. Etter's rights with respect to the business or allowing any self-dealing by Defendant Mr. Furr.

27.     In the restructure dated 4/15/2022, which was primarily designed and papered by Defendant Mr. Furr, Alliance Energy Partners, LLC became directly owned by AE

Partners Holdings, Inc. which in turn for voting purposes was owned by 51% Defendant Mr. Furr and 49% Plaintiff Mr. Etter. AEP Asset Holdings, LLC and Invictus Drilling Motors, LLC were also formed as AEPH subsidiaries as a part of the restructure.

28.     The restructure paperwork included a Contribution Agreement dated 4/15/2022 to which Plaintiff Mr. Etter, Defendant Mr. Furr, and AEPH were parties but to which AEP was only a party primarily for purposes of consent and under which AEP had no affirmative obligations.

29.     Defendant Mr. Furr told Mr. Etter that the only reason why there was a 51%-49% voting structure was for convenience so that both of them would not be required to sign off on things for the business.

30.     However, Defendant Mr. Furr in many respects structured and papered the 2022 restructure in self-serving ways which were beneficial only to him but not to the relevant entities or to Plaintiff Mr. Etter, and the restructure was done without Defendant Mr. Furr first making full disclosure of his self-dealing discussed below.

31.     At the time of the 4/15/2022 restructure, Plaintiff Mr. Etter was not aware that Defendant Mr. Furr had taken substantial sums out of the business, which if treated as distributions, would reduce Defendant Mr. Furr to a minority owner of the business on a capital account basis.

32.     In early 2022 prior to the restructure, Plaintiff Mr. Etter and Defendant Mr. Furr were communicating about buying the property located at 5450 Honea Egypt Rd., Montgomery, Texas 77316 for the business. Through Defendant Mr. Furr and through Defendant Ms. Hurley acting as a buyer's real estate agent, AEP put down a contract to buy the property and paid the option fee as well as the $30,000 down payment.

33.     However, instead of buying the property for the business, Defendant Mr. Furr

formed Alliance Farm & Ranch, LLC, an entity wholly owned by him formed on 3/23/2022, to purchase the property, which was done with funds from AE Partners and its affiliates shortly before the 4/15/2022 restructure.

34.     Defendant Mr. Furr did not disclose that he bought the Honea Egypt property in the name of AFR until after the paperwork for the 4/15/2022 restructure was signed.

35.     Defendant Ms. Hurley furthered buying the property in the name of AEP instead of AFR by facilitating changing the buyer on the contract from AEP to AFR shortly before the closing. By way of example only, on 4/1/2022, $960,515.25 was taken out of the Truist bank account of AEP for the purchase of the 5450 Honea Egypt property and transferred directly to University Title Company. Plaintiff also has information and belief that AEP, AEPH, and Invictus directly or indirectly made all of the payments for the mortgage or purchase price for the 5450 Honea Egypt property.

36.     No promissory note or deed of trust memorializing any loan from AEP to AFR for the purchase of the 5450 Honea Egypt property was ever signed.

37.     Defendant Ms. Hurley was paid a commission of over $100,000 on the purchase of the 5450 Honea Egypt property by AFR in 2022, over $10,000 of which was split with and/or paid to Defendant Connect Realty.

38.     Significant improvements were also made to the 5450 Honea Egypt property at the ultimate expense of AE Partners and its affiliates. For instance, at least $422,908.00 was paid to Arroyos Remodeling from April through December 2022.

39.     Part of the 5450 Honea Egypt property amounting to less than half of its total acreage was also leased to the business.

40.     The terms of the lease were not fair, reasonable, or favorable to the business and were either without a formal written lease or without a formal written lease on terms fair

and reasonable to AE Partners and its affiliates.

41.     Defendant AFR received multiple $20,000/month payments from Invictus and AEP, including payments from both Invictus and AEP (totaling $40,000/month) in some months.[1]

42.     The payments that AFR received from Invictus and AEP were well in excess of the fair rental value of the part of the Honea Egypt property used by the business.

43.     Defendants Mr. Furr and Ms. Furr lived at the 5450 Honea Egypt property from shortly after it was purchased in April 2022 through at least February 2025.

44.     For some payments related to the purchase of and improvements to the 5450 Honea Egypt property, Defendant Mr. Furr purportedly booked liability owed by him to the business on books of the business.

45.     Since at least early 2022 and continuing through at least late 2024, Defendant Mr. Furr spent exorbitant amounts out of AE Partners and its affiliates to fund a lavish lifestyle for himself and Defendant Ms. Furr.

46.     In late 2023 and early 2024, Defendants Mr. Furr and Ms. Furr used funds from AE Partners and its affiliates to fund a lavish wedding ceremony that took place in early 2024 at the 5450 Honea Egypt property.

47.     As of March 1, 2024, AEP was more than 60 days behind on paying over $1,000,000 that it owed to Gordon Technologies, LLC.

48.     As a result of nonpayment concerns, Gordon Technologies, LLC cut AEP off from receiving further services sometime before January 1, 2024.

---

[1] Plaintiff is of course not bringing claims derivative of AEP. However, because AEP is a central part of the overall business that also includes AEPH and Invictus, it is at points necessary in this Complaint to discuss matters which factually involve AEP for clarity and narrative completeness.

49.     By July 1, 2024, AEP was more than 90 days behind in paying over $1,200,000 that it owed to various vendors.

50.     By early-2024, the business of AE Partners and its affiliates was in serious decline due to its failure to pay vendors who were needed for the business to get jobs and do work for its customers.

51.     By mid-2024, Plaintiff Mr. Etter had become aware of issues with multiple vendors of AEP going unpaid. These payment issues have resulted in at least seven lawsuits so far against AEP for nonpayment, most of which were filed in Harris County, Texas.

52.     After investigating and confronting Defendant Mr. Furr about AEP's increasing debts and vendor issues, Plaintiff Mr. Etter became aware that Defendant Mr. Furr was using funds and assets of AE Partners and its affiliates to fund a lavish lifestyle for himself and Defendant Ms. Furr to the point that that AE Partners and its affiliates have become depleted of funds, have had to cease operations due to the inability to pay staff and vendors, and the business has effectively collapsed. It also now lacks sufficient funds to make distributions to cover tax liabilities for the owners which the business has created or to pay all of its vendors.

53.     On or about July 25, 2024, Defendant Mr. Furr drunkenly bragged to Martin "Marty" Campbell, a senior employee of Gordon Technologies that Defendant Mr. Furr had structured the business "to avoid paying vendors, including Gordon," per the testimony of Gordon's president Christopher Koranek shown below:

```
    108296_CHRISTOPHER KORANEK, (Pages 47:1 to 48:5)
                        47
 1  Q.  (By Mr. Meek)  You mentioned that there was a
 2  call on -- or so on July 25th, 2024 Martin Campbell went
 3  and saw Jerod Furr at his house; is that right?
 4     A.  Yes.
 5     Q.  What did Martin -- was that during the middle
```

6  of the day?
7     A.  It was.
8     Q.  Were you -- did Mr. Campbell tell you that
9  Jerod Furr was drunk during that meeting?
10    A.  Yes, he did.  Mr. Campbell told me that he was
11  drunk and actively drinking.
12    Q.  During that call or during that -- that
13  meeting, according to Mr. Campbell, Jerod was
14  essentially bragging about how he structured the
15  entities to avoid paying vendors, including Gordon; is
16  that right?
17    A.  Yes.
18    Q.  Would you consider structuring -- or would you
19  consider diverting payments to another entity to avoid
20  payments to your creditors embezzlement?
21    A.  Say that again.
22    Q.  Would you consider diverting funds from
23  Alliance Energy Partners to another entity to avoid
24  paying -- paying Gordon and other creditors
25  embezzlement?
                        48
1     A.  I would, yes.
2     Q.  So is it fair to say that you understood what
3  Jerod told Marty was essentially admitting to committing
4  embezzlement?
5     A.  Yes.

54.     The business of AE Partners and its affiliates likely would have remained solvent

and profitable and would have been able to pay its creditors but for the massive amounts

of money, on the order of millions of dollars, that Defendant Mr. Furr took or spent out of

the business to fund his lavish lifestyle.

55.     On or about 8/3/2024, Defendant Mr. Furr had Jim Knight send Plaintiff Mr. Etter

an email which said "your authorization as an officer/employee to make decisions or enter

into contracts or agreements on behalf of the AE[PH]/Alliance entities is revoked."

56.     On or about 9/18/2024, Defendant Mr. Furr purported to formally terminate Plaintiff

Mr. Etter from all positions at AE Partners and its affiliates including AEP and Invictus.

57.     A majority of the money that AFR received from its formation to the filing of its

bankruptcy on January 7, 2025 came from transfers from AEP, AEPH, and Invictus.

58.     Defendant Mr. Furr caused AEPH to transfer at least $137,500 to Defendant AFR from February 2024 through December 2024, including at least $100,000 in November 2024.

59.     Defendant Mr. Furr caused Invictus to transfer at least $426,800 to Defendant AFR from September 2022 through November 2024.

60.     At least $200,000 in net direct transfers were made from AEP to Defendant Mr. Furr's personal bank account ending in 2389.

61.     Plaintiff has information and belief that Defendant Mr. Furr has or intends to misuse and/or misappropriate other assets of AE Partners and its affiliates including but not limited to money, drilling motors, and ownership interests in Isodrill, Inc.

62.     Plaintiff has information and belief that Defendant Mr. Furr used other entities to misappropriate funds from AE Partners and its affiliates including but not limited to J Parker Construction, LLC. J Parker Construction, LLC is an entity solely or primarily owned and controlled by Defendant Mr. Furr, whose middle name is "Parker."

## V. CAUSES OF ACTION

63.     The claims set forth below are brought directly on behalf of Plaintiff Dustin Etter and/or where appropriate derivatively or double-derivatively on behalf of AE Partners Holdings, Inc., and Invictus Drilling Motors, LLC, and AEP Asset Holdings, LLC. The Texas Supreme Court has expressly recognized that "double derivative" claims are permitted under Texas law. *Sneed v. Webre*, 465 S.W.3d 169, 192 (Tex. 2015). It is specifically asserted that all of said entities are "closely held" for the purposes of TEX. BUS. ORGS. CODE §§ 21.563 and 101.463 and justice calls for a direct award of any recovery to Plaintiff Mr. Etter, and Plaintiff also requests an award of expenses including

attorney's fees under those statutes. Plaintiff is and/or was a shareholder and/or member of the entities in question either directly or double-derivatively at the time of the matters complained of. This action is not a collusive one to confer jurisdiction which would otherwise be lacking.

64. Plaintiff has demanded in writing that the claims at issue be brought. However, the entities controlled by Defendant Mr. Furr have ignored Plaintiff's requests.

**V.A.    Breach of Fiduciary Duty**

65. Based on the pertinent facts set forth in this Complaint, Plaintiff Mr. Etter brings claims against Defendant Mr. Furr for breach of fiduciary duty.

66. Defendant Mr. Furr owed fiduciary duties to AE Partners, Invictus, and AEP Asset Holdings, LLC because he was an officer, director, manager, employee, and/or agent of said entities from their formation through at least September 1, 2025.

67. Defendant Mr. Furr also owes fiduciary duties to Plaintiff Mr. Etter as the controlling shareholder of AE Partners Holdings, Inc. The fiduciary duties owed by Defendant Mr. Furr include but are not limited to duties of loyalty, utmost good faith, complete and perfect candor, full disclosure, acting with integrity of the strictest kind, to refrain from conflicts of interest, and fair and honest dealing.

68. Defendant Mr. Furr breached these fiduciary duties as outlined in the facts set forth in this Complaint. By way of example only, but without limitation, Defendant Mr. Furr misappropriated funds from AE Partners and its non-bankrupt affiliates to fund a lavish lifestyle for himself and for Defendant Ms. Furr.

69. Defendant Mr. Furr, through his entity Defendant AFR, took the opportunity to purchase the 5450 Honea Egypt property from AEP and the business as a whole and transferred it to AFR.

70.     Defendant Mr. Furr caused AE Partners to transfer at least $137,500 to Defendant AFR from February 2024 through December 2024, including at least $100,000 in November 2024.

71.     Defendant Mr. Furr had Invictus pay at least $400,000 to Defendant AFR from August 2022 through March 2024.

72.     On or about April 24, 2025, Defendant Mr. Furr had $11,500 transferred from AEPH's bank account ending in 7404 to his personal bank account ending in 2389.

73.     It is specifically asserted that to the extent that Plaintiff is entitled to any recovery against AE Partners or its affiliates, such a recovery was caused by wrongful conduct or breaches of duty by Defendant Mr. Furr who should also be held liable for the same damages (i.e. Defendant Mr. Furr is responsible for the failure of AEPH to provide Plaintiff with books and records).

74.     *Damages*: With respect to Plaintiff's breach of fiduciary duty claim, Plaintiff seeks the following relief from Defendants Mr. Furr, Ms. Furr, and AFR, and as appropriate Defendants Ms. Hurley, Connect Realty, and the Lux Group, jointly and severally: (1) actual damages including but not limited to lost profits, out-of-pocket damages, mitigation damages, and restitution, (2) exemplary damages which per CPRC § 41.008(c)(10) and (13) should be uncapped, (3) rescission (including recission of all or part of the 2022 restructure and/or rescission of any self-dealing transactions), disgorgement, and fee forfeiture, (4) a constructive trust (including but not limited to on proceeds or profits of any breaches of fiduciary duty and, as appropriate, shares in AEPH and/or its affiliates and/or treating misappropriated funds as constructive distributions), (5) reasonable attorney's fees under any applicable contract, (6) prejudgment and postjudgment interest, and (7) costs.

**V.B.   Fraud**

75.     Based on the pertinent facts set forth in this Complaint, including but not limited to those outlined again below, Plaintiff brings a claim against Defendant Mr. Furr for fraud/fraudulent inducement/fraud by nondisclosure.

76.     Defendant Mr. Furr affirmatively represented to Plaintiff Mr. Etter in verbal conversations in 2022 before the 4/15/2022 restructure that he was looking into buying the 5450 Honea Egypt property for the business.

77.     It was known to both Mr. Furr and Mr. Etter at the time that buying the 5450 Honea Egypt property would involve significant expense.

78.     By making numerous affirmative representations about both the 4/15/2022 restructure, the 5450 Honea Egypt property, and the business as a whole, Defendant Mr. Furr took on a duty to affirmatively tell the whole truth.

79.     Defendant Mr. Furr did not tell the whole truth and instead bought the 5450 Honea Egypt property at substantial expense to the business just a few weeks before the 4/15/2022 restructure without disclosing the purchase to Plaintiff Mr. Etter before the 4/15/2022 restructure.

80.     At no point before the 4/15/2022 restructure did Defendant Mr. Furr disclose that he actually intended to or did buy the 5450 Honea Egypt property for himself and/or for Alliance Farm & Ranch, LLC which was wholly owned by him, or that he paid $960,515.25 in AEP funds to buy the 5450 Honea Egypt property.

81.     Defendant Mr. Furr also affirmatively represented to Plaintiff Mr. Etter in verbal conversations in 2022 before the 4/15/2022 restructure that the restructure was for the mutual benefit of Mr. Furr and Mr. Etter and would provide substantial tax benefits related to the 2021 profits of the business.

82.     Those representations were simply false. Despite the 4/15/2022 restructure, Mr. Furr and Mr. Etter have incurred significant tax liabilities, which due to undisclosed looting of the business the business lacks funds to give to the owners to pay. Additionally, the fine print of the 4/15/2022 restructure is generally one-sidedly favorable to Defendant Mr. Furr and diminished the rights that Plaintiff Mr. Etter would have otherwise had.

83.     As discussed above, Defendant Mr. Furr repeatedly represented to Plaintiff Mr. Etter that they would receive generally equal compensation and benefits from the business. And at no time prior to the partners' falling out in mid-2024 did Defendant Mr. Furr say that he was entitled to or would get substantially more direct or indirect compensation or benefits from the business. Plaintiff Mr. Etter relied on Defendant Mr. Furr's representations in entering into and continuing to participate in and work at the business and in agreeing to the 4/15/2022 restructure.

84.     Defendant Ms. Hurley, as a part of her work as office manager at AEPH and its affiliates, regularly communicated with Plaintiff Mr. Etter about the business, and in so doing incurred a duty of full disclosure. However, Defendant Ms. Hurley failed to fully and timely disclose material facts to Plaintiff Mr. Etter regarding the purchase of the 5450 Honea Egypt property.

85.     *Damages*: With respect to Plaintiff's fraud claim, Plaintiff seeks the following relief from Defendant Mr. Furr and as appropriate Defendant Ms. Hurley: (1) rescission of any agreements with Defendant which were induced by fraud, (2) actual damages including but not limited to lost profits, out-of-pocket damages, mitigation damages, and restitution, (3) exemplary damages which per CPRC § 41.008(c)(10) and (13) should be uncapped, (4) disgorgement and fee forfeiture, (5) a constructive trust (including but not limited to on proceeds or profits of any fraud and, as appropriate, ownership in AEPH, AEP, and/or

AFR), (6) prejudgment and postjudgment interest, and (7) costs.

**V.C.   Statutory Fraud**

86.      Based on the pertinent facts set forth in this Complaint, including but not limited to those outlined again with respect to the fraud claim, Plaintiff brings a claim against Defendant Mr. Furr for statutory fraud pursuant to Tᴇx. Bᴜs. & Cᴏᴍ. Cᴏᴅᴇ § 27.001.

87.      The April 2022 restructure included the issuance of stock in AE Partners Holdings, Inc. to Plaintiff Mr. Etter and was therefore a transaction involving stock in a corporation.

88.      Plaintiff Mr. Etter was fraudulently induced to enter into the April 2022 restructure based on misrepresentations discussed above.

89.      *Damages*: With respect to Plaintiff's statutory fraud claim, Plaintiff seeks the following relief from Defendant Mr. Furr: (1) rescission of any agreements with Defendant which were induced by fraud, (2) actual damages including but not limited to lost profits, out-of-pocket damages, mitigation damages, and restitution, (3) exemplary damages which per CPRC § 41.008(c)(10) and (13) should be uncapped, (4) disgorgement and fee forfeiture, (5) a constructive trust (including but not limited to on proceeds or profits of any fraud and, as appropriate, ownership in AEPH, AEP, and/or AFR), (6) reasonable and necessary attorney's fees and other costs of litigation as permitted by Tᴇx. Bᴜs. & Cᴏᴍ. Cᴏᴅᴇ § 27.001(e), (7) prejudgment and postjudgment interest, and (8) costs.

**V.D.   Restitution/Unjust Enrichment/Money Had and Received**

90.      Based on the pertinent facts set forth in this Complaint, Plaintiff brings claims for restitution, unjust enrichment, and money had and received.

91.      In particular but without limitation, Defendants Mr. Furr, Ms. Furr, and AFR are unjustly enriched by their use of funds from the business to buy and substantially improve the 5450 Honea Egypt property, to fund their lavish wedding, and to make other

unreasonable and improper self-dealing expenditures for their own benefit using funds from the business.

92.     Furthermore and without limitation, at all relevant times, Defendant AFR knew and should have known that the money that it was getting from AEPH and Invictus was misappropriated from those entities.

93.     *Damages*: With respect to Plaintiff's restitution/unjust enrichment claim, Plaintiff seeks the following from Defendants Mr. Furr, Ms. Furr, and Alliance Farm & Ranch, LLC, jointly and severally: (1) actual damages, including but not limited to restitution, (2) exemplary damages which per CPRC § 41.008(c)(10) and (13) should be uncapped, (3) a constructive trust, (4) temporary and permanent injunctive relief, (5) prejudgment and postjudgment interest, and (6) costs.

**V.E.    Breach of Contract**

94.     Based on the pertinent facts set forth in this Complaint, Plaintiff brings a claim for breach of contract against Mr. Furr, AEPH, Invictus, and AEP to the extent that it is found that the payments and benefits that Defendant Mr. Furr received from the business substantially in excess of what Plaintiff Mr. Etter received are not found to be wrongful, fraudulent, or otherwise avoidable transfers.

95.     Defendant Mr. Furr and Plaintiff Mr. Etter had an agreement, which was reiterated multiple times, that they were equal partners (again, "partners" in the colloquial sense) except for certain limited purposes and that they would receive equal payments and other benefits from the business. They understood that this agreement would be binding upon not only themselves, but the entire business structure.

96.     Defendant Jerod Furr and entities he controlled including AFR and J Parker Construction, LLC received the benefit of more than $5,000,000 in payments made by

AEPH, AEP, and Invictus. On the other hand, Defendant Dustin Etter, directly or indirectly, got less than half of that amount.

97.     To the extent that the excess payments to Defendant Jerod Furr are not wrongful, fraudulent, or otherwise avoidable transfers, Defendants Mr. Furr, AEPH, Invictus, and AEP breached their agreement by directly and indirectly paying Defendant Mr. Furr substantially more than Plaintiff Mr. Etter. *For clarity, this claim is in the alternative to the excess/disproportionate payments being found to be wrongful, fraudulent, or otherwise avoidable transfers (i.e. the part of this claim against AEP is in the alternative to AEP having the excess payments to Mr. Furr declared fraudulent or otherwise avoidable).*

98.     *Damages*: With respect to Plaintiff's breach of contract claim, Plaintiff seeks the following from Defendants Mr. Furr, AEPH, Invictus, and AEP: (1) actual damages, (2) nominal damages, (3) reasonable attorney's fees under TEX. CIV. PRAC. & REM. CODE § 38.001, (4) prejudgment and postjudgment interest, and (5) costs.

**V.F.   Books & Records**

99.     Based on the pertinent facts set forth in this Complaint, Plaintiff brings a claim for books and records under TEX. BUS. ORGS. CODE §§ 21.218-.219 and alternatively under CPRC ch. 37 against Defendant AE Partners Holdings, Inc.

100.    Defendant AE Partners Holdings, Inc. has failed to provide Plaintiff Mr. Etter with access to or copies of books and records requested at times including but not limited to September, October, and November 2024 as well as in 2025.

101.    Defendant AE Partners Holdings, Inc. ignored multiple requests for books and records. Then, only after a books and records claim was added to this lawsuit, Defendant AE Partners Holdings, Inc. quibbled with the wording of the requests refused to provide copies insisting on an in-person inspection of documents. Defendant AE Partners

Holdings, Inc. then delayed the in-person inspection once. When the rescheduled in-person inspection was to occur on 10/24/2024, several of the requested books and records were not available.

102.   Defendant Mr. Furr initially expressed confusion on 10/24/2024 as to why Defendant AE Partners Holdings, Inc. was doing an in-person inspection rather than just emailing the requested records, most or all of which he indicated were in digital format, before realizing and saying that Defendant AE Partners Holdings, Inc. was insisting on an in-person inspection "just to be a pain in the ass."

103.   As of the filing of this pleading, several of the requested books and records still have not been provided.

104.   *Damages*: With respect to Plaintiff's books and records claim, Plaintiff seeks the following from Defendant AE Partners Holdings, Inc.: (1) books and records, (2) nominal damages, (3) appropriate supplemental relief under CPRC § 37.001, (4) reasonable expenses including attorney's fees under Tex. Bus. Orgs. Code §§ 21.222 and alternatively under CPRC § 37.009, (5) prejudgment and postjudgment interest, and (6) costs.

## VI. VICARIOUS & PARTICIPATORY LIABILITY

105.   Defendant Jerod Furr acted as an actual and apparent agent and vice principal for all of the entity Defendants other than Connect Realty and the Lux Group.

106.   Defendants Mr. Furr and Ms. Furr conspired with, aided and abetted, and/or assisted and encouraged one-another in their wrongful conduct and are therefore liable for the wrongful acts of one-another.

107.   At all relevant times since its formation, Defendant AFR has been an instrumentality, alter ego, principal, aider and abetter, and/or assister and encourager of

Defendant Mr. Furr with respect to his wrongful conduct and is therefore liable for that conduct.

108.    At all relevant times, Defendant Ms. Hurley was acting as an agent of Defendants Connect Realty and the Lux Group. Defendant Connect Realty, as Ms. Hurley's sponsoring broker, is also vicariously liable for her actions under TEX. OCC. CODE § 1101.803. Defendant Ms. Hurley also conspired with, aided and abetted, and assisted and encouraged Defendant Mr. Furr in his breaches of fiduciary duty, fraud, and statutory fraud in connection with the purchase of the 5450 Honea Egypt property.

## VII. DEFENSIVE MATTERS

109.    The claims asserted in this Complaint are also asserted as defenses as appropriate.

110.    The defenses of waiver and estoppel are asserted.

111.    The defense of unclean hands is asserted.

112.    The statute of limitations applicable to conversion claims is asserted pursuant to TEX. CIV. PRAC. & REM. CODE § 16.003.

113.    The defenses of truth and qualified privilege are asserted.

114.    The defense of failure to mitigate is asserted.

115.    The defenses of proportionate responsibility and contribution are asserted pursuant to TEX. CIV. PRAC. & REM. CODE ch. 33.

## VIII. APPLICATION FOR WIND-UP AND TERMINATION & RECEIVERSHIP

116.    Based on the pertinent facts set forth in this Complaint, Plaintiff seeks the winding up and termination of AE Partners Holdings, Inc., AEP Asset Holdings, LLC, and Invictus Drilling Motors, LLC under TEX. BUS. ORGS. CODE §§ 11.051 & 11.314 and/or the principles of equity.

117.    In addition and in the alternative, Plaintiff seeks a receivership over AE Partners Holdings, Inc., AEP Asset Holdings, LLC, and Invictus Drilling Motors, LLC, and/or their assets (specifically including but not limited to any ownership interest in Isodrill, Inc., and any direct award to any entity), pursuant to TEX. BUS. ORGS. CODE §§ 11.402-.405 and over the individual Defendants, and/or their assets pursuant, to TEX. CIV. PRAC. & REM. CODE § 64.001(a)(6), as well as any inherent equity powers of the Court.

## IX. APPLICATION FOR INJUNCTIVE RELIEF

118.    It is requested that the non-bankrupt Defendants be temporarily and permanently enjoined from wasting, damaging, disposing of, or encumbering any assets or property that rightly belongs to or which was misappropriated from AE Partners Holdings, Inc. and/or its subsidiaries and affiliates. Furthermore, Defendants, other than Defendant Connect Realty, are of questionable solvency. Injunctive relief is requested. Plaintiff is willing to post bond.

## X. CONDITIONS PRECEDENT

119.    All conditions precedent to Plaintiff's recovery and the claims made the subject of this suit have occurred, have been performed, or have been waived or excused.

## XI. AMENDMENT & ALTERNATIVE PLEADING

120.    Plaintiff reserves the right to amend his complaint as discovery progresses, as new information is discovered, and as further allowed by the Federal Rules. Where appropriate, the claims and defenses in this Complaint are pled in the alternative.

## XII. <u>PRAYER</u>

Plaintiff prays that citation be issued for Defendants to appear and answer and that the Court award Plaintiff relief from Defendants, jointly and severally, including but not limited to:

(1)    Actual damages, including but not limited to lost profits, out-of-pocket damages, mitigation damages, and restitution;
(2)    Exemplary damages;
(3)    Nominal damages with respect to all claims;
(4)    Rescission (including recission of all or part of the 2022 restructure and/or rescission of any self-dealing transactions);
(5)    Disgorgement/fee forfeiture;
(6)    A constructive trust;
(7)    Receivership;
(8)    Temporary and permanent injunctive relief;
(9)    Attorney's fees; and
(10)   Statutory and equitable prejudgment interest and postjudgment interest and costs.

Plaintiff also prays that the Court grant Plaintiff such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

IRELAN STEPHENS, PLLC

By:_____**DRAFT**_____
       Noah E. W. Meek
       State Bar No. 24084554
       Email: nmeek@irelanlaw.com
       2520 Caroline St., 2nd Floor
       Houston, Texas 77004
       Phone:  (713) 222-7666
       Fax:     (713) 222-7669

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

This is to certify that on September 19, 2025, a true and correct copy of this instrument was served upon all parties ***via ECF*** in compliance with the Federal Rules of Bankruptcy Procedure.

 **/s/ Noah Meek**
_____
Noah Meek