IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| ALLIANCE FARM & RANCH, LLC and | § | Bankruptcy No. 25-30155 |
| ALLIANCE ENERGY PARTNERS, LLC. | § | Chapter 11 |
| Debtors. | § | (Jointly Administered) |
| | § | |
| DUSTIN ETTER, | § | Adversary No. 25-03382 |
| *Plaintiff and Counterclaim Defendant,* | § | **JURY TRIAL DEMANDED** |
| | § | |
| v. | § | |
| | § | |
| JEROD P. FURR, et al, | § | |
| *Defendants, Counterclaim Plaintiffs and* | § | |
| *Third-Party Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| TRAVIS DAILY, TRINIDAD PENA, | § | |
| L&L VENTURES, LLC, SPECIALIZED | § | |
| ENERGY SERVICES, LLC and | § | |
| TD DRILLING, LLC d/b/a TOTAL | § | |
| DEPTH DRILLING MOTORS, | § | |
| *Third-Party Defendants.* | § | |

**DEFENDANTS' COUNTERCLAIM AND ORIGINAL THIRD-PARTY PETITION**

TO THE HONORABLE ALFREDO R. PEREZ, UNITED STATES BANKRUPTCY JUDGE:

COME NOW Defendants Jerod P. Furr, Individually and derivatively on behalf of.,

Alliance Energy Partners, LLC, and file this First Amended Counterclaim against Dustin Etter,

and also bring this Third-Party Petition against Third-Party Defendants Specialized Energy

Services LLC and Travis Daily ("Third-Party Defendants"), and respectfully show the Court as

follows:

**I.**

<u>JURISDICTIO & VENUE</u>

1.    This Court has jurisdiction under 28 U.S.C. §§ 157(b) and 1334(b).  Venue is proper in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1409.

**II.**

<u>PARTIES AND SERVICE</u>

**Defendants, Counterclaim Plaintiffs and Third-Party Plaintiffs**

2.    Jerod Furr is an individual residing in Montgomery County, Texas.

3.    Alliance Energy Partners, LLC is a Texas limited liability company.

4.    AE Partners Holdings, Inc. is a Texas corporation.

5.    AEP Asset Holdings, LLC is a Texas Limited Liability Company.

6.    Invictis Drilling Motors, LLC is a Texas Limited Liability Company.

**Plaintiff and Counterclaim Defendant**

7.    Dustin Etter is an individual resident of Texas who has appeared in this lawsuit and will be served by serving his attorney in compliance with Rules 21 and 21a of the Texas Rules of Civil Procedure.

**Third-Party Defendants**

1.    Travis Daily is an individual resident of Texas who may be served at his residence located at 31227 Shady Arbor Lane, Spring, TX 77386.

2.    Trinidad Pena is an individual resident of Texas who may be served at his residence located at 7510 Miriam Vale Court, Corpus Christi, TX 78414.

3.    L&L Ventures, LLC, which is a Texas Limited Liability Company and may be served with process by serving its registered agent on file with the Texas Secretary of State's office, Travis Daily, located at 31227 Shady Arbor Lane, Spring, TX 77386.

4.    Specialized Energy Services LLC is a Texas Limited Liability Company and may be served with process by serving its registered agent on file with the Texas Secretary of State's office, Travis Daily, whose address of record is 31227 Shady Arbor Lane, Spring, TX 77386.

5.    TD Drilling Motors, LLC, which is a Texas Limited Liability Company and may be served with process by serving its registered agent on file with the Texas Secretary of State's office, L&L Ventures, LLC, located at 31227 Shady Arbor Lane, Spring, TX 77386.

### III.
### STATEMENT OF FACTS

6.    Jerod Furr has served as a mentor to Dustin Etter and has included him on various companies that Mr. Furr has started over the years.

**Alliance Energy Partners, LLC**

7.    In 2020, Mr. Furr decided to establish Alliance Energy Partners, LLC, which is involved in directional drilling and directional drilling motors. Once again, Jerod Furr, in his desire to look after Dustin Etter, brought him into the business and gave Mr. Etter a 49% ownership interest in Alliance Energy Partners, LLC and the position of Vice President. Jerod Furr owns the remaining 51% ownership interest and holds the position of Chief Executive Officer, President and Secretary.[1]

8.    The agreement for contributions to Alliance Energy Partners, LLC was that Mr. Furr would bring his extensive network of business contacts that he had developed over his career, and Dustin Etter's would handle operations.

9.    Due to the early success of their business, the 2021 tax bill for Alliance Energy Partners, LLC was very large, roughly $1,500,000. However, the profits were beginning to dry up due to

---

[1] **Exhibit 01.** Alliance Energy Partners, LLC Certificate of Formation
  **Exhibit 02.** Alliance Energy Partners, LLC Organizational Consent

the effects of covid, and larger companies buying up the more modest sized partners they usually worked with. Mr. Furr suggested that they shut down the business and use the sale of the assets to help pay the tax bill. However, Mr. Etter promised Jerod Furr that if they kept going, Etter would bring in new business that would cover their tax bill and revive the company. Based on this promise, Jerod Furr agreed to continue.

### AE Partners Holdings, Inc.

10.    In order to lessen the personal tax obligation going forward, AE Partners Holdings, Inc., a Texas corporation was created, it is taxed under chapter C of the Internal Revenue Code. By taking this approach, AE Partners Holdings, Inc. would be taxed on its income. This permitted AE Partners Holdings, Inc. to retain its earnings, and only required Jerod Furr and Dustin Etter to pay taxes on the money they actually received, as opposed to Alliance Energy Partners, LLC's profits. Additionally, they used an "accrual basis" accounting method – which accounts for accounts receivables even though they have not been received yet.  The company took losses and needed to account for the losses in 2023 and 2024.

11.    Upon AE Partner Holdings, Inc.'s creation, Jerod Furr and Dustin Etter conveyed their equity interests in Alliance Energy Partners, LLC to AE Partner Holdings, Inc. Jerod Furr has a 51% equity interest in AE Partner Holdings, Inc. and Dustin Etter has the remaining 49% equity interest in AE Partner Holdings, Inc. Etter also retained his title as Vice President, and Mr. Furr was elected Chairman of the Board, Chief Executive Officer, President and Secretary.[2]

---

[2] **Exhibit 03.** AE Partners Holdings, Inc. Certificate of Formation
   **Exhibit 04.** AE Partners Holdings, Inc. Organizational Consent

**AEP Asset Holdings, LLC**
**Invictus Drilling Motors, LLC**

12.    AEP Asset Holdings, LLC  and Invictus Drilling Motors, LLC were both incorporated in the state of Texas on or about April 25, 2022 with 100% of their equity held by AE Partner Holdings, Inc. Etter also retained his title as Vice President, and Mr. Furr was elected Chairman, President, CEO, and Secretary. [3]

13.    Unfortunately, things did not turn around as hoped. Partners that the Defendants worked with continued to be bought up by larger players in the industry who chose not to continue the relationship. Mr. Furr managed to bring in some new business himself, but the necessary business that Mr. Etter promised he would develop – never materialized. Looking back, the plan to destroy the business of AEP may have begun to manifest itself in 2023 – Dustin Etter well aware that he would set up a competing company that would destroy AEP.

14.    Despite his failure to come through on his promises, Dustin Etter has been paid from these entities $1,570,000.00 in distributions compared to Jerod Furr, who was paid $1,493,057.00. Mr. Furr allowed the greater distributions to keep Etter motivated so that he would honor his word and work on business development. Etter had also promised to inject some of his own capital by financing his home, but that turned out to be false.  Etter actually used the money to buy a second property for himself. Etter's lifestyle expenses had gotten out of control. At one point in 2023, Etter went as far as taking approximately $100,000 from Alliance Energy Partners, LLC, meant for a new company vehicle, and instead purchased a truck and put the title in his own name.

---

[3] **Exhibit 05.** AEP Asset Holdings, LLC Certificate of Formation
 **Exhibit 06.** AEP Asset Holdings, LLC Organizational Consent
 **Exhibit 07.** Invictus Drilling Motors, LLC Certificate of Formation
 **Exhibit 08.** Invictus Drilling Motors, LLC Organizational Consent

15.   In July 2024, Dustin Etter stopped taking Jerod Furr's phone calls and blocked his number. Etter had been recklessly signing Master Service Agreements (MSAs) that were unfavorable to the Defendants and signing them as the "COO", which he was not. He had also been negotiating steep discounts with their vendors, breaching his fiduciary duty to the company. Mr. Furr did not know it then, but the pattern clearly was a path for Etter's new and competing company.  In the summer of 2024, Etter began telling clients and vendors, business contacts of Mr. Furr (because Etter had failed to develop any of his own), that Furr was embezzling money and that he was going to file a lawsuit against Furr.

16.   Jerod Furr discovered this betrayal through conversations with his contacts, including a phone call in July of 2024 from Martin Campbell, the VP of Sales at Gordon Technologies LLC. Moreover, a representative of one of their vendors sent an email to Etter's work account referencing the situation.  Dustin Etter did all of this while still an owner and officer of the Defendants, clearly in breach of his fiduciary duty owed to the Company and Jerod Furr. Dustin Etter ultimately filed the above styled lawsuit on July 29, 2024[4].

### L&L Ventures, LLC

17.   On August 30, 2024, one month before TRAVIS DAILY was no longer the Vice President of Sales for Alliance Energy Partners, LLC, he incorporated **L&L Ventures, LLC**. The formation documents were later amended to include Dustin Etter as Managing Member No. 2 in October 2024.[5]

---

[4] *Etter v. Furr, et al* @457th Counterclaim filed by Bays **Re Defamation** ¶15. …Since filing this lawsuit, Dustin Etter has approached customers of the Entities, telling the clients that Mr. Furr has embezzled money from the business and that he is suing Mr. Furr related to his actions with the Entities. These actions taken by Mr. Etter have led to multiple lawsuits against the Entities, have led to a loss of business for the Entities, and have led to the destruction of Mr. Furr's reputation in the industry.
[5] **Exhibit 09.** L&L Ventures, LLC Certificate of Formation
   **Exhibit 10.** L&L Ventures, LLC Organizational Consent

18.     On September 24, 2024 [6], Dustin Etter was removed from the Board of Directors of AE Partners Holdings, Inc., and removed as an officer of the Defendants. Mr. Etter was also informed that because he was no longer a director of AE Partners Holdings, Inc., nor an officer of any of the Defendants, he needed to return the company vehicle that Alliance Energy Partners, LLC had wired him the money in 2023 to purchase on its behalf. Dustin Etter refused to return the company vehicle, despite being warned that Alliance Energy Partners, LLC would take action.

### Specialized Energy Services, LLC

19.     Specialized Energy Services, LLC was incorporated on or about September 27, 2024, by Dustin Etter and former Vice President of Sales for Alliance Energy Partners.[7]

20.     After being removed from the board of directors for AE Partners Holdings, LLC, Dustin Etter, the Vice President of Sales Travis Daily and Operations Manager, Trinidad Pena, worked together to solicit and poach clients and vendors from Alliance for the benefit of their new competing business, Specialized Energy Services LLC ("SES").  SES, through its managers, knowingly benefitted from and participated in the unlawful diversion of clients and resources from the Defendants.

21.     In October 2024, Travis Daily noted his own timeline on LinkedIn and announced his new position as Chief Operations Officer for Specialized Energy Services, LLC.[8] The Operations Manager of Alliance Energy Partners, LLC, Trinidad Pena, departed in October 2024 and joined Specialized Energy Partners, LLC as President in January 2025.[9] And finally, Dustin Etter, also

---

[6] Bays Law Firm cc ¶16. On **September 17, 2024**, Dustin Etter was removed from the Board of Directors of AE Partners Holdings, Inc., removed as an officer of the Entities, and was terminated from each of the Entities.
[7] **Exhibit 11.** Specialized Energy Services, LLC Certificate of Formation
[8] **Exhibit 12.** LinkedIn Profile created by Third-Party Defendant Travis Daily
[9] **Exhibit 13.** LinkedIn Profile created by Third-Party Defendant Trinidad Pena

announced his new position as Chief Executive Officer of Specialized Energy Services, LLC in January 2025.[10]

22.    Looking back now, Mr. Furr understands that Pena was hired specifically by Etter at AEP to further the plot to solicit the clients away to the new businesses.  Etter gave him an exorbitant salary of $180,000.00 per year, plus a three percent sales commission on direct sales of the company's directional drilling services.  Furr argued with Etter that the Company could not afford it; Etter demanded it because he knew that the whole plot and plan was to take the business from AEP to the new entities.

### TD Drilling, LLC

23.    On or about January 27, 2025 and following the ongoing bankruptcy of Alliance Farm & Ranch, LLC and Alliance Energy Partners, LLC a third company, TD Drilling, LLC was incorporated with only listing L&L Ventures, LLC as registered agent.[11] Upon information and belief, L& L Ventures was created with the sole purpose to be holding place or an intermediary while these defendants figured out how they would structure the businesses, again, all with the primary purpose of stealing all of the business of AEP, bankrupting the company and stealing its trade secrets and other assets.

24.    Dustin Etter then lit the flames of defamation with the apparent goal of burning his mentor and profiting from the ashes. The actions he took, along with Travis Daily, Trinidad Pena, and Specialized Energy Services LLC, have led to a loss of the very business Etter promised to grow, and the destruction of Jerod Furr's reputation in the industry - they must be held to account.

---

[10] **Exhibit 14.** LinkedIn Profile created by Third-Party Defendant Dustin Etter
[11] **Exhibit 15.** TD Drilling, LLC *Certificate of Formation*
   **Exhibit 16.** TD Drilling, LLC *Assumed Name Certificate*

These third-party defendants, along with Dustin Etter is the very reason that Alliance Energy Partners had to file bankruptcy.

## IV.

<u>CAUSES OF ACTION</u>

***Claims Against Counterclaim Defendant Dustin Etter***

A.  BREACH OF FIDUCIARY DUTY [12]

25.    All allegations set forth above are incorporated by reference.

26.    Dustin Etter is a co-owner of AE Partners Holdings, Inc., and through it, and owner of the other businesses listed as Defendants. Etter was also, until his termination, the Vice President. As such, Mr. Etter owed fiduciary duties to the Defendants, including that of obedience, care, and loyalty, among others.

27.    Etter breached his fiduciary duties in multiples way, including but not limited to:

   a.  Entering into MSAs and negotiating discounts that were disadvantageous to the Defendant-businesses;

   b.  Falsely identifying himself as the COO when signing documents;

   c.  Misappropriating funds by drawing excessive compensation without developing the business he promised;

   d.  Using business funds to purchase a vehicle that he titled in his own name and refused to return upon his termination;

---

[12] *Etter v. Furr, et al* @457th Counterclaim filed by Bays **Re Breach of Fiduciary Duty** ¶19. Based upon the Statement of Facts outlined above, the AE Partners Holdings, Inc. seeks a recovery for Dustin Etter's breach of his fiduciary duties owed to AE Partners Holdings, Inc. At the time that Dustin Etter approached customers and vendors and told them false statements about Mr. Furr's mismanagement of AE Partners Holdings, Inc. and the Entities, he was a director or officer of each of AE Partners Holdings, Inc. By falsely telling customers and vendors that Mr. Furr was embezzling money from the Entities, Dustin Etter breached his fiduciary duty owed to AE Partners Holdings, Inc. ¶20. The actions of Dustin Etter violated the Duty of Care owed to the AE Partners Holdings, Inc. as a director or officer, as he failed to act as an ordinarily prudent person would use under similar circumstances.

e.  Secretly disparaging the Chairman and CEO, Jerod Furr, to vendors and other business contacts; and

f.  Attempting, and in some cases succeeding, to divert business contacts and opportunities away from the Defendant-business (Alliance Energy Partners) while still serving as an owner and officer, for the benefit of a competing business.

28.  As a direct and proximate result of Dustin Etter's breaches, Defendants have suffered significant damages, including but not limited to lost revenue, reputational harm, and misappropriation of company assets. This is the conduct that caused the bankruptcy of Alliance Energy Partners.  Alliance Energy Partners seeks damages as Etter, Daily, Pena and SES's conduct bankrupted the company, stealing all of its clients.

## B.  CONVERSION

29.  All allegations set forth above are incorporated by reference.

30.  Defendant Alliance Energy Partners, LLC provided funds in excess of $100,000 to Dustin Etter for the purpose of purchasing a company vehicle.

31.  Mr. Etter used the funds to purchase a truck which he titled in his personal name.

32.  After Etter was terminated from his officer role, he refused to return the vehicle and kept it for his own personal benefit.

33.  Dustin Etter has unlawfully exorcised control over property that rightfully belongs to Alliance Energy Partners in a manner inconsistent with their rights of ownership and possession.

34.  Etter's refusal to return the vehicle after demand constitutes conversion under Texas law.

35.  AEP seeks recovery of the vehicle or its fair market value, plus consequential and exemplary damages as authorized by law.

## C.  TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS

36.    All allegations set forth above are incorporated by reference.

37.    AEP maintained valid and enforceable contracts with multiple clients, vendors, and other third parties in connection with ongoing operation of business.

38.    Dustin Etter, while still serving as an officer, owner, and fiduciary, willfully and intentionally interfered with those contracts. His conduct included:

      a.    Making false or disparaging statements about Jerod Furr and Alliance Energy Partners to clients and/or vendors;

      b.    Encouraging or instructing clients and/or vendors to breach or terminate their agreements with the Defendants;

      c.    Diverting contracted business to a competing enterprise in which Etter held an interest or intended to establish; and

      d.    Using confidential information of the Defendants to facilitate that diversion.

39.    Mr. Etter's interreference was intentional and without justification or privilege. At the time of the interreference, Etter was aware of the existence of Defendants' contractual relationships and acted with the specific purpose of causing their breach or disruption.

40.    As a direct and proximate result of Dustin Etter's conduct, AEP has suffered actual damages, including lost contracts, revenues, business opportunities, and damage to business reputation and goodwill. Jerod Furr likewise has losses in the form of distributions that otherwise would be his but for Etter's conduct.

41.    Defendants seek actual damages, exemplary damages based on Etter's intentional and malicious conduct, and all other relief to which they are justly entitled.

### D.  MISAPPROPRIATION OF TRADE SECRETS

42.    All allegations set forth above are incorporated by reference.

43.    During the course of his employment, Dustin Etter was given access to Defendants' confidential and proprietary information, including but not limited to client and vendor lists, pricing structures, business development plans, marketing strategies, internal procedures, and other trade secrets (the "Trade Secrets").

44.    Such information derives independent economic value from not being generally known and was subject to reasonable efforts by Defendants to maintain its secrecy, including limiting access to employees and restricting dissemination.

45.    Before and after his termination, Mr. Etter used and/or disclosed Defendants' Trade Secrets without authorization in order to benefit himself and a directly competing business, Specialized Energy Services LLC.

46.    Etter's conduct constitutes misappropriation of trade secrets in violation of the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code § 134A.001 et seq.

47.    As a direct and proximate result, Defendants suffered damages including loss of business and competitive disadvantage.

48.    Defendants seek actual damages, injunctive relief, exemplary damages, attorney's fees, and any other relief available under TUTSA.

## E.  DEFAMATION

49.    Based upon the Statement of Facts above, Jerod Furr asks the Court to award him damages from Dustin Etter because of his actions in defaming Mr. Furr. The elements of a defamation claim are:

a.   the defendant published a false statement of fact to a third party;

b.   the statement was defamatory toward the plaintiff;

c.   the defendant's requisite degree of fault is no less than negligence; and,

d.   the plaintiff suffered damages, unless the statement is defamatory per se.

In this case, Dustin Etter published false statements about Mr. Furr to at least one of the Entities' customers. Jerod Furr has been approached by customers of the Entities who informed him that Mr. Etter has told them that Mr. Furr has embezzled money from the Entities and that Mr. Furr is mismanaging the Entities. These statements were clearly defamatory toward Mr. Furr because the statements are not true, and have led to a loss of business for the Entities, lawsuits against the Entities, and have led to a destruction of Mr. Furr's reputation in the industry. These statements made by Dustin Etter were made at least negligently. Mr. Etter knew of the falsity and consciously decided to publish these statements in an attempt to destroy Mr. Furr's reputation. He has done just that, causing a loss of business for the Entities, multiple lawsuits against the Entities, and causing Jerod Furr havoc in his professional life.

50.   The statements about Mr. Furr were defamatory per se because remarks that adversely reflect on a person's fitness to conduct his or her business or trade are also deemed defamatory per se. *Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013). BUSINESS DISPARAGEMENT

51.   Based upon the Statement of Facts above, the Entities ask the Court to award damages for Dustin Etter's business disparagement. The elements of a business disparagement claim are:

a.   the defendant published false and disparaging information about the business;

b.   with malice;

c.   without privilege; and

d.   that resulted in special damages.

In this case, Dustin Etter published false and disparaging information about the Entities. Namely, Mr. Etter, during his time as a director of AE Partners Holdings, Inc., and an employees of the Entities, approached customers and vendors and told them that Jerod Furr was embezzling money

from the Entities and that Jerod Furr was mismanaging the Entities. This led to vendors requesting full payment from the Entities and lawsuits against the Entities related to these payment demands despite payments under payment plans being timely paid and a loss of customers for the Entities.

52.   Dustin Etter made these statements with malice, seeking to ruin Jerod Furr's career and to cause financial harm to the Entities. Dustin Etter lacked privilege in making these statements. Because of these statements made by Dustin Etter, the Entities have been sued by vendors, and a loss of business has occurred; they have incurred special damages.

### *Claims Against Third-Party Defendants*
### *Travis Daily and Trinidad Pena*

#### F.   BREACH OF CONTRACT

53.   All allegations set forth above are incorporated by reference.

54.   Third-Party Defendant Travis Daily entered into a valid and enforceable employment agreement with Defendant Alliance Energy Partners, LLC.  Daily was hired as a Sales Manager for the Company, and was supposed to schedule and prepare client presentations to showcase company's products and services.  He was supposed to visit prospective and existing clients to promote the company.  He was supposed to maintain the database for the company and make sure they had up to date technology.  He was supposed to promote a culture of continuous improvement with the company.  He had a base salary of $135,000.00 per year, plus a two percent sales commission on direct sales of the company's directional drilling services.

55.   His employment agreement included a provision that he would devote 100% of his time to his duties with the business, and he would not be involved in any entity that is competitive with it. The employment agreement also contained a provision that Travis Daily would not, among other things, make known or use the trade secrets of Alliance Energy Partners, LLC or its affiliates for a period of five years from the end of the contract term. Mr. Daily's employment agreement

further contained a non-solicitation provision under which he agreed that for a period of 12 months after leaving the employ of Alliance Energy Partners, LLC, he would not: "(i) divulge to any person the name of any customer or client of the Company; (ii) knowingly solicit, interfere with or endeavor to entice away from the Company any customer, client, supplier, vendor or any person in the habit of dealing with the Company or its parent, affiliated or subsidiary companies; and (iii) interfere with or knowingly entice away or otherwise attempt to obtain the withdrawal of any employee or independent contractor of the Company or its parent, Affiliate or subsidiary companies."

56.    In exchange for the agreement, Travis Daily received employment and compensation.

57.    Travis Daily knowingly and willfully violated the trade secrets, non-solicitation and time and non-compete provisions of the employment agreement by joining and assisting Dustin Etter in forming and promoting a competing business in the form of Specialized Energy Services LLC, and in his efforts take customers, client, and/or vendors and other business contacts of Defendants.

58.    Travis Daily's conduct constitutes a material breach of his employment agreement.

59.    As a direct and proximate result of the breach, Defendants suffered actual damages for which it seeks relief, including lost revenue and business opportunities, diverted clients and/or vendors, and damage to goodwill. Travis Daily

### G.  KNOWING PARTICIPATION IN BREACH OF FIDUCIARY DUTY

60.    All allegations set forth above are incorporated by reference.

61.    Pena was hired by Etter to be an Operations Manager for AEP.  Jerod Furr objected to this employment, stating the company really did not have the funds to pay another salary in the amount of $180,000 per year and three percent commissions on sales.  Over Jerod's objections, Pena was hired.  Interestingly enough, Etter did not ask Pena to sign a non-compete and non-

solicitation agreement, probably because he knew the plan was to take him with him to the new entity.

62.    Nonetheless, Daily had a fiduciary duty – he had direct access to the company's clients and was paid a hefty salary and large commissions for sales.  Travis Daily and Trinidad Pena both owed fiduciary duties to Alliance Energy Partners, and diverting business, and misappropriating assets and stealing confidential information and clients – constituted breaches of those duties.

63.    Despite this knowledge, Daily and Pena assisted, encouraged, and/or participated in Dustin Etter's breaches of his fiduciary duty, including by helping to form and promote competing businesses, soliciting clients and/or vendors, or by otherwise advancing Mr. Etter's interests at the expense of the Defendants.

64.    Under Texas law, one who knowingly participates in another's breach of fiduciary duty is liable for the resulting damages.

65.    As a direct and proximate result of Travis Daily's actions, Defendants sustained actual damages.

66.    Defendants seek actual damages and exemplary damages based on the knowing, intentional, and malicious nature of Travis Daily's conduct.

### H.  MISAPPROPRIATION OF TRADE SECRETS

67.    All allegations set forth above are incorporated by reference.

68.    During the course of his employment, Travis Daily was given access to Defendants' confidential and proprietary information, including but not limited to customer and vendor lists, pricing structures, business development plans, marketing strategies, internal procedures, and other trade secrets (the "Trade Secrets").

69.    Such information derives independent economic value from not being generally known and was subject to reasonable efforts by Defendants to maintain its secrecy, including limiting access to employees and restricting dissemination.

70.    After his termination, Mr. Daily used and/or disclosed Defendants' Trade Secrets without authorization in order to benefit a directly competing business, Specialized Energy Services LLC.

71.    Travis Daily's conduct constitutes misappropriation of trade secrets in violation of the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code § 134A.001 et seq.

72.    As a direct and proximate result, Defendants suffered damages for which they seek relief, including loss of business and competitive disadvantage.

### Causes of Action Against Third-Party Defendants
### Specialized Energy Services, LLC, L&L Ventures, LLC and TD Drilling Motors, LLC

#### I.    KNOWING PARTICIPATION IN BREACH OF FIDUCIARY DUTY

73.    All allegations set forth above are incorporated by reference.

74.    As previously mentioned, Dustin Etter owed fiduciary duties to Defendants.

75.    As described above, Etter breached his fiduciary duties by, among other things:

    a.   Misappropriating business funds and assets for personal use;

    b.   Diverting clients, vendors, and business opportunities to a competing venture;

    c.   Defaming/disparaging Defendants to key business relationships; and

    d.   Using confidential information for personal gain and to benefit a competitor.

76.    Specialized Energy Services LLC, through its manager/owners Dustin Etter and Travis Daily, was aware of the fiduciary duties owed. Specialized Energy Services LLC, through its owners/managers, participated in Etter's breaches by knowingly accepting the benefits of Dustin Etter's disloyal conduct, including the diverted clients, vendor relationships, and trade secrets. Moreover, Etter and Daily have formed other entities (similar to what existed with AEP) – Etter

and Daily clearly decided to steal the entire structure that AEP had, its clients, its vendors, its relationships and its trade secrets.

77.   As a direct and proximate result of these defendants knowing participation in the breach of fiduciary duty, Defendants have suffered damages for which they seek relief including:

    a.   Loss of clients and vendor relationships (especially through false representations about Jerod Furr and lying and stating that he "embezzled from the company" – all to persuade all of the clients of AEP to leave and come with Etter);

    b.   Lost revenue and diverted business opportunities;

    c.   Misappropriation of confidential and proprietary information;

    d.   Harm to business reputation and goodwill; and

    e.   Bankrupting AEP.

*Causes of Action Against Third-Party Defendants*
*Travis Daily, Trinidad Pena, Specialized Energy Services, LLC,*
*L&L Ventures, LLC and TD Drilling Motors, LLC*

### J.   MISAPPROPRIATION OF TRADE SECRETS

78.   All allegations set forth above are incorporated by reference.

79.   During the course of his employment, Travis Daily was given access to Defendants' confidential and proprietary information, including but not limited to customer and vendor lists, pricing structures, business development plans, marketing strategies, internal procedures, and other trade secrets (the "Trade Secrets").

80.   Such information derives independent economic value from not being generally known and was subject to reasonable efforts by Defendants to maintain its secrecy, including limiting access to employees and restricting dissemination.

81.     After his termination, Mr. Daily used and/or disclosed Defendants' Trade Secrets without authorization in order to benefit a directly competing business, Specialized Energy Services LLC.

82.     Travis Daily's conduct constitutes misappropriation of trade secrets in violation of the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code § 134A.001 et seq.

83.     As a direct and proximate result, Defendants suffered damages for which they seek relief, including loss of business and competitive disadvantage.

84.     Through its owners/managers, the defendants acquired and used AEP's Trade Secrets with actual or constructive knowledge that the Trade Secrets were wrongfully obtained from individuals who were under legal and contractual duties to maintain their secrecy.

85.     These Defendants' acquisition and use of AEP's Trade Secrets constitutes misappropriation under Tex. Civ. Prac. & Rem. Code § 134A.002(3).

86.     As a direct and proximate result of misappropriation, Defendants have suffered damages for which they seek relief, including loss of business and competitive disadvantage.

## V.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants, Counterclaim Plaintiffs and Third-Party Plaintiffs respectfully request that, upon final trial or other disposition of this case, the Court enter judgment in their favor and award the following relief:

**A.  As to Dustin Etter, for:**

1)   Direct/actual damages as allowed for breach of fiduciary duty, conversion, tortious interference with an existing contract, and misappropriation of trade secrets;

2)   Disgorgement of all profits and benefits wrongfully obtained;

3) Restitution for destroying the goodwill that AEP and Jerod Furr had with his clients;

4) Exemplary damages for conduct that was intentional, malicious, or in conscious disregard of the rights of Defendants, including under Chapter 41 of the Texas Civil Practice & Remedies Code;

5) Attorney's fees as allowed for by Tex. Civ. Prac. & Rem. Code § 134A.005 for willful and malicious misappropriation;

6) Prejudgment and post judgment interest as allowed by law.

**B. As to Third-Party Defendant Travis Daily and Trinidad Pena, for:**

1) As to Daily, direct/actual damages as allowed for breach of contract, and to Pena and Daily, knowing participation in breaches of fiduciary duties, and misappropriation of trade secrets;

2) As to Daily, consequential damages as allowed for breach of contract;

3) Attorney's fees as allowed for by Tex. Civ. Prac. & Rem. Code § 38.001 and § 134A.005;

4) Exemplary damages for intentional and knowing misconduct as allowed for by law; and,

5) Court costs along with pre-and-post judgment interest as allowed for by law.

**C. As to Third-Party Defendants Specialized Energy Resources LLC, L&L Ventures, LLC, and TD Drilling Motors, LLC, for:**

1) Direct/actual damages as allowed for knowing participation in breaches of fiduciary duties and misappropriation of trade secrets;

2) Attorney's fees as allowed for by Tex. Civ. Prac. & Rem. Code § 134A.005 for willful and malicious misappropriation;

3) Disgorgement of profits, business opportunities, and other benefits wrongfully obtained;

4) Equitable relief including a constructive trust over any assets or property acquired through knowing participation in breach of;

5) Exemplary damages for intentional and knowing misconduct as allowed for by law;

6) Court costs along with pre-and-post judgment interest as allowed for by law; and,

7) Alliance Energy Partners and Jerod Furr estimate that Specialized is grossing two million dollars per month.  As a result, AEP and Furr are entitled to an estimated $12,000,000.00 prior to punitive damages application.  AEP and Furr ask for three times against these defendants for the amounts awarded.  Alliance Energy Partners and Jerod Furr likewise ask that these defendants, Etter, Daily, Pena, and Specialized be held jointly and severally liable for their joint conduct.

Defendants, Counterclaim Plaintiffs and  Third-Party Plaintiffs further pray for all such other and further relief, at law or in equity, to which it may be justly entitled.

Respectfully submitted this 25th day of September 2025.

/s/ *Leonard H. Simon*
**Leonard H. Simon, Esq.**
TBN: 18387400; SDOT: 8200
2777 Allen Parkway, Suite 800
Houston, Texas 77019
(713) 528-8555 (Main)
(832) 202-2810 (Fax)
lsimon@pendergraftsimon.com
**ATTORNEY IN CHARGE FOR JEROD
FURR, ACTING INDIVIDUALLY AMD
DERIVATIVELY ON BEHALF OF
ALLIANCE ENERGY PARTNERS, LLC**

## CERTIFICATE OF SERVICE

This is to certify that on the 25th day of September2025, a true and correct copy of the above and foregoing was transmitted to counsel for the Trustee, the Trustee and counsel for Dustin Etter via the Court's ECF Case Filing system.

/s/ *Leonard H. Simon*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was served upon all counsel of record in accordance with the Texas Rules Of Civil Procedure on August _____, 2025.

_____
Deborah L. Crain