## STOCK EXCHANGE AGREEMENT

This Stock Exchange Agreement (this "*Agreement*") is made and entered into as of August 10, 2023 by and between Isodrill, Inc., a Delaware corporation (the "*Company*"), Alliance Energy Partners, LLC, a Texas limited liability company ("*Stockholder*"), and AE Partners Holdings, Inc., a Texas corporation and sole owner of Stockholder ("*Parent*", and together with the Company and Stockholder, the "*Parties*").

### RECITALS:

WHEREAS, the Parties wish to effect the exchange by Stockholder of 80,000 shares (the "*Old Shares*") of the Company's Common Stock, par value $0.01 per share ("*Common Stock*"), for 1,000,000 shares (the "*New Shares*") of the Company's Series A-1 Preferred Stock, par value $0.01 per share (the "*Preferred Stock*"), to be issued in the name of Parent in accordance with the terms and conditions set forth in this Agreement (the "*Stock Exchange*");

WHEREAS, the Old Shares were purchased by Stockholder for total consideration of $1.0 million in 2021 pursuant to a Subscription Agreement by and among the Company and Stockholder dated May 7, 2021 (the "*Subscription Agreement*"); and

WHEREAS, the Stock Exchange is intended to be treated for U.S. federal and applicable state and local tax purposes as a "reorganization" within the meaning of Section 368(a)(1)(E) of the Internal Revenue Code of 1986, as amended (the "*Code*"), and the Treasury Regulations promulgated thereunder, and this Agreement is adopted as a "plan of reorganization" within the meaning of Treasury Regulations Section 1.368-2(g) and for purposes of Section 1.368-3(a).

### AGREEMENT:

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual promises herein, the Parties hereby agree as follows:

1. **AGREEMENT TO EXCHANGE STOCK**.

    1.1. **Authorization**. The Company has authorized the issuance to Parent, pursuant to the terms and conditions of this Agreement, of the full number of New Shares that are to be issued to Stockholder and/or Parent in exchange for the Old Shares hereunder.

    1.2. **Agreement to Exchange; Full Satisfaction**. On the terms and subject to the conditions set forth herein, at the Exchange Closing (as defined below), Stockholder shall transfer, convey and assign to the Company all of Stockholder's right, title and interest in and to all of the Old Shares, free and clear of any pledge, lien, security interest, encumbrance, claim or equitable interest, and the Company shall issue to Stockholder in exchange therefor the New Shares, all having the rights, preferences, privileges and restrictions set forth in the Amended and Restated Certificate of Incorporation of the Company (the "*Restated Certificate*"). The Company and Stockholder hereby acknowledge and agree that the New Shares shall have the rights, preferences and privileges and be subject to the obligations contained in each of the Transaction Agreements (as defined in that certain Preferred Stock Purchase Agreement, dated August 10, 2023 by and among the Company, the Parent and other parties thereto, the "*Preferred Stock Purchase Agreement*") as if such shares were purchased pursuant to the terms of the Preferred Stok Purchase Agreement. The New Shares delivered in the name of Parent and in accordance with the terms hereof shall be deemed to have been delivered in full satisfaction of all rights of Stockholder pertaining to the Old Shares.

    1.3. **Intended Tax Treatment**. The Company and Stockholder intend for the Stock Exchange to be treated for U.S. federal and applicable state and local tax purposes as a "reorganization" within the meaning of Section 368(a)(1)(E) of the Code and the Treasury Regulations promulgated thereunder, and for this Agreement to be adopted as a "plan of reorganization" within the meaning of Treasury Regulations Section 1.368-2(g) and for purposes of Section 1.368-3(a) (the "*Intended Tax Treatment*"). The Company, Stockholder and Parent shall report the Stock Exchange consistent with the Intended Tax Treatment for applicable tax

purposes, except as otherwise required by applicable laws; provided, however, that the Parties make no representation or warranty to each other or to any other person regarding such Intended Tax treatment.

**1.4. Calculation.** The number of Old Shares Stockholder is exchanging in the Stock Exchange is 80,000 shares of Common Stock. The aggregate number of New Shares issued pursuant to this Stock Exchange is 1,000,000 shares of Preferred Stock.

**1.5. Effectuation of Transfer.** The Parties intend and hereby agree that this Agreement shall constitute a stock power or other necessary authorization to transfer, authorizing the Company and/or its transfer agent to record on its books and records the exchange of the Old Shares for the New Shares pursuant to the Stock Exchange. Without limiting the foregoing, Stockholder hereby irrevocably constitutes and appoints the Secretary of the Company attorney to transfer the Old Shares on the books of the Company with full power of substitution in the premises.

**2. CLOSING.** The Stock Exchange will take place contemporaneously with the execution of this Agreement which will occur concurrently with the Initial Closing (as defined in the Preferred Stock Purchase Agreement) (which time and place are referred to in this Agreement as the "*Exchange Closing*"). At the Exchange Closing, the Company shall cancel the stock certificate in Stockholder's name representing the Old Shares and shall deliver to Parent a stock certificate for the New Shares or, if the Old Shares and the New Shares are held only in book-entry form, update the Company capitalization records and provide Stockholder with reasonable evidence that the New Shares have been registered in Parent's name (such stock certificate or book-entry evidence to be delivered to Parent and Stockholder no more than fifteen business days after the Exchange Closing).

**3. STOCKHOLDERS' AND PARENT'S REPRESENTATION AND WARRANTIES.** Stockholder and Parent, jointly and severally, represent and warrant to the Company that:

**3.1. Title to Old Shares.** Stockholder is the owner, beneficially and of record, of all the Old Shares to be exchanged by Stockholder under this Agreement free and clear of all liens, encumbrances, security agreements, equities, options, claims, charges and restrictions.

**3.2. Authority and Consents.** Each of Stockholder and Parent has the right, power, legal capacity and authority to enter into and perform their obligations under this Agreement, and no approvals or consent of any governmental or regulatory authority or other persons other than Stockholder and parent, other than any such approvals or consents that have already been obtained, is necessary in connection herewith.

**3.3. No Brokers.** No broker or finder has acted directly or indirectly for Stockholder or Parent in connection with this Agreement or the transaction contemplated hereby, and no broker or finder is entitled to any brokerage or finder's fee or other commission in respect thereof based in any way on agreements, arrangements or understandings made by or on behalf of Stockholder or Parent.

**3.4. No Litigation.** There is no action, suit, proceeding or investigation pending or, to Stockholder's or Parent's knowledge, currently threatened against either of them that questions the validity of this Agreement, or their right to enter into this Agreement, or to consummate the transactions contemplated hereby.

**3.5. Legends.** Stockholder and Parent understand that the New Shares and any securities issued in respect of or exchange for the New Shares, may be notated with the same legends applicable to other shares of Preferred Stock.

**3.6. Ownership.** Parent owns, beneficially and of record, 100% of the membership interests of Stockholder, free and clear of all liens, encumbrances, security agreements, equities, options, claims, charges and restrictions.

**4. COMPANY'S REPRESENTATION AND WARRANTIES.** The Company represents and warrants to each of Stockholder and Parent that:

**4.1.** **Organization, Good Standing, Corporate Power and Qualification.** The Company is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware and has all requisite corporate power and authority to carry on its business as presently conducted and as proposed to be conducted.

**4.2.** **Authorization.** All corporate action required to be taken by the Company's board of directors and its stockholders in order to authorize the Company to enter into this Agreement, and to issue the New Shares at the Exchange Closing (and the Common Stock issuable upon conversion of the New Shares), has been taken or will be taken prior to the Exchange Closing. This Agreement, when executed and delivered by the Company, shall constitute the valid and legally binding obligations of the Company, enforceable against the Company in accordance with its terms except as limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance, or other laws of general application relating to or affecting the enforcement of creditors' rights generally, and as limited by laws relating to the availability of specific performance, injunctive relief, or other equitable remedies. The Company has obtained valid waivers of any rights by other parties to purchase any of the New Shares covered by this Agreement (and the Common Stock issuable upon conversion of the New Shares).

**4.3.** **Valid Issuance of Shares.** The New Shares, when issued and delivered in accordance with the terms set forth in this Agreement, will be validly issued, fully paid and nonassessable and free of restrictions on transfer other than restrictions on transfer applicable to an "Investor" under the Transaction Agreements (as defined in the Preferred Stock Purchase Agreement), applicable state and federal securities laws and liens or encumbrances created by or imposed by Stockholder and/or Parent. Assuming the accuracy of the representations of Stockholder and Parent in Section 3 of this Agreement, the New Shares will be issued in compliance with all applicable federal and state securities laws. The Common Stock issuable upon conversion of the New Shares has been duly reserved for issuance, and upon issuance in accordance with the terms of the Restated Certificate, will be validly issued, fully paid and nonassessable and free of restrictions on transfer other than restrictions on transfer applicable to an "Investor" under the Transaction Agreements, applicable federal and state securities laws and liens or encumbrances created by or imposed by Stockholder. Assuming the accuracy of the representations of Stockholder and Parent in Section 3 of this Agreement, the Common Stock issuable upon conversion of the New Shares will be issued in compliance with all applicable federal and state securities laws.

**4.4.** **No Conflicts; Consents**. The Company represents and warrants to the Stockholder and Parent that, except for restrictions that have been waived or satisfied as of the date hereof, no consent, approval, authorization or order of any third party (including any court, governmental agency or body) is required to effect the Stock Exchange and the consummation of the transactions contemplated herein.

**4.5.** **Preferred Stock Purchase Agreement Representations**. The Company makes those representations and warranties to each of Stockholder and Parent made to "Investors" in the Preferred Stock Purchase Agreement.

**5.** **GENERAL PROVISIONS**.

**5.1.** **Successors and Assigns**. Except as otherwise provided in this Agreement, this Agreement, and the rights and obligations of the parties hereunder, will be binding upon and inure to the benefit of their respective successors, assigns, heirs, executors, administrators and legal representatives.

**5.2.** **Governing Law; Submission to Jurisdiction; Waiver of Jury Trial**. This Agreement shall be governed in all respects by the internal laws of the State of Delaware as applied to agreements entered into among Delaware residents to be performed entirely within Delaware, without regard to principles of conflicts of law. The parties agree that any action brought by either party under or in relation to this Agreement, including without limitation to interpret or enforce any provision of this Agreement, shall be brought in, and each party agrees to and does hereby submit to the jurisdiction and venue of, any state or federal court located in Delaware and each party hereby irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such, action, suit or proceeding in any such court or that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum. Process in any

such action, suit or proceeding may be served on any party anywhere in the world, whether within or without the jurisdiction of any such court. THE PARTIES TO THIS AGREEMENT HEREBY WAIVE THEIR RIGHT TO A TRIAL BY JURY WITH RESPECT TO DISPUTES ARISING UNDER THIS AGREEMENT AND THE RELATED AGREEMENTS AND CONSENT TO A BENCH TRIAL WITH THE APPROPRIATE JUDGE ACTING AS THE FINDER OF FACT.

5.3. **Specific Performance**. Unless this Agreement has been terminated, each party to this Agreement acknowledges and agrees that any breach by it of this Agreement shall cause the other party irreparable harm which may not be adequately compensable by money damages. Accordingly, except in the case of termination, in the event of a breach or threatened breach by a party of any provision of this Agreement, each party shall be entitled to seek the remedies of specific performance, injunction or other preliminary or equitable relief, without having to prove irreparable harm or actual damages. The foregoing right shall be in addition to such other rights or remedies as may be available to any party for such breach or threatened breach, including but not limited to the recovery of money damages.

5.4. **Counterparts**. This Agreement may be executed and delivered in any number of counterparts (including by way of electronic transmission and in PDF, facsimile or other electronic form), each of which when so executed and delivered will be deemed an original, and all of which together shall constitute one and the same agreement.

5.5. **Titles and Headings**. The titles, captions and headings of this Agreement are included for ease of reference only and will be disregarded in interpreting or construing this Agreement. Unless otherwise specifically stated, all references herein to "sections" and "exhibits" will mean "sections" and "exhibits" to this Agreement.

5.6. **Notices**. Any and all notices required or permitted to be given to a party pursuant to the provisions of this Agreement will be in writing and will be effective and deemed to provide such party sufficient notice under this Agreement on the earliest of the following: (i) at the time of personal delivery, if delivery is in person; (ii) at the time of transmission by e-mail, addressed to the other party at its e-mail address specified herein (or hereafter modified by subsequent notice to the parties hereto); (iii) one business day after deposit with an express overnight courier for United States deliveries, or two business days after such deposit for deliveries outside of the United States, with proof of delivery from the courier requested; or (iv) three business days after deposit in the United States mail by certified mail (return receipt requested) for United States deliveries. All notices for delivery outside the United States will be sent by e-mail or by express courier.

5.7. **Amendments and Waivers**. Any term of this Agreement may be amended and the observance of any term of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively), only with the written consent of the Company, Stockholder and Parent. No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance. No waiver granted under this Agreement as to any one provision herein shall constitute a subsequent waiver of such provision or of any other provision herein, nor shall it constitute the waiver of any performance other than the actual performance specifically waived.

5.8. **Severability**. If any provision of this Agreement is determined by any court or arbitrator of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such provision will be enforced to the maximum extent possible given the intent of the parties hereto. If such clause or provision cannot be so enforced, such provision shall be stricken from this Agreement and the remainder of this Agreement shall be enforced as if such invalid, illegal or unenforceable clause or provision had (to the extent not enforceable) never been contained in this Agreement. Notwithstanding the foregoing, if the value of this Agreement based upon the substantial benefit of the bargain for any party is materially impaired, which determination as made by the presiding court or arbitrator of competent jurisdiction shall be binding, then both parties agree to substitute such provision(s) through good faith negotiations.

5.9. **Entire Agreement**. This Agreement and the documents referred to herein (including the Preferred Stock Purchase Agreement), constitute the entire agreement and understanding of the Parties with respect to the subject matter of this Agreement, and supersede any and all prior understandings and agreements, whether oral or written, between or among the Parties hereto with respect to the specific subject matter hereof.

**5.10. Further Assurances**. The Company hereby irrevocably agrees in favor of Stockholder and Parent to execute and deliver, by the proper exercise of their corporate, limited liability company, partnership or other powers, any and all such other and additional instruments and documents and take and do any and all such other acts and things as may be necessary to more fully effectuate this Agreement or as may be requested by Stockholder in furtherance of or give effect to this Agreement.

**5.11. Third Parties**. Nothing in this Agreement, express or implied, is intended to confer upon any person, other than the parties hereto and their respective successors and permitted assigns, any rights or remedies under or by reason of this Agreement.

**5.12. Expenses**. Each Party will bear its own costs and expenses associated with the negotiation and drafting of this Agreement.

**5.13. Confidentiality**. The terms and existence of this Agreement are strictly confidential and shall not be disclosed by a party hereto to any third party without the prior written consent of the other parties hereto; *provided, however*, that a party hereto may disclose the terms and existence of this Agreement (i) to such party's partners, members, affiliates, advisory board members, attorneys, accountants or other professional advisors or any prospective purchaser of the New Shares or (ii) as may be required by law, or by any government regulatory or self-regulatory agency or authority. This provision shall survive the termination of this Agreement.

[*Signature Page Follows.*]

IN WITNESS WHEREOF, the Parties hereto have executed this Stock Exchange Agreement as of the date first written above.

**COMPANY:**

**Isodrill, Inc.**

By: *\[signature: James A. Knight\]*
Name: James A. Knight
Title: Chief Financial & Legal Officer

**STOCKHOLDER:**

**ALLIANCE ENERGY PARTNERS, LLC**

By:_____
Name: Jerod P. Furr
Title: Manager

**PARENT:**

**AE PARTNERS HOLDINGS, INC.**

By:_____
Name: Jerod P. Furr
Title: President

IN WITNESS WHEREOF, the Parties hereto have executed this Stock Exchange Agreement as of the date first written above.

**COMPANY:**

**Isodrill, Inc.**

By:_____
Name: James A. Knight
Title: Chief Financial & Legal Officer

**STOCKHOLDER:**

**ALLIANCE ENERGY PARTNERS, LLC**

By:_____
Name: Jerod P. Furr
Title: Manager

**PARENT:**

**AE PARTNERS HOLDINGS, INC.**

By:_____
Name: Jerod P. Furr
Title: President