## SECOND AMENDED & RESTATED STOCKHOLDERS' AGREEMENT

THIS SECOND AMENDED & RESTATED STOCKHOLDERS' AGREEMENT (this "Agreement") is made as of May 16, 2024, by and among (i) Isodrill, Inc., a Delaware corporation (the "Company"); (ii) WM Capital Partners, L.P., a Delaware limited partnership ("WMCP"), (iii) each other Person identified as a stockholder on Schedule A hereto or who otherwise hereafter becomes a party to this Agreement. Certain other capitalized terms used herein are defined in Section 1.

WHEREAS, the Stockholders each own Equity Securities of the Company.

WHEREAS, the Company and its stockholders are party to that certain Amended & Restated Stockholders' Agreement dated August 10, 2023 (the "Prior SHA");

WHEREAS, concurrently with the execution of this Agreement certain Persons are acquiring shares of Preferred Stock from the Company in a financing and as a condition desire to amend and restate the Prior SHA in its entirety.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Agreement hereby agree as follows:

1. **Certain Definitions**. The terms defined in this **Section 1**, whenever used in this Agreement, shall, unless the context clearly otherwise requires, have the following respective meanings:

- "AEPH" shall mean AE Partners Holdings, Inc., a Texas corporation, a Stockholder of the Company.

- "AEPH Director" shall have the meaning set forth herein in **Section 4.1(b)**.

- "Affiliate" of a Person shall mean any other Person directly or indirectly controlling, controlled by or under common control with such Person.

- "Applicable Percentage" as applied to a Minority Stockholder on any date shall mean (i) with respect to the Equity Securities, a fraction (expressed as a percentage), the numerator of which is the aggregate number of shares of Equity Securities owned by such Minority Stockholder on such date and the denominator of which is the total number of shares of Equity Securities outstanding on such date (calculated on a fully diluted basis). For purposes of this Agreement, "fully diluted basis" means the total number of shares of Common Stock that are issued and outstanding plus the total number of shares of Common Stock issuable as of such date upon exercise or conversion of all other outstanding Equity Securities.

- "Approved Sale" shall have the meaning set forth herein in **Section 3.2(a)**.

- "Board" shall mean the board of directors of the Company.

- "Bonner" shall mean Stephen D. Bonner and/or SDB Consulting, LLC, a Stockholder of the Company.

- "Bonner Director" shall have the meaning set forth herein in **Section 4.1(b)**.

1

- "Certificate of Incorporation" shall mean the Amended and Restated Certificate of Incorporation of the Company, as filed with the Secretary of State of Delaware on or about August 9, 2023, and as amended from time to time in accordance with its terms.

- "Collett" shall mean John R. Collett, a Stockholder of the Company.

- "Collett Director" shall have the meaning set forth herein in **Section 4.1(b).**

- "Common Stock" shall mean the Common Stock, $0.01 par value per share, of the Company as constituted on the date hereof and any stock into which any such Common Stock shall have been changed or any stock resulting from any reclassification of any such Common Stock.

- "Company" shall have the meaning set forth in the first paragraph of this Agreement.

- "Confidential Information" shall mean all information of confidential and proprietary nature disclosed by any means by one party (the "Disclosing Party") to any other party (the "Receiving Party") and includes such information disclosed by or to the Company or its representatives and includes the provisions and subject matter of this Agreement.

- "Equity Securities" shall mean (a) any capital stock of the Company (including, without limitation, Common Stock and Preferred Stock), (b) any warrants, options, or other rights to subscribe for or to acquire, directly or indirectly, capital stock of the Company, whether or not then exercisable or convertible, (c) any stock, notes, or other securities which are convertible into or exchangeable for, directly or indirectly, capital stock of the Company, whether or not then convertible or exchangeable, (d) any capital stock of the Company issued or issuable upon the exercise, conversion, or exchange of any of the securities referred to in clauses (a) through (c) above, and (e) any securities issued or issuable directly or indirectly with respect to the securities referred to in clauses (a) through (d) above by way of stock dividend or stock split or in connection with a combination of shares, recapitalization, reclassification, merger, consolidation, or other reorganization.

- "Excluded Securities" means (a) any securities issued to employees, directors, consultants and advisors of the Company pursuant to a stock incentive plan or pursuant to stock option plans, purchase plans or other arrangements approved by the Board of Directors or a committee of the Board of Directors; (b) any securities issued as a pro rata distribution on the outstanding Common Stock; (c) any securities issued in connection with a Public Offering and (d) any securities issued in connection with an acquisition of a third-party made by the Company.

- "Exempt Transfer", as applied to any Stockholder, shall mean (a) any Permitted Affiliate Sale, (b) in the case of an individual, any Transfer to a member of the Family of such Stockholder, or a trust or other entity for the sole benefit of such Stockholder or a member of the Family of such Stockholder, if such individual or trust or other entity agrees to be bound by the terms of this Agreement and executes a joinder hereto, (c) any Transfer to another Stockholder or to the Company, or (d) any proposed Transfer by a Minority Stockholder approved in writing by the Board (in its sole discretion).

2

- "<u>Family</u>", as applied to any individual, shall mean (a) the children of such individual (by birth or adoption), (b) the parents, spouse and siblings of such individual, (c) the children of the siblings of such individual, (d) any trust solely for the benefit of, or any partnership, limited liability company or other entity owned solely by, any one or more of such aforementioned individuals (so long as such individuals have the exclusive right to control such trust or other entity) and (e) the estate of such individual.

- "<u>Minority Equity Securities</u>" shall mean any Equity Securities acquired by any Minority Stockholder. For avoidance of doubt, any Equity Securities purchased or otherwise acquired by WMCP or any Affiliate of WMCP shall not be Minority Equity Securities.

- "<u>Minority Stockholders</u>" shall mean each Stockholder other than WMCP or any Affiliates of WMCP.

- "<u>Notice of Transfer</u>" shall have the meaning set forth herein in **Section 3.1(b)**.

- "<u>Outside Offer</u>" shall have the meaning set forth herein in **Section 2.2(a)**.

- "<u>Permitted Affiliate Sale</u>" shall mean any Transfer by a holder of Equity Securities to any one or more of its Affiliates if such Affiliate agrees to be bound by the terms of this Agreement to the same extent as the transferor and executes a joinder hereto.

- "<u>Person</u>" shall mean an individual, a corporation, a limited liability company, an association, a joint-stock company, a business trust or other similar organization, a partnership, a joint venture, a trust, an unincorporated organization or a government or any agency, instrumentality or political subdivision thereof.

- "<u>Preferred Stock</u>" shall mean the Preferred Stock, $0.01 par value per share, of the Company as constituted on the date hereof and any stock into which any such Preferred Stock shall have been changed or any stock resulting from any reclassification of any such Preferred Stock.

- "<u>Prospective Purchaser</u>" shall have the meaning set forth herein in **Section 2.2(a)**.

- "<u>Public Offering</u>" shall mean any underwritten sale of the Company's capital stock pursuant to an effective registration statement under the Securities Act filed with the Securities and Exchange Commission on Form S-1 or any other eligible form (or a successor form thereto adopted by the Securities and Exchange Commission); <u>provided</u> that the following will not be considered a Public Offering: (a) any issuance of Equity Securities as consideration for a merger or acquisition registered on Form S-4 (or a successor form thereto adopted by the Securities and Exchange Commission) or otherwise under the Securities Act; and (b) any issuance of Equity Securities or rights to acquire Equity Securities to existing stockholders or to employees of the Company or its subsidiaries on Form S-4 or S-8 (or a successor form adopted by the Securities and Exchange Commission) or otherwise.

- "<u>Recapitalization</u>" shall have the meaning set forth herein in **Section 5**.

- "<u>Sale of the Company</u>" shall mean any transaction or series of related transactions pursuant to which any Person or group of related Persons (other than WMCP or an Affiliate of WMCP) acquires (a) more than 50% of the Equity Securities of the

Company, or (b) all or substantially all of the Company's and its subsidiaries' assets (in either case, whether by merger, consolidation, or Transfer of the Company's or its subsidiaries' equity securities, or Transfer of the Company's and its subsidiaries' consolidated assets or otherwise).

- "Securities Act" shall mean the Securities Act of 1933, as amended, or any successor federal statute, and the rules and regulations promulgated thereunder, all as amended, modified or supplemented from time to time.

- "Selling Stockholder" shall have the meaning set forth herein in **Section 2.2(a)**.

- "Stockholder" shall mean WMCP, the Minority Stockholders and each other Person who shall acquire any Equity Securities from the Company, WMCP or the Minority Stockholders and their respective heirs, executors, successors and assigns in accordance with the terms and conditions of this Agreement.

- "Transfer" shall mean any merger, sale, pledge, gift, assignment or other transfer or disposition.

- "WMCP" shall have the meaning set forth in the first paragraph of this Agreement.

- "WMCP Director" shall have the meaning set forth herein in **Section 4.1(b)**.

## 2.   Restriction on Transfer of Equity Securities by Minority Stockholders.

2.1     General.   The Minority Stockholders shall not Transfer any interest in the Equity Securities (except in connection with an Exempt Transfer) and the Company shall not register the Transfer of, or otherwise permit the Transfer of, any interest in the Equity Securities by any Minority Stockholders (except in connection with an Exempt Transfer) unless (a) such Transfer has been initiated on or after January 1, 2026, (b) such Transfer has been consummated in accordance with the terms hereof and (c) the new holder thereof shall first have become a party to this Agreement and shall have agreed in writing to be bound by all of the terms and conditions hereof applicable to the Minority Stockholders. Any Transfer of any interest in the Equity Securities by any Minority Stockholder which is not consummated in accordance with this Agreement shall be void.

2.2     Limited Right to Dispose of Interest in the Equity Securities.

(a)     Bona Fide Offer to Purchase Interest in the Equity Securities.   If any Minority Stockholder (or any of his, her or its transferees) shall at any time desire to Transfer all or any part of his, her or its interest in the Equity Securities as permitted under the terms of this Agreement, such Person (the "Selling Stockholder") shall first obtain from a Prospective Purchaser a bona fide written offer which such Selling Stockholder desires to accept (the "Outside Offer") to purchase all or any portion of such Selling Stockholder's Equity Securities for a fixed cash price payable in full at the closing of such transaction. The Outside Offer shall set forth its date, the proposed purchase price, an identification of the Equity Securities proposed to be purchased (including the number and/or amount thereof), and the other terms and conditions upon which the purchase is proposed to be made, as well as the name and address of the Prospective Purchaser. "Prospective Purchaser", as used herein, shall mean the prospective record owner or owners of the interest in the Equity Securities which are the subject of the Outside Offer and all other Persons proposed to have a beneficial interest in such Equity Securities; provided, however, that a Prospective Purchaser shall not be a Person that, directly or indirectly (whether as sole proprietor, partner, stockholder, owner, lender, manager, consultant, director, officer, employee, or agent), owns, manages,

operates, controls, finances, engages or participates in the ownership, management, operation or control of any Person that competes with the Company or is a customer of the Company. The Selling Stockholder shall transmit copies of the Outside Offer to the Company and WMCP within ten (10) days after the Selling Stockholder's receipt of the Outside Offer.

(b)     Option of Company and WMCP.

(i)     As a result of the foregoing transmittal of the Outside Offer, the Selling Stockholder shall be deemed to have offered in writing to sell to the Company all, but not less than all, of such Selling Stockholder's interest in the Equity Securities which are proposed to be purchased in the Outside Offer at the price and upon the terms and conditions set forth in the Outside Offer. For a period of thirty (30) days after such deemed offer by the Selling Stockholder to the Company, the Company shall have the option, exercisable by written notice to the Selling Stockholder, to accept the Selling Stockholder's offer, in whole and not in part, as to the Selling Stockholder's interest in the Equity Securities that are the subject of the Outside Offer.

(ii)     If the Company does not exercise its option set forth in the preceding **Section 2.2(b)(i)**, the Selling Stockholder shall be deemed to have offered in writing to sell to WMCP all, but not less than all, of such Selling Stockholder's interest in the Equity Securities which are proposed to be sold in the Outside Offer at the price and upon the terms and conditions set forth in the Outside Offer. For a period of fifteen (15) days after such deemed offer by the Selling Stockholder to WMCP, WMCP shall have the option, exercisable by written notice to the Selling Stockholder, to accept the Selling Stockholder's offer, in whole and not in part, as to the Selling Stockholder's interest in the Equity Securities that are the subject of the Outside Offer.

(c)     Acceptance of the Bona Fide Offer. If, at the end of the option periods described in **Section 2.2(b)** hereof, the option has not been exercised either by the Company or WMCP to purchase all of the Selling Stockholder's interest in the Equity Securities proposed to be purchased in the Outside Offer, the Selling Stockholder shall be free for a period of forty-five (45) days thereafter to Transfer such interest in the Equity Securities proposed to be purchased in the Outside Offer to the Prospective Purchaser at the price and upon the terms and conditions set forth in the Outside Offer. If such Equity Securities are not so transferred within such forty-five (45) day period, the Selling Stockholder shall not be permitted to Transfer such Equity Securities without again complying with this **Section 2.2**.

(d)     Applicability of Restrictions. Notwithstanding anything contained in this Agreement to the contrary, the restrictions on the Transfer of Equity Securities set forth in this **Section 2.2** shall not apply to WMCP or any of its Affiliates and shall not apply with respect to an Exempt Transfer by a Minority Stockholder.

## 3.     Tag-Along Rights; Drag-Along Rights.

3.1     Tag-Along Rights.

(a)     If WMCP at any time proposes to Transfer any interest in Equity Securities (other than in connection with a Transfer that would be covered by (a), (b) or (c) of an Exempt Transfer), then, as a condition precedent thereto, WMCP shall afford the Minority Stockholders the right to participate in such Transfer in accordance with this **Section 3.1**.

(b)     If WMCP wishes to Transfer any interest in the Equity Securities, it shall give written notice to the Minority Stockholders (a "Notice of Transfer") not less than ten (10) nor more than ninety (90) days prior to any proposed Transfer of any such shares. Each such Notice of Transfer shall:

(i)     specify in reasonable detail (A) the number of Equity Securities which WMCP proposes to Transfer, (B) the identity of the proposed transferee or transferees of such Equity Securities, (C) the time within which, the prices at which, and all other terms and conditions upon which, WMCP proposes to Transfer such interest in Equity Securities, and (D) a representation that such proposed transferees have been informed of the tag-along rights provided for in this **Section 3.1**;

(ii)     make explicit reference to this **Section 3.1** and state that the right of the Minority Stockholders to participate in such Transfer under this **Section 3.1** shall expire unless exercised within twenty (20) days after receipt of such Notice of Transfer; and

(iii)     contain an irrevocable offer by WMCP to the Minority Stockholders to participate in the proposed Transfer to the extent provided in **Section 3.1(c)**.

(c)     Each Minority Stockholder shall have the right to participate in the proposed Transfer by Transferring to the proposed transferee or transferees up to the percentage interest in such Minority Stockholder's Equity Securities (of the same class as those to be Transferred by WMCP, other than differences in voting rights) which is equal to the Applicable Percentage (or, if such Minority Stockholders shall elect, any lesser percentage) of the interest in Equity Securities proposed to be transferred by WMCP, at the same prices and on the same economic terms and conditions as are applicable to the proposed Transfer by WMCP (and, if and to the extent such Minority Stockholders shall exercise such right, then the interest in Equity Securities to be sold by WMCP in such transaction shall be correspondingly reduced).

(d)     Each Minority Stockholder must notify WMCP in writing, within twenty (20) days after receipt of the Notice of Transfer, if he, she or it desires to accept such offer and to Transfer any interest in the Securities owned by such Person in accordance with this **Section 3.1**. The failure of a Minority Stockholder to provide such written notice within such twenty (20) day period shall, for the purposes of this **Section 3.1**, be deemed to constitute a waiver by such Person of his, her or its right to sell any of his, her, or its interest in the Equity Securities in connection with the proposed Transfer described in such Notice of Transfer. WMCP will use its commercially reasonable efforts to obtain the agreement of the prospective transferee or transferees to the participation of the Minority Stockholders in such proposed Transfer. The Minority Stockholders shall not be obligated to sell any interest in the Equity Securities pursuant to this **Section 3.1**. Any and all Transfers of Equity Securities by any of the Minority Stockholders pursuant to this **Section 3.1** shall be made concurrently with the Transfer of Equity Securities by WMCP.

(e)     If the Transfer described in any Notice of Transfer is not consummated within ninety (90) days following the date upon which such Notice of Transfer is given or if there is any change in the terms pursuant to which such Transfer is to be consummated, then, prior to consummating such Transfer, WMCP must again comply with the provisions of this **Section 3.1**.

(f)     Notwithstanding anything to the contrary in this **Section 3.1**, if WMCP intends to simultaneously Transfer a combination of Common Stock and/or one or more classes of Equity Securities of the Company or its subsidiaries, then upon the written request of WMCP, the Minority Stockholders may only participate in such Transfer if such Minority Stockholders Transfer a *pro rata* portion of each other class of Equity Securities of the Company or its subsidiaries (with such *pro rata* portion being based upon the number of Equity Securities to be Transferred by all Stockholders in such Transfer).

3.2     Drag-Along Rights.

(a)     Each Minority Stockholder hereby agrees that if at any time at least 60% of the issued and outstanding Preferred Stock (including Preferred Shares held by WMCP and Collett) elects to enter into a transaction which is likely to result in a Sale of the Company to a Person (upon such election, an "Approved Sale"), each Minority Stockholder will vote for, consent to and raise no objections against such Approved Sale, regardless of the consideration (if any) being paid in such Approved Sale, so long as such Approved Sale complies with this **Section 3.2**.  Subject to the provisions of **Section 3.2(b)**, if the Approved Sale is structured (x) as a merger or consolidation, each such Minority Stockholder will waive any dissenters rights, appraisal rights or similar rights in conjunction with such merger or consolidation, (y) as a sale of equity, each such Minority Stockholder will agree to Transfer up to all of such holder's Minority Equity Securities on the terms and conditions approved by WMCP, or (z) as a sale of assets, each such holder will vote in favor of any subsequent liquidation or other distribution of the proceeds therefrom in accordance with the Certificate of Incorporation as approved by WMCP.  The Company and each Minority Stockholder will take all actions requested by WMCP in connection with the consummation of an Approved Sale, including the execution of all agreements, documents and instruments in connection therewith requested of the Company or such holder by WMCP or of such holder by the Company.

(b)     Upon the consummation of the Approved Sale, each Minority Stockholder participating in such Approved Sale will receive the same portion of the aggregate consideration available to be distributed to the Stockholders (in their capacity as such) that such Stockholders participating in such sale (in their capacity as stockholders of the Company) would have received if such aggregate consideration had been distributed by the Company in complete liquidation pursuant to the rights and preferences set forth in the Certificate of Incorporation as in effect immediately before such Approved Sale; provided, however, that in the case of a Stockholder who holds options or warrants exercisable for Common Stock which have not yet been exercised, the consideration received shall be deemed to be reduced (for purposes of such Stockholder's consideration only) by such option's and/or warrant's exercise price.

(c)     Each Minority Stockholder participating in such Approved Sale will be obligated to join on a *pro rata* basis (applied such that after giving effect thereto, the aggregate consideration paid to each holder of Minority Equity Securities would comply with the provisions of **Section 3.2(b)**) in any purchase price adjustments, indemnification or other obligations that the sellers of Minority Equity Securities are requested or required by WMCP or the Company to provide in connection with an Approved Sale.  Notwithstanding anything to the contrary contained herein, in WMCP's sole discretion, all or a portion of the proceeds with respect to an Approved Sale may be withheld from each seller of such Minority Equity Securities for such period of time as WMCP may determine and pending the execution of such documents or posting of such security as WMCP deems necessary or appropriate in its sole discretion to cover any purchase price adjustments, indemnification or other obligations, or other contingent claims or payments of the Company, WMCP, or any seller of Minority Equity Securities.

(d)     Minority Stockholders will bear their *pro rata* share (applied such that after giving effect thereto, the aggregate consideration paid to each holder of Minority Equity Securities would comply with the provisions of **Section 3.2(b)**) of the costs of any sale of such Minority Equity Securities pursuant to an Approved Sale to the extent such costs are incurred for the benefit of all Minority Stockholders participating in such Approved Sale and are not otherwise paid by the Company or the acquiring party.  Costs incurred by holders of Minority Equity Securities on their own behalf will not be considered costs of the transaction hereunder; it being understood that the fees and disbursements of one

7

counsel chosen by WMCP will be deemed for the benefit of all holders of Minority Equity Securities participating in such Approved Sale.

(e)    If any Minority Stockholder fails to deliver any certificates or other documents representing its Minority Equity Securities as required by this **Section 3.2** or **Section 5** below, or fails to deliver in lieu thereof, a customary affidavit (with customary indemnification provisions) attesting to the loss or destruction of such certificate(s), such holder (i) will not be entitled to the consideration that such holder would otherwise receive in the Approved Sale or in a Recapitalization (as defined in **Section 5** below) until such holder cures such failure (provided, that, after curing such failure, such holder will be so entitled to such consideration without interest), (ii) will be deemed, for all purposes, from and after the time at which such certificates were due for presentment, no longer to be a Stockholder of the Company and will have no voting rights, (iii) will not be entitled to any dividends, interest, or other distributions declared after the Approved Sale or Recapitalization with respect to the Minority Equity Securities held by such holder, (iv) will have no other rights or privileges granted to Stockholders under this or any future agreement, and (v) in the event of liquidation of the Company, such holder shall have no right to receive any of the consideration that such holder would have received if such holder had complied with this **Section 3.2** or **Section 5** below.

4.    **Voting and Board Matters; Stockholder Reserved Matters**.

4.1    Board Composition.

(a)    For so long as they hold any of the Equity Securities issued to them by the Company, each Stockholder agrees to vote, or cause to be voted, all shares of Common Stock and Preferred Stock owned by such Stockholder, or over which such Stockholder has voting control, from time to time and at all times, in whatever manner as shall be necessary (i) to ensure that the Company's Board consists of at least four (4) and no more than five (5) directors appointed as set forth in this Section 4 and (ii) in favor of any director designated pursuant to Section 4.1(b) below. The initial Board size shall be set at four (4), all of whom will be elected (or appointed as herein agreed), exclusively and as a separate class, by the Preferred Stockholders. In the event the Board is set at five members, the holders of record of the Preferred Stock and Common Stock (voting as a combined class), shall be entitled to elect one director.

(b)    So long as WMCP holds Preferred Stock, one (1) individual shall be designated by WMCP (the "WMCP Director") and shall be elected to the Board, who shall initially be Brett W. Hogan. So long as AEPH holds Preferred Stock, one (1) individual shall be designated by AEHP (the "AEPH Director") and shall be elected to the Board, who shall initially be Jerod P. Furr. So long as SDB Consulting, LLC and/or Stephen D. Bonner holds Preferred Stock, one (1) individual shall be designated by him (the "Bonner Director") and shall be elected to the Board, who shall initially be Stephen D. Bonner. So long as Collett holds Preferred Stock, one (1) individual shall be designated by him (the "Collett Director") and shall be elected to the Board, who shall initially be John R. Collett.

4.2    Failure to Designate a Board Member. In the absence of any designation from WMCP, AEPH, Bonner or Collett, (as the case may be), the director previously designated by them (or appointed by them) and then serving shall be reelected if still eligible to serve as provided herein.

4.3    Removal of Board Members. WMCP, AEPH, Bonner and Collett may rescind their respective designations and designate another individual at any time by delivering a written notice to the Company setting forth any such rescission and identifying the other individual chosen to fill such position on such Board of Directors (or its election to leave all or any of such positions vacant); promptly upon receipt of such notice, the Stockholders shall cause such prior designee to be removed as

8

a director and such subsequent designee to be elected as a member of any Board of Directors of the Company and each wholly-owned Subsidiary.

4.4    <u>No Liability for Election of Recommended Directors</u>. No Stockholder, nor any Affiliate of any Stockholder, shall have any liability as a result of designating a person for election as a director for any act or omission by such designated person in his or her capacity as a director of the Company, nor shall any Stockholder have any liability as a result of voting for any such designee in accordance with the provisions of this Agreement.

4.5    <u>Further Assurances</u>. All Stockholders agree to execute any written consents required to perform the obligations of this Agreement, and the Company agrees at the request of any party entitled to designate directors to call a special meeting of stockholders for the purpose of electing directors.

4.6    <u>Board Reserved Matters</u>. Except as otherwise provided in this Agreement, the following actions by the Company and any of its subsidiaries shall require approval of the majority of the Board of Directors, with such required approval to (each a "<u>Board Reserved Matter</u>"):

(a)    make or permit any investment in any subsidiary, or to make any loan or advance to or own any stock or other securities of any subsidiary or other corporation, partnership, or other entity, unless in it is wholly owned by the Company;

(b)    adopt an annual budget, or make any material modifications to the annual budget;

(c)    incur any aggregate indebtedness in excess of $250,000 that is not already included in a budget approved by the Board, other than trade credit incurred in the ordinary course of business;

(d)    authorize a Deemed Liquidation Event (as defined in the Certificate of Incorporation);

(e)    authorize a Public Offering or initiate a Sale of the Company;

(f)    deeming a proposed transfer by a Minority Stockholder an "Exempt Transfer";

(g)    enter into any agreement with an Affiliate, or make any payment to or give any guarantee on behalf of an Affiliate that is not on an arm's length basis;

(h)    acquire (whether by purchase, subscription or otherwise) any share of, or enter into any partnership or joint venture agreement or merger with any Person in each case involving payments by the Company and/or any of its subsidiaries in excess of, $250,000;

(i)    hire, terminate, or change the compensation of the executive officers, including approving any option grants or stock awards to executive officers;

(j)    change the principal business of the Company, enter new lines of business, or exit the current line of business, in each case, determined as a whole;

(k)    sell, assign, exclusively license, pledge, or encumber material technology or intellectual property, other than licenses granted in the ordinary course of business;

(l)    approve or adopt a long-term management incentive plan;

(m)     approve any amendment to the Certificate of Incorporation; or

(n)     file any petition or answer by seeking to adjudicate it bankrupt or insolvent or seeking for itself any liquidation, winding up, reorganization, arrangement, adjustment, protection, relief or composition of the Company or its debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, or seeking, consenting to or acquiescing in the entry of an order for relief or the appointment of a receiver, trustee, custodian or other similar official for the Company or for any substantial part of its property liquidate, dissolve or effect a recapitalization or reorganization in any form under Title 11 of the United States Code or under any other applicable bankruptcy, insolvency or similar law.

4.7     <u>Stockholder Reserved Matters</u>. So long as at least 3,000,000 shares of Series A Preferred remain issued and outstanding, in addition to any other vote or approval required under the Certificate of Incorporation or the Company's Bylaws, the Company will not, without the written consent of the holders of at least a 60% of the Series A Preferred, either directly or by amendment, merger, consolidation, or otherwise:

(a) liquidate, dissolve or wind-up the affairs of the Company, or effect any merger or consolidation or any other Deemed Liquidation Event;

(b) amend, alter, or repeal any provision of the Certificate of Incorporation or Bylaws in a manner adverse to the Series A Preferred;

(c) create or authorize the creation of or issue any other security convertible into or exercisable for any equity security, having rights, preferences or privileges senior to the Series A Preferred, or increase the authorized number of shares of Series A Preferred;

(d) purchase or redeem or pay any dividend on any capital stock prior to the Series A Preferred, other than stock repurchased from former employees or consultants in connection with the cessation of their employment/services, at the lower of fair market value or cost or as otherwise approved by the Board; <u>or</u>

(<u>e</u>) increase or decrease the size of the Board below four or greater than five.

**5.     Public Offering**. In the event that the Board approves a Public Offering, then each Minority Stockholder will vote for, consent to and raise no objections against such proposed Public Offering, and will take all such other necessary or desirable actions requested by the Board in connection with the consummation of such Public Offering, including, without limitation, compliance with the requirements of all laws and regulatory bodies which are applicable or which have jurisdiction over such Public Offering and waiving any dissenters' rights, appraisal rights, approval rights or similar rights in connection with such Public Offering, and executing all agreements, documents and instruments in connection therewith in the form presented by the Board. Without limiting the foregoing, in the event that such Public Offering is an underwritten offering and the managing underwriters advise the Company in writing that in their opinion the Company's capital structure would adversely affect the marketability of the offering, each Minority Stockholder will consent to and vote for a recapitalization, merger, reorganization or exchange (each, a "<u>Recapitalization</u>") of any class of Minority Equity Securities into Equity Securities that the managing underwriters and the Board reasonably find acceptable and desirable in order to permit such offering to proceed and will take all necessary and desirable actions in connection with the consummation of such Recapitalization, including executing all agreements, documents and instruments in connection therewith in the form presented by the Board; <u>provided</u> that any resulting Equity Securities (which may be only one class of Equity Securities) will take into account the rights and

preferences of each class of Equity Securities under the Certificate of Incorporation as if a liquidation had occurred, including, without limitation, any accrued and unpaid dividends owed to any holder of Equity Securities. Nothing contained in this **Section 5** will be deemed to amend, modify or limit in any way the restrictions on the issuance of Equity Securities set forth in any agreement to which the Company is a party to or by which it is bound. The provisions of **Section 3.2(f)** shall apply to any Recapitalization as set forth therein.

6.      **Pre-Emptive Rights**.  The Company agrees that the Preferred Stockholders shall have the right to subscribe for any new issuance of Equity Securities now or hereafter authorized which the Company proposes to issue or sell ("New Securities") other than Excluded Securities. Such right shall be exercisable by each Preferred Stockholder for an aggregate amount of New Securities up to the product of (a) the amount of such New Securities to be issued multiplied by (b) a fraction, the numerator of which shall equal the number of Preferred Shares then held by the respective Preferred Stockholder, and the denominator of which shall equal the aggregate number of Preferred Shares then outstanding (each participating Preferred Stockholder's "Preemptive Share"). This **Section 6** shall not apply to the issuance of Excluded Securities. The Company shall give each Preferred Stockholder prompt written notice of its intention to issue or sell any New Securities. In order to exercise its purchase rights under this **Section 6**, a Preferred Stockholder must deliver a written notice to the Company within thirty (30) days after receipt of such notice from the Company evidencing its election to purchase. Promptly after the expiration of such thirty (30) day period, the Company shall give written notice to each Preferred Stockholder electing to purchase the New Securities specifying the number of New Securities that were not elected to be purchased by the Preferred Stockholders under this **Section 6** (the "Remaining Securities"), if any. Each participating Preferred Stockholder electing to purchase its full Preemptive Share of the New Securities shall have a right of reallotment such that it may elect to purchase all (or any portion of) such participating Preferred Stockholder's pro rata share (based on the number of Preferred Shares then owned by those Preferred Stockholders who have elected to purchase their full Preemptive Share of the New Securities) of the Remaining Securities. Each Preferred Stockholder exercising its reallotment right shall do so by giving written notice to the Company within fifteen (15) days after receiving such notice from the Company (the "Final Period"). Subject to compliance with the foregoing terms of this Section 6, the Company shall be entitled to sell any New Securities which the Preferred Stockholders have not elected to purchase pursuant to this **Section 6** during the ninety (90) days following the expiration of such thirty (30) day period or the Final Period, if applicable, on terms and conditions no more favorable to the purchasers thereof than those offered to the Preferred Stockholders. Any New Securities sought to be offered or sold by the Company to any Person after such ninety (90) day period must be reoffered to the Preferred Stockholders pursuant to the terms of this **Section 6**.

7.      **Confidentiality**.

7.1      Each Stockholder undertakes to keep, and shall procure that its representatives, including with respect to the Preferred Stockholders each director appointed by it under **Section 4.1**, the Confidential Information confidential and not disclose it to any Person, other than as permitted under this **Section 7.1**. This **Section 7.1** shall not apply to the disclosure of Confidential Information if and to the extent:

(a)      required by any law or by regulation of any country with jurisdiction over the affairs of the Receiving Party or Company (or any Subsidiary of it);

(b)      required by the rules of any securities exchange on which securities of the Receiving Party are listed;

(c)      required by any court of competent jurisdiction or any competent judicial,

governmental, supervisory or regulatory body; or

        (d)    that such information is in the public domain other than through breach of this clause,

provided that in the case of <u>Sections 7.1(a)</u>, <u>7.1(b)</u> and <u>7.1(c)</u>, the Receiving Party will, to the extent reasonably practicable and permitted by such law or body, promptly notify the Disclosing Party or the Company, as applicable, and cooperate with the Disclosing Party or the Company, as applicable, regarding the timing and content of such disclosure and any action which the Disclosing Party or the Company, as applicable, may reasonably wish to take to challenge the validity of such requirement.

    7.2    The Company authorizes the Stockholders to consult fully together regarding the business affairs and financial position of the Company and to disclose Confidential Information relating to the same: (a) to each other; and (b) to a Stockholder's lenders, bankers, auditors, legal counsel and other authorized advisors who are informed of the confidential nature of the information and agree to maintain its confidentiality in accordance with this <u>Section 7</u>.

**8.**    **Legends.**  So long as any Equity Securities are subject to the provisions of this Agreement, all certificates or instruments representing any such Equity Securities shall bear a legend in substantially the following form:

    THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF ANY STATE, AND MAY NOT BE SOLD, TRANSFERRED, PLEDGED, HYPOTHECATED OR OTHERWISE DISPOSED OF EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER SUCH ACT AND APPLICABLE STATE SECURITIES LAWS OR PURSUANT TO AN APPLICABLE EXEMPTION TO THE REGISTRATION REQUIREMENTS OF SUCH ACT AND SUCH LAWS.

    THE TRANSFER OF THE SECURITIES REPRESENTED BY THIS CERTIFICATE IS SUBJECT TO THE CONDITIONS SPECIFIED IN THE SECOND AMENDED & RESTATED STOCKHOLDERS' AGREEMENT, DATED AS OF MAY 16, 2024 AS THEREAFTER MAY BE AMENDED AND MODIFIED FROM TIME TO TIME, GOVERNING THE ISSUER HEREOF, AND BY AND AMONG CERTAIN STOCKHOLDERS (THE "STOCKHOLDERS' AGREEMENT"). THE SECURITIES REPRESENTED BY THIS CERTIFICATE MAY ALSO BE SUBJECT TO ADDITIONAL TRANSFER RESTRICTIONS, CERTAIN VESTING PROVISIONS, REPURCHASE OPTIONS, OFFSET RIGHTS AND FORFEITURE PROVISIONS SET FORTH IN THE STOCKHOLDERS' AGREEMENT AND/OR A SEPARATE AGREEMENT WITH THE INITIAL HOLDER. A COPY OF SUCH CONDITIONS, REPURCHASE OPTIONS AND FORFEITURE PROVISIONS SHALL BE FURNISHED BY THE ISSUER TO THE HOLDER HEREOF UPON WRITTEN REQUEST AND WITHOUT CHARGE.

**9.**    **Termination of this Agreement**.  This Agreement shall automatically terminate on the earlier to occur of (a) the date on which WMCP and Collett and their Affiliates no longer own or control at least ten percent (10%) of the Equity Securities on a fully-diluted basis; (b) a Deemed Liquidation Event (as defined in the Certificate of Incorporation) and (c) the completion of a Public Offering. Notwithstanding anything to the contrary in this Agreement, from and after the time that is immediately prior to the effectiveness of a Securities Act registration statement relating to a Public Offering, WMCP shall have

the right, in its sole discretion, to terminate all or any portion of this Agreement and, following such a termination, the provisions so terminated shall no longer have any force or effect.

**10.** **Notices**. Any notice required or permitted by this Agreement shall be in writing and shall be deemed sufficient when delivered (i) personally, (ii) by overnight courier, (iii) sent by email or fax (upon customary confirmation of receipt), or (iv) forty-eight (48) hours after being deposited in the U.S. mail as certified or registered mail with postage prepaid, addressed to the party to be notified at such party's address, email or fax number as set forth on **Schedule A** attached hereto, as subsequently modified by written notice to the Company.

**11.** **Successors and Assigns**. This Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective heirs, executors, permitted successors and permitted assigns, who, upon acceptance thereof, shall, without further action, be (a) entitled to enforce the applicable provisions and enjoy the applicable benefits hereof and (b) bound by the terms and conditions hereof.

**12.** **Amendment and Waiver**. Except as otherwise provided herein, no modification, amendment, or waiver of any provision of this Agreement will be effective unless such modification, amendment, or waiver is approved in writing by the Company and shareholder(s) holding at least 60% of the issued and outstanding Equity Securities (including all shares held by WMCP and Collett); provided, that in the event that such modification, amendment or waiver would materially and adversely affect a holder or group of holders of Minority Equity Securities in a manner substantially different than any other holders of Minority Equity Securities, then such modification, amendment or waiver will require the consent of such holder or group of holders of Minority Equity Securities, as applicable, materially and adversely affected. Notwithstanding anything herein to the contrary, the execution of a joinder hereto shall not be considered a modification, amendment or waiver of any of the provisions of this Agreement. The failure of any party to enforce any of the provisions of this Agreement will in no way be construed as a waiver of such provisions and will not affect the right of such party thereafter to enforce each and every provision of this Agreement in accordance with its terms.

**13.** **Remedies**. Any Person having rights under any provision of this Agreement shall be entitled to enforce their rights under this Agreement specifically to recover damages by reason of any breach of any provision of this Agreement and to exercise all other rights existing in their favor; provided, however, the parties hereto stipulate that the remedies at law of any party hereto in the event of any default or threatened default by any other party hereto in the performance of or compliance with the terms hereof are not and will not be adequate and that, to the fullest extent permitted by law, such terms may be specifically enforced (without posting a bond or other security) by a decree for the specific performance thereof, whether by an injunction against violation thereof or otherwise.

**14.** **Governing Law; Jurisdiction; Waiver of Jury Trial**. This Agreement shall be governed by and construed in accordance with the domestic laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the substantive laws of any jurisdiction other than the State of Delaware. Each party hereto submits to the jurisdiction of any state or federal court sitting in the State of Delaware, in any action or proceeding arising out of or relating to this Agreement and agrees that all claims in respect of the action or proceeding may be heard and determined in any such court. Each party also agrees not to bring any action or proceeding arising out of or relating to this Agreement in any other court. Each party hereto waives any defense of inconvenient forum to the maintenance of any action or proceeding so brought and waives any bond, surety, or other security that might be required of any other party with respect thereto. Any party may make service on any other party by sending or delivering a copy of the process to the party to be served at the address and in the manner provided for the giving of

notices in **Section 10** above. Each party agrees that a final judgment in any action or proceeding so brought shall be conclusive and may be enforced by suit on the judgment or in any other manner provided by law or at equity. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY LITIGATION, ACTION, PROCEEDING, CROSS-CLAIM, OR COUNTERCLAIM IN ANY COURT (WHETHER BASED ON CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF, RELATING TO OR IN CONNECTION WITH (i) THIS AGREEMENT OR THE VALIDITY, PERFORMANCE, INTERPRETATION, COLLECTION OR ENFORCEMENT HEREOF OR (ii) THE ACTIONS OF SUCH PARTY IN THE NEGOTIATION, AUTHORIZATION, EXECUTION, DELIVERY, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT HEREOF.

15.    **Severability**. Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal, or unenforceable in any respect under any applicable law or rule in any jurisdiction, such invalidity, illegality, or unenforceability will not affect any other provision or any other jurisdiction, but this Agreement will be reformed, construed, and enforced in such jurisdiction as if such invalid, illegal, or unenforceable provision had never been contained herein.

16.    **Entire Agreement**. This Agreement amends and restates in its entirety the Prior SHA. Except as otherwise expressly set forth herein, this Agreement, those documents expressly referred to herein, and the other documents of even date herewith embody the complete agreement and understanding among the parties and supersede and preempt any prior understandings, agreements (including the Prior SHA), or representations by or among the parties, written or oral, which may have related to the subject matter hereof in any way.

17.    **Counterparts**. This Agreement may be executed in separate counterparts each of which will be an original and all of which taken together shall constitute one and the same agreement. Any counterpart may be executed by facsimile signature and such facsimile signature shall be deemed an original.

18.    **Further Assurances**. The parties shall execute and deliver all documents, provide all information, and take or refrain from taking such actions as may be reasonably necessary or appropriate to achieve the purposes of this Agreement.

19.    **Stock Certificates**. In order to facilitate the Transfers contemplated by this Agreement, until the occurrence of a Sale of the Company, all certificates or other documents evidencing Minority Equity Securities owned by any Minority Stockholder shall be held by the Company for the benefit of such Minority Stockholder unless otherwise permitted by the Board of Directors.

20.    **Descriptive Headings**. The descriptive headings of this Agreement are inserted for convenience only and do not constitute a part of this Agreement.

21.    **Construction**. The construction of this Agreement shall not take into consideration the party who drafted or whose representative drafted any portion of this Agreement, and no canon of construction shall be applied that resolves ambiguities against the drafter of a document.

22.    **Actions**. For avoidance of doubt, except as specifically provided hereunder, each of WMCP, the Minority Stockholders, the Company, and the Board shall be permitted to take any action not in violation of the Certificate of Incorporation, the Company's by-laws or the laws of the State of Delaware generally regardless of whether such action is or could be deemed to be adverse to any other party hereto; it being

the intention of the parties only to limit their rights as specifically agreed to hereunder or set forth in the Certificate of Incorporation, the Company's by-laws or the laws of the State of Delaware generally.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF**, the parties hereto have executed this Second Amended & Restated Stockholders' Agreement on the day and year first above written.

**ISODRILL, INC.**

By: _____
Name:   James A. Knight
Title:    Chief Financial & Legal Officer

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

### STOCKHOLDER

SDB Consulting LLC (Stephen D. Bonner)

*(Print name of individual or entity in which Preferred Shares shall be held)*

By: _____

Name:   Stephen D. Bonner

Title (*if applicable*): Authorized Person

Dated:   May 16, 2024

Address: 3522 Amphora Circle, Sugar Land, TX 77479

E-mail:   bonner.stephen@gmail.com

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

## STOCKHOLDER

BRYSS, INC.
*(Print name of individual or entity in which Preferred Shares shall be held)*


By:
Name:  Saad Bargach
Title (*if applicable*): Authorized Person

Dated:  May 16, 2024

Address: 246 Blalock Drive, Houston, TX 77024


E-mail:  sb@bargachcorp.com

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

### STOCKHOLDER

WM Capital Partners, L.P.
_____
*(Print name of individual or entity in which Preferred Shares shall be held)*

*By: WM Capital GP, LLC, its general partner*

By:    ⟨signature⟩
_____
Name:   William N. Mathis
Title (*if applicable*): Managing Member

Dated:   May 16, 2024
_____

Address: 919 Milam, Suite 1900, Houston, TX 77002

E-mail:   wnm@wnmathis.com

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

### STOCKHOLDER

John R. Collett
_____
*(Print name of individual or entity in which Preferred Shares shall be held)*

By: _____
Name:   John R. Collett
Title (*if applicable*): N/A

Dated:   May 16, 2024
_____

Address: 19 History Row, The Woodlands, TX 77380

E-mail:   collett@optonline.net

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

### STOCKHOLDER

David M. Smoot
_____
*(Print name of individual or entity in which Preferred Shares shall be held)*

By: _____

Name:  David M. Smoot

Title (*if applicable*): N/A

Dated:  May 16, 2024
_____

Address: 409 Ramblewood Drive, Raleigh, NC  27609

E-mail:  david.smootiv@gmail.com

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

## STOCKHOLDER

Aqua Rock Investments, LLC
*(Print name of individual or entity in which Preferred Shares shall be held)*

By: _____

Name:   Richard P. Knight

Title (*if applicable*): Manager

Dated:   May 16, 2024

Address: 5210 West Verde Circle, Benbrook, TX 76126

E-mail: rick@aquarockinvestments.com

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

## STOCKHOLDER

EN Investors, L.P.

*(Print name of individual or entity in which Preferred Shares shall be held)*

*By: EN Investors GP, LLC, its general partner*

By:

Name:   Thomas R. Nelson

Title (*if applicable*): Manager

Dated: May 16, 2024

Address: 221 West Sixth St., Suite 900, Austin, TX 78746

E-mail:   tnelson@egannelson.com

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

### STOCKHOLDER

Brett W. Hogan
_____
*(Print name of individual or entity in which Preferred Shares shall be held)*

By: _____

Name:  Brett W. Hogan

Title (*if applicable*): N/A

Dated:  May 16, 2024
_____

Address: 919 Milam St., Suite 1900, Houston, TX 77002

E-mail:  bhogan@contistreetpartners.com

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

### STOCKHOLDER

Kevin W. Green

*(Print name of individual or entity in which Preferred Shares shall be held)*

By: _____

Name:  Kevin W. Green

Title (*if applicable*): N/A

Dated:  May 16, 2024

Address: 21406 Delta Spring Lane, Katy, TX 77450

E-mail:  green@invictusenergy.net

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

## STOCKHOLDER

_____

*(Print name of individual or entity in which Preferred Shares shall be held)*

By: _____ , POA

Name:  Raymond V. Nold III  , power of Attorney

Title (*if applicable*): N/A

Dated:  May 16, 2024 _____

Address: 1603 Meyer Road, Beasley, Texas 77917

E-mail:

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

### STOCKHOLDER

_____
*(Print name of individual or entity in which Preferred Shares shall be held)*

By: _____

Name:  Raymond V. Nold IV

Title (*if applicable*): N/A

Dated:  May 16, 2024

Address: 9615 Meadowvale Drive, Houston, TX 77063

E-mail:

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

**STOCKHOLDER**

_(Print name of individual or entity in which Preferred Shares shall be held)_

By: _John D. Burns, POA_

Name:   Sofia Davydycheva

Title (_if applicable_): N/A

Dated:   May 16, 2024

Address: ~~1807 Webster Street, Houston, TX 77019~~
1219 Spinnaker Way, Sugar Land, TX. 77498

E-mail:

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

**STOCKHOLDER**

_____

*(Print name of individual or entity in which Preferred Shares shall be held)*

By: _____

Name:   Madhusudhan Nagula

Title (*if applicable*): N/A

Dated:   May 16, 2024 _____

Address: 15015 West Airport Blvd., Sugar Land, TX 77498

E-mail:

**IN WITNESS WHEREOF**, the parties hereto have executed this Second Amended & Restated Stockholders' Agreement on the day and year first above written.

<u>**STOCKHOLDER**</u>

AE Partners Holdings, Inc.
*(Print name of individual or entity in which Preferred Shares shall be held)*

By: _____

Name:   Jerod P. Furr

Title (*if applicable*): President

Dated:  May 16, 2024

Address: 20008 Champion Forest Drive, Suite 1203, Spring, TX 77379

E-mail:   jerod.furr@alliance-energy.org

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

## STOCKHOLDER

_____

*(Print name of individual or entity in which Preferred Shares shall be held)*

By: _____

Name:   James A. Knight

Title (*if applicable*): N/A

Dated:   May 16, 2024 _____

Address: 3805 West Alabama St., Apartment 8306, Houston, TX 77027

E-mail:

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

## STOCKHOLDER

_(Print name of individual or entity in which Preferred Shares shall be held)_

By: _____

Name:   Regina M. Fuller

Title (_if applicable_): N/A

Dated:   May 16, 2024 _____

Address: 5303 Silverbelle Lane, Richmond, Texas 77406

E-mail:

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

**<u>STOCKHOLDER</u>**

_____

*(Print name of individual or entity in which Preferred Shares shall be held)*

By: _____

Name:   Jerod P. Furr

Title (*if applicable*): N/A

Dated:   May 16, 2024

Address: 20008 Champion Forest Drive, Suite 1203, Spring, Texas  77379

E-mail:  jerod.furr@alliance-energy.org

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

### STOCKHOLDER

_____

*(Print name of individual or entity in which Preferred Shares shall be held)*

By: _____ BY POA

Name: Harry M. Pierce        *Jerod P. Furr, power of*
                             *attorney*

Title (*if applicable*): N/A

Dated: May 16, 2024 _____

Address: 1041 Cambridge Court, Oklahoma City, OK 73160

E-mail:

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

### STOCKHOLDER

_____

*(Print name of individual or entity in which Preferred Shares shall be held)*

By: _____ By POA

Name:  Dustin T.W. Etter   Jerod P. Furr, Power of attorney

Title (*if applicable*): N/A

Dated:   May 16, 2024

Address: 141 Country Road 439, Lindsay, TX 76250

E-mail:

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

## STOCKHOLDER

Dos Flechas, L.P.

*(Print name of individual or entity in which Preferred Shares shall be held)*

By: _____

Name:  Fritz-Alan, Korth, Jr.

Title (*if applicable*): Authorized Person

Dated:  May 16, 2024

Address: P.O. Box 50499, Austin, Texas 78763

E-mail:  chico@fkoltd.com

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

## STOCKHOLDER

Renwar Berzinji
*(Print name of individual or entity in which Preferred Shares shall be held)*

By: _____

Name:  Renwar Berzinji
Title *(if applicable)*:

Dated:  May 16, 2024

Address: Barsha 3, Street 22A, Villa 18. Dubai, U.A.E.

E-mail:  rberzinji@tenaris.com

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

**STOCKHOLDER**

Charles Floe
_____
*(Print name of individual or entity in which Preferred Shares shall be held)*

By: _____

Name:   Charles Floe

Title (*if applicable*): _____

Dated:  May 16, 2024
_____

Address: 1 Warrington Gardens, Flat 18, London, W9 2QB, U.K.

E-mail:  chadfloe@gmail.com

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

### STOCKHOLDER

Abdou Djendou
_____
*(Print name of individual or entity in which Preferred Shares shall be held)*

By: _____

Name:  Abdou Djendou

Title (*if applicable*): N/A

Dated:  May 16, 2024
_____

Address: Villa 66, Street 9, Meadows 1, Dubai, U.A.E.

E-mail:  adjendou@gmail.com

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

### STOCKHOLDER

Suneet K. Agarwal and Martha Agarwal
*(Print name of individual or entity in which Preferred Shares shall be held)*

By: _____

Name:  Suneet K. Agarwal and Martha Agarwal

Title (*if applicable*):

Dated:  May 16, 2024

Address: 11818 Bayhurst Dr., Houston, Texas 77024

E-mail: skrisagarwal@gmail.com

IN WITNESS WHEREOF, the parties have executed this Second Amended and Restated Stockholders' Agreement on the day, month and year first set forth above.

### STOCKHOLDER

Gary R. King
*(Print name of individual or entity in which Preferred Shares shall be held)*

By: _____

Name:   Gary R. King

Title (*if applicable*): N/A

Dated:   May 16, 2024

Address: Saadiyat Beach Villas 7, Villa 7, 32A Lane, Abu Dhabi, U.A.E.

E-mail:  gary.king@ice.com

**SCHEDULE A**

*List of Isodrill, Inc. Stockholders – May16, 2024*

| Stockholder | Common Shares | Preferred Shares |
|---|---|---|
| **AE Partners Holdings, Inc.**<br>20008 Champion Forest Drive<br>Suite 1203<br>Spring, TX 77379<br>Email:<br>jerod.furr@alliance-energy.org | 0 | 1,550,000 |
| **SDB Consulting LLC (Stephen D. Bonner)**<br>3522 Amphora Circle<br>Sugar Land, TX 77479<br>Email:bonner.stephen@gmail.com | 843,733 | 650,000 |
| **BRYSS, Inc. (Saad Bargach)**<br>246 Blalock Road<br>Houston, TX 77024<br>Email: sb@bargachcorp.com | 688,367 | 250,000 |
| **WM Capital Partners, L.P.**<br>919 Milam St., Suite 1900<br>Houston, TX 77002<br>Email: wnm@wnmathis.com | 0 | 2,264,606 |
| **John R. Collett**<br>19 History Row<br>The Woodlands, TX 77380<br>Email: collett@optonline.net | 0 | 900,843 |
| **David M. Smoot**<br>409 Ramblewood Drive<br>Raleigh, NC 27609<br>Email: david.smootiv@gmail.com | 0 | 377,128 |
| **Aqua Rock Investments, LLC**<br>5210 West Verde Circle<br>Benbrook, Texas 76126<br>Email:<br>rick@aquarockinvestments.com | 0 | 272,753 |
| **EN Capital Partners, LLC**<br>221 West Sixth St., Suite 900,<br>Austin, TX 78746<br>Email: tnelson@egannelson.com | 0 | 272,753 |

| Stockholder | Common Shares | Preferred Shares |
|---|---|---|
| **Brett W. Hogan**<br>919 Milam St.<br>Suite 1900<br>Houston, TX 77002<br>Email:<br>bhogan@contistreetpartners.com | 0 | 123,876 |
| **Kevin W. Green**<br>21406 Delta Spring Lane<br>Katy, TX 77450<br>Email: green@invictusenergy.net | 0 | 74,057 |
| **Raymond V. Nold III**<br>1603 Meyer Road<br>Beasley, TX 77917<br>Email: | 25,000 | 0 |
| **Raymond Nold IV**<br>9615 Meodowvale Drive<br>Houston, Texas 77063<br>Email: | 25,000 | 0 |
| **Sofia Davydycheva**<br>1219 Spinnaker Way<br>Sugar Land, Texas 77498<br>Email: | 10,000 | 0 |
| **Madhusudhan Nagula**<br>15015 West Airport Blvd.<br>Apt 1028, Sugar Land, TX 77498<br>Email: | 4,000 | 0 |
| **James A. Knight**<br>3805 West Alabama St., No 8306<br>Houston, Texas 77027<br>Email: jaknight51@gmail.com | 550,500 | 0 |
| **Regina M. Fuller**<br>5303 Silverbelle Lane<br>Richmond, Texas 77406<br>Email: | 1,000 | 0 |
| **Jerod P. Furr**<br>9823 Friesian Estates Drive<br>Spring, Texas 77379<br>Email:<br>jerod.furr@alliance-energy.org | 40,000 | 0 |
| **Dustin T.W. Etter**<br>141 Country Road 439<br>Lindsay, Texas 76250<br>Email: | 1,000 | 0 |
| **Harry M. Pierce**<br>1041 Cambridge Court<br>Oklahoma City, OK 73160<br>Email: | 1,000 | 0 |

| Stockholder | Common Shares | Preferred Shares |
|---|---|---|
| **Dos Flechas** <br> P.O. Box 50499 <br> Austin, Texas 78763 <br> Email: <br> chico@fkoltd.com | 0 | 150,000 |
| **Renwar Berzinji** <br> Barsha 3, Street 22A, Villa 18 <br> Dubai, U.A.E. <br><br> Email: rberzinji@tenaris.com | 0 | 75,000 |
| **Charles Floe** <br> 1 Warrington Gardens, Flat 18 <br> London, W9 2QB, U.K. <br><br> Email:  chadfloe@gmail.com | 0 | 50,000 |
| **Abdou Djendou** <br> Villa 66, Street 9, Meadows 1 <br> Dubai, U.A.E. <br><br> Email: adjendou@gmail.com | 0 | 50,000 |
| **Suneet K. Agarwal and Martha Agarwal** <br> 11818 Bayhurst Dr. <br> Houston, Texas 77024 <br> Email: <br> skrisagrawal@gmail.com | 0 | 30,000 |
| **Gary R. King** <br> Saadiyat Beach Villas, Villa 7 <br> 32A Lane, Abu Dhabi, U.A.E <br> Email: <br> gary.king@ice.com | 0 | 20,000 |
| **TOTAL:** | **2,189,600** | **7,111,016** |