| | |
|---|---|
| **From:** | Heather McIntyre |
| **To:** | Leonard Simon |
| **Cc:** | Deborah Crain; Hotze, William |
| **Subject:** | RE: Proposal to Resolve Mediation Settlement Agreement Outstanding Issues |
| **Date:** | Tuesday, January 6, 2026 2:25:20 PM |
| **Attachments:** | image006.png |
| | image010.png |
| | image011.png |

Hello Leonard,

Mr. Etter does not agree to these terms.   Mr. Etter would agree to Mr. Furr abandoning any claim or interest he has to the Isodrill investment for $35K cash per the emailed offer of Ms. Crain with AEPH keeping the Isodrill investment.  Absent that, mediation is required.

Please advise by noon tomorrow if Mr. Furr will accept $35K to abandon any interest in the Isodrill investment.  If I do not receive an affirmative response with no additional terms or caveats, then I will email Judge Isgur, copying this group, that further mediation is required per the MSA.

Best,
Heather



**Heather Heath McIntyre**
Of Counsel

hwa.com profile v-card

T: 713-590-4200 | Direct: 713-590-4211 | F: 713-590-4230 | E: hmcintyre@hwa.com
1201 Louisiana St., 28 th Fl. Houston, TX 77002

**From:** Leonard Simon <LSimon@pendergraftsimon.com>
**Sent:** Monday, January 5, 2026 4:56 PM
**To:** Heather McIntyre <HMcIntyre@hwa.com>
**Cc:** Deborah Crain <dcrain@e-merger.law>; Hotze, William <whotze@dykema.com>
**Subject:** Proposal to Resolve Mediation Settlement Agreement Outstanding Issues

# The following is a proposal Jared Furr would agree to and would undertake to have Isodrill approve. At a closing und the Confirmed Plan, the following will occur:

1. **Etter get $65,000 that he can keep.**
2. **Trustee transfers to Furr $110,000, as consideration for the transfer of the Isodrill stock to the Trustee.**
3. **Trustee transfers Isodrill stock to a a Texas Limited Partnership**

**("LP") in exchange for Furr Payment of $35,000 Trustee. Ownership of LP is as follows: 49% of LP interest is owned by Etter or an entity owned by Etter; 50% of the LP interest is owned by Furr, or an entity owned by Furr; and 1% is owned by a general partner ("GP"), a Texas Limited Liability Company as to which Jared Furr is the sole member and manager. GP has sole right to manage and control the LP.**

4. **Etter and Furr exchange mutual releases.**
5. **Isodrill will agrees to waive its right of first refusal and approves the transaction.**

**If this is acceptable, Jared will attempt to get Isodrill to approve the transaction. Jared has been consulting with Isodrill on the development of the downhole technology, and thinks he can persuade Isodrill to approve this transaction.**

Very truly yours,

Leonard H. Simon



Leonard H. Simon
Partner
Pendergraft & Simon, L.L.P.
2777 Allen Parkway, Suite 800
Houston, TX 77019

Main Phone:(713) 528-8555
Direct Line (713) 737-8207
Cell Phone:  (713) 253-2810
Direct Fax:  (832) 202-2810
E-mail: lsimon@pendergraftsimon.com
Web site: www.pendergraftsimon.com





THIS EMAIL TRANSMISSION (AND/OR THE DOCUMENTS ACCOMPANYING IT) MAY CONTAIN CONFIDENTIAL INFORMATION BELONGING TO THE SENDER WHICH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS INFORMATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AT 713-528-8555 TO ARRANGE FOR RETURN OF THE DOCUMENT.

**From:** Leonard Simon
**Sent:** Monday, January 5, 2026 12:22 PM
**To:** Heather McIntyre <hmcintyre@hwa.com>
**Subject:** RE: Alliance - Decision on Mediated Settlement Agreement and Confirmation Notices

**I have spoken to my client about an approach which may avoid a second mediation. I do not have authority yet to make a formal proposal, I passed it in front of Jerod, and seemed like it and said that he would run it up the flagpole with Isodrill.**

**Please call me when you get a moment. I wanted to discuss the broad contours of the proposal to see whether it is something your client might entertain.**

Very truly yours,

Leonard H. Simon



Leonard H. Simon
Partner
Pendergraft & Simon, L.L.P.
2777 Allen Parkway, Suite 800
Houston, TX 77019

Main Phone:(713) 528-8555
Direct Line (713) 737-8207
Cell Phone:  (713) 253-2810

Direct Fax:  (832) 202-2810

E-mail: lsimon@pendergraftsimon.com

Web site: www.pendergraftsimon.com




THIS EMAIL TRANSMISSION (AND/OR THE DOCUMENTS ACCOMPANYING IT) MAY CONTAIN CONFIDENTIAL INFORMATION BELONGING TO THE SENDER WHICH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS INFORMATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AT 713-528-8555 TO ARRANGE FOR RETURN OF THE DOCUMENT.

**From:** Hotze, William <WHotze@dykema.com>
**Sent:** Monday, January 5, 2026 9:26 AM
**To:** Noah Meek <nmeek@irelanlaw.com>; Heather McIntyre <hmcintyre@hwa.com>; Deborah Crain <dcrain@e-merger.law>; Leonard Simon <LSimon@pendergraftsimon.com>; Eric Terry <eric@howley-law.com>; Tom Howley <tom@howley-law.com>; sfrizzell@e-merger.law
**Subject:** RE: Alliance - Decision on Mediated Settlement Agreement and Confirmation Notices

Following up on this. I believe Furr's counsel indicated a willingness to proceed with option 2 below but Etter's counsel wanted to propose some other options. Can Heather or Noah give us an update on that? I'd like to understand if we are at an impasse or not.

**William J. Hotze**
Member

D 713-904-6959 ▪ F 855-227-4720
WHotze@dykema.com ▪ dykema.com

**BIO   VCARD   LINKEDIN**

5 Houston Center 1401 McKinney Street, Suite 1625
Houston, Texas 77010

*** Notice from Dykema Gossett PLLC: This Internet message may contain information that is privileged, confidential, and exempt from disclosure. It is intended for use only by the person to whom it is addressed. If you have received this in error, please (1) do not forward or use this information in any way; and (2) contact me immediately.

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

**From:** Hotze, William
**Sent:** Sunday, December 28, 2025 5:12 PM
**To:** Noah Meek <nmeek@irelanlaw.com>; Heather McIntyre <hmcintyre@hwa.com>; Deborah Crain <dcrain@e-merger.law>; Leonard Simon <lsimon@pendergraftsimon.com>; Eric Terry <eric@howley-law.com>; Tom Howley <tom@howley-law.com>; sfrizzell@e-merger.law
**Subject:** Alliance - Decision on Mediated Settlement Agreement and Confirmation Notices
**Importance:** High

All,

In light of the communication from Isodrill's lawyer, we collectively need to decide what our next steps are. The important thing to keep in mind is that we have to send out the notices this week if we want to keep the confirmation hearing that the Court set at the hearing last week. So, if we're going to come to an agreement that doesn't bump that, we need to do so in the next 2 days, so I have sufficient time to get the notices sent out.

Isodrill is exercising its contractual right of first refusal. I've done some preliminary research, and it appears that in a closely held company like this, section 541 of the Bankruptcy Code would not serve as a mechanism to force them to give up that ROFR. Because of this, Paragraph 10 of the mediated settlement agreement cannot be consummated. This leaves us with two options: (1) the Etter/Furr parties could increase there offer for the shares of Isodrill to a point where Isodrill was unwilling to exercise its ROFR, or (2) we let Isodrill exercise its ROFR at $100k (or some high price after attempting option (1)).

If there is an appetite by the Furr and/or Etter parties to pursue option (1), let me know. Until I get some input from those parties that this is of interest, I'm not going to explore how that plays out.

With regards to option (2), that leaves us with a decision. As contemplated in the mediated settlement agreement, the Etter/Furr parties would receive $268,000 of the $1,500,000 in cash held by the Debtors' estates. Those parties would then pay $100,000 of that back to the Debtors' estates in exchange for the Isodrill shares. This results in a net of $168,000 to the Etter/Furr parties in cash.

If we go with option (2), instead of the Furr/Etter parties paying the Debtors' estates $100,000 for the Isodrill shares, Isodrill is paying the $100,000. This would result in the same economic net $168,000 in cash to the Etter/Furr parties. The only different is that the Furr/Etter parties would not receive the Isodrill shares. If this is acceptable, please confirm. I can get the notices sent out this week and we can proceed to confirmation.

If the Etter and/or Furr parties do not want to proceed this way, then we need to come to a quick decision on whether there is a deal acceptable to all the parties. The only way that the economics of the Furr/Etter parties receiving net $168,000 in cash worked was through a voluntary reduction in chapter 11 admin expense fees. This voluntary reduction pushed the bounds of what the chapter 11 professionals were willing to do. If the Etter/Furr parties insist they should receive the $100,000, or any portion thereof, in lieu of the shares, that likely puts an additional $100,000 burden on the chapter 11 professionals that is, quite frankly, untenable.

I do not know how much the Isodrill shares really matter to the Furr/Etter parties, but I would encourage everyone to consider the additional legal expenses and the amount of time it would take to go back to mediation and try to come to a new deal. I don't speak for the Chapter 11 Trustee or his counsel, but I can tell you that the Committee's appetite to have a net payment of more than $168,000 to the Debtors' prepetition insiders is slim to none. At that point, it may make more economic sense for the Committee to pursue the initial Plan or some other course of action that would be better for the Debtors' unsecured creditors.

Please think this over and respond (either to everyone, to each other, and/or to me individually) so we can come to a quick determination on whether we are sending out the notices this week.

Best,

William