IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 25-30155 |
| | § | |
| ALLIANCE FARM AND RANCH, LLC, | § | (CHAPTER 11) |
| | § | |
| DEBTOR | § | |
| | § | |
| IN RE: | § | CASE NO. 25-31937 |
| | § | |
| ALLIANCE ENERGY PARTNERS, LLC, | § | (CHAPTER 11) |
| | § | |
| | § | |
| DEBTOR | § | |

**COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN
OF LIQUIDATION OF ALLIANCE FARM AND RANCH, LLC AND ALLIANCE
ENERGY PARTNERS, LLC PROPOSED BY THE CHAPTER 11 TRUSTEE AND
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Dated: October 2, 2025
Houston, Texas

**HOWLEY LAW, PLLC**
*Attorneys to Tom Howley, as Chapter 11
Trustee*

Eric Terry (State Bar No. 00794729)
Email: eric@howley-law.com
TC Energy Center
700 Louisiana Street, Suite 4220
Houston, Texas 77002
Telephone: (713) 333-9125

**DYKEMA GOSSETT PLLC**
*Attorneys to the Official Committee of
Unsecured Creditors*

William Hotze (State Bar No. 24087754)
Email: whotze@dykema.com
Nicholas Zugaro (State Bar No. 24070905)
Email: nzugaro@dykema.com
5 Houston Center
1401 McKinney Street, Suite 1625
Houston, Texas 77010
Telephone: (713) 904-6900

# TABLE OF CONTENTS

I. EXECUTIVE SUMMARY ......................................................................................................... 3

    A.      Introduction........................................................................................................ 3

    B.      Plan Overview.................................................................................................... 3

    C.      Treatment of Claims and Interests Under the Plan. ......................................... 4

II. DEFINITIONS AND CONSTRUCTION OF TERMS ......................................................... 7

    A.      Definitions. ....................................................................................................... 7

    B.      Interpretation; Application of Definitions and Rules of Construction............................ 16

III. BACKGROUND .................................................................................................................. 16

    A.      Nature and History of the Debtors' Business. ................................................. 16

    B.      The Debtors' Prepetition Indebtedness........................................................... 17

    C.      Events Leading to the Filing of the Bankruptcy Case. .................................... 17

    D.      The Chapter 11 Cases. .................................................................................... 18

           1.      Initial Filing and Procedural Background........................................... 18

           2.      Appointment of the Creditors' Committee. ........................................ 18

           3.      Appointment of Chapter 11 Trustee. .................................................. 18

           4.      Employment of Professionals and Advisors. ...................................... 18

           5.      Stay of Pending Litigation. ................................................................. 19

           6.      Claims Process and Bar Date. ............................................................. 19

    7.      Settlement and Transfer of Debtors Assets.......................................... 19

    8.      Adversary No. 25-03382 ....................................................................... 19

IV. CONFIRMATION AND VOTING ...................................................................................... 20

    A.      Plan Confirmation Hearing. ............................................................................ 20

    B.      Requirements for Plan Confirmation. ............................................................. 20

    C.      Best Interests of the Creditors Test. ............................................................... 21

    D.      Plan Feasibility. .............................................................................................. 21

    E.      Classification of Claims and Interests............................................................ 22

    F.      Impaired Claims or Interests. ......................................................................... 22

    G.      Eligibility to Vote on this Plan........................................................................ 22

    H.      Voting Procedure and Deadlines. ................................................................... 23

    I.      Acceptance of this Plan.................................................................................... 24

    J.      Elimination of Vacant Classes. ...................................................................... 24

V. TREATMENT OF UNCLASSIFIED CLAIMS .................................................................. 24

    A.      Administrative Expense Claims....................................................................... 24

| | | |
|---|---|---:|
| B. | Professional Fee Claims. | 25 |
| C. | Priority Tax Claims. | 26 |

**VI. CLASSIFICATION OF CLAIMS AND INTERESTS; ESTIMATED RECOVERIES** ..... 26

**VII. TREATMENT OF CLAIMS AND INTERESTS** ..... 26

| | | | |
|---|---|---|---:|
| A. | | Classification and Treatment of Claims and Interests. | 26 |
| | 1. | Class 1—Other Priority Claims. | 26 |
| | 2. | Class 2—Other Secured Claims. | 27 |
| | 3. | Class 3—General Unsecured Claims. | 27 |
| | 4. | Class 4—Insider Unsecured Claims | 27 |
| | 5. | Class 5—Equity Interests. | 28 |

**VIII. THE LIQUIDATION OF THE DEBTORS** ..... 28

**IX. PROVISIONS REGARDING THE LIQUIDATING TRUST** ..... 28

| | | | |
|---|---|---|---:|
| A. | | Appointment of the Liquidating Trustee. | 28 |
| B. | | Creation of the Liquidating Trust. | 29 |
| C. | | Beneficiaries of the Liquidating Trust. | 29 |
| D. | | Vesting and Transfer of Assets to the Liquidating Trust. | 30 |
| E. | | Certain Powers and Duties of the Liquidating Trust and Liquidating Trustee. | 31 |
| | 1. | General Powers of the Liquidating Trustee | 31 |
| | 2. | Books and Records | 32 |
| | 3. | Investments of Cash | 32 |
| | 4. | Costs and Expenses of Administration of the Liquidating Trust | 32 |
| | 5. | Reporting | 32 |
| F. | | Post-Effective Date Notice. | 32 |
| G. | | Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets; Preparation and Filing of Tax Returns for Debtors. | 33 |
| H. | | Term of Liquidating Trust. | 34 |
| I. | | Limitation of Liability of the Liquidating Trustee. | 34 |

**X. MEANS FOR IMPLEMENTATION** ..... 34

| | | |
|---|---|---:|
| A. | Preservation of Right to Conduct Investigations. | 34 |
| B. | Prosecution and Resolution of Causes of Action and Avoidance Actions. | 35 |
| C. | Substantive Consolidation | 35 |
| D. | Effectuating Documents and Further Transactions. | 36 |
| E. | Funding of Liabilities and Distributions. | 36 |
| F. | Release of Liens. | 37 |
| G. | Exemption from Securities Laws. | 37 |

H.     Exemption from Certain Taxes and Fees. ........................................................... 37

I.      Trustee's Privileges as to Certain Causes of Action. ........................................ 37

J.      Insurance Policies. ........................................................................................... 38

K.     Filing of Monthly and Quarterly Reports and Payment of Statutory Fees. ...................... 38

L.      Completion of Services of Professionals. ......................................................... 39

M.    Operations of the Debtors Between the Confirmation Date and the Effective Date. 39

XI. PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN ........................................... 39

A.     Distribution Record Date. ............................................................................... 39

B.     Method of Payment. ....................................................................................... 39

C.     Claims Objection Deadline. ............................................................................ 39

D.     No Distribution Pending Allowance. ................................................................ 40

E.     Reserve of Cash Distributions. ....................................................................... 40

F.      Distribution After Allowance. ......................................................................... 40

G.     Delivery of Distributions. ............................................................................... 40

H.     Fractional Dollars; *De Minimis* Distributions. ................................................ 41

I.      Excess Funds. ................................................................................................ 41

J.      Unclaimed Distributions. ............................................................................... 41

K.     Set-Off. 41

L.      Maximum Recovery and Postpetition Interest. ................................................ 41

M.    Allocation of Distributions Between Principal and Interest. ............................... 42

N.     Prepayment. ................................................................................................. 42

XII. EXECUTORY CONTRACTS ................................................................................................ 42

A.     Rejection of Executory Contracts and Unexpired Leases. .................................. 42

B.     Claims Based on Rejection of Executory Contracts or Unexpired Leases. ...................... 42

XIII. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ......................................................... 43

XIV. RELEASE, EXCULPATION, INJUNCTION, AND RELATED PROVISIONS ........................... 44

A.     Releases by the Debtors. ................................................................................ 44

B.     Exculpation. ................................................................................................. 45

C.     Injunction .................................................................................................... 45

D.     Preservation of Causes of Action. ................................................................... 47

1.      Vesting of Causes of Action .......................................................................... 47

2.      Preservation of All Causes of Action Not Expressly Settled or Released. ...................... 47

E.      Injunction. .................................................................................................... 48

C.     Termination of All Employee and Workers' Compensation Benefits. ............................ 49

D.     Exclusions and Limitations on Liability. ................................................................ 49

XV. RETENTION OF JURISDICTION ............................................................................ 50

XVI. MISCELLANEOUS PROVISIONS ........................................................................... 52

A.     Modification of Plan. ........................................................................................... 52

B.     Revocation of Plan. .............................................................................................. 52

C.     Successors and Assigns. ....................................................................................... 52

D.     Governing Law. ................................................................................................... 52

E.     Reservation of Rights. .......................................................................................... 52

F.     Effectuating Documents; Further Transactions. ................................................... 53

G.     Further Assurances. ............................................................................................. 53

H.     Dissolution of the Debtors and Closing of the Chapter 11 Cases. ...................... 53

I.     Dissolution of the Committee. ............................................................................. 53

J.     Discharge of the Trustee. ..................................................................................... 53

K.     Service of Documents. ......................................................................................... 54

L.     Filing of Additional Documents. ......................................................................... 54

XVII. RISKS AND OTHER CONSIDERATIONS .............................................................. 54

A.     Bankruptcy Considerations. ................................................................................. 54

B.     No Duty to Update Disclosures. .......................................................................... 55

C.     Alternatives to Confirmation and Consummation of the Plan. ............................ 55

     1.     Alternate Plan .............................................................................................. 55

     2.     Chapter 7 Liquidation or Dismissal ............................................................ 55

D.     Certain Federal Tax Consequences ...................................................................... 56

     1.     Federal Income Tax Consequences to the Debtors ..................................... 57

     2.     Federal Income Tax Consequences to Holders of Allowed Claims ............ 57

     3.     Federal Income Tax Consequence to Holders of Disputed Claims ............. 60

     4.     Tax Treatment of the Liquidating Trust and Holders of Beneficial Interests Therein ......................................................................................... 60

     5.     FATCA ......................................................................................................... 63

     6.     Backup Withholding and Information Reporting ........................................ 63

XVIII. RECOMMENDATION AND CONCLUSION ............................................................. 65

## EXHIBITS

**Exhibit A:  LIQUIDATION ANALYSIS**

**Exhibit B: FORENSIC REPORT**

## DISCLAIMER

This Combined Plan and Disclosure Statement[1] has been prepared in accordance with section 1125 of the Bankruptcy Code, Rules 3016 and 3017 of the Federal Rules of Bankruptcy Procedure, Rule 3016-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of Texas, and not in accordance with federal or state securities law or other applicable non-bankruptcy law. Persons or Entities trading in or otherwise purchasing, selling, or transferring Claims against the Debtors should evaluate this Combined Plan and Disclosure Statement considering the purpose for which it was prepared.

Pursuant to Local Rule 3016-2, this Combined Plan and Disclosure Statement is being submitted for conditional approval only.  Contemporaneously with the filing of this Combined Plan and Disclosure Statement, the Debtors are filing a motion to, among other things, schedule a hearing to consider final approval of the adequacy of the Disclosure Statement and confirmation of the Plan.

To ensure compliance with IRS circular 230, Holders of Claims and Equity Interests are hereby notified that: (a) any discussion of U.S. federal tax issues contained or referred to in this Combined Plan and Disclosure Statement is not intended or written to be used, and cannot be used, by Holders of Claims for the purpose of avoiding penalties that may be imposed on them under the Internal Revenue Code; (b) such discussion is written in connection with the promotion or marketing by the Debtors of the transactions or matters addressed herein; and (c) Holders of Claims should seek advice based on their particular circumstances from an independent tax advisor.

There has been no independent audit of the financial information contained in this Combined Plan and Disclosure Statement except as expressly indicated herein. This Combined Plan and Disclosure Statement was compiled from information obtained from numerous sources believed to be accurate to the best of the Plan Proponents' knowledge, information, and belief. This Combined Plan and Disclosure Statement was not filed with the Securities and Exchange Commission or any state authority and neither the Securities and Exchange Commission nor any state authority has passed upon the accuracy, adequacy, or merits of this Combined Plan and Disclosure Statement. Neither this Combined Plan and Disclosure Statement nor the solicitation of votes to accept or reject the Plan constitutes an offer to sell or the solicitation of an offer to buy securities in any state or jurisdiction in which such offer or solicitation is not authorized.

This Combined Plan and Disclosure Statement may contain "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward-looking terminology such as "may," "expect," "anticipate," "estimate," or "continue" or the negative thereof or other variations thereon or comparable terminology. The reader is cautioned that all forward-looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward-looking statements.

---

[1] Referred to herein as the "**Combined Plan and Disclosure Statement**" or the "**Plan**."

Any projected recoveries to Creditors in this Combined Plan and Disclosure Statement are based upon the analyses performed by the Plan Proponents and their advisors. Although the Plan Proponents and their advisors have made every effort to verify the accuracy of the information presented herein, the Plan Proponents and its advisors cannot make any representations or warranties regarding the accuracy of the information.

Nothing stated herein shall be deemed or construed as an admission of any fact or liability by any party or be admissible in any proceeding involving the Plan Proponents or any other party. The statements contained herein are made as of the date hereof unless another time is specified. The delivery of this Combined Plan and Disclosure Statement shall not be deemed or construed to create any implication that the information contained herein is correct at any time after the date hereof.

It is the Plan Proponents' opinion that the treatment of Creditors under the Plan contemplates a greater recovery for Creditors than that which is likely to be achieved under other alternatives for the Debtors.  Accordingly, the Plan Proponents believe that confirmation of the Plan is in the best interests of Creditors and recommend that all Holders of Claims whose votes are being solicited to vote to accept the Plan.

# I. EXECUTIVE SUMMARY[2]

## A. Introduction.

Tom A. Howley, as chapter 11 Trustee for the Debtors in the above-captioned Chapter 11 Cases, and the Official Committee of Unsecured Creditors of Alliance Farm and Ranch, LLC ("**AFR**") and Alliance Energy Partners, LLC ("**AEP**") hereby propose this Combined Plan and Disclosure Statement, as may be further amended from time to time, for the full and final resolution of outstanding claims against and interests in the Debtors.

The Plan contemplates a liquidation of the Debtors and their Estates. The primary objective of the Plan is to maximize the value of recoveries to all Holders of Allowed Claims and to distribute all property of the Estate that is or becomes available for distribution generally in accordance with the priorities established by the Bankruptcy Code. The Plan Proponents believe that the Plan accomplishes this objective and is in the best interest of the Estate and therefore seek to confirm the Plan.

Pursuant to prior orders of the Bankruptcy Court, the Trustee on behalf of the Debtors settled ongoing litigation with Darla and Erik Ostrander (the "**Ostranders**"). In exchange for a release and to end ongoing litigation, the Ostranders agreed to pay $1,500,000 to the Trustee and received releases.

The Plan contemplates the creation of a liquidating trust to liquidate and administer substantially all remaining property of the Debtors, including certain assets, as well as Claims and Causes of Action, not sold, transferred or otherwise waived or released before the Effective Date.

As set forth in greater detail below, the Plan provides for the liquidation of the Debtors and payment, or other satisfaction, as described below, on or after the Effective Date, with respect to allowed Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, Secured Claims, and General Unsecured Claims.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Section XVI.A of this Combined Plan and Disclosure Statement, the Plan Proponents expressly reserve the right to alter, amend, or modify this Combined Plan and Disclosure Statement, including the Plan Supplement, one or more times before substantial consummation thereof.

## B. Plan Overview.

The following is a brief overview of certain material provisions of the Plan. This overview is qualified by reference to the provisions of the Combined Plan and Disclosure Statement, and the exhibits thereto, as may be further amended from time to time. If any inconsistency or conflict

---

[2] Capitalized terms used but not defined in this section shall have the meaning ascribed to them in Section II herein. While this Executive Summary is believed to be accurate, in the event of an inconsistency or conflict between this summary and the more complete terms set forth in other sections of this Combined Plan and Disclosure Statement, those other sections shall control over the Executive Summary.

exists between this summary and the terms contained herein, the terms contained herein will control. The Plan is a plan for the liquidation of the Debtors and their Estates.

As discussed herein, the AFR and AEP Debtors will be substantively consolidated under the Plan based on numerous facts including (i) all the non-Insider creditors dealt with the entities as a single economic unit and did not rely on their separate identify in extending credit; (ii) AFR has no non-Insider creditors; and (iii) the affairs of the Debtors are so entangled that consolidation would benefit all creditors. Additionally, and most importantly, AFR owes all of the money it is holding to AEP based on (i) admissions by Furr that the money held by AFR should go back to AEP and the real creditors; (ii) allegations by Etter that AFR was being used as an instrumentality of fraud; and (iii) the Forensic Report demonstrating the flow of money from AEP to AFR.

The Plan contemplates the creation of a Liquidating Trust on the Effective Date for the purposes of effectuating the liquidation of the Liquidating Trust Assets and distributing the proceeds of the Liquidating Trust to the Beneficiaries of the Liquidating Trust, which Liquidating Trust shall issue Liquidating Trust Units, as described in this Plan and the Liquidating Trust Agreement. The Liquidating Trust shall be managed by a Liquidating Trustee in accordance with the Liquidating Trust Agreement and who shall be selected by the Committee and the Trustee. The primary purpose of the Liquidating Trust and its Liquidating Trustee shall be: (i) administering, monetizing and liquidating the Liquidating Trust Assets, (ii) resolving all Disputed Claims and (iii) making all Distributions from the Liquidating Trust as provided for in the Plan and the Liquidating Trust Agreement. The Liquidating Trust Assets shall primarily consist of the Liquidating Trust Funding Amount and the Liquidating Trust Causes of Action, among other things.

Following the Effective Date of the Plan, the Liquidating Trustee will be responsible for all payments and distributions to be made under the Plan to the Holders of Allowed Claims. Each executory contract and unexpired lease to which the Debtors are a party shall be deemed rejected unless (a) otherwise provided herein or in the Plan Supplement or (b) the Debtors expressly assume and assign such agreements before the Effective Date.

## C.     Treatment of Claims and Interests Under the Plan.

Each Holder of a Claim against the Debtors that is entitled to vote to accept or reject the Plan should read this Combined Plan and Disclosure Statement in its entirety before voting. No solicitation of votes to accept or reject this Plan may be made except pursuant to the terms hereof and Bankruptcy Code section 1125. If you are entitled to vote on the Plan, you are receiving a Ballot with your notice of this Combined Plan and Disclosure Statement. The Plan Proponents strongly urge you to vote to accept the Plan.

The following chart provides a summary of the anticipated recovery to Holders of Claims and Equity Interests under the Plan. Any estimates of Claims or Equity Interests in this Plan may vary from the final amounts allowed by the Bankruptcy Court. Your ability to receive Distributions under the Plan depends on the Plan Proponents' ability to obtain Confirmation and meet the conditions necessary to consummate the Plan.

Except to the extent that a Holder of an Allowed Claim or Allowed Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, each Holder of an Allowed Claim or Allowed Equity Interest shall receive under the Plan the treatment described below in full and final satisfaction of such Holder's Allowed Claim or Allowed Equity Interest. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Equity Interest shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

As explained more fully in Sections VI and VII of this Combined Plan and Disclosure Statement,[3] the Plan provides for the creation of a Liquidating Trust. Liquidating Trust Units shall receive Distributions from the liquidation of certain identified assets. The classification and Distribution scheme proposed under the Plan is as follows:

| Class | Description | Estimated Recovery | Treatment | Entitled to Vote? |
|---|---|---|---|---|
| 1 | Other Priority Claims | 100% | Unimpaired. Each Holder of an Allowed Other Priority Claim shall receive in full and final satisfaction of such Holder's Allowed Claim: (i) Cash in an amount equal to such Allowed Other Priority Claim on the Effective Date or as soon thereafter as is reasonably practicable, or (ii) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. | No. Deemed to accept. |
| 2 | Other Secured Claims | 100% | Unimpaired. On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Other Secured Claim shall receive or retain, in full and final satisfaction and settlement of such Claim, at the election of the Debtors, except to the extent any Holder of an Allowed Other Secured Claim agrees to different treatment: (i) the Collateral securing such Allowed Other Secured Claim; (ii) Cash in an amount equal to the value of the collateral securing such Allowed Other Secured Claim; or (iii) the | No. Deemed to accept. |

---

[3] To the extent that the terms of this summary conflict with the terms of Sections VI and VII of this Combined Plan and Disclosure Statement, the terms of Sections VI and VII shall control.

| | | | | |
|---|---|---|---|---|
| | | | treatment required under section 1124(2) of the Bankruptcy Code for such Claim to be reinstated or rendered unimpaired. | |
| 3 | General Unsecured Claims | 30%[4] | Impaired. In full and final satisfaction of each Allowed General Unsecured Claim, the Holder of such Claim shall receive its Pro Rata Share of the Liquidating Trust Units. | Yes. |
| 4 | Insider Unsecured Claims | 0% | Impaired. In full and final satisfaction of each Allowed Insider Unsecured Claim, the Holder of such Claim shall receive its Pro Rata Share of any proceeds from the Liquidating Trust Units available after the complete satisfaction of Allowed General Unsecured Claims. | No. Deemed to reject. |
| 5 | Equity Interests | 0% | Impaired. On the Effective Date, all Equity Interests will be deemed cancelled and extinguished. Holders of Equity Interests will receive no property or Distribution under the Plan on account of such Interests. | No. Deemed to reject. |

Holders of Claims in Classes 1 and 2 are unimpaired under the Plan and are thus deemed to accept the Plan. Holders of Allowed Insider Unsecured Claims and Equity Interests in Classes 4 and 5, respectively, will likely receive no Distribution on account of such Allowed Insider Unsecured Claims or Equity Interests under the Plan and are thus deemed to reject the Plan. Holders of Claims in Class 3 are impaired under the Plan and are the only Holders of Claims entitled to vote to accept or reject the Plan.

Separate classification of Insider Unsecured Claims is warranted because the claimants in this class (i) are Insiders; and/or (ii) are asserting estate claims; and/or (iii) are subject to an objection that, as a threshold matter, demonstrates the asserted claims in Class 4 by Etter and Furr must be recharacterized or equitably subordinated; and/or (iv) are asserting double derivative claims on behalf of their equity ownership in a non-debtor.

---

[4] This represents the recovery out of the estimated remaining cash in the Estates on the Plan Effective Date. General Unsecured Claims will also be entitled to their Pro Rata Share of the value obtained by the Liquidating Trust from the monetization of the Debtors' remaining assets and causes of action. At this time, the Plan Proponents are unable to accurately estimate the amount of this additional recovery.

Insiders are not allowed to vote on the plan because they are deemed to reject and they are subject to section 1129(a)(10).  Furr and Etter are Insiders of AEP.  AEP and AFR are properly being substantively consolidated pursuant to this Plan.

TO THE EXTENT NECESSARY, THIS PLAN CONTAINS THIS OBJECTION TO THE CLAIMS BY FURR, ETTER, AND THEIR RELATED ENTITIES, FILED AT CLAIM NOS. 2, 3, 10, 11, 12, AND 13 IN THE ABOVE CAPTIONED JOINTLY ADMINISTERED CLAIM REGISTER AND CLAIM NO. 12 IN THE CLAIMS REGISTER MAINTAINED IN THE AEP DEBTOR CHAPTER 11 CASE (COLLECTIVELY, THE "**FURR AND ETTER CLAIMS**"). WITH FULL RESERVATION FOR FURTHER OBJECTION, PLAN PROPONENTS REQUEST A FINDING BY THIS COURT THAT THE FURR AND ETTER CLAIMS SHALL BE (I) RECHARACTERIZED AS EQUITY; AND/OR (II)  EQUITABLY SUBORDINATED.

## II. <u>DEFINITIONS AND CONSTRUCTION OF TERMS</u>

### A.  <u>Definitions.</u>

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

1.     "<u>**Administrative Expense Claim**</u>" means Claims that have been timely filed, pursuant to the deadline and procedures set forth in any bar date order or Plan Confirmation Order, as applicable, or late filed Claims otherwise allowed by Final Order for costs and expenses of administration under sections 503(b), 507(a)(2) or 1114(e)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) administrative expense claims Allowed under section 503(b)(9) of the Bankruptcy Code (if any); and (c) Professional Fee Claims. For the avoidance of doubt, pursuant to Local Rule 3002-1, the government shall not be required to file any proof of claim or application for allowance for any claims covered by section 503(b)(1)(B), (C), or (D).

2.     "<u>**Administrative Expense Claim Bar Date**</u>" means [•][5] at 5:00 p.m. (prevailing Central Time), the deadline for filing requests for allowance and payment of Administrative Expense Claims established by order of the Bankruptcy Court.

3.     "<u>**Administrative Expense and Priority Escrow Account**</u>" means an interest-bearing escrow account established and funded by the Debtors as soon as reasonably practicable after the Plan Confirmation Date and no later than the Effective Date solely for the purpose of paying all Allowed Administrative Expense Claims, Other Priority Claims and Priority Tax Claims, to the extent such Claims have not been paid in full on or before the Effective Date.

4.     "<u>**Allowed**</u>" means, with respect to Claims: (a) any Claim for which a proof of Claim was filed (or a Claim that does not require the filing of a proof of Claim as provided for under the Plan,

---

[5] This Administrative Expense Claim Bar Date will be amended to identify the date certain in the Plan Supplement.

the Bankruptcy Code, or a Final Order of the Bankruptcy Court,); (b) any Claim which has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent and for which no superseding proof of Claim has been filed; (c) any Claim allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; and (d) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Liquidating Trustee under the Plan and the Liquidating Trust Agreement; provided that with respect to any Claim described in clauses (a) and (b), such Claim shall be considered Allowed only if and to the extent that with respect to such Claim, no objection to the allowance was timely filed (including but not limited to, an objection relating to the timeliness of the filing of the proof of claim), or if such timely objection was filed, the Claim is subsequently Allowed by a Final Order or through an agreement between the claimant and the Liquidating Trustee.  Notwithstanding anything herein to the contrary, Claims allowed solely for the purpose of voting to accept or reject this Combined Plan and Disclosure Statement pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" Claims hereunder.

5.      "**Assets**" means all tangible and intangible assets of every kind and nature of the Debtors and their Estates within the meaning of section 541 of the Bankruptcy Code.

6.      "**Available Trust Cash**" means proceeds of the Liquidating Trust's Assets that are available for distribution to holders of Beneficial Interests in the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement.

7.      "**Avoidance Actions**" means all rights to avoid transfers or distributions and recover any such avoided transfers or distributions for the benefit of the Estate under chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, Bankruptcy Code sections 506(d), 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553, or otherwise under the Bankruptcy Code or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, voidable transfer, and/or other similar avoidance claims, rights, and causes of action, whether or not demand has been made or litigation has been commenced as of the Effective Date to prosecute such Avoidance Actions.

8.      "**Ballot**" means the ballot on which each Holder of a Claim entitled to vote to accept or reject this Plan casts such vote.

9.      "**Bankruptcy Code**" means title 11 of the United States Code, as amended from time to time.

10.     "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

11.     "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended from time to time.

12.     "**Beneficiaries**" or "**Beneficial Interests**" means holders of or beneficial interests of Liquidating Trust Units.

13.     "**Business Day**" means any day other than a Saturday, Sunday, or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

14.     "**Cash**" means legal tender of the United States of America and equivalents thereof.

15.     "**Causes of Action**" means all claims, actions (including the Avoidance Actions), causes of action (including commercial tort claims), choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims of the Debtors and/or their Estates against any Person or Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted.

16.     "**Chapter 11 Cases**" means the Debtors' bankruptcy cases commenced by the filing of voluntary petition for relief for Alliance Farm and Ranch, LLC on January 7, 2025 under chapter 7 the Bankruptcy Code, Case No.  25-30155, which was converted to a case under Chapter 11 of the Bankruptcy Code on March 19, 2025 currently pending in the Bankruptcy Court and the filing of a voluntary petition for relief for Alliance Energy Partners, LLC on April 7, 2025 under chapter 11 of the Bankruptcy Code, Case No. 25-319, each of which are jointly administered under Case No. 25-30155 as of April 23, 2025.

17.     "**Claim**" has the meaning set forth in section 101(5) of the Bankruptcy Code.

18.     "**Claims Objection Deadline**" means the date that is one hundred and eighty (180) days after the Effective Date or such later date as may be approved by the Bankruptcy Court upon motion.

19.     "**Class**" means any group of substantially similar Claims or Equity Interests classified by this Combined Plan and Disclosure Statement pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

20.     "**Clerk**" means the clerk of the Bankruptcy Court.

21.     "**Collateral**" means any property or interest in property of the Estates of the Debtors subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

22.     "**Combined Plan and Disclosure Statement**" or "**Plan**" means this *Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Alliance Farm and Ranch, LLC and Alliance Energy Partners, LLC Proposed by the Trustee and the Official Committee of Unsecured Creditors*, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or as the same may be altered, amended, or modified from time to time through substantial consummation thereof, including the Plan Supplement.

23.     "**Creditors' Committee**" or "**Committee**" means the Official Committee of Unsecured Creditors of the Debtors, appointed in the Chapter 11 Cases by the United States Trustee on May 12, 2025, as such membership may be amended.

24.     "**Creditor**" shall have the meaning ascribed to such term in Bankruptcy Code section 101(10).

25.     "**Debtors**" collectively means Alliance Farm and Ranch, LLC ("**AFR**") and Alliance Energy Partners, LLC ("**AEP**") in the Chapter 11 Cases.

26.     "**Debtor-in-Possession**" means the Debtors in their capacity as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code through and until the date of appointment of the Trustee on May 23, 2025.

27.     "**Disputed Claim**" means any Claim that is or hereafter may be listed on the Schedules as disputed, contingent, or unliquidated, or which is objected to in whole or in part prior to the Claims Objection Deadline and has not been Allowed in whole or in part by settlement or Final Order or compromised, settled, or otherwise resolved pursuant to the authority granted to the Liquidating Trustee under the Plan and the Liquidating Trust Agreement.

28.     "**Disputed Claims Reserve**" means the reserve established by the Liquidating Trustee for the benefit of Holders of Disputed Claims. Any such reserve shall be made from the Liquidating Trust Assets.

29.     "**Distribution**" means any distribution to Holders of Allowed Claims, or their designated agents, Liquidating Trust Beneficiaries under or pursuant to this Plan and/or the Liquidating Trust Agreement.

30.     "**Distribution Record Date**" means the record date for purposes of making Distributions under the Plan on account of Allowed Claims, which date shall be the Effective Date.

31.     "**Docket**" means the docket in the Chapter 11 Cases maintained by the Clerk.

32.     "**Effective Date**" means the date on which the conditions specified in Section XIII of this Plan have been satisfied or waived in accordance with the terms hereof and the transactions contemplated hereunder have been consummated. The Debtors shall file a Notice of Effective Date (as defined below) on the Docket indicating the calendar date which corresponds to the Effective Date.

33.     "**Entity**" means an entity as defined in section 101(15) of the Bankruptcy Code.

34.     "**Equity Interest**" means any equity interest in the Debtors.

35.     "**Estates**" means the estates of the Debtors created upon the commencement of the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

36.     "**Exculpated Parties**" means each of the following solely in its capacity as such: (i) the Debtors, (ii) the Trustee, and (iii) the Committee and its members in their capacities as members of the Committee. For the avoidance of doubt the Debtors' prepetition officers, directors, affiliates, Insiders, and shareholders are not Exculpated Parties.

37.    "**Exculpation Timeframe**" means the period from the Petition Date through and including the Effective Date.

38.    "**Executory Contract**" means any executory contract or unexpired lease, within the meaning of section 365 of the Bankruptcy Code, as of the Petition Date between the Debtors and any Entity.

39.    "**Final Order**" means an Order of the Bankruptcy Court or a Court of competent jurisdiction to hear appeals from the Bankruptcy Court, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, to petition for certiorari, or to move for reargument or rehearing has expired, and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; provided, however, that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

40.    "**General Bar Date**" means July 25, 2025, the deadline for each Person or Entity, including without limitation, individuals, partnerships, corporations, joint ventures and trusts, other than Governmental Units, to file a proof of Claim against any Debtor for a Claim that arose prior to the Petition Date.

41.    "**General Unsecured Claim**" means any Claim against any Debtor that is (i) not an Administrative Expense Claim, Priority Tax Claim, Other Priority Claim, or Other Secured Claim but includes (a) any Claim arising from the rejection of an executory contract under section 365 of the Bankruptcy Code and (b) any portion of a Claim to the extent the value of the Holder's interest in the Estate's interest in the property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to section 506(a) of the Bankruptcy Code, or (ii) otherwise determined by the Bankruptcy Court to be a general unsecured Claim.

42.    "**Governmental Unit**" has the meaning set forth in section 101(27) of the Bankruptcy Code.

43.    "**Governmental Unit Bar Date**" means November 3, 2025, the deadline for Governmental Units to file a proof of Claim against any Debtor for a Claim that arose prior to the Petition Date.

44.    "**Holder**" means the legal or beneficial holder of any Claim or Equity Interest.

45.    "**Impaired**" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

46.    "**Insider**" means any director, officer, person in control, or general partner of any of the Debtors, as well as any other individual or entity that is an "insider" as defined in section 101(31) of the Bankruptcy Code. For the avoidance of doubt, Dustin Etter ("**Etter**") and Jerrod Furr ("**Furr**") are Insiders.

47.     "**Insider Unsecured Claim**" means a General Unsecured Claim that is asserted by an Insider.  The Insider Unsecured Claims are subject to the Objection in this Plan demonstrating that they shall either (i) be recharacterized as equity; and/or (ii) be equitably subordinated.

48.     "**Insurance Policies**" means all insurance policies of the Debtors, including any director and officer liability policies.

49.     "**IRS**" means the Internal Revenue Service.

50.     "**Lawsuit**" means the lawsuit styled *Alliance Farm and Ranch, LLC v. Erik C. Ostrander and Darla Ostrander*, Case No. 25-01-00068 in the 284th Judicial District Court of Montgomery County.

51.     "**Lien**" means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge, right of first refusal or surrender right, or other encumbrance of any kind, including any "lien" as defined in section 101(37) of the Bankruptcy Code.

52.     "**Liquidating Trust**" means the trust that will come into existence upon the Effective Date and into which all of the Liquidating Trust Assets will vest pursuant to the Plan, which trust shall be formed pursuant to and governed by the Liquidating Trust Agreement.

53.     "**Liquidating Trust Advisors**" means any firm(s) or individual(s) retained by a Liquidating Trustee to serve as a legal counsel or provide other professional services in connection with the performance of the Liquidating Trustee's duties and responsibilities under this Plan and a Liquidating Trust Agreement.

54.     "**Liquidating Trust Agreement**" means the agreement governing the Liquidating Trust, dated on or about the Effective Date, substantially in the form included in the Plan Supplement.

55.     "**Liquidating Trust Assets**" means (i) the Liquidating Trust Funding Amount, (ii) the Liquidating Trust Causes of Action, and (iii) all other Assets of the Debtors and their Estates as of the Effective Date, excluding Assets previously distributed and not otherwise subject to recovery. For the avoidance of doubt, the Liquidating Trust Assets exclude funds in the Professional Fee Escrow Account and the Administrative Expense and Priority Escrow Account.

56.     "**Liquidating Trust Causes of Action**" means all Causes of Action held or owned by the Debtors' Estate immediately prior to the Effective Date (whether asserted directly or derivatively) against all parties, *provided that* the Liquidating Trust Causes of Action exclude any Claims or Causes of Action released or exculpated as provided in the Plan, including pursuant to Section XIV of the Plan. The Liquidating Trust Causes of Action shall include all Preserved Causes of Action.

57.     "**Liquidating Trust Funding Amount**" means $250,000 of Cash which shall be contributed to the Liquidating Trust by the Debtors on the Effective Date for the administration of the Liquidating Trust.

58.     "**Liquidating Trust Operating Expenses**" means the overhead and other operational expenses of the Liquidating Trust including, but not limited to: (i) reasonable compensation for

the Liquidating Trustee in accordance with the Liquidating Trust Agreement, (ii) costs and expenses incurred by the Liquidating Trustee in administering the Liquidating Trust, (iii) Statutory Fees that may become payable by the Liquidating Trust after the Effective Date to the U.S. Trustee, and (iv) any fees and expenses payable to the Liquidating Trust Advisors.

59.     "**Liquidating Trust Recoveries**" means the recoveries from the Liquidating Trust on account of any proceeds from the liquidation of any Assets of the Debtors and their Estate not sold, transferred or otherwise waived or released prior to the Effective Date.

60.     "**Liquidating Trust Units**" means beneficial interests in the Liquidating Trust entitling each Holder thereof to receive its Pro Rata Share of Distributions of Liquidating Trust Recoveries.

61.     "**Liquidating Trustee**" means the person or Entity identified in the Liquidating Trust Agreement and selected by the Committee and the Trustee, as of the Effective Date or as soon as reasonably practicable thereafter, as the fiduciary responsible for administering the Liquidating Trust, and any successor subsequently appointed pursuant to the Liquidating Trust Agreement.

62.     "**Local Rules**" means the of Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas, as amended from time to time.

63.     "**Notice of Effective Date**" means a notice to be filed with the Bankruptcy Court by the Debtors upon the occurrence of all the conditions precedent to the Effective Date set forth in Section XIII of this Combined Plan and Disclosure Statement.

64.     "**Order**" means an order, opinion, or judgment of the Bankruptcy Court as entered on the Docket.

65.     "**Other Priority Claim**" means unsecured Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Administrative Expense Claims or Priority Tax Claims.

66.     "**Other Secured Claims**" means Claims (or portions thereof) that are secured by a lien on property in which any of the Debtors' Estates has an interest, which liens are valid, perfected and enforceable under applicable law.

67.     "**Person**" has the meaning set forth in section 101(41) of the Bankruptcy Code.

68.     "**Petition Date**" means January 7, 2025, the date on which Alliance Farm and Ranch, LLC commenced its Chapter 11 Case and April 9, 2025, the date on which Alliance Energy Partners, LLC commenced its Chapter 11 Case.

69.     "**Plan Confirmation Date**" means the date on which the Clerk of the Bankruptcy Court enters the Plan Confirmation Order on the Docket.

70.     "**Plan Confirmation Hearing**" means the hearing to be held by the Bankruptcy Court to consider approval and confirmation of this Combined Plan and Disclosure Statement, as such hearing may be adjourned or continued from time to time.

13

71.     "**Plan Confirmation Order**" means an order entered by the Bankruptcy Court approving and confirming this Combined Plan and Disclosure Statement under section 1125 of the Bankruptcy Code, which order shall be in form and substance acceptable to the Prepetition Agents.

72.     "**Plan Documents**" means this Combined Plan and Disclosure Statement, the Plan Supplement, and all exhibits and schedules attached to any of the foregoing.

73.     "**Plan Proponents**" means the Trustee and the Committee, collectively.

74.     "**Plan Supplement**" means the appendix of any schedules or exhibits that may be filed at least five (5) days prior to the deadline for submission of Ballots to vote to accept or reject a plan. The Plan Supplement will be filed with the Bankruptcy Court and served on the required notice parties.

75.     "**Preserved Claims and Causes of Action**" means the Claims and Causes of Action that shall be preserved and vest in the Liquidating Trust in accordance with the Plan and shall be identified in a schedule attached to the Plan Supplement. The Preserved Claims and Causes of Action include but are not limited to: (i) Claims or Causes of Action to avoid and recover preferential transfers pursuant to Bankruptcy Code section 547 and other avoidance actions under Chapter 5 of the Bankruptcy Code,  (ii) Claims or Causes of Action against present and former shareholders, officers, directors, affiliates and other insiders of the Debtors or their affiliates, (iii) Claims or Causes of Action against any contractors, vendors, suppliers or other third parties relating to work performed on the Debtors' Assets or good or services provided to the Debtors, including Claims or Causes of Action relating to breach of contract or arising under any warranty obligations, (iv) Claims or Causes of Action based in whole or in part upon any and all insurance contracts, insurance policies, occurrence policies, and occurrence contracts to which the Debtors are a party or pursuant to which the Debtors have any rights whatsoever, including any failure to provide insurance coverage and bad faith insurance claims; and (v) all remaining Liquidating Trust Causes of Action.

76.     "**Priority Amounts**" means as of the Effective Date, the amount of all Allowed Administrative Expense Claims (other than Professional Fee Claims), Priority Tax Claims, and Other Priority Claims, or such other amount as may be determined by Final Order of the Court.

77.     "**Priority Tax Claim**" means an unsecured Claim, or a portion thereof, that is entitled to priority under sections 502(i) or 507(a)(8) of the Bankruptcy Code.

78.     "**Privilege**" means the attorney client privilege, work product protections or other immunities (including without limitation those related to a common interest or a joint defense with other parties to the extent set forth in such documents), or protections from disclosure of any kind held by the Debtors or their Estate as permitted under the Federal Rule of Evidence 501 and all other applicable law.

79.     "**Professional**" means any professional person employed by the Debtors or the Committee in the Chapter 11 Cases pursuant to sections 327, 363, or 1103 of the Bankruptcy Code or otherwise pursuant to an Order of the Bankruptcy Court.

80.     "**Professional Fee Claim**" means a Claim under Bankruptcy Code Sections 328, 330(a), 331, or 503 for compensation of a Professional or other Entity for services rendered or expenses incurred in the Chapter 11 Cases.

81.     "**Professional Fee Escrow Account**" means an interest-bearing escrow account to hold and maintain an amount of Cash equal to the Professional Fee Escrow Amount funded by the Debtors as soon as reasonably practicable after the Plan Confirmation Date and no later than the Effective Date solely for the purpose of paying all remaining Allowed and unpaid Professional Fee Claims. Such Cash shall remain subject to the jurisdiction of the Bankruptcy Court.

82.     "**Professional Fee Escrow Amount**" means the aggregate unpaid Professional Fee Claims through the Effective Date plus such reasonable fees estimated to be incurred by Professionals in connection with seeking approval of final fee applications as estimated in accordance with Section V.B.

83.     "**Property**" means the property located at 5450 Honea Egypt Rd., Montgomery, Texas 77316.

84.     "**Pro Rata Share**" means, with respect to any Distribution on account of any Allowed Claim, a percentage represented by a fraction (i) the numerator of which shall be an amount equal to such Claim and (ii) the denominator of which shall be an amount equal to the aggregate amount of Allowed Claims in the same Class as such Claim.

85.     "**Rejection Damages Claim**" means any Claim under section 502(g) of the Bankruptcy Code arising from, or relating to, the rejection of an Executory Contract pursuant to section 365(a) of the Bankruptcy Code by the Debtors, as limited, in the case of a rejected employment contract or unexpired lease, by section 502(b) of the Bankruptcy Code.

86.     "**Released Party**" means each of the following solely in its capacity as such: (i) the Debtors, (ii) the Trustee, (iii) the Committee, and (iv) the professionals and advisors of the foregoing parties.  For the avoidance of doubt the Debtors' prepetition officers, directors, affiliates, Insiders, and shareholders are not a Released Party.

87.     "**Settlement Order**" means the *Order (I) Approving Global Settlement Between Debtors and Erik and Darla Ostrander and, (II) Granting Related Relief*, entered by the Bankruptcy Court on June 3, 2025, 2021 [Doc No. 128] which settled the Lawsuit.

88.     "**Settlement Proceeds**" means the net proceeds paid to the Estate pursuant to the Settlement Order held by the Trustee.

89.     "**Schedules**" means the schedules of assets and liabilities and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007(b), as such schedules or statements may be amended or supplemented from time to time.

90.     "**Statutory Fees**" means any and all fees payable to the U.S. Trustee pursuant to section 1930 of title 28 of the United States Code and any interest thereupon.

91.     "**Tax Code**" means the Internal Revenue Code of 1986, as amended.

15

92.     "**Unclaimed Distribution**" means a Distribution that is not claimed by a Holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

93.     "**Unclaimed Distribution Deadline**" means three (3) months from the date the Liquidating Trustee makes a Distribution.

94.     "**U.S. Trustee**" means the Office of the United States Trustee for the Southern District of Texas.

95.     "**Voting Deadline**" means [•],[6] 2025, at 5:00 p.m. (prevailing Central Time).

96.     "**Voting Procedures**" means the plan voting procedures approved by the Bankruptcy Court.

B.      **Interpretation; Application of Definitions and Rules of Construction.**

        Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Unless otherwise specified, all section, article, schedule or exhibit references in this Combined Plan and Disclosure Statement are to the respective section in, Article of, Schedule to, or Exhibit to this Combined Plan and Disclosure Statement. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection or clause contained in this Combined Plan and Disclosure Statement. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Combined Plan and Disclosure Statement. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in this Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Combined Plan and Disclosure Statement. Any reference to the "Liquidating Trustee" shall be deemed to include a reference to the "Liquidating Trust" and any reference to the "Liquidating Trust" shall be deemed to include a reference to the "Liquidating Trustee" unless the context otherwise requires. Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Combined Plan and Disclosure Statement unless otherwise set forth herein or provided by the Bankruptcy Court.

## III.  BACKGROUND

A.      **Nature and History of the Debtors' Business.**

        On or around March 23, 2022, Furr formed the AFR Debtor, an entity wholly owned by Furr.

        On or April 15, 2022, Etter and Furr (collectively, the "**Prepetition Insiders**") were both the direct owners of the AEP Debtor. On or around April 15, 2022, allegedly for tax purposes to

---

[6] The Voting Deadline will be identified in the Voting Procedures and will be amended in this Plan to identify the date certain in the Plan Supplement.

restructure the business, the Prepetition Insiders formed new entities (i) AE Partners Holdings, Inc ("**Parent**"), as a parent company wholly owning AEP; (ii) AEP Asset Holdings, LLC ("**Holdings**"), a wholly owned subsidiary of Parent; and (iii) Invictus Drilling Motors, LLC ("**Invictus**"), a wholly owned subsidiary of Parent.  Parent, Holdings, and Invictus are collectively referred to herein as "Non-Debtor Insider Entities"

As demonstrated by the *Forensic Report* attached hereto as Exhibit B (as revised, supplemented, and amended, the "**Forensic Report**")**,** from the period between January 2022 through and including April 2025, AEP transferred significant monies and property to the Non-Debtor Insider Entities, other non-debtor insider entities, and AFR.

The Bar Date has passed.  There are non-Insider claims asserted against AEP in the approximate amount of 2.5 million dollars.  There are NO non-Insider claims asserted against AFR.  To the extent that Etter or Furr argue that they are not Insiders, their proofs of claim have been objected to per this Plan.

The information in the Forensic Report is provided for disclosure purposes only.  The Trustee is still performing his investigation of claims.  The Plan Supplement will comply with Fifth Circuit law to identify the estate causes of action.

Prior to the Petition Date, the AFR Debtor owned a 73 acre ranch located at 5450 Honea Egypt Rd., Montgomery County, Texas 77316. As of the Petition Date, the AFR Debtor had largely ceased operations.  As of the Petition Date, the AFR Debtor's assets largely consisted of ranching equipment and livestock, furniture, fixtures, and equipment, oil and gas production related assets, and farming related assets.  As demonstrated by the Forensic Report, all the assets of AFR, including the Property, were obtained through transfers from AEP.

Prior to the Petition Date, the AEP Debtor provided downhole drilling and measurement while drilling services to the oil and gas industry. It operated its businesses as a tenant of the AFR Debtor at the Property. As of the Petition Date, the AEP Debtor had ceased operations.

**B.** **The Debtors' Prepetition Indebtedness.**

The Debtors purport to have an intercompany loan whereby Alliance Farm and Ranch, LLC borrowed $1,000,000 from Alliance Energy Partners, LLC.  Prior to the Petition Date, the Ostranders purported to hold a $4,500,000 claim secured by the Property.  The Debtors did not have any other secured indebtedness as of the Petition Date.  As of the Petition Date, the Debtors valued the Property at $7,400,000.

**C.** **Events Leading to the Filing of the Bankruptcy Case.**

Just before the Petition Date, the Ostranders foreclosed on the Property. In addition, debtor Alliance Farm and Ranch, LLC filed the Lawsuit on January 3, 2025.  These Bankruptcy Cases were initiated to preserve the Debtors' equity in the Property and to orderly wind down the Debtors' estates.

D.    **The Chapter 11 Cases.**

The following is a brief description of certain material events that have occurred during the Chapter 11 Cases.

      **1.**      **Initial Filing and Procedural Background.**

Debtor Alliance Farm and Ranch, LLC, filed its chapter 7 petition on January 7, 2025. The case was relatively inactive until March 2025 when Alliance Farm and Ranch, LLC filed a motion to convert its case to a case under chapter 11. The case was converted to a case under Chapter 11 of the Bankruptcy Code on March 19, 2025. On April 7, 2025, Alliance Energy Partners, LLC filed a voluntary petition for relief. The Debtors' cases are now jointly administered.

      **2.**      **Appointment of the Creditors' Committee.**

On May 12, 2025, the Office of the United States Trustee for Region 7 appointed the Official Committee of Unsecured Creditors, consisting of the following members: (i) Gordon Technologies, LLC; and (ii) DrilTech, LLC [Doc No. 77].

      **3.**      **Appointment of Chapter 11 Trustee.**

The Debtors sought to enter into a settlement agreement with the Ostranders that purported to settle all claims and counterclaims in the Lawsuit. The result of the purported settlement would have allowed the sale of the Property and the transfer of proceeds directly to Jerod Furr. This transaction would result in at least $1,000,000 of property of the Debtors' Estates to be transferred to a third party without permission from the Bankruptcy Court and without input from any other constituencies in these Bankruptcy Cases.

When the Committee discovered the proposed settlement, it filed a Motion to Appoint a Chapter 11 Trustee [Doc. No. 98]. The Court held a hearing and entered an order appointing a chapter 11 trustee on May 23, 2025. Tom Howley was appointed as the chapter 11 trustee in these Bankruptcy Cases.

      **4.**      **Employment of Professionals and Advisors.**

Prior to the Trustee's appointment, the Bankruptcy Court approved the Alliance Farm and Ranch, LLC Debtor's retention of Okin, Adams, Bartlett and Curry, LLP as legal counsel. On May 23, 2025, the Bankruptcy Court entered an order allowing Okin Adams to withdraw as Debtors' counsel. [Doc. No. 111]. On July 16, 2025, the Bankruptcy Court entered an agreed order approving the retention by the Alliance Energy Partners, LLC Debtor of Okin, Adams, Bartlett and Curry, LLP as legal counsel. [Doc. No. 165].

The Official Committee of Unsecured Creditors sought Bankruptcy Court approval of the employment of Dykema Gossett, PLLC, as counsel for the Committee. Dykema's employment was approved by the Bankruptcy Court on July 7, 2025 [Doc. No. 154].

After appointment, the Trustee applied to employ Howley Law PLLC as Trustee's counsel. The Bankruptcy Court approved retention on July 11, 2025. [Doc. No. 158].

**5.     Stay of Pending Litigation.**

As set forth in the Schedules, as of the Petition Date, the Debtors were party to certain investigations, claims, or lawsuits.  The automatic stay under section 362(a) of the Bankruptcy Code had the immediate effect of halting such actions against the Debtors, allowing the Debtors to save money that would otherwise have been used on legal expenses.  The automatic stay does not stay the pursuit of governmental police and regulatory actions based on an exception in Section 362(b)(4) of the Bankruptcy Code.

**6.     Claims Process and Bar Date.**

**a.     Schedules and Statements.** On April 4, 2025, the Alliance Farm and Ranch, LLC Debtor filed its Statement of Financial Affairs and Schedules with the Bankruptcy Court. On April 7, 2025, the Alliance Energy Partners, LLC Debtor filed its Schedules. On July 14, 2025, the Alliance Energy Partners, LLC Debtor filed its Statement of Financial Affairs. After appointment of the Trustee, The U.S. Trustee held the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code on June 16, 2025, June 25, 2025, and July 18, 2025.

**b.     Bar Dates.**  The General Bar Date occurred on July 25, 2025; the Governmental Unit Bar Date is October 10, 2023.

**c.     Administrative Expense Claims Bar Date**. The Administrative Expense Claims Bar Date is [•][7] at 5:00 p.m. (prevailing Central Time).

**7.     Settlement and Transfer of Debtors Assets.**

On June 3, 2025, the Bankruptcy Court entered the Settlement Order.  The Settlement completed the process of transferring the Property.  In exchange for mutual releases, the Alliance Farm and Ranch, LLC Debtor received $1,500,000.  The Trustee now holds such funds in trust and seeks to use this Combined Plan and Disclosure Statement to distribute such funds in an orderly manner.

**8.     Adversary No. 25-03382.**

This adversary ("Adversary") involves claims by the Insiders that are either (i) claims against the Debtors; and/or (ii) claims of the estate; and/or (iii) claims that overlap with (i) and (ii). The claims against the Debtors shall be treated according to the Plan under Class 4 after the claims resolution process contemplated by this Plan.  The estate claims will be reserved properly in the Plan Supplement and prosecuted for the benefit of Class 3 pursuant to this Plan.  The parties to the Adversary and the Trustee entered into an Agreed Injunction, which stays all actions in the Adversary and prevents any sale/transfer of the assets held by the Non-Debtor Insider Entities.

---

[7]The Administrative Expense Claims Bar Date will be amended to identify the date certain in the Plan Supplement.

## IV. CONFIRMATION AND VOTING

### A. Plan Confirmation Hearing.

The Bankruptcy Code, Bankruptcy Rules, and Local Rules require the Bankruptcy Court, after appropriate notice, to hold a hearing on approval and confirmation of this Combined Plan and Disclosure Statement. On _____ __, 2025, the Bankruptcy Court entered an order scheduling the Plan Confirmation Hearing for _____ ___, **2025 at _:_0 _.m. (prevailing Central Time)**, to consider, among other things, final approval and confirmation of this Combined Plan and Disclosure Statement under section 1125 of the Bankruptcy Code [Doc No. ____]. Notice of the Plan Confirmation Hearing will be provided to all known Creditors, Holders of Equity Interests, and other parties in interest. The Plan Confirmation Hearing may be adjourned from time to time by the Debtors without further notice, except for an announcement of the adjourned date made at the Plan Confirmation Hearing or by filing a notice with the Bankruptcy Court.

Any objection to confirmation of this Plan and approval of the Disclosure Statement on a final basis must be in writing, must conform to the Bankruptcy Rules, must set forth the name of the objector, the nature and amount of Claims or Equity Interests held or asserted by the objector against the Debtors, the basis for the objection and the specific grounds of the objection, and must be filed with the Bankruptcy Court, with a copy to chambers, together with proof of service thereof, and served upon the following parties by no later than _____ __, **2025 at _:_0 p.m. (prevailing Central Time**) through the CM/ECF system, with courtesy copies by email: (i) Counsel to the Trustee at the contact information on the first page of this Plan; (ii) Counsel to the Committee at the contact information on the first page of this Plan; (iii) the Office of the United States Trustee for Region 7; and (iv) such other parties as the Bankruptcy Court may order.

Bankruptcy Rule 9014 governs objections to approval and confirmation of this Combined Plan and Disclosure Statement. **UNLESS AN OBJECTION TO APPROVAL AND CONFIRMATION OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT IS TIMELY SERVED UPON THE PARTIES LISTED ABOVE AND FILED WITH THE BANKRUPTCY COURT, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT IN DETERMINING WHETHER TO APPROVE AND CONFIRM THIS COMBINED PLAN AND DISCLOSURE STATEMENT.**

### B. Requirements for Plan Confirmation.

The Bankruptcy Court will confirm this Plan only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among the requirements for confirmation in these Chapter 11 Cases is that this Plan be (i) accepted by all impaired Classes of Claims and Equity Interests or, if rejected by an impaired Class, that this Plan "does not discriminate unfairly" against and is "fair and equitable" with respect to such Class; and (ii) feasible. The Bankruptcy Court must also find, among other things, that:

      a.    this Plan has classified Claims and Equity Interests in a permissible manner;

      b.    this Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and

c.      this Plan has been proposed in good faith.

**C.      Best Interests of the Creditors Test.**

The Bankruptcy Code requires that, with respect to an impaired class of claims or interests, each holder of an impaired claim or interest in such class either (i) accept the plan or (ii) receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount (value) such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code on the effective date.

The costs of a chapter 7 liquidation would necessarily include fees payable to a trustee in bankruptcy, as well as fees likely to be payable to attorneys, advisors, and other professionals that a chapter 7 trustee may engage to carry out its duties under the Bankruptcy Code. Other costs of liquidating the Debtors' Estates would include the expenses incurred during the Chapter 11 Cases and allowed by the Bankruptcy Court in the chapter 7 case. The foregoing types of claims, costs, expenses, and fees that may arise in a chapter 7 liquidation case would be paid in full before payments would be made towards chapter 11 administrative, priority, and unsecured claims. Like a chapter 7 trustee, the Liquidating Trustee will have the power to retain professionals, but unlike a chapter 7 trustee's professionals, the Bankruptcy Court does not need to approve the retention of such professionals, or their fees. The "learning curve" that the chapter 7 trustee and new professionals would be faced with comes with potential additional costs to the Estate and with a delay compared to the timing of Distributions under the Plan. Furthermore, a chapter 7 trustee would be entitled to statutory fees relating to the Distributions. Accordingly, a portion of the Cash that will be available for Distribution to Holders of Allowed Claims would instead be paid to the chapter 7 trustee. Notwithstanding, like the chapter 7 trustee, the Liquidating Trustee also will be paid fees for his or her services.

Accordingly, as demonstrated in the liquidation analysis, the Debtors believe that in a chapter 7 liquidation, Holders of Claims would receive less than such Holders would receive under this Plan. There can be no assurance, however, as to values that would actually be realized in a chapter 7 liquidation, nor can there be any assurance that a Bankruptcy Court would accept the Plan Proponent's conclusions or concur with such assumptions in making its determinations under section 1129(a)(7) of the Bankruptcy Code.

**D.      Plan Feasibility.**

Pursuant to section 1129(a)(11) of the Bankruptcy Code, a debtor must demonstrate that a bankruptcy court's confirmation of a plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor under the plan, unless such liquidation or reorganization is proposed under the plan. Pursuant to the Plan, the Debtors' remaining assets will be transferred to the Liquidating Trust. These Assets will be liquidated and distributed to Holders of Allowed Claims pursuant to the terms of this Plan. Therefore, as this is a liquidating plan, the Bankruptcy Court's confirmation of this Plan will not be followed by liquidation or the need for any further reorganization.

E.      **Classification of Claims and Interests.**

Section 1122 of the Bankruptcy Code requires a plan to place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class.  This Plan creates separate Classes to treat the Other Priority Claims, Other Secured Claims, General Unsecured Claims, and Equity Interests of the Debtors. The Plan Proponents believe that the Plan's classification scheme places substantially similar Claims or Equity Interests in the same Class and thus meets the requirements of section 1122 of the Bankruptcy Code.

**EXCEPT AS SET FORTH IN THE PLAN OR UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 3019(A), UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE PLAN BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.**

The classification of Claims and Equity Interests and the nature of Distributions to members of each Class are summarized herein. The Plan Proponents believes that the consideration, if any, provided under the Plan to Holders of Claims reflects an appropriate resolution of their Claims taking into account the differing nature and priority (including applicable contractual subordination) of such Claims and Equity Interests. The Bankruptcy Court, however, must find that a number of statutory tests are met before it may confirm the Plan.  Many of these tests are designed to protect the interests of Holders of Claims or Equity Interests who are not entitled to vote on the Plan, or do not vote to accept the Plan, but who will be bound by the provisions of the Plan if it is confirmed by the Bankruptcy Court.

F.      **Impaired Claims or Interests.**

Pursuant to section 1126 of the Bankruptcy Code, only the Holders of Claims in Classes "Impaired" by the Plan and receiving a Distribution under this Plan may vote on this Plan. Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be "Impaired" if the Plan alters the legal, equitable, or contractual rights of the Holders of such Claims or Equity Interests treated in such Class.  The Holders of Claims or Equity Interests not Impaired by the Plan are deemed to accept the Plan and do not have the right to vote on the Plan.  The Holders of Claims or Equity Interests in any Class that will not receive any Distribution or retain any property pursuant to this Plan are deemed to reject this Plan and do not have the right to vote.

**ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASS 3.**

G.      **Eligibility to Vote on this Plan.**

Unless otherwise ordered by the Bankruptcy Court, only Holders of Allowed Claims in Class 3, may vote on this Plan. To vote on this Plan, you must hold an Allowed Claim in Class 3 or be the Holder of a Claim that has been temporarily Allowed for voting purposes under Bankruptcy Rule 3018(a).

**H.**     <u>**Voting Procedure and Deadlines.**</u>

For your Ballot to count, you must (1) properly complete, date, and execute the Ballot and (2) deliver the Ballot to the Balloting Agent at one of the following addresses: (i) if by First Class mail, Alliance Farm and Ranch, LLC and Alliance Energy Partners, LLC, c/o Howley Law, PLLC, Attn: Tom A. Howley, TC Energy Center, 700 Louisiana Street, Suite 4545, Houston, Texas 77002; or (ii) if by hand delivery or overnight delivery, Alliance Farm and Ranch, LLC and Alliance Energy Partners, LLC, c/o Howley Law, PLLC, Attn: Tom A. Howley, TC Energy Center, 700 Louisiana Street, Suite 4545, Houston, Texas 77002.

The Trustee must **RECEIVE** original ballots on or before _____ __, **2025 at _:_0 _.m. (prevailing Central Time)**. Except as otherwise ordered by the Bankruptcy Court, you may not change your vote once a Ballot is submitted to the Trustee.

Any Ballot that is timely received, executed, that contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of this Plan will be counted and cast as an acceptance or rejection, as the case may be, of this Plan.

The following Tabulation Rules will be utilized for tabulating the Ballots in determining whether this Plan has been accepted or rejected by the Class in which such Holder holds a Claim or Equity Interest:

       a.      any Ballot that is timely received, that contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of the Plan will be counted and cast as an acceptance or rejection, as the case may be, of the Plan. Except as otherwise ordered by the Bankruptcy Court, a claimant may not change its vote once a Ballot is submitted to the Trustee;

       b.      any Ballot that is illegible or contains insufficient information to permit the identification of the claimant will not be counted;

       c.      any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan will not be counted;

       d.      any Ballot cast for a Claim designated or determined as unliquidated, contingent, or disputed or as zero or unknown in amount and for which no 3018(a) Motion has been filed by the 3018(a) Motion Deadline will not be counted;

       e.      any Ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of the Plan or that indicates both acceptance and rejection of the Plan will not be counted;

       f.      any Ballot received by the Trustee after the Voting Deadline will not be counted;

       g.      any Ballot not bearing an original signature will not be counted; and

h.      any Ballot received by the Trustee by facsimile, e-mail or other electronic communication will not be counted.

**I.      Acceptance of this Plan.**

As a Creditor, your acceptance of this Plan is important.  For this Plan to be accepted by an impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept this Plan.  At least one impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept this Plan.  The Plan Proponents strongly urge that you vote to accept this Plan but you are not required to accept it and failure to accept will not preclude you from receiving a Distribution under this Plan to which you are entitled.  **YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY RETURN THE BALLOT OR SUBMIT A BALLOT VIA THE BMC ELECTRONIC BALLOTING SERVICE.  PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE CREDITOR AND, IF SUBMITTING A PHYSICAL BALLOT, INCLUDE AN ORIGINAL SIGNATURE ON THE BALLOT.**

**J.      Elimination of Vacant Classes.**

Any Class of Claims or Equity Interests that does not contain, as of the date of commencement of the Plan Confirmation Hearing, a Holder of an Allowed Claim or Equity Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from this Combined Plan and Disclosure Statement for all purposes, including for purposes of determining acceptance of this Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

## V.  TREATMENT OF UNCLASSIFIED CLAIMS

**A.      Administrative Expense Claims.**

Unless otherwise agreed by the Holder of an Administrative Expense Claim and the Debtors or the Liquidating Trustee, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash by the Debtors or Liquidating Trust, as applicable: (a) if Allowed, on the Effective Date or as soon as practicable thereafter, but in no event later than 30 days after the Effective Date (or, if not then due, when such Allowed Administrative Expense Claim is due or as soon as practicable thereafter); (b) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter, but in no event later than 30 days after such Claim is Allowed; (c) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or Liquidating Trust, as applicable; or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Holders of Administrative Expense Claims accruing from the Petition Date through and including the Effective Date, other than Professional Fee Claims, shall file with the Bankruptcy Court and serve on the Liquidating Trustee requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, no later than the Administrative Expense Claim Bar Date. Any such Claim

not filed by such deadline shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof.

**B.**     **Professional Fee Claims.**

On the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order approving the final fee applications of the applicable Professional, the Debtors, or the Liquidating Trust, as applicable, shall pay all unpaid amounts approved by the Bankruptcy Court owing to such Professional from the Professional Fee Escrow Account, relating to prior periods and for the period ending on the Effective Date. Each Professional shall estimate its Professional Fee Claims due for periods that have not been billed as of the Effective Date. On or prior to thirty (30) days after service of notice of the Effective Date, each Professional shall file with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date; provided that the Liquidating Trustee may pay retained Liquidating Trust Advisors, Professionals or other Entities in the ordinary course of business for services rendered and expenses incurred after the Effective Date, without further Bankruptcy Court order. Objections to any Professional Fee Claim must be filed and served on counsel to the Liquidating Trustee and the requesting party no later than twenty-one (21) days after such Professional Fee Claim is filed with the Bankruptcy Court, and served on the parties entitled to service under the Interim Compensation Order. For the avoidance of doubt, to the extent there is any conflict between the terms of the Plan Confirmation Order or this Combined Plan and Disclosure Statement, the Plan Confirmation Order shall govern. Within ten (10) days after entry of a Final Order with respect to its final fee application, each Professional shall remit any overpayment or unused retainer to the Liquidating Trust, and the Liquidating Trust, shall pay any unpaid amounts approved by the Bankruptcy Court to each Professional.

Holders of Professional Fee Claims shall not constitute Beneficiaries of the Liquidating Trust and shall not receive any Distributions from the Liquidating Trust or Liquidating Trust Assets on account of their Professional Fee Claims; _provided, however_, that Liquidating Trust Advisors, even if formerly Professionals, shall be entitled to payment from the Liquidating Trust for fees and expenses incurred in service of the Liquidating Trust. For the avoidance of doubt, neither the Liquidating Trust nor the Liquidating Trustee shall have any liability with respect to any Professional Fee Claims and shall not be required to satisfy any Professional Fee Claims from any Liquidating Trust Assets.

As soon as is reasonably practicable after the Plan Confirmation Date and no later than the Effective Date, the Trustee shall fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The sole source of payment of Allowed Professional Fee Claims shall be the amounts held in the Professional Fee Escrow Account. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. The Trustee shall act as escrow agent for the Professional Fee Escrow Account. No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. For the avoidance of doubt, any amounts remaining in the Professional Fee Escrow Account after the payment in full of all Allowed Professional Fee Claims shall be transferred to the Liquidating Trust.

## C.    Priority Tax Claims.

On the later of the Effective Date or the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in each such case, as soon as practicable thereafter, but in no event later than 30 days after such event, each Holder of an Allowed Priority Tax Claim will be paid an amount equal to the Allowed amount of such Claim plus, to the extent applicable, any amount required to comply with section 1129(a)(9)(C) or 1129(a)(9)(D) of the Bankruptcy Code, in Cash by the Debtors or, if applicable, the Liquidating Trust, from the Administrative Expense and Priority Escrow Account. For the avoidance of doubt, the sole source of payment of Allowed Priority Tax Claims shall be the amounts held in the Administrative Expense and Priority Escrow Account. Neither the Liquidating Trust nor the Liquidating Trustee shall have any liability with respect to any Priority Tax Claims and shall not be required to satisfy any Priority Tax Claims from Liquidating Trust Assets.

## VI.   CLASSIFICATION OF CLAIMS AND INTERESTS; ESTIMATED RECOVERIES

Claims – other than Administrative Expense Claims, Priority Tax Claims, and Statutory Fees – are classified for all purposes, including voting, confirmation, and Distribution pursuant to the Plan, as follows:

| Class | Type | Status Under Plan | Voting Status | Recovery Estimate |
|-------|------|-------------------|---------------|-------------------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept | 100% |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept | 100% |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote | 30%* |
| 4 | Insider Unsecured Claims | Impaired | Deemed to Reject | 0% |
| 5 | Equity Interests | Impaired | Deemed to Reject | 0% |

## VII.  TREATMENT OF CLAIMS AND INTERESTS

## A.    Classification and Treatment of Claims and Interests.

**1.    Class 1—Other Priority Claims.**

a.    *Classification*: Class 1 consists of all Other Priority Claims.

b. *Treatment:* Each Holder of an Allowed Other Priority Claim shall receive in full and final satisfaction of such Holder's Allowed Claim: (i) Cash in an amount equal to such Allowed Claim on the Effective Date or as soon thereafter as is reasonably practicable, or if disputed, as provided elsewhere in the Plan, or (ii) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

c. *Voting*: Class 1 is Unimpaired, and Holders of Allowed Other Priority Claims are conclusively deemed to have accepted this Plan.

2. **Class 2—Other Secured Claims.**

a. *Classification*: Class 2 consists of Allowed Other Secured Claims.

b. *Treatment*: On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Other Secured Claim shall receive or retain, in full and final satisfaction and settlement of such Claim, at the election of the Debtors, except to the extent any Holder of an Allowed Other Secured Claim agrees to different treatment: (i) the collateral securing such Allowed Other Secured Claim; (ii) Cash in an amount equal to the value of the collateral securing such Allowed Other Secured Claim; or (iii) the treatment required under section 1124(2) of the Bankruptcy Code for such Claim to be reinstated or rendered unimpaired.

c. *Voting*: Class 2 Other Secured Claims is unimpaired; Holders of such Claims are deemed to accept the Plan.

3. **Class 3—General Unsecured Claims.**

a. *Classification*: Class 3 consists of all General Unsecured Claims. The Debtors estimate that the amount of General Unsecured Claims is no less than 2.5 million dollars. .[8]

b. *Treatment*: In full and final satisfaction of each Allowed General Unsecured Claim, the Holder of such Claim shall receive in full and final satisfaction of such Holder's Allowed Claim its Pro Rata Share of Liquidating Trust Units.

c. *Voting*: Class 3 General Unsecured Claims are impaired; Holders of such Claims are entitled to vote on the Plan.

4. **Class 4—Insider Unsecured Claims**

a. *Classification*: Class 4 consists of all Insider Unsecured Claims.

---

[8] The amount of General Unsecured Claims is subject to ongoing review and without prejudice to the rights of the Trustee, the Committee, and the Liquidating Trustee to object to such Claims.

b. *Treatment*: In full and final satisfaction of each Allowed Insider Unsecured Claim, the Holder of such Claim shall receive in full and final satisfaction of such Holder's Allowed Claim its Pro Rata Share of Liquidating Trust Units after Allowed General Unsecured Claims are satisfied in full.

c. *Voting*: Class 4 Insider Unsecured Claims are impaired; Holders of such Insider Unsecured Claims are deemed to have rejected the Plan and are not entitled to vote.

**5. Class 5—Equity Interests.**

a. *Classification*: Class 5 consists of all Equity Interests.

b. *Treatment*: On the Effective Date, all Equity Interests will be deemed cancelled and extinguished. Holders of Equity Interests will receive no property or Distribution under the Plan on account of such Equity Interests.

c. *Voting*: Class 5 Equity Interests are impaired; Holders of such Equity Interests are deemed to have rejected the Plan and are not entitled to vote.

## VIII. <u>THE LIQUIDATION OF THE DEBTORS</u>

On and after the Effective Date, the Liquidating Trust and the Liquidating Trustee will, among other things, (i) investigate and, if appropriate, pursue Causes of Action and Avoidance Actions, including the Liquidating Trust Causes of Action, (ii) administer, monetize and liquidate the Liquidating Trust Assets, (iii) resolve all Disputed Claims, if appropriate, and (iv) make all Distributions from the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement. The Liquidating Trust and Liquidating Trustee shall be authorized to take such actions without further order of the Bankruptcy Court; *provided, however,* the Liquidating Trustee may seek such Bankruptcy Court authority as the Liquidating Trustee, in its absolute discretion, deems necessary or appropriate. The transfer of the Liquidating Trust Assets attributable to the Beneficiaries of the Liquidating Trust shall be treated as a transfer of such assets directly to such Beneficiaries followed by a contribution of the Liquidating Trust Assets to the Liquidating Trust.

## IX. <u>PROVISIONS REGARDING THE LIQUIDATING TRUST</u>

### A. <u>Appointment of the Liquidating Trustee.</u>

The Liquidating Trustee shall be identified in the Plan Supplement and shall be selected by the Committee. All compensation for the Liquidating Trustee, and Liquidating Trust Advisors, shall be paid from the Liquidating Trust Assets, in accordance with the Liquidating Trust Agreement. The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of his/her duties unless otherwise ordered by the Bankruptcy Court. On the Effective Date, all Beneficiaries of the Liquidating Trust shall be deemed to have ratified and become bound by the terms and conditions of the Liquidating Trust Agreement. In the event that the Liquidating Trustee resigns or is removed, terminated, or otherwise unable to serve as the Liquidating Trustee, then a successor shall be appointed as set forth in the Liquidating Trust

Agreement. Any successor Liquidating Trustee appointed shall be bound by and comply with the terms of the Plan, the Plan Confirmation Order, and the Liquidating Trust Agreement.

## B.     Creation of the Liquidating Trust.

On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, among other things, (i) investigating and, if appropriate, pursuing the Liquidating Trust Causes of Action, (ii) administering, monetizing and liquidating the Liquidating Trust Assets, (iii) resolving all Disputed Claims, if appropriate, and (iv) making all Distributions from the Liquidating Trust as provided for in the Plan and the Liquidating Trust Agreement. The Liquidating Trust Agreement shall be filed with the Plan Supplement. The Liquidating Trust Agreement is incorporated herein in full and is made a part of this Combined Plan and Disclosure Statement.

Upon execution of the Liquidating Trust Agreement, the Liquidating Trustee shall be authorized to take all steps necessary to complete the formation of the Liquidating Trust; provided, that, prior to the Effective Date, the Trustee, in consultation with the Committee, may take such steps in furtherance of the formation of the Liquidating Trust as may be necessary, useful or appropriate under applicable law to ensure that the Liquidating Trust shall be formed and in existence as of the Effective Date. The Liquidating Trust shall be administered by the Liquidating Trustee in accordance with the Liquidating Trust Agreement.

Except for those Liquidating Trust Assets attributable to the Disputed Claims Reserve, it is intended that the Liquidating Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and as a "grantor trust" within the meaning of Sections 671 through 679 of the Internal Revenue Code. In furtherance of this objective, the Liquidating Trustee shall, in its business judgment, make continuing best efforts not to unduly prolong the duration of the Liquidating Trust and have no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. All Liquidating Trust Assets held by the Liquidating Trust on the Effective Date (except for those assets attributable to the Disputed Claims Reserve) shall be deemed for federal income tax purposes to have been distributed by the Debtors on a Pro Rata share basis to those Holders of Allowed Claims that are entitled to receive Distributions from the Liquidating Trust, and then contributed by such Holders to the Liquidating Trust in exchange for the Beneficial Interests. All Holders of Claims have agreed or shall be deemed to have agreed to use the valuation of the Assets transferred to the Liquidating Trust as established by the Liquidating Trustee for all federal income tax purposes. The Beneficiaries under the Liquidating Trust will be treated as the grantors and deemed owners of the Liquidating Trust. The Liquidating Trust will be responsible for filing information on behalf of the Liquidating Trust as grantor trust pursuant to Treasury Regulation Section 1.671-4(a).

## C.     Beneficiaries of the Liquidating Trust.

On the Effective Date, each Holder of an Allowed General Unsecured Claim shall, by operation of the Plan and Plan Confirmation Order, receive a Pro Rata Share of Liquidating Trust Units, as provided in Section VII. Holders of Disputed General Unsecured Claims shall be

contingent Beneficiaries and funds for their Distribution shall be held by the Liquidating Trustee in the Disputed Claims Reserve pending allowance or disallowance of such Claims.

Upon the occurrence of the Effective Date, no other Entity or Person, including the Debtors, shall have any interest, legal, beneficial, or otherwise, in the Liquidating Trust, the Liquidating Trust Assets, or the Liquidating Trust Causes of Action. Without limiting the generality of the preceding sentence, and for the avoidance of doubt, Holders of Administrative Priority Claims, Professional Fee Claims, Priority Tax Claims, and Claims in Classes 1, 2, , and 4 of this Plan shall not constitute Beneficiaries of the Liquidating Trust.  Neither the Liquidating Trust nor the Liquidating Trustee shall have any liability with respect to any such Claims and shall not be required to satisfy any such Claims from the Liquidating Trust Assets.

The Beneficial Interests shall not be evidenced by any certificate, security, receipt, or any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee.  Any and all Beneficial Interests shall be non-transferable except (i) upon death of the Holder, (ii) by operation of law or (iii) to an affiliate of the Holder.  Beneficiaries shall have no voting rights with respect to such Beneficial Interests. The Liquidating Trust shall have a term of five (5) years from the Effective Date, without prejudice to the rights of the Liquidating Trust and Liquidating Trustee to extend such term by the filing of a motion in the Bankruptcy Court, conditioned upon the Liquidating Trust not becoming subject to the Securities Exchange Act of 1934 (as now in effect or hereafter amended).

**D.      Vesting and Transfer of Assets to the Liquidating Trust.**

Except as otherwise set forth in the Plan, pursuant to section 1141(b) of the Bankruptcy Code, the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all Claims, Liens, charges or other encumbrances, on the condition that the Liquidating Trustee comply with the terms of the Plan, including the making of all payments and distributions to Creditors provided for in the Plan.  If the Liquidating Trustee defaults in performing under the provisions of this Plan and the Chapter 11 Cases are converted to a Chapter 7 Case, all property vested in the Liquidating Trust and all subsequently acquired property owned as of or after the conversion date shall revest and constitute property of the Estate in the Chapter 7 Case. The Liquidating Trustee may abandon or otherwise not accept any Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, has no value or will be unduly burdensome to the Liquidating Trust. Any Liquidating Trust Assets that the Liquidating Trustee so abandons or otherwise does not accept shall cease to be Liquidating Trust Assets. The Liquidating Trust Assets shall vest in the Liquidating Trust for the benefit of the Beneficiaries and the Debtors and their Estates will have no further interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust.

On the Effective Date, the Liquidating Trustee shall be deemed the representative of the of the Debtors' Estates pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code and as such shall be vested with the authority and power (subject to the Liquidating Trust Agreement and the Plan) to, among other things: (i) administer, object to or settle any Claims; (ii) make distributions in accordance with the terms of the Plan and Liquidating Trust Agreement, and (iii) carry out the provisions of the Plan related to the Liquidating Trust, including but not limited to, prosecuting or settling all Causes of Action in his or her capacity as trustee for the benefit of the Beneficiaries.  As the representative of the Debtors' Estates, in its capacity as trustee for the

benefit of the Beneficiaries, the Liquidating Trustee will succeed to all of the rights and powers of the Debtors and their Estates with respect to all Causes of Action assigned and transferred to the Liquidating Trust, and the Liquidating Trustee will be substituted and will replace the Debtors, their estates, and any official committee appointed in this case, in all such Causes of Action, whether or not such claims are pending in filed litigation.

**E.      Certain Powers and Duties of the Liquidating Trust and Liquidating Trustee.**

**1.      General Powers of the Liquidating Trustee**

The rights and powers of the Liquidating Trustee are specified in the Liquidating Trust Agreement, which shall be filed with the Plan Supplement.  This Section IX provides a summary of the terms of the Liquidating Trust Agreement.  In the event of any conflict between this Section IX and the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement control, unless otherwise ordered in the Plan Confirmation Order. The omission of any terms or provisions of the Liquidating Trust Agreement from this summary shall not constitute a conflict between this section and the Liquidating Trust Agreement.

Except as expressly set forth in this Combined Plan and Disclosure Statement, the Plan Confirmation Order, or the Liquidating Trust Agreement, and subject to his/her duties and obligations, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have absolute discretion in the administration of the Liquidating Trust and Liquidating Trust Assets.

The Liquidating Trust Agreement generally will provide for, among other things: (i) the payment of the Liquidating Trust Operating Expenses; (ii) the payment of other reasonable expenses of the Liquidating Trust; (iii) the retention and compensation of counsel, accountants, financial advisors, or other professionals for the Liquidating Trust; (iv) the investment of Cash by the Liquidating Trustee within certain limitations, including those specified in the Plan; (v) the orderly liquidation of the Liquidating Trust Assets; (vi) litigation of the Liquidating Trust Causes of Action, which may include the prosecution, settlement, abandonment, or dismissal of any such Causes of Action; and (vii) the prosecution and resolution of objections to such Claims as the Liquidating Trustee deems reasonable and appropriate.

The Liquidating Trustee, on behalf of the Liquidating Trust, may employ, without further order of the Bankruptcy Court, Liquidating Trust Advisors to assist in carrying out the Liquidating Trustee's duties under the Plan, Plan Confirmation Order, and Liquidating Trust Agreement and may compensate and reimburse the reasonable expenses of the Liquidating Trust Advisors from the Liquidating Trust Assets in accordance with the Plan and the Liquidating Trust Agreement without further Order of the Bankruptcy Court.

The Liquidating Trust Agreement provides that the Liquidating Trustee shall be indemnified by and receive reimbursement from the Liquidating Trust Assets against and from any and all loss, liability, expense (including reasonable attorneys' fees), or damage which the Liquidating Trustee incurs or sustains, in good faith and without willful misconduct, gross negligence, or fraud, acting as Liquidating Trustee under or in connection with the Liquidating Trust Agreement.

On and after the Effective Date, the Liquidating Trustee shall have the power and responsibility to do all acts contemplated by the Plan and Liquidating Trust Agreement to be done by the Liquidating Trustee and all other acts that may be necessary or appropriate in connection with the disposition of the Liquidating Trust Assets and the distribution of the proceeds thereof, as contemplated by the Plan and in accordance with the Liquidating Trust Agreement. In all circumstances, the Liquidating Trustee shall act in its reasonable discretion in the best interests of the Beneficiaries pursuant to the terms of the Plan and the Liquidating Trust Agreement.

### 2. Books and Records

On or before the Effective Date, the Debtors or the Trustee, as applicable, shall provide the Liquidating Trustee an electronic copy of or access to any and all of their documents, books, records, files, and emails available to the Debtors and their Estates.

### 3. Investments of Cash

To the extent provided in the Liquidating Trust Agreement, the Liquidating Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code or in other prudent investments; provided, however, that such investments are permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

### 4. Costs and Expenses of Administration of the Liquidating Trust

All Liquidating Trust Operating Expenses, including the costs associated with retaining Liquidating Trust Advisors, shall be the responsibility of, and paid by, the Liquidating Trust in accordance with the Liquidating Trust Agreement from the Liquidating Trust Assets.

### 5. Reporting

No later than forty-five (45) days after the last day of each calendar quarter in which the Liquidating Trust shall remain in existence, the Liquidating Trustee shall file a report of all Liquidating Trust Assets held and received by the Liquidating Trust, all Available Trust Cash (as defined in the Liquidating Trust Agreement) disbursed to Beneficiaries, and all fees, income, and expenses related to the Liquidating Trust during the preceding calendar quarter.

### F. Post-Effective Date Notice.

After the Effective Date, to continue to receive notice of documents pursuant to Bankruptcy Rule 2002, all Creditors and other parties in interest (except those listed in the following sentence) must file a renewed notice of appearance requesting receipt of documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Liquidating Trustee is authorized to limit the list of parties in interest receiving notice of documents pursuant to Bankruptcy Rules 2002 to the Office of the United States Trustee, the United States, and those parties in interest who have filed such renewed requests; provided, however, that the Liquidating Trustee also shall serve any known parties directly affected by or having a direct interest in, the particular filing in accordance with Local Rule 2002-1(b).  Notice given in accordance with the foregoing procedures shall be deemed

adequate pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. This information shall be provided in the Notice of Effective Date.

**G.** **Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets; Preparation and Filing of Tax Returns for Debtors.**

For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under section 301.7701-4 of the Treasury regulations and that such trust be owned by its Beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a distribution from the Estate of an undivided interest in each of the Liquidating Trust Assets ((i) to the extent of the value of their respective share in the applicable assets and (ii) except for those assets attributable to the Disputed Claims Reserve) and then contributed such interests to the Liquidating Trust, and the Liquidating Trust's Beneficiaries will be treated as the grantors and owners thereof.

The Trustee shall be responsible for filing all required federal, state, and local tax returns and/or informational returns for the Debtors (including final tax returns).

The Liquidating Trust shall be responsible for filing all required federal, state and local tax returns and/or informational returns for the Liquidating Trust and shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, the Holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each Holder. Notwithstanding any other provision of this Combined Plan and Disclosure Statement, (a) each Holder of an Allowed Claim that is to receive a Distribution from the Liquidating Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee to allow it to comply with its tax withholding and reporting requirements. Any property to be distributed by the Liquidating Trust shall, pending the implementation of such arrangements, be treated as an Unclaimed Distribution to be held by the Liquidating Trustee, as the case may be, until such time as the Liquidating Trustee is satisfied with the Holder's arrangements for any withholding tax obligations. If the Liquidating Trustee makes such a request and the Holder fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the Liquidating Trust and any Claim or Equity Interest in respect of such Distribution shall be disallowed and forever barred from receiving a Distribution under the Plan or Liquidating Trust Agreement.

The Liquidating Trustee (i) may timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulations Section 1.468B-9, and (2) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including the Liquidating Trustee and the Holders of Trust Interests) shall report for U.S. federal, state and

local income tax purposes consistently with the foregoing.  The Liquidating Trustee shall file all income tax returns with respect to any income attributable to a "disputed ownership fund" and shall pay the U.S. federal, state and local income taxes attributable to such disputed ownership fund based on the items of income, deduction, credit, or loss allocable thereto.

**H.      Term of Liquidating Trust.**

The Liquidating Trustee shall be discharged and the Liquidating Trust shall be terminated, at such time as (i) all Disputed or temporarily Allowed Claims have been resolved, (ii) all of the Liquidating Trust Assets have been liquidated, (iii) all duties and obligations of the Liquidating Trustee under the Liquidating Trust Agreement, the Plan and the Plan Confirmation Order have been fulfilled, (iv) all Distributions required to be made by the Liquidating Trust under the Plan, the Liquidating Trust Agreement and the Plan Confirmation Order have been made, and (v) the Chapter 11 Cases have been closed; provided, however, that in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion filed prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed three (3) years per extension, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.  Upon the Filing of such a motion, the term of the Liquidating Trust shall be automatically extended through entry of a Final Order thereon, unless the extension would adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes.

**I.      Limitation of Liability of the Liquidating Trustee.**

As shall be provided in the Liquidating Trust Agreement, the Liquidating Trust shall indemnify the Liquidating Trustee and any retained professionals against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Liquidating Trustee and its professionals may incur or sustain by reason of being or having been a Liquidating Trustee or professionals thereof for performing any functions incidental to such service; provided, however, the foregoing shall not relieve the Liquidating Trustee or any retained professionals from liability for bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing, or, in the case of an attorney or other professional and, as required any applicable rules of professional conduct, malpractice.

## X.  MEANS FOR IMPLEMENTATION

**A.      Preservation of Right to Conduct Investigations.**

The preservation for the Liquidating Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Liquidating Trust Assets. Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 or any other law, rule, or order, held by the Debtors prior to the Effective Date with respect to the Liquidating Trust Assets shall vest with the Liquidating Trust and shall continue until dissolution of the Liquidating Trust.

**B.**     **Prosecution and Resolution of Causes of Action and Avoidance Actions.**

From and after the Effective Date, prosecution and settlement of all Causes of Action and Avoidance Actions conveyed to the Liquidating Trust shall be the sole responsibility of the Liquidating Trust pursuant to the Plan and the Plan Confirmation Order.  The Liquidating Trustee may pursue such Causes of Action and Avoidance Actions, as appropriate, in accordance with the best interests of the Liquidating Trust Beneficiaries. From and after the Effective Date, with respect to the Liquidating Trust Assets, the Liquidating Trust shall have exclusive rights, powers, and interests of the Estate to pursue, settle, or abandon such Causes of Action and Avoidance Actions as the sole representative of the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. Notwithstanding the occurrence of the Effective Date, all Causes of Action and Avoidance Actions that are not expressly released or waived under the Plan are reserved and preserved and vest in the Liquidating Trust in accordance with the Plan.

**C.**     **Substantive Consolidation**

The Plan contemplates and is predicated upon entry of an order substantively consolidating the Estates and the Chapter 11 Cases as set forth below.

(a) Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to sections 105(a) and 1123(a)(5)(C) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Estates for all purposes of confirming and consummating the Plan, including, but not limited to, voting, Confirmation, and Distributions.

(b) On and after the Effective Date, (i) all Assets and liabilities of the Debtors shall be treated as though they were pooled, (ii) each Claim Filed or to be Filed against any Debtor, as to which two or more Debtors are co-liable as a legal or contractual matter, shall be deemed Filed as a single Claim against, and a single obligation of, the Debtors, (iii) all Claims held by a Debtor against any other Debtor shall be cancelled or extinguished, (iv) no Distributions shall be made under the Plan on account of any Claim held by a Debtor against any other Debtor, (v) all Interests shall be cancelled, (vi) no Distributions shall be made under the Plan on account of any Interest held by a Debtor in any other Debtor, (vii) all guarantees of any Debtors of the obligations of any other Debtor shall be eliminated so that any Claim against any Debtor and any Claim based upon a guarantee thereof executed by any other Debtor shall be treated as one Claim against the substantively-consolidated Debtors, and (viii) any joint or several liability of any of the Debtors shall be one obligation of the substantively consolidated Debtors and any Claims based upon such joint or several liability shall be treated as one Claim against the substantively-consolidated Debtors.

(c) The substantive consolidation of the Debtors under the Plan shall not (other than for purposes related to funding Distributions under the Plan) affect (i) the legal and organizational structure of the Debtors, (ii) Executory Contracts that were entered into during the Chapter 11 Cases or that have been or will be assumed or rejected, (iii) any agreements entered into by the Liquidating Trust on or after the Effective Date, (iv) except as otherwise provided in the Plan, the Debtors' or the Liquidating Trustee's ability to subordinate or otherwise challenge Claims on an entity-by-entity basis, (v) any Retained Causes of Action, or defenses thereto, which in each case shall survive entry of the Confirmation Order as if there had been no substantive consolidation of

35

the Debtors' Estates, and (vi) Distributions to the Debtors or the Liquidating Trust from any insurance policies or the proceeds thereof. Notwithstanding the substantive consolidation called for herein, each and every Debtor shall remain responsible for the payment of U.S. Trustee Fees until its particular case is closed, dismissed or converted.

(d) This Combined Plan and Disclosure Statement shall serve as, and shall be deemed to be, a motion for entry of an order of the Bankruptcy Court approving the substantive consolidation of the Estates and the Chapter 11 Cases. If no objection to the Plan is timely Filed and served by any Holder of an Impaired Claim affected by the Plan as provided herein on or before the Voting Deadline or such other date as may be established by the Bankruptcy Court, the Plan, including the substantive consolidation of the Estates and the Chapter 11 Cases, may be approved by the Bankruptcy Court as part of the Confirmation Order. If any such objections are timely Filed and served, the Plan and the objections thereto shall be considered by the Bankruptcy Court at the Confirmation Hearing.

(e) No property that constitutes collateral or any offset or similar right securing any Claim or otherwise shall be augmented or increased and no secured portion of any Claim under section 506(a) of the Bankruptcy Code shall be augmented or increased because of the substantive consolidation of the Estates and the Chapter 11 Cases.

## D.     **Effectuating Documents and Further Transactions.**

All documents, agreements and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Combined Plan and Disclosure Statement, Plan Supplement, the Plan Confirmation Order and any other agreement or document related to or entered into in connection with the Plan, shall become, and shall remain, effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice or Order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person (other than as expressly required by such applicable agreement).  The Liquidating Trustee may, and all Holders of Allowed Claims receiving Distributions pursuant to the Plan, at the request or direction of the Liquidating Trustee shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

## E.     **Funding of Liabilities and Distributions.**

On the Effective Date, the Trustee shall transfer to the Liquidating Trust the Liquidating Trust Assets. The Liquidating Trust shall administer the Liquidating Trust Assets and distribute Available Trust Cash to the Beneficiaries of the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement, Plan, and Plan Confirmation Order. The Liquidating Trust shall be responsible for and shall have standing to evaluate, prosecute and settle all causes of action transferred to the Liquidating Trust.

The Trustee shall transfer to the Liquidating Trust the Liquidating Trust Funding Amount on the Effective Date for the administration of the Liquidating Trust.  In the event of any inconsistency between the terms of the Plan, the Plan Confirmation Order and Liquidating Trust

Agreement regarding the Liquidating Trust, the terms of the Plan shall govern, unless expressly ordered otherwise in the Plan Confirmation Order.

**F.      Release of Liens.**

Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to this Combined Plan and Disclosure Statement, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be deemed fully released without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code or other applicable law, provided however that any tax liens that have been asserted against the Debtors shall not be released until the underlying tax claim has been satisfied.

**G.      Exemption from Securities Laws.**

Any and all Beneficial Interests shall not constitute "securities" and under section 1145 of the Bankruptcy Code, the issuance of beneficial interests in the Liquidating Trust under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.

**H.      Exemption from Certain Taxes and Fees.**

Pursuant to and to the fullest extent permitted by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax or other similar tax or governmental assessment, and upon entry of the Plan Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfer of property without payment of any such tax, recordation fee, or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Plan Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

**I.      Trustee's Privileges as to Certain Causes of Action.**

Effective as of the Effective Date, all Privileges of the Trustee relating to the Liquidating Trust Assets shall be deemed transferred, assigned, and delivered by the Trustee to the Liquidating Trust, without waiver or release, and shall vest with the Liquidating Trust. The Liquidating Trustee shall hold and be the beneficiary of all such Privileges and entitled to assert such Privileges. No such Privilege shall be waived by disclosures to the Liquidating Trustee of the Trustee's documents, information, or communications subject to attorney-client privileges, work product protections, or other immunities (including those related to common interest or joint defense with

third parties), or protections from disclosure held by the Trustee. The Trustee's Privileges relating to the Liquidating Trust Assets will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement; provided, however, prior to waiving such privilege, the Liquidating Trustee shall provide such third party with any written notice to the extent such notice is required by any joint defense or common interest agreements that might have existed at the time Trustee filed the Petitions. Nothing contained herein or in the Plan Confirmation Order, nor any Professional's compliance herewith and therewith, shall constitute a breach of any Privileges of the Trustee.

**J.      Insurance Policies.**

Except as otherwise specifically stated herein, nothing in this Combined Plan and Disclosure Statement, the Plan Confirmation Order, or the Liquidating Trust Agreement, alters the rights and obligations of the Debtors (and their Estates) and the Debtors' insurers (and third-party claims administrators) under the Insurance Policies or modifies the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the Insurance Policies. On the Effective Date, all of the Debtors' rights and their Estates' rights under any Insurance Policy to which the Debtors and/or the Debtors' Estates may have a claim or potential claim for coverage under shall vest with the Liquidating Trust and be fully enforceable by the Liquidating Trust. For the avoidance of doubt, the Trustee is deemed to have assumed all of the Insurance Policies prior to such vesting. Nothing in this provision shall be deemed to be an admission of any fact, liability or other matter whatsoever.

Each applicable insurer under the Insurance Policies is prohibited from, and the Plan Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to the Chapter 11 Cases, this Combined Plan and Disclosure Statement Plan or any provision herein, including the treatment or means of liquidation set out within this Combined Plan and Disclosure Statement for any insured Claims or Causes of Action. For the avoidance of doubt, nothing in Section X.I impairs the rights of the Debtors or the Debtors' directors and officers, or the Liquidating Trust with respect to the Insurance Policies.

**K.      Filing of Monthly and Quarterly Reports and Payment of Statutory Fees.**

All Statutory Fees due and payable prior to the Effective Date shall be paid by the Trustee on the Effective Date. On and after the Effective Date, the Trustee and the Liquidating Trustee shall be jointly and severally liable to pay any and all Statutory Fees when due and payable. The Trustee shall file all monthly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. Provided that the Debtors dissolve on the Effective Date, after the Effective Date, the Liquidating Trustee shall file with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee. If, after the Effective Date, disbursements, other than those made by the Liquidating Trust, are made in any quarter, the entity making such disbursements shall report same to the Liquidating Trustee for inclusion in the appropriate separate quarterly report. The Debtors and the Liquidating Trustee shall remain obligated to pay Statutory Fees to the Office of the U.S. Trustee until the earliest of the Debtors' Chapter 11 Cases being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Expense

Claim in the case and shall not be treated as providing any release under the Plan in connection therewith.

**L.    Completion of Services of Professionals.**

On the Effective Date, the Professionals for the Trustee and the Committee shall be deemed to have completed their services to the Debtors' Estates and such Professionals shall be able to file final and interim applications and be paid for reasonable compensation and reimbursement of expenses related thereto allowed by the Bankruptcy Court in accordance with Section V.B. above. Any of such Professionals may be retained by the Liquidating Trustee to represent the Liquidating Trust.

**M.    Operations of the Debtors Between the Confirmation Date and the Effective Date.**

During the period from the Confirmation Date through and until the Effective Date, the Trustee shall continue to operate the Debtors.

## XI.  PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN

**A.    Distribution Record Date.**

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by the Debtors or their agents shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Equity Interests. The Trustee and the Liquidating Trustee shall have no obligation to recognize any ownership transfer of the Claims or Equity Interests occurring after the Distribution Record Date.   The Trustee and the Liquidating Trustee, or any party responsible for making Distributions shall be entitled to recognize and deal for all purposes under the Plan only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

**B.    Method of Payment.**

Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank or an electronic wire or ACH transfer.

**C.    Claims Objection Deadline.**

The Debtors or Liquidating Trustee, as applicable, to the extent permitted pursuant to this Plan or section 502(a) of the Bankruptcy Code, shall file and serve any objection to any Claim no later than the Claims Objection Deadline; provided, however, the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon motion of the Trustee or the Liquidating Trustee, as applicable, and notice to the Bankruptcy Rule 2002 service list and all parties holding claims as to which the objection is to be extended for cause.

**D.**     <u>No Distribution Pending Allowance.</u>

Notwithstanding any other provision of the Plan or the Liquidating Trust Agreement, no Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by the Plan or the Liquidating Trust Agreement.

**E.**     <u>Reserve of Cash Distributions.</u>

On any date that Distributions are to be made under the terms of the Plan, the Trustee or Liquidating Trustee, or their respective agents, as applicable, shall reserve Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim, but for the pendency of a dispute with respect thereto. Such Cash or property shall be held in a separate bank account maintained by the Trustee or Liquidating Trust, as applicable, for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto, if any.

**F.**     <u>Distribution After Allowance.</u>

The Trustee shall make Distributions to Holders of Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, Other Priority Claims, and Other Secured Claims to the extent such claims are Allowed prior to the Effective Date. After the Effective Date, the Liquidating Trustee shall make such Distributions solely from the Administrative Expense and Priority Escrow Account, as applicable, and shall make Distributions to Holders of Allowed Claims in Classes 1 and 2 as determined in the Liquidating Trustee's discretion in accordance with the Liquidating Trust Agreement.

**G.**     <u>Delivery of Distributions.</u>

Except as provided herein, Distributions to Holders of Allowed Claims shall be made: (i) at the addresses set forth on the respective proofs of Claim filed by such Holders; (ii) at the addresses set forth on any written notices of address changes delivered to the Claims Agent after the date of any related proof of Claim; or (iii) at the address reflected in the Schedules, or, if not reflected in the Schedules, then in other records of the Debtors, if no proof of Claim is filed and the Liquidating Trustee or the Trustee has not received a written notice of a change of address.

If the Distribution to the Holder of any Claim is returned to the Trustee or Liquidating Trustee as undeliverable, no further Distribution shall be made to such Holder unless and until the Trustee or Liquidating Trustee, as applicable, are notified in writing of such Holder's then current address. Undeliverable Distributions shall remain in the possession of the Trustee or Liquidating Trustee until the earlier of (i) such time as a Distribution becomes deliverable, or (ii) such undeliverable Distribution becomes an Unclaimed Distribution pursuant to Section XI.I of this Combined Plan and Disclosure Statement. Undeliverable Distributions shall revert to the Liquidating Trust. The Liquidating Trustee shall not have an obligation to update or correct the contact information for recipients of undeliverable Distributions.

H.      **Fractional Dollars; *De Minimis* Distributions.**

Notwithstanding any other provision of the Plan to the contrary, (a) the Trustee and Liquidating Trust shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down; and (b) the Trustee and Liquidating Trust shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount of all Distributions authorized to be made on such date is less than $25,000, in which case such Distributions shall be deferred to the next Distribution, (ii) if the amount to be distributed to a Holder on the particular Distribution date is less than $100.00, unless such Distribution constitutes the final Distribution to such Holder, or (iii) if the amount of the final Distribution to such Holder is $50.00 or less. If the Liquidating Trust or Trustee withhold any Distribution under this provision, the withheld funds shall inure to the benefit of the Liquidating Trust.

I.      **Excess Funds.**

After final Distributions have been made from the Liquidating Trust in accordance with the terms of the Plan and the Liquidating Trust Agreement, if the amount of remaining Cash in the Liquidating Trust is $15,000 or less, the Liquidating Trustee, may donate such amount to charity; *provided that* the charity shall be unrelated to the Debtors, Trustee, the Committee and its members, the Liquidating Trustee, the Liquidating Trust Advisors, and their respective professionals.

J.      **Unclaimed Distributions.**

Any Cash or other property to be distributed under the Plan to a Beneficiary shall revert to the Liquidating Trust if it is not claimed by the Beneficiary within three (3) months after the date of such Distribution.  If such Cash or other property is not claimed on or before such date, the Distribution made to such Beneficiary shall be deemed to be reduced to zero and such returned, undeliverable, or unclaimed Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall be returned to the Liquidating Trust. All Unclaimed Distributions shall revert to the Liquidating Trust.

K.      **Set-Off.**

Except as otherwise provided herein, the Trustee or Liquidating Trustee, as applicable, retain the right to reduce any Claim by way of setoff in accordance with the Debtors' books and records.  Rights of setoff and recoupment, if any, held by any Entity or Person are preserved for the purpose of asserting such rights as a defense to any Claims or Causes of Action or Avoidance Actions of the Debtors, their Estates, or the Liquidating Trustee and regardless of whether such Entity or Person is the Holder of an Allowed Claim.

L.      **Maximum Recovery and Postpetition Interest.**

Except as may be expressly provided herein, interest shall not accrue on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date. No prepetition Claim shall be Allowed to the extent it is for postpetition interest or other similar

charges, except to the extent permitted for Holders of Secured Claims under section 506(b) of the Bankruptcy Code.

Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan Distributions in excess of the Allowed amount of such Claim.

**M.** **Allocation of Distributions Between Principal and Interest.**

To the extent that any Allowed Claim entitled to a Distribution under the Plan comprises indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid prepetition interest.

**N.** **Prepayment.**

Except as otherwise provided herein or the Plan Confirmation Order, the Trustee and the Liquidating Trustee, as applicable, shall have the right to prepay, without penalty, all or any portion of an Allowed Claim.

## XII. EXECUTORY CONTRACTS

**A.** **Rejection of Executory Contracts and Unexpired Leases.**

This Plan shall constitute a motion to reject all executory contracts and unexpired leases not previously rejected pursuant to an order of the Bankruptcy Court unless (i) otherwise set forth in the Plan Supplement or (ii) expressly assumed by the Trustee under this Plan or previous order of the Bankruptcy Court, and the Trustee shall have no further obligation thereunder. The entry of the Plan Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code and that the rejection thereof is in the best interest of the Debtors, their Estates and all parties in interest in the Chapter 11 Cases. The foregoing information shall be included in the notice of entry of the Plan Confirmation Order. Notwithstanding the foregoing, to the extent any Insurance Policies are deemed to be executory, (i) the Trustee does not seek to reject the Insurance Policies through this general rejection provision and (ii) the Insurance Policies shall be assumed by the Trustee pursuant to Section X.I. of this Plan.

**B.** **Claims Based on Rejection of Executory Contracts or Unexpired Leases.**

Claims created by the rejection of executory contracts and unexpired leases pursuant to this Plan, or the expiration or termination of any executory contract or unexpired lease prior to the Effective Date, must be filed with the Bankruptcy Court and served on the Trustee no later than thirty (30) days after service of notice of entry of the Plan Confirmation Order by the Bankruptcy Court, which notice shall set forth the deadline to file such Claims. Any Claims arising from the rejection of an executory contract or unexpired lease pursuant to Section XII.A, for which proofs of Claim are not timely filed within that period will be forever barred from assertion against the

Debtors, their Estates, Trustee, the Liquidating Trust, and their respective successors and assigns, and their respective assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims and shall be subject to the provisions of this Plan.

## XIII.  CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

The following are conditions precedent to the Effective Date that must be satisfied or waived (as provided below):

    a.    The estimate of Allowed Administrative Expense Claims, to be conducted in good faith by the Trustee and the Committee, shall not exceed $__;

    b.    The Plan Confirmation Order, which shall be in a form acceptable to the Trustee and the Committee shall have been entered by the Bankruptcy Court, and shall become a Final Order;

    c.    The Plan Confirmation Order shall be in full force and effect;

    d.    The Liquidating Trust Agreement, in a form and substance acceptable to the Trustee and the Committee shall have been fully executed and the Liquidating Trust shall have been formed;

    e.    The final version of all schedules, documents, and Plan exhibits, including a Plan Supplement, shall have been filed in form and substance acceptable to the Trustee in consultation with the Committee;

    f.    The Trustee has funded the Professional Fee Escrow Account and the Administrative Expense and Priority Escrow Account;

    g.    All actions, agreements, instruments, or other documents necessary to implement the terms and conditions of the Plan are effected or executed and delivered;

    h.    All Liquidating Trust Assets shall have been transferred to and/or vested in the Liquidating Trust; and

Notwithstanding the foregoing, the Plan Proponents may, acting jointly, waive the occurrence of the conditions precedent to the Effective Date. Any such written waiver of a condition precedent set forth in this Section may be affected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate this Plan.  Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

## XIV. RELEASE, EXCULPATION, INJUNCTION, AND RELATED PROVISIONS

### A. Releases by the Debtors.

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is hereby released by the Debtors, their Estates, the Trustee, the Liquidating Trustee, and the Liquidating Trust (as applicable) from any and all Claims, Causes of Action, Avoidance Actions, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, their Estates, Trustee, the Liquidating Trustee, or the Liquidating Trust), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims, asserted or that could be asserted on behalf of the Debtors, that the Debtors, their Estates, the Trustee, the Liquidating Trustee, or the Liquidating Trust (as applicable), that such Person or their estates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), their Estate, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of any Claim or Equity Interest before or during the Chapter 11 Cases, or any restructuring, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Plan Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Documents and any related agreements, instruments, and other documents, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of any property pursuant to the Plan, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Section XIV.A do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, including any such obligations created in connection with the restructuring, and (ii) any Preserved Claims and Causes of Action. Nothing in this Section XIV.A shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud or willful misconduct.

Entry of the Plan Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtors and Trustee set

forth in this Section XIV.A, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or their Estates asserting any Claim or Cause of Action released pursuant to such releases.

## B.    Exculpation.

The Exculpated Parties shall neither have nor incur any liability to any Entity, including the Exculpated Parties, for any and all claims, causes of action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, PII Laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances taking place or arising during the Exculpation Timeframe related in any way to the Debtors, including, without limitation, those that the Debtors would have been legally entitled to assert (whether individually or collectively) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of any of the Debtors or their Estates and further including those in any way related to the Liquidating Trust Agreement, the Chapter 11 Cases, or this Combined Plan and Disclosure Statement, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the post-petition debtor-in-possession financing approved by the Bankruptcy Court, the Liquidating Trust Agreement, or any other contract, instrument, release or other agreement or document created or entered into in connection with this Combined Plan and Disclosure Statement or any other post-petition act taken or omitted to be taken in connection with the Debtors; **provided**, **however**, the foregoing provisions of this section XIV.C shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, fraud, or willful misconduct. Notwithstanding anything provided herein, the foregoing provisions of this section XIV.C shall have no effect on the liability of any Entity that results from any act or omission that occurred prior to the Exculpation Timeframe.

## C.    Injunction

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims and Causes of Action, and liabilities whatsoever, including any derivative claims, whether known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, existing or hereinafter arising, contingent or noncontingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, in law (or any applicable rule, statute, regulation, treaty, right, duty or requirement), equity, contract, tort, or otherwise, asserted or assertable on behalf of any of the Debtors, their Estates, the Trustee, the Liquidating Trustee, or the Liquidating Trust (as applicable), as

applicable, that have been released, settled, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interest; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities, such property, or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind, except to the extent such assertions are used as a defense to Claims or Causes of Action by the Debtors arising prior to the Effective Date, against any obligation due from such Entities or the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, their Estates, the Trustee, the Liquidating Trustee, the Liquidating Trust, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtors, their Estates, the Trustee, the Liquidating Trustee, the Liquidating Trust, the Exculpated Parties, or the Released Parties, as applicable.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Allowed Claim or Allowed Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth herein.

**D.**     **Preservation of Causes of Action.**

    **1.**     **Vesting of Causes of Action**

Except as otherwise provided in this Plan or the Plan Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any and all Causes of Action and Avoidance Actions that are Liquidating Trust Assets are reserved for, assigned to, and shall become property of the Liquidating Trust, and the Liquidating Trustee shall be vested with any and all rights and standing to commence, prosecute, and resolve such Causes of Action, on the Effective Date.

Except as otherwise proved in this Plan, Plan Confirmation Order or the Liquidating Trust Agreement, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action conveyed to the Liquidating Trust, in its sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases.

    **2.**     **Preservation of All Causes of Action Not Expressly Settled or Released.**

Unless a Cause of Action against any Entity is expressly waived, relinquished, released, compromised, or settled in this Plan or any Final Order (including the Plan Confirmation Order), the Plan Proponents expressly reserve such Cause of Action, including all Causes of Action to be transferred by the Trustee to the Liquidating Trust pursuant to this Plan and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata,* collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Plan Confirmation Order or Effective Date based on the Disclosure Statement, this Plan or the Plan Confirmation Order or any other Final Order (including the Plan Confirmation Order).  In addition, the Liquidating Trust reserves the right to pursue or adopt any claims alleged in any lawsuit in which the Trustee or the Committee is a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits. Furthermore, in the pursuit of an Avoidance Action, the Debtors, Liquidating Trust, the Liquidating Trustee and/or their assignees shall certify in writing in any demand, claim, complaint, and other effort to collect on an Avoidance Action to compliance with section 547(b) of the Bankruptcy Code.

The failure of the Debtors or Trustee to list a claim, right, cause of action, suit or proceeding shall not constitute a waiver or release by the Debtors of such claim, right of action, suit or proceeding.  IT IS THE EXPRESSED INTENTION OF THE PLAN TO PRESERVE RIGHTS, CLAIMS, AND CAUSES OF ACTION OF THE DEBTORS OR THE TRUSTEE, WHETHER NOW KNOWN OR UNKNOWN, FOR THE BENEFIT OF THE LIQUIDATING TRUST AND THE DEBTORS' CREDITORS. **No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Causes of Action against them as any indication that the Liquidating Trustee will not pursue any and all available Causes of Action against them.**

Notwithstanding the foregoing, the Trustee has made a good faith effort to identify and disclose all known Causes of Action. A schedule identifying the Trustee's known Causes of Action

to be transferred and retained by the Liquidating Trust, which consists of the Preserved Claims and Causes of Action, shall be attached to the Plan Supplement.

**E.      Injunction.**

        From and after the Effective Date, all Persons are permanently enjoined from commencing or continuing in any manner against the Debtors, the Trustee, the Committee or its members, the Released Parties, the Liquidating Trust or the Liquidating Trustee, or their respective predecessors, successors, and assigns, current and former shareholders, affiliates, subsidiaries, principals, employees, agents, officers, directors, managers, consultants, limited partners, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants, in each case in their capacity as such, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest or remedy released or to be released pursuant to the Plan or the Plan Confirmation Order.

        No Person may commence or pursue a claim or cause of action of any kind against any Released Party or Exculpated Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements with the Debtors and any Released Party or Exculpated Party, the restructuring of any Claim or Interest before or during the Cases, the negotiation, formulation, or preparation of the Disclosure Statement, this Plan and related agreements, instruments, and other documents (including the Plan Documents), the solicitation of votes with respect to this Plan, or any other act or omission, and/or any related agreements, instruments, and other documents, the pursuit of confirmation, any action or actions taken in furtherance of or consistent with the administration or implementation of this Plan, or other property under this Plan, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing or from the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtors or the administration of the Liquidating Trust or the transactions in furtherance of the foregoing without the Bankruptcy Court: (a) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, actual fraud, gross negligence, or willful misconduct against a Released Party or Exculpated Party and (b) specifically authorizing such Person to bring such claim or cause of action against any such Released Party or Exculpated Party.  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable and, only to the extent legally permissible and shall have jurisdiction to adjudicate the underlying colorable claim or cause of action.

        Notwithstanding any other provision of this Plan, the Debtors shall not receive a discharge pursuant to Bankruptcy Code section 1141(d)(3).

        Except as otherwise specifically provided in the Combined Plan and Disclosure Statement, all Persons who have held, hold, or may hold Claims against or Equity Interests

in the Debtors and any successors, assigns or representatives of such Person shall be precluded and permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any Claim, action or other proceeding of any kind against any of the assets to be distributed under the Plan, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order with respect to any of the assets to be distributed under the Plan, and (c) creating, perfecting or enforcing any encumbrance of any kind with respect to any of the assets to be distributed under the Plan.  Except as otherwise expressly provided for in this Combined Plan and Disclosure Statement or with respect to obligations issued pursuant to this Combined Plan and Disclosure Statement, all Persons are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released hereby, from: commencing or continuing in any manner any action or other proceeding of any kind against any the Liquidating Trust or the Liquidating Trustee, or their successors and assigns, and their assets and properties; enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any the Liquidating Trust or the Liquidating Trustee, their successors and assigns, and their assets and properties; creating, perfecting, or enforcing any encumbrance of any kind against any the Liquidating Trust or the Liquidating Trustee, or the property or estate of the Liquidating Trust; asserting any right of subrogation against any the Liquidating Trust or the Liquidating Trustee, or against the property or estate of any of the Liquidating Trust,  except to the extent that a permissible right of subrogation is asserted with respect to a timely filed proof of claim; or commencing or continuing in any manner any action or other proceeding of any kind in respect of any claim or equity interest or cause of action released or settled hereunder.

Notwithstanding any provision in this Combined Plan and Disclosure Statement or the Plan Confirmation Order to the contrary, nothing contained in this Combined Plan and Disclosure Statement or the Plan Confirmation Order shall (i) extinguish, impact, or release any right of setoff, recoupment, or subrogation of any kind (a) held by any creditor or vendor which is asserted in a timely filed proof of claim or objection to this Combined Plan and Disclosure Statement, or pursuant to section 503(b)(1)(d) of the Bankruptcy Code or (b) that is or may be asserted as an affirmative defense or other defense to a cause of action or claim asserted by a Debtor or the Liquidating Trust against such creditor or vendor; or (ii) affect the applicability of 26 U.S.C. § 7421(a).

## C.   Termination of All Employee and Workers' Compensation Benefits.

Except as otherwise provided in the Liquidating Trust Agreement, all existing employee benefit plans and workers' compensation benefits not previously expired or terminated by the Trustee will be deemed terminated on or before the Effective Date.

## D.   Exclusions and Limitations on Liability.

Notwithstanding anything in this Combined Plan and Disclosure Statement to the contrary, no provision of this Combined Plan and Disclosure Statement or the Plan Confirmation Order, including, without limitation, the exculpation provision contained in Section XIV.A of this Plan, shall (a) modify, release or otherwise limit the liability of any Entity not specifically released or exculpated hereunder, including, without limitation, any Entity that is otherwise liable under

theories of vicarious or other derivative liability or that is a non-Debtor third party guarantor of any obligation of the Debtors, or (b) affect the ability of the Internal Revenue Service to pursue non-Debtors to the extent allowed by non-bankruptcy law for any liabilities that are related to any federal income tax liabilities that owed by the Debtors or their Estates.

# XV.  RETENTION OF JURISDICTION

After the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and this Plan as is legally permissible, including, but not limited to, jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Expense Claim and Professional Fee Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

2. grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date;

3. resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which the Debtors are party or with respect to which the Debtors may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

4. ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

5. hear and determine any motions, adversary proceedings, mediations, contested or litigated matters, applications involving the Debtors, the Trustee, and any other matters that may be pending on the Effective Date or instituted by the Liquidating Trust after the Effective Date, including any Liquidating Trust Causes of Action;

6. hear and determine disputes (i) arising in connection with the interpretation, implementation or enforcement of the Liquidating Trust or the Liquidating Trust Agreement or (ii) arising out of or related to the issuance of any subpoenas or requests for examination pursuant to Bankruptcy Rule 2004 issued before or after the entry of the Plan Confirmation Order relating to the subject matter of the Liquidating Trust Causes of Action;

7. enter such orders as may be necessary or appropriate to implement, interpret, enforce or consummate the provisions of this Plan, the Confirmation Order, the Liquidating Trust Agreement and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with this Plan, Plan Supplement or the Disclosure Statement;

8. resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

9. issue and enforce injunctions and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of this Plan, except as otherwise provided in this Plan;

10. enforce all of the provisions of this Plan;

11. enforce all Orders previously entered by the Bankruptcy Court;

12. resolve any cases, controversies, suits or disputes with respect to the exculpation, injunctions, releases, and other provisions contained in this Plan, and enter such orders as may be necessary or appropriate to implement or enforce all such exculpation, injunction, release and other provisions;

13. enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

14. resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Plan Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with this Plan or the Disclosure Statement;

15. enter an order and/or the decree contemplated in Bankruptcy Rule 3022 concluding the Chapter 11 Cases; and

16. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code, including any request made under section 505 of the Bankruptcy Code for the expedited determination of any unpaid liability of a Debtor for any tax incurred during the administration of the Chapter 11 Cases, including any tax liability arising from or relating to the transactions contemplated by the Plan, for tax periods ending after the Petition Date and through the closing of the Chapter 11 Cases.

Notwithstanding anything contained herein to the contrary, the Bankruptcy Court retains jurisdiction to the fullest extent permitted by applicable law to adjudicate Liquidating Trust Causes of Action and to hear and determine disputes concerning Liquidating Trust Causes of Action and any motions to compromise or settle such Liquidating Trust Causes of Action or disputes relating thereto. Despite the foregoing, if the Liquidating Trustee on behalf of the Liquidating Trust chooses to pursue any Liquidating Trust Cause of Action in another court of competent jurisdiction, the Liquidating Trustee will have authority to bring such action in any other court of competent jurisdiction.

# XVI.  MISCELLANEOUS PROVISIONS

## A.    Modification of Plan.

Subject to the limitations contained in this Plan: (1) the Plan Proponents reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, and subject to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019 (a), to amend or modify this Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Plan Confirmation Order and before substantial consummation of the Plan, the Plan Proponents, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code, and Bankruptcy Rule 3019(b).

## B.    Revocation of Plan.

The Plan Proponents reserve the right to revoke or withdraw this Plan, prior to the entry of the Plan Confirmation Order and to file subsequent plans of liquidation.  If the Plan Proponents revoke or withdraw this Plan, or if entry of the Plan Confirmation Order or the Effective Date does not occur within one-hundred and eighty (180) days after entry of the Confirmation Order, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission of any sort by the Plan Proponents or any other Entity.

## C.    Successors and Assigns.

The rights, benefits, and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

## D.    Governing Law.

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws thereof.

## E.    Reservation of Rights.

Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtors, the Trustee or any Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtors with respect to the Holders of Claims or Equity Interests or other parties-in- interest; or (2) any Holder of a Claim or other party-in-interest prior to the Effective Date.

## F.     Effectuating Documents; Further Transactions.

The Trustee or the Liquidating Trustee or its valid designee in accordance with the Liquidating Trust Agreement shall be authorized to (1) execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan and (2) certify or attest to any of the foregoing actions.

## G.     Further Assurances.

The Plan Proponents and the Liquidating Trust shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Plan Confirmation Order.

## H.     Dissolution of the Debtors and Closing of the Chapter 11 Cases.

Upon the Effective Date, the Debtors' officers and directors shall be deemed to have resigned their respective positions with the Debtors.  From and after the Effective Date, the Debtors shall be deemed to be immediately dissolved upon the Effective Date under applicable law and shall have no corporate existence thereafter without the necessity for any other or further actions to be taken by or on behalf of the Debtors or action or formality which might otherwise be required under applicable non-bankruptcy laws.  The Debtors shall be treated as having completely liquidated for state, local, and U.S. federal income tax purposes, and the Debtors shall not be required to pay any taxes or fees to cause such dissolution.

The Liquidating Trustee shall file a motion closing the Chapter 11 Cases after the Liquidating Trust Assets are fully administered or as soon as reasonably permissible.

## I.     Dissolution of the Committee.

Upon the occurrence of the Effective Date, the Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to (i) obligations arising under confidentiality agreements, which shall remain in full force and effect, (ii) prosecuting applications for payment of fees and reimbursement of expenses of Professionals, or Committee members, or attending to any other issues related to applications for payment of fees and reimbursement of expenses of Professionals, and (iii) prosecuting or participating in any appeal of the Plan Confirmation Order or any request for reconsideration thereof.

## J.     Discharge of the Trustee.

Upon the occurrence of the Effective Date, the Trustee , its professionals, and agents shall be released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to (i) obligations arising under confidentiality agreements, which shall remain in full force and effect, (ii) prosecuting applications for payment of fees and reimbursement of expenses of Professionals, or attending to any other issues related to applications for payment of fees and reimbursement of expenses of Professionals, and (iii) prosecuting or participating in any appeal of the Plan Confirmation Order or any request for reconsideration thereof.

## K.     Service of Documents.

Any pleading, notice or other document required by this Plan to be served on or delivered to the Trustee, Committee, or Liquidating Trustee shall be sent by first class U.S. mail, postage prepaid to:

| To the Trustee: | Tom A. Howley<br>TC Energy Center<br>700 Louisiana Street, Suite 4545<br>Houston, TX 77002<br><br>With a copy to:<br><br>Howley Law PLLC<br>Attn: Eric Terry<br>TC Energy Center<br>700 Louisiana Street, Suite 4220<br>Houston, TX 77002 |
|---|---|
| To the Committee: | Dykema Gossett, PLLC<br>Attn: William Hotze<br>      Nicholas Zugaro<br>5 Houston Center,<br>1501 McKinney Street, Suite 1625<br>Houston, TX 77010 |
| To the Liquidating Trust: | [•] |

## L.     Filing of Additional Documents.

On or before the Effective Date, the Plan Proponents may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

## XVII.  RISKS AND OTHER CONSIDERATIONS

## A.     Bankruptcy Considerations.

Although the Plan Proponents believe that this Combined Plan and Disclosure Statement will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will confirm the Plan as proposed.  Moreover, there can be no assurance that modifications of this Combined Plan and Disclosure Statement will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes.

In addition, the occurrence of the Effective Date is conditioned on the satisfaction (or waiver) of the conditions precedent specified herein, and there can be no assurance that such

conditions will be satisfied or waived. In the event such conditions precedent have not been satisfied or waived (to the extent possible hereunder) within forty five (45) days after the Plan Confirmation Date, which period may be extended by the Plan Proponents, then the Plan Confirmation Order may be vacated, no Distributions will be made pursuant to the Plan, and the Trustee and all Holders of Claims and Equity Interests will be restored to the status quo ante as of the day immediately preceding the Plan Confirmation Date as though the Plan Confirmation Date had never occurred.

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Plan Proponents believe that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because each Class of Claims and Equity Interests encompass Claims or Equity Interests, as applicable, that are substantially similar to the other Claims and Equity Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

While the Plan Proponents believe that there are sufficient Liquidating Trust Assets to make Distributions to Liquidating Trust Beneficiaries, there can be no assurance that the Liquidating Trust Assets will be sufficient to pay all Liquidating Trust Operational Expenses or make Distributions to the Liquidating Trust Beneficiaries.

**B.      No Duty to Update Disclosures.**

The Plan Proponents have no duty to update the information contained in this Combined Plan and Disclosure Statement as of the date hereof, unless otherwise specified herein, or unless the Plan Proponents are required to do so pursuant to an Order of the Bankruptcy Court. Delivery of this Combined Plan and Disclosure Statement after the date hereof does not imply that the information contained herein has remained unchanged.

**C.      Alternatives to Confirmation and Consummation of the Plan.**

**1.      Alternate Plan**

If the Plan is not confirmed, the Plan Proponents or any other party in interest (if, pursuant to section 1121 of the Bankruptcy Code, the Trustee has not filed a plan within the time period prescribed under the Bankruptcy Code) could attempt to formulate and propose a different plan. Such a plan likely would result in additional costs, including, among other things, additional professional fees or potential asserted substantial contribution claims, all of which would likely constitute Administrative Expense Claims (subject to allowance). The Plan Proponents believe that the Plan provides for an orderly and efficient liquidation of the Debtors' remaining assets and enables creditors to realize the best return under the circumstances.

**2.      Chapter 7 Liquidation or Dismissal**

If a plan pursuant to Chapter 11 is not confirmed by the Bankruptcy Court, the Chapter 11 Cases could be converted to a liquidation case under Chapter 7 of the Bankruptcy Code in which a trustee would be elected or appointed, pursuant to applicable provisions of Chapter 7 of the

Bankruptcy Code, to liquidate the assets of the Debtors for distribution in accordance with the priorities established by the Bankruptcy Code. The Plan Proponents believe that liquidation under Chapter 7 of the Bankruptcy Code of the Debtors' remaining assets would result in a substantial reduction in the value to be realized by Holders of Claims as compared to Distributions contemplated under the Plan. This is so because a Chapter 7 liquidation would require the appointment of a trustee, which would require substantial additional expenses (including the costs associated with the Trustee's retention of attorneys and other professionals) and would delay the orderly liquidation of the Estate's Assets, thereby lowering recoveries to such Holders of Claims. Consequently, the Trustee believes that confirmation of the Plan will provide a substantially greater return to Holders of Claims than would liquidation under Chapter 7 of the Bankruptcy Code. A copy of the Plan Proponents' liquidation analysis is attached to this Plan.

## D.     Certain Federal Tax Consequences

**THE FOLLOWING DISCUSSION SUMMARIZES CERTAIN MATERIAL FEDERAL INCOME TAX CONSEQUENCES OF THE IMPLEMENTATION OF THE PLAN TO CERTAIN HOLDERS OF ALLOWED CLAIMS. IT IS FOR GENERAL PURPOSES ONLY AND SHOULD NOT BE RELIED UPON FOR PURPOSES OF DETERMINING THE SPECIFIC TAX CONSEQUENCES OF THE PLAN WITH RESPECT TO A PARTICULAR HOLDER OF A CLAIM OR EQUITY INTEREST. THIS DISCUSSION DOES NOT PURPORT TO BE A COMPLETE ANALYSIS OR LISTING OF ALL POTENTIAL TAX CONSIDERATIONS. THIS SUMMARY DOES NOT ADDRESS THE FEDERAL INCOME TAX CONSEQUENCES THAT MAY BE RELEVANT TO A PARTICULAR HOLDER OF A CLAIM OR EQUITY INTEREST SUBJECT TO SPECIAL TREATMENT UNDER FEDERAL INCOME TAX LAWS, AND DOES NOT DISCUSS ANY ASPECTS OF STATE, LOCAL, OR FOREIGN TAX LAWS OR ANY FEDERAL ESTATE OR GIFT TAX CONSIDERATIONS. FURTHERMORE, THIS SUMMARY DOES NOT ADDRESS ALL OF THE FEDERAL INCOME TAX CONSEQUENCES THAT MAY RELEVANT TO A HOLDER OF A CLAIM OR EQUITY INTEREST, SUCH AS THE POTENTIAL APPLICATION OF THE ALTERNATIVE MINIMUM TAX.   THIS SUMMARY ALSO DOES NOT ADDRESS ALL OF THE FEDERAL INCOME TAX CONSEQUENCES THAT MAY BE RELEVANT TO HOLDERS OF CLAIMS WHO ARE UNIMPAIRED, DEEMED TO HAVE REJECTED THE PLAN IN ACCORDANCE WITH THE PROVISIONS OF SECTION 1126(g) OF THE BANKRUPTCY CODE, OR HOLDERS WHOSE CLAIMS ARE ENTITLED TO PAYMENT IN FULL IN CASH.**

This summary is based on the Tax Code, as amended, existing and proposed Treasury Regulations, judicial decisions, and published administrative rules and pronouncements of the IRS as in effect on the date hereof, all of which are subject to change, possibly on a retroactive basis. Any such change could significantly affect the federal income tax consequences described below.

The Trustee has not requested an opinion of counsel or a ruling from the IRS with respect to any of the tax aspects of the Plan. This discussion does not address all of the U.S. federal income tax consequences of the Plan to special classes of taxpayers (*e.g.*, small business investment companies, regulated investment companies, real estate investment trusts, banks and certain other

56

financial institutions, insurance companies, controlled foreign corporations, tax-exempt organizations, retirement plans, individual retirement and other tax-deferred accounts, states or their subdivisions or integral parts, other governmental entities, Holders that are, or hold Claims through, S corporations, partnerships or other pass-through entities for federal income tax purposes, Holders' whose functional currency is not the U.S. dollar, dealers in securities or foreign currency, traders that mark-to-market their securities, persons subject to the alternative minimum tax or the "Medicare" tax on unearned income, persons who use the accrual method of accounting and report income on an "applicable financial statement," and persons holding Claims that are part of a straddle, hedging, constructive sale, or conversion transaction).  In addition, this discussion does not address federal taxes other than income taxes.

The following discussion generally assumes that the Plan will be treated as a plan of liquidation of the Debtors for federal income tax purposes, and that all Distributions to Holders of Claims will be taxed accordingly.

**Internal Revenue Service Circular 230 Disclosure: to ensure compliance with requirements imposed by the United States Internal Revenue Service, any tax advice contained in this Disclosure Statement (including any attachments) is not intended or written to be used, and cannot be used, by any taxpayer for purpose of avoiding tax related penalties under the Tax Code. Tax advice contained in this Disclosure Statement (including any attachments) is not written to support the promotion, marketing or promotion of the transactions or matters addressed by the disclosure statement. Each taxpayer should seek advice based on the taxpayer's particular circumstances form an independent tax advisor.**

1.      **Federal Income Tax Consequences to the Debtors**

Generally, a discharge of a debt obligation by a debtor for an amount less than the debt's adjusted issue price (in most cases, the amount the debtor received on incurring the obligation, with certain adjustments) gives rise to cancellation of indebtedness ("**COD**") income, which must be included in the debtor's income. However, COD income is not includable in gross income if it occurs in a case of bankruptcy or to the extent of the debtor's insolvency immediately before the COD income is recognized. The Debtors' COD income, if any, resulting from the Plan should satisfy these requirements, and, therefore, should not result in recognition of gross income to the Debtors.

COD income that is excluded from gross income will reduce certain attributes of the taxpayer, including net operating losses, capital loss carryovers, the tax basis of assets, and foreign tax credit carryforwards, in a specified order of priority beginning with net operating losses, unless a taxpayer elects to have the reduction applied first to the tax basis of depreciable assets. In general, any reduction in tax attributes does not occur until the end of the tax year, after such attributes have been applied to determine the tax for the year or, in the case of any asset basis reduction, the first day of the taxable year following the tax year in which COD income occurs.

2.      **Federal Income Tax Consequences to Holders of Allowed Claims**

Pursuant to the Plan, each Holder of a Claim will receive, in full and final satisfaction of its applicable claim, Liquidating Trust Units or Cash, as applicable, as described in Section VII.

As discussed below (see D.[4]—"Tax Treatment of the Liquidating Trust and Holders of Beneficial Interests Therein"), each Holder of a Claim that receives a Beneficial Interest will be treated for federal income tax purposes as directly receiving, and as a direct owner of, an undivided interest in the Liquidating Trust Assets consistent with its economic rights in the trust.

The tax consequences of the transactions contemplated by the Plan to Holders (including the character, timing and amount of income, gain or loss recognized) will depend on, among other things: (1) whether the Claim and the consideration received in respect of it are "securities" for tax purposes; (2) the manner in which a Holder acquired a Claim; (3) the length of time the Claim has been held; (4) whether the Claim was acquired at a discount; (5) whether the Holder has taken a bad debt deduction with respect to the Claim (or any portion of it) in the current tax year or any prior tax year; (6) whether the Holder has previously included in its taxable income accrued but unpaid interest with respect to the Claim; (7) the Holder's method of tax accounting; and (8) whether the Claim is an installment obligation for tax purposes. Holders, therefore, should consult their own tax advisors regarding the particular tax consequences to them of the transactions contemplated by the Plan.

        a.     <u>Realization and Recognition of Gain or Loss</u>.  In general, a Holder of an Allowed Claim will recognize gain or loss with respect to its Claim in an amount equal to the difference between (i) the sum of the amount of any Cash and the fair market value of its undivided interest in the Liquidating Trust Assets consistent with its economic rights in the trust received in respect of its Claim (other than any consideration attributable to a Claim for accrued but unpaid qualified stated interest) and (ii) the adjusted tax basis of the Claim exchanged therefor (excluding any adjusted tax basis attributable to accrued but unpaid interest).  Depending on the manner in which the Claim arose, applicability of the market discount rules and other factors, such loss or gain may be capital or ordinary in nature.  Due to limitations in the Code, a Holder of an Allowed Claim that recognizes a capital loss relating to its Claim may not be able to use such capital loss in the taxable year it arises or ever.

In the event of the subsequent disallowance of any Disputed Claim or the reallocation of undeliverable Distributions, it is possible that a Holder of a previously Allowed Claim may receive additional Distributions in respect of its Claim.  Accordingly, it is possible that the recognition of any loss realized by a Holder with respect to an Allowed Claim may be deferred until all Claims are Allowed or disallowed. Alternatively, it is possible that a Holder will have additional gain in respect of any additional Distributions received. See also Section XVII.D.3. —"Federal Income Tax Consequence to Holders of Disputed Claims," below.

After the Effective Date, a U.S. Holder's share of any collections received on the assets of the Liquidating Trust (other than as a result of the subsequent disallowance of Disputed Claims or the reallocation of undeliverable Distributions) should not be included, for federal income tax purposes, in the Holder's amount realized in respect of its Allowed Claim but should be separately treated as amounts realized in respect of such Holder's ownership interest in the underlying assets of the Liquidating Trust.

In general, a Holder's aggregate tax basis in its undivided interest in the Liquidating Trust Assets will equal the fair market value of such interest at the time of receipt increased by its share of the Debtors' liabilities to which such assets remain subject upon transfer to the Liquidating

Trust, and a Holder's holding period generally will begin the day following establishment of the Liquidating Trust.

Although many Holders of Claims will not be required to recognize gain or income as a result of the property distributions (including Cash distributions) made or deemed to be made to them under the terms of the Plan, certain situations may exist that will require a Holder of a Claim to do so. For example, if a Claim relates to a transaction under which the Holder is required to recognize gain on payment (for example, an installment sale), the Holder may be required to recognize gain as a result of the actual or deemed distributions made to it under the Plan. Moreover, if (1) a Holder of a Claim previously took a deduction or loss relating to the partial or entire worthlessness of its Claim, and (2) the fair market value of the property (including Cash) it receives or is deemed to receive for its Claim under the Plan exceeds the remaining adjusted tax basis, if any, it has in its Claim, such Holder will be required to recognize gain or income. Similarly, a Holder of a Claim that purchased its Claim at a discount may be required to recognize gain if the amount received in satisfaction of the Claim exceeds such Holder's adjusted tax basis in the Claim. There are several other reasons why a Holder of a Claim may be required to recognize gain or income as a result of the actual or deemed distributions made to it under the Plan. Therefore, each Holder of a Claim should consult its own tax advisor to determine the tax consequences of the receipt of or deemed receipt of property (including Cash) under the Plan.

        b.        <u>Distributions to Holders in Respect of Accrued But Untaxed Interest.</u>  In general, the gross amount of payments received (whether stock, Cash, or other property) by a Holder of a debt instrument in satisfaction of accrued qualified stated interest will be taxable to the Holder as ordinary interest income (if not previously included in the Holder's gross income for U.S. federal income tax purposes).  Conversely, a Holder generally recognizes a deductible loss (or, possibly, a write-off against a reserve for bad debts) to the extent any accrued qualified stated interest was previously included in its gross income and is not paid in full by the Debtors.

The extent to which amounts received by a Holder will be attributable to accrued but untaxed interest is unclear.  Under the Plan, except as otherwise required by law (as reasonably determined by the Plan Proponents or Liquidating Trustee, as applicable), Distributions with respect to an Allowed Claim will be treated first as satisfying an amount equal to the principal portion of such Allowed Claim (as determined for U.S. federal income tax purposes) and, thereafter, satisfying the remaining portion of such Allowed Claim, if any, such as accrued, but unpaid interest.  Certain legislative history indicates that an allocation of consideration as between principal and interest provided in a bankruptcy plan is binding for U.S. federal income tax purposes. However, there is no assurance that such allocation would be respected by the IRS, and the IRS could take a position that the consideration received by a Holder should be allocated in some way other than as provided by the Plan.  Holders are urged to consult their own tax advisor regarding the allocation of consideration received under the Plan, as well as the deductibility of accrued but unpaid qualified stated interest and the character of any loss claimed with respect to accrued but unpaid qualified stated interest previously included in gross income for U.S. federal income tax purposes.

### 3. Federal Income Tax Consequence to Holders of Disputed Claims

Distributions deemed issued to a Holder of a Claim on consummation of the Plan will not include any distribution held in reserve for Holders of Disputed Claims. As a result, in determining the amount of loss or gain recognized by a Holder of a Claim on consummation of the Plan, the Holder will not be treated as receiving any property attributable to the assets that are held by or for the benefit of Holders of Disputed Claims. As discussed below, when a Disputed Claim becomes Disallowed in whole or in part, the Holders of a Claim will be treated as receiving additional consideration in respect of their Claim at that time. It is possible, however, that the IRS or a court may conclude that the amount of consideration deemed received for tax purposes by a Holder of a Claim on consummation of the Plan should be determined by disregarding the Disputed Claims and treating any distribution held in reserve for Holders of Disputed Claims as proportionately distributed to the Holders of Claims. In such case, appropriate downward adjustments would be made on the allowance of a Disputed Claim in whole or in part. Holders of Claims should consult with their tax advisors as to the proper amount of consideration deemed received on consummation of the Plan.

Holders of Disputed Claims will not be treated as receiving any consideration in respect of their Claims on consummation of the Plan. On the allowance of a Disputed Claim, the Holder of the Disputed Claim will be treated as realizing in satisfaction of its Claim the amount of Cash distributed to the Holder at such time plus the fair market value of any property distributed to such Holder. On the disallowance of a Disputed Claim, the distribution attributable to such Disputed Claim will be cancelled and the Cash attributable to the Disallowed Disputed Claim and held in reserve will be released from the reserve. While not entirely clear, at such time, Holders will likely be treated as having received additional consideration in satisfaction of their Claims equal to their proportional shares of (i) the Cash released from the reserve, less (ii) the fair market value of the cancelled distributions. If the Disputed Claim becomes disallowed in the year in which the Plan is consummated, then such additional consideration would either reduce the loss or increase the gain that was recognized with respect to Holders' Claim on consummation of the Plan and would possess the same character (i.e., capital or ordinary) as the gain or loss recognized on consummation of the Plan. If the Disputed Claim becomes disallowed after the year in which the Plan is consummated, then the additional amount deemed received on disallowance of the Disputed Claim will be treated as gain with the same character (i.e., capital or ordinary) as the gain or loss recognized on consummation of the Plan. Holders of a Claim would increase the tax bases in their distribution by the additional amounts deemed received on the disallowance of a Disputed Claim. Similarly, in the event that undeliverable Distributions are redistributed to other claimants entitled to Distribution, such recipients will likely be subject to comparable tax treatment as discussed in this paragraph.

### 4. Tax Treatment of the Liquidating Trust and Holders of Beneficial Interests Therein

a. <u>Classification of the Liquidating Trust</u>. The Liquidating Trust is intended to qualify as a "liquidating trust" for federal income tax purposes (other than in respect of any portion of the Liquidating Trust Assets allocable to, or retained on account of, Disputed Claims, as discussed below). In general, a liquidating trust is not a separate taxable entity but rather is treated for federal income tax purposes as a "grantor" trust (i.e., a pass-through entity). The IRS,

in Revenue Procedure 94-45, 1994-2 C.B. 684, set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. The Liquidating Trust will be structured with the intention of complying with such general criteria. Pursuant to the Plan, and in conformity with Revenue Procedure 94-45, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and Holders of Beneficial Interests) shall treat the transfer of Liquidating Trust Assets to the Liquidating Trust as (1) a transfer of the Liquidating Trust Assets (subject to any obligations relating to those assets) directly to Holders of Beneficial Interests (other than to the extent Liquidating Trust Assets are allocable to Disputed Claims), followed by (2) the transfer by such beneficiaries to the Liquidating Trust of Liquidating Trust Assets in exchange for the Beneficial Interests. Accordingly, except in the event of contrary definitive guidance, Holders of Beneficial Interests shall be treated for federal income tax purposes as the grantors and owners of their respective share of Liquidating Trust Assets (other than such Liquidating Trust Assets as are allocable to Disputed Claims). While the following discussion assumes that the Liquidating Trust would be so treated for federal income tax purposes, no ruling will be requested from the IRS concerning the tax status of the Liquidating Trust as a grantor trust. Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust as a grantor trust. If the IRS were to challenge successfully such classification, the federal income tax consequences to the Liquidating Trust and the U.S. Holders of Claims could vary from those discussed herein.

        **b.**      <u>General Tax Reporting by the Liquidating Trust and Holders of Beneficial Interests</u>. For all federal income tax purposes, all parties must treat the Liquidating Trust as a grantor trust of which the Holders of Beneficial Interests are the owners and grantors, and treat the Holders of Beneficial Interests, as the direct owners of an undivided interest in the Liquidating Trust Assets (other than any assets allocable to Disputed Claims), consistent with their economic interests therein. The Liquidating Trustee will file tax returns for the Liquidating Trust treating the Liquidating Trust as a grantor trust or liquidating trust pursuant to Treasury Regulations Section 1.671-4(a) and/or Treasury Regulation Section 301.7701-4(d) and related regulations. Therefore, for federal income tax purposes, the Liquidation Trust's taxable income (or loss) should be allocated pro rata to its beneficiaries. The Liquidating Trustee also shall annually send to each Holder of a Beneficial Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for federal income tax purposes.

        Allocations of taxable income of the Liquidating Trust (other than taxable income allocable to any assets allocable to, or retained on account of, Disputed Claims, if such income is otherwise taxable at the Liquidated Trust) among the Holders of Beneficial Interests will be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed Distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value, and, if applicable, other than assets allocable to Disputed Claims) to the Holders of Beneficial Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating Distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for purposes of allocating taxable income and loss shall equal their fair market value on the date of the transfer of the Liquidating Trust Assets to the Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the Tax

Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

As soon as reasonably practicable after the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Liquidating Trustee shall make a good faith valuation of the Liquidating Trust Assets. All parties to the Liquidating Trust (including, without limitation, the Debtors, the Liquidating Trustee, and Holders of Beneficial Interests) must consistently use such valuation for all federal income tax purposes. The valuation will be made available, from time to time, as relevant for tax reporting purposes.

Taxable income or loss allocated to Holders of Beneficial Interests should be treated as income or loss with respect to such holder's undivided interest in the Liquidating Trust Assets, and not as income or loss with respect to its prior Allowed Claim. The character of any income and the character and ability to use any loss may depend on the particular situation of the Holders of the Beneficial Interests.

The federal income tax obligations of a Holder with respect to its Beneficial Interest are not dependent on the Liquidating Trust distributing any Cash or other proceeds. Thus, a Holder may incur federal income tax liability with respect to its allocable share of the Liquidating Trust's income even if the Liquidating Trust does not make a concurrent Distribution to the Holder. In general, other than in respect of Cash retained on account of Disputed Claims and Distributions resulting from undeliverable Distributions (the subsequent distribution of which still relates to a Holder's Allowed Claim), a distribution of Cash by the Liquidating Trust will not be separately taxable to the Holders of Beneficial Interests since the beneficiary is already regarded for federal income tax purposes as owning the underlying assets (and was taxed at the time the Cash was earned or received by the Liquidating Trust). Holders are urged to consult their tax advisors regarding the appropriate federal income tax treatment of any subsequent distributions of Cash originally retained by the Liquidating Trust on account of Disputed Claims.

The Liquidating Trustee will comply with all applicable governmental withholding requirements.

c.    Tax Reporting for Assets Allocable to Disputed Claims. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of an IRS private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee (A) may elect to treat any Liquidating Trust Assets allocable to, or retained on account of, Disputed Claims (i.e., a Disputed Claim Reserve) as a "disputed ownership fund" governed by Treasury Regulations Section 1.468B-9, if applicable, and (B) to the extent permitted by applicable law, will report consistently for state and local income tax purposes. Accordingly, if a "disputed ownership fund" election is made with respect to a Disputed Claim Reserve, such reserve will be subject to tax annually on a separate entity basis on any net income earned with respect to the Liquidating Trust Assets (including any gain recognized upon the disposition of such assets). All Distributions from such reserves (which Distributions will be net of the expenses, including taxes, relating to the retention or disposition of such assets) will be treated as received by Holders in respect of their Claims as if distributed by the Debtors. All parties (including, without limitation, the Debtors, the Liquidating Trustee and the Holders of

Beneficial Interests) will be required to report for tax purposes consistently with the foregoing. A Disputed Claim Reserve will be responsible for payment, out of the assets of the Disputed Claim Reserve, of any taxes imposed on the Disputed Claim Reserve or its assets. In the event, and to the extent, any Cash in the Disputed Claim Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets of such reserve (including any income that may arise upon the distribution of the assets in such reserve), assets of the Disputed Claim Reserve may be sold to pay such taxes. Each Holder of a Disputed Claim is urged to consults its tax advisor regarding the potential tax treatment of the Disputed Claim Reserve, distributions therefrom, and any tax consequences to such Holder relating thereto.

### 5.      FATCA

Under the Foreign Account Tax Compliance Act ("**FATCA**"), foreign financial institutions and certain other foreign entities must report certain information with respect to their U.S. account Holders and investors or be subject to withholding on the receipt of "withholdable payments." For this purpose, "withholdable payments" are generally U.S. source payments of interest on certain types of obligations. FATCA withholding may apply even if the applicable payment would not otherwise be subject to U.S. federal nonresident withholding tax. U.S. Holders that hold Claims through foreign financial institutions and Non-U.S. Holders are encouraged to consult their tax advisors regarding the possible implications of these rules on their Claim.

### 6.      Backup Withholding and Information Reporting

Distributions to certain Holders of Allowed Claims under the Plan generally will be subject to information reporting requirements. In addition, certain Holders may be subject to backup withholding with respect to the distributions or payments made pursuant to the Plan unless the Holder: (a) comes within certain exempt categories (which generally includes corporations) and, when required, demonstrates that fact, or (b) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the Holder is not subject to backup withholding because of a failure to report all dividend and interest income. Backup withholding is not an additional tax, but merely an advance payment that may be refunded to the extent it results in an overpayment of tax. Thus, the amount of any backup withholding from a payment to a Holder may be allowed as a credit against the Holder's federal income tax liability and may entitle the Holder to a refund, provided that the required information is timely furnished to the IRS.

The Trustee will withhold all amounts required by law to be withheld from payments of interest and dividends. The Trustee will comply with all applicable reporting requirements of the IRC.

Treasury Regulations generally require disclosure by a Holder on its federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds. Holders are urged to consult their tax advisors regarding these Treasury Regulations and whether the transactions contemplated by the Plan would be subject to these Treasury Regulations and require disclosure on the Holder's tax returns.

**THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A CLAIM HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, CLAIM HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.**

### 7.    Reservation of Rights

This tax section is subject to change (possibly substantially) based on subsequent changes to other provisions of the Plan.  The Trustee, the Committee, and their advisors reserve the right to further modify, revise, or supplement this Section and the other tax related sections of the Plan prior to the date by which objections to Confirmation of the Plan must be filed and served.

## XVIII.  RECOMMENDATION AND CONCLUSION

The Plan Proponents strongly believe that the Plan is in the best interests of the Estate and urges the Holders of Impaired Claims entitled to vote to accept the Plan and to evidence such acceptance by properly voting and timely returning their Ballots.

Dated: October 2, 2025
Houston, Texas

TOM A. HOWLEY, CHAPTER 11 TRUSTEE

By: */s/ Tom A. Howley*
Name: Tom A. Howley
Title: Chapter 11 Trustee

- and -

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALLIANCE FARM AND RANCH, LLC AND ALLIANCE ENERGY PARTNERS, LLC.

By: */s/ David Freer*
Name: David Freer
Title: Chief Financial Officer, Gordon Technologies LLC, and co-Chair of the Official Committee of Unsecured Creditors of Alliance Farm and Ranch, LLC and Alliance Energy Partners, LLC

By: */s/ Bradley Vincent*
Name: Bradley Vincent
Title: Vice President Operations, DrilTech, LLC, and co-Chair of the Official Committee of Unsecured Creditors of Alliance Farm and Ranch, LLC and Alliance Energy Partners, LLC

**<u>Exhibit A</u>**

**Liquidation Analysis**

[*To be provided in Plan Supplement*]

# **Exhibit B**

# **Forensic Report**

Case 25-90186 Document 1211 – Filed in TXSB on 10/02/25 Page 75 of 97



# Alliance Energy Partners, LLC & Alliance Farm and Ranch, LLC

**Forensic Report to Chapter 11 Trustee**

**September 30, 2025**

**Draft – Subject to ongoing investigation –**
**For purposes related to the combination plan and disclosure statement only**

Case 25-33353   Document 637   Filed in TXSB on 12/02/25   Page 76 of 97

# Disclaimer & Limitations of Analysis

- Effective August 1, 2025, Thomas A. Howley, solely in his capacity as Chapter 11 Trustee ("Trustee") for Alliance Farm and Ranch, LLC ("AFR") and Alliance Energy Partners, LLC ("AEP"), retained HMP Advisory Holdings, LLC, dba Harney Partners ("HP") to provide forensic accounting services to the Trustee in the jointly administered chapter 11 cases of AEP (Case No. 25-31937) and AFR (Case No. 25-30155). Trustee retained HP to assist him to perform an examination and investigation of the Debtors and their assets, including a determination of any possible claims held by the Debtors' Estates.

- On August 4, Trustee filed *Chapter 11 Trustee's Application for Order Authorizing Employment of HMP Advisory Holdings, LLC, dba Harney Partners to Provide Forensic Accounting Services* (Docket No. 171). On August 29, the Court entered its *Order Authorizing Employment of HMP Advisory Holdings, LLC dba Harney Partners to Provide Forensic Accounting Services to the Chapter 11 Trustee* (Docket No 183).

- Under the certain engagement letter, HP is to provide the following forensic accounting services:
    - Analyzing historical cash transactions by and between AFR, AEP, two non-debtor affiliate entities, and two individual equity holders, Jerod Furr ("Furr") and Dustin Etter ("Etter") for a to be specified period across the to be identified bank accounts;
    - Producing a forensic report detailing the historical cash transactions; and,
    - Providing testimony as necessary to support the reported findings.

- THIS DRAFT REPORT HAS BEEN PREPARED BASED UPON THE INFORMATION, DOCUMENTATION, AND DATA PROVIDED TO HP BY THE TRUSTEE AND HIS COUNSEL. WHILE REASONABLE EFFORTS HAVE BEEN MADE TO VERIFY THE ACCURACY AND COMPLETENESS OF THE INFORMATION, NO INDEPENDENT VERIFICATION OR AUDIT HAS BEEN CONDUCTED. HP IS NOT RESPONSIBLE, AND ASSUMES NO RESPONSIBILITY, FOR ANY INACCURACIES, OMISSIONS, OR MISREPRESENTATIONS IN THE INFORMATION, DOCUMENTATION, AND DATA PROVIDED. CERTAIN REQUESTED INFORMATION HAS NOT BEEN PROVIDED TO HP AS OF THE DATE OF THIS DRAFT REPORT.

- THIS DRAFT REPORT NEITHER CONSTITUTES AN AUDIT, REVIEW, OR ASSURANCE UNDER GENERALLY ACCEPTED AUDITING STANDARDS, NOR DOES IT PROVIDE LEGAL OPINIONS OR CONCLUSIONS. THIS DRAFT REPORT DOES NOT CONSTITUTE LEGAL OR FINANCIAL ADVICE. THE FINDINGS, CONCLUSIONS, AND OPINIONS EXPRESSED HEREIN ARE BASED ON THE AVAILABLE EVIDENCE AND PROFESSIONAL JUDGMENT AS OF THE DATE OF THIS DRAFT REPORT AND ARE SUBJECT TO CHANGE. HP RESERVES THE RIGHT TO AMEND, SUPPLEMENT, EDIT, AND CORRECT FOR ANY REASON.



**Draft – Subject to ongoing investigation –**
**For purposes related to the combination plan and disclosure statement only**

Case 25-33325   Document 637   Filed in TXSB on 02/02/25   Page 77 of 97

# Scope of Analysis

After discussion with the Trustee and his counsel, HP conducted a forensic accounting review of the cash transactions of the two debtor entities (AEP and AFR) and three non-debtor entities: AE Partners Holdings, Inc. ("AE Partners Holdings"), AEP Asset Holdings, LLC ("AEP Asset Holdings"), and Invictus Drilling Motors, LLC ("Invictus") for the period between January 2022 through and including April 2025 (the "Analysis Period").

## Documents Relied Upon

- Bank statements from January 2022 to April 2025, including supporting wire transfers details, check images, and deposit images with cancelled checks

- Exports from QuickBooks including general ledgers for 2022, 2023, and 2024

- Internal accounting workfile: "QuickBooks ACH thru May 2023.xlsx"

- AE Partners Holdings paystubs from the June 15, 2023 pay period

## Bank Accounts Analyzed

HP analyzed the cash transactions from the below seven (7) accounts during the Analysis Period. The below graphic illustrates the bank statements received by HP and included in this Draft Report.





# Summary of Cash Flows

The below graph shows the aggregate flow of funds between the two debtor entities, related entities, and principals during the Analysis Period. Transfer to Thomas Wayne LLC and J Parker Construction are included in the graph because of the potential insider status of those entities.



*Note: the chart above and included in parts on subsequent pages presents a summary of the primary cash inflows and outflows. It is not intended to reflect all categories of cash activity or every source and use of funds during the Analysis Period.*





# Debtor Entities

# Alliance Energy Partners, LLC

## Summary of Cash Flows

- **Deterioration in Customer Receipts:** AEP collected over **$23.2 million in 2022** in customer receipts in 2022, but collections declined to approximately **$9.3 million in 2023** following the loss of Colgate Energy as a major customer. Collections further deteriorated to approximately **$3.8 million in 2024** as the decline in sales to Arrow S Energy Operating, Earthstone Operating, and Patton Exploration were not offset by the addition of new customers.

- **Capital Investments:** During the Analysis Period, AEP spent approximately $2.6 million in capital expenditures, including but not limited to:
  - $996K for the acquisition of the real property at 5450 Hanea Egypt Rd in April 2022.
  - $811K to Supreme Source Energy Services for the motor shop buildout.

- **Direct expenses:** As detailed on a subsequent page, direct expenses include charges for directional consulting, MWD services, downhole motor rental and tool rental. Significant vendors include Gordon Technologies, REME LLC, Viper Energy, and Workrise - Rusco Operating.

- **Transfers to Related Parties:** Because AEP was the primary revenue generating entity, it helped fund the operations of several related entities by transferring **more than $7.5 million** to related entities and principals during the Analysis Period:
  - AE Partners Holdings    $3.4 million
  - Invictus                         $1.8 million
  - AFR                              $440K
  - J Parker Construction   $968K
  - Thomas Wayne, LLC    $190K
  - Etter                           $785K



### Aggregate Cash Flows in Analysis Period
*$ in thousands*



### Annual Cash Flows

| $ in thousands | Dec-22 | Dec-23 | Dec-24 | Apr-25 | TOTAL |
|---|---|---|---|---|---|
| **BEGINNING CASH** | $1,587.8 | $756.9 | $184.0 | $5.7 | $1,587.8 |
| **OPERATING RECEIPTS** | $23,162.1 | $9,349.2 | $3,798.8 | $325.4 | $36,635.5 |
| **OPERATING DISBURSEMENTS** | | | | | |
| Direct Expenses | (15,838.6) | (4,829.0) | (1,347.0) | (5.8) | (22,020.4) |
| Payroll & Related | (608.1) | (866.4) | (505.7) | (20.5) | (2,000.7) |
| Capital Investments | (2,433.8) | (50.0) | (78.4) | - | (2,562.2) |
| Loan Payments | (131.1) | (76.7) | (61.9) | (10.3) | (279.9) |
| Other Operating Expenses | (1,967.4) | (1,019.7) | (737.8) | (20.4) | (3,745.4) |
| Unknown | (27.0) | - | - | (14.1) | (41.1) |
| **TOTAL OPERATING DISBURSEMENTS** | $(21,006.0) | $(6,841.8) | $(2,730.7) | $(71.2) | $(30,649.7) |
| **RELATED PARTY TRANSACTIONS** | | | | | |
| (to) / from AEP | - | - | - | - | - |
| (to) / from AFR | (85.0) | (240.0) | (115.0) | - | (440.0) |
| (to) / from AEP Holdings | (1,085.0) | (1,631.0) | (762.5) | 39.0 | (3,439.5) |
| (to) / from AEP Asset Holdings | - | - | - | - | - |
| (to) / from Invictus | (409.6) | (1,112.7) | (228.9) | - | (1,751.2) |
| (to) / from Jerod Furr | - | - | - | - | - |
| (to) / from Dustin Etter | (784.8) | - | - | - | (784.8) |
| (to) / from Thomas Wayne LLC | - | (90.0) | (100.0) | - | (190.0) |
| (to) / from J Parker Construction | (622.5) | (6.6) | (40.0) | (299.0) | (968.1) |
| **TOTAL RELATED PARTY TRANSACTIONS** | $(2,986.9) | $(3,080.3) | $(1,246.4) | $(260.0) | $(7,573.6) |
| **NET CASH FLOW** | $(830.8) | $(572.9) | $(178.3) | $(5.8) | $(1,587.8) |
| **ENDING CASH BALANCE** | $756.9 | $184.0 | $5.7 | $(0.1) | $(0.1) |

# Alliance Energy Partners, LLC

## Operating Receipts

- As noted on the prior page, annual operating receipts declined sharply from $23.2 million in 2022 to $9.3 million in 2023 then to $3.8 million in 2024.

- Through the first four months of 2025, AEP collected $325K from customers, representing an annualized run rate of less than $1.0 million of collections for the year.

- Colgate Energy accounted for 62% of the total ($22.7 million of $36.6 million) during the Analysis Period. In 2022 alone, Colgate Energy accounted for 97.6% of Operating Receipts.

- AEP generated revenue from many customers in only one year, indicating that receipts were likely tied to specific, one-time projects rather than recurring contracts.

### Operating Receipts by Customer

| CUSTOMER | 2022 | 2023 | 2024 | 2025 | Total |
|---|---|---|---|---|---|
| Colgate Energy | $ 22,612,356 | $ 41,406 | $ - | $ - | $ 22,653,762 |
| Arrow S Energy Operating | 199,554 | 4,385,091 | 303,573 | 6,095 | 4,894,313 |
| Earthstone Operating, LLC | - | 2,942,138 | 673,060 | - | 3,615,198 |
| Centennial Resource Production, LLC | 40,470 | 419,996 | 664,896 | - | 1,125,363 |
| Patton Exploration, Inc | - | 1,449,697 | 262,716 | - | 1,712,412 |
| Blackbeard Operating LLC | - | - | 563,025 | 16,500 | 579,525 |
| Ageron Energy, LLC | - | - | 201,200 | 302,823 | 504,023 |
| Crimson Energy Partners IV, LLC | 309,682 | - | - | - | 309,682 |
| Point Energy Partners Operating, LLC | - | - | 351,461 | - | 351,461 |
| BlackBrush O&G LLC | - | - | 186,904 | - | 186,904 |
| El Toro Resources LLC and Company Group | - | - | 166,804 | - | 166,804 |
| BB-Southtex LLC | - | - | 113,420 | - | 113,420 |
| Tri-State Vacuum and Rental | - | 110,530 | - | - | 110,530 |
| Altitude Energy Partners | - | - | 96,594 | - | 96,594 |
| Iron Orchard Operating, LLC | - | - | 74,050 | - | 74,050 |
| SB Directional | - | - | 56,584 | - | 56,584 |
| Lee Construction | - | - | 48,180 | - | 48,180 |
| Cheyenne Petroleum Company | - | - | 18,215 | - | 18,215 |
| Diamondback Energy | - | - | 18,137 | - | 18,137 |
| **Total** | **$ 23,162,063** | **$ 9,348,858** | **$ 3,798,818** | **$ 325,418** | **$ 36,635,157** |



# Alliance Energy Partners, LLC

## Disbursements

- Direct expenses totaled **$22.0 million** over the Analysis Period. The largest vendors were Gordon Technologies ($6.4 million), REME LLC ($2.8 million), Viper Energy ($1.4 million), and Rusco ($1.3 million). Direct expenses decreased after 2022 in connection with the significant decline in operating receipts.

- Capital investments were concentrated in 2022, including $996K for the property at 5450 Hanea Egypt Rd., $832K invested in the motor shop, and $200K paid to Dyna-Drill Technologies. Later investments were smaller, such as $50K to Isodrill in both 2023 and 2024 and $18K to Keystone Manufacturing in 2024.

- Loan payments totaled approximately $280K during the Analysis Period, including approximately $163K to Mercedes Benz Finance, $69K to Eric Ostrander, $33K to Ally Bank, and $15k on a retail loan line.

### Capital Investments

| Payee | 2022 | 2023 | 2024 | 2025 | Total |
|---|---|---|---|---|---|
| Property - 5450 Hanea Egypt Rd. | $ 995,515 | $ - | $ - | $ - | $ 995,515 |
| Motorshop Investment | 832,036 | - | - | - | 832,036 |
| Applied Machinery Corp | 65,000 | - | - | - | 65,000 |
| DAVM, LLC | - | - | 3,540 | - | 3,540 |
| Dyna-Drill Technologies | 232,752 | - | - | - | 232,752 |
| Freedom Drilling Tools | 67,000 | - | - | - | 67,000 |
| Isodrill | - | 50,000 | 50,000 | - | 100,000 |
| Keystone Manufacturing | - | - | 18,300 | - | 18,300 |
| North South Properties | 100,000 | - | - | - | 100,000 |
| San Joaquin Tractor Co | 25,694 | - | - | - | 25,694 |
| Tellez Machine | - | - | 6,571 | - | 6,571 |
| Tensor Energy Services LTD | 115,824 | - | - | - | 115,824 |
| **Total** | **$ 2,433,822** | **$ 50,000** | **$ 78,411** | **$ -** | **$ 2,562,233** |

### Direct Expenses

| Vendor | 2022 | 2023 | 2024 | 2025 | Total |
|---|---|---|---|---|---|
| Gordon Technologies | $ 4,880,686 | $ 1,416,658 | $ 56,150 | $ - | $ 6,353,495 |
| REME LLC (DIG) | 2,744,189 | 14,554 | 2,000 | - | 2,760,743 |
| Viper Energy | 1,428,167 | - | - | - | 1,428,167 |
| Workrise - Rusco Operating, LLC | - | 919,551 | 421,327 | - | 1,340,878 |
| DH3 Energy Inc (Daniel Hudspeth) | 402,969 | 390,598 | 206,154 | - | 999,721 |
| Gator Technologies | 516,609 | 244,302 | 115,036 | - | 875,947 |
| Rodney Rice | 146,965 | 447,638 | 147,775 | 5,750 | 748,127 |
| IAE International (Sniper) | 599,153 | 127,751 | - | - | 726,905 |
| Cavare Inc | 378,620 | 67,764 | 56,506 | - | 502,889 |
| Shane Davis | 254,575 | 73,710 | - | - | 328,285 |
| JA Oilfield | 303,409 | - | 4,100 | - | 307,509 |
| Harry Pierce | 208,950 | 73,710 | - | - | 282,660 |
| Patriot Downhole (Firethorne) | 10,834 | 136,677 | 126,598 | - | 274,109 |
| Justin Bailey | 219,838 | 48,562 | - | - | 268,400 |
| Discovery Downhole | 265,053 | - | - | - | 265,053 |
| DynoMax Drilling Tools USA, Inc. | - | 250,019 | - | - | 250,019 |
| T Gibson Consulting | 222,858 | 22,580 | - | - | 245,438 |
| Turnazontal | 147,350 | 61,662 | 30,700 | - | 239,712 |
| 90 Right Consulting | 200,281 | 20,412 | - | - | 220,693 |
| Luis Garza | 219,844 | - | - | - | 219,844 |
| Bico Drilling Tools | 215,662 | - | - | - | 215,662 |
| Pegasus Nvg Trucking | 179,700 | 30,199 | - | - | 209,899 |
| JL Henry Corp | 197,599 | 950 | 1,850 | - | 200,399 |
| Other | 2,084,077 | 481,730 | 178,767 | - | 2,744,575 |
| **Total** | **$ 15,829,409** | **$ 4,831,050** | **$ 1,348,987** | **$ 7,775** | **$ 22,009,127** |

### Loan Payments

| Payee | 2022 | 2023 | 2024 | 2025 | Total |
|---|---|---|---|---|---|
| Mercedes Benz Finance | 51,537 | 51,537 | 51,537 | 8,589 | 163,200 |
| Eric Ostrander | 69,248 | - | - | - | 69,248 |
| Ally Bank | 10,315 | 10,315 | 10,315 | 1,719 | 32,663 |
| Line Payment to Retail Loan | - | 14,830 | - | - | 14,830 |
| **Total** | **$ 131,099** | **$ 76,681** | **$ 61,851** | **$ 10,309** | **$ 279,941** |



# Alliance Farm and Ranch, LLC

## Summary of Cash Flows

- **No Third-Party Revenue:** AFR relied upon transfers from related entities to fund operating expenses, including receiving approximately **$440K from AEP, $427K from Invictus,** and **$138K from AE Partners Holdings**.

- **Uses of Cash:** AFR utilized funds received from related entities for three primary purposes:
  - **$327K was transferred to Furr** or for his benefit, including $11K to Nathan Furr in August 2024 and approximately $16K to Mary Ross Custom Homes in March 2023.
  - **$480K was paid to Eric Ostrander**, beginning in August 2022, pursuant to the certain Real Estate Lien Note used to acquire the property at 5450 Hanea Egypt Rd.
    - AFR also paid $20K to Popular Ag Finance as a deposit for refinancing.
  - **$180K for various operating expenses**, including (but not limited to) property taxes, supplies, and repairs and maintenance.

- **Unknown transfers:** HP also identified three transactions where insufficient documentation or detail was available to assess the business purpose and / or counterparts. These transactions are detailed on a later page.

**Loan Payments**

| Payee | 2022 | 2023 | 2024 | 2025 | Total |
|---|---|---|---|---|---|
| Eric Ostrander | 133,764 | 276,993 | 69,248 | - | 480,004 |
| Popular Ag Finance | - | - | 20,000 | - | 20,000 |
| **Total** | **$ 135,786** | **$ 279,016** | **$ 91,272** | **$ 2,025** | **$ 500,004** |



### Aggregate Cash Flows in Analysis Period
*$ in thousands*



### Annual Cash Flows

| *$ in thousands* | Dec-22 | Dec-23 | Dec-24 | Apr-25 | TOTAL |
|---|---|---|---|---|---|
| **BEGINNING CASH** | - | $32.6 | $5.9 | $74.1 | - |
| **OPERATING RECEIPTS** | - | - | $37.4 | $0.3 | $37.7 |
| **OPERATING DISBURSEMENTS** | | | | | |
| Direct Expenses | - | - | - | - | - |
| Payroll & Related | - | - | - | - | - |
| Capital Investments | - | - | - | - | - |
| Loan Payments | (133.8) | (277.0) | (89.2) | - | (500.0) |
| Other Operating Expenses | (6.6) | (69.7) | (97.9) | (5.6) | (179.8) |
| Unknown | (32.1) | 100.0 | (103.4) | - | (35.5) |
| **TOTAL OPERATING DISBURSEMENTS** | **$(172.4)** | **$(246.7)** | **$(290.6)** | **$(5.6)** | **$(715.3)** |
| **RELATED PARTY TRANSACTIONS** | | | | | |
| (to) / from AEP | 85.0 | 240.0 | 115.0 | - | 440.0 |
| (to) / from AFR | - | - | - | - | - |
| (to) / from AEP Holdings | - | (100.0) | 237.5 | - | 137.5 |
| (to) / from AEP Asset Holdings | - | - | - | - | - |
| (to) / from Invictus | 120.0 | 220.0 | 86.8 | - | 426.8 |
| (to) / from Jerod Furr | (0.0) | (139.9) | (117.9) | (68.9) | (326.8) |
| (to) / from Dustin Etter | - | - | - | - | - |
| (to) / from Thomas Wayne LLC | - | - | - | - | - |
| (to) / from J Parker Construction | - | - | - | - | - |
| **TOTAL RELATED PARTY TRANSACTIONS** | **$205.0** | **$220.1** | **$321.4** | **$(68.9)** | **$677.5** |
| **NET CASH FLOW** | **$32.6** | **$(26.6)** | **$68.2** | **$(74.2)** | **$(0.0)** |
| **ENDING CASH BALANCE** | **$32.6** | **$5.9** | **$74.1** | **$(0.0)** | **$(0.0)** |



# Non-Debtor Entities

# AE Partners Holdings, Inc.

## Summary of Cash Flows

- **Sources of Cash**: AEP was the primary source of funding of AE Partners Holdings, transferring approximately **$3.4 million** during the Analysis Period to AE Partners Holdings.
  - Only about **$24K** was received from other sources, including refunds from the Texas Comptroller and interest income from Frost Bank.

- **Payroll**: AE Partners Holdings incurred approximately **$750K** in payroll expenses during the Analysis Period. HP did not receive a comprehensive payroll report detailing the payroll expenses by employee. However, HP did receive paystubs from a June 2023 pay period that reflected Furr and Etter were paid salaries from this entity.

- **Capital Investments**: Approximately **$200K** in capital expenditures were made to Isodrill during the Analysis Period.

- **Transfers to Related Parties:** AE Partners Holdings transferred funds to related entities totaling more than **$2.5 million**, including:
  - Invictus                $1.7 million
  - AEP Asset              $566K
  - AFR                    $138K
  - Furr                   $67K
  - J Parker Construction  $60K

### Aggregate Cash Flows in Analysis Period
*$ in thousands*



### Annual Cash Flows

| $ in thousands | Dec-22 | Dec-23 | Dec-24 | Apr-25 | TOTAL |
|---|---|---|---|---|---|
| **BEGINNING CASH** | - | $75.9 | $3.5 | $43.0 | - |
| **OPERATING RECEIPTS** | $0.4 | $11.6 | $0.0 | $11.5 | $23.5 |
| **OPERATING DISBURSEMENTS** | | | | | |
| Direct Expenses | - | - | - | - | - |
| Payroll & Related | (26.9) | (599.1) | (119.1) | (5.3) | (750.5) |
| Capital Investments | - | (200.0) | - | - | (200.0) |
| Loan Payments | - | - | - | - | - |
| Other Operating Expenses | (0.1) | (0.9) | (11.2) | (2.0) | (14.2) |
| Unknown | - | - | - | - | - |
| **TOTAL OPERATING DISBURSEMENTS** | $(27.0) | $(799.9) | $(130.3) | $(7.3) | $(964.6) |
| **RELATED PARTY TRANSACTIONS** | | | | | |
| (to) / from AEP | 1,085.0 | 1,631.0 | 762.5 | (39.0) | 3,439.5 |
| (to) / from AFR | - | 100.0 | (237.5) | - | (137.5) |
| (to) / from AEP Holdings | - | - | - | - | - |
| (to) / from AEP Asset Holdings | (330.0) | (240.0) | (0.5) | 4.5 | (566.0) |
| (to) / from Invictus | (567.5) | (775.0) | (324.5) | (0.7) | (1,667.7) |
| (to) / from Jerod Furr | (25.0) | - | (30.2) | (11.5) | (66.7) |
| (to) / from Dustin Etter | - | - | - | - | - |
| (to) / from Thomas Wayne LLC | - | - | - | - | - |
| (to) / from J Parker Construction | - | - | - | - | (60.0) |
| **TOTAL RELATED PARTY TRANSACTIONS** | $102.5 | $716.0 | $169.8 | $(46.7) | $941.6 |
| **NET CASH FLOW** | $75.9 | $(72.4) | $39.5 | $(42.5) | $0.5 |
| **ENDING CASH BALANCE** | $75.9 | $3.5 | $43.0 | $0.5 | $0.5 |



# Invictus Drilling Motors, LLC

## Summary of Cash Flows

- **Sources of Cash**: Invictus was primarily funded through intercompany transfers, including **$1.75 million from AEP** and **$1.67 million from AE Partners Holdings**.

- **Limitations on Analysis**: HP was unable to review and assess the majority of disbursements made by Invictus because the payments were made via ACH, and the bank statements did not contain any detail identifying the recipients of the ACH payments.

  - Due to the lack of ACH payment detail, HP was also **unable to fully reconcile intercompany transfers** between AFR and Invictus, resulting in discrepancies in the transaction records.

    - AFR bank records reflect approximately $427K of transfers from Invictus. Many of these transfers were ACH payments so HP was only able to identify approximately $187K of transfers in the Invictus bank records with the current information available.

  - *HP has requested ACH reports available from Frost Bank to obtain the missing payment detail. This request remains outstanding as of the date of this Draft Report.*

### Aggregate Cash Flows in Analysis Period
$ in thousands





### Annual Cash Flows

| $ in thousands | Dec-22 | Dec-23 | Dec-24 | Apr-25 | TOTAL |
|---|---|---|---|---|---|
| **BEGINNING CASH** | - | $26.5 | $12.2 | $(0.0) | - |
| **OPERATING RECEIPTS** | $99.0 | $196.1 | $1.6 | - | $296.6 |
| **OPERATING DISBURSEMENTS** | | | | | |
| Direct Expenses | - | - | - | - | - |
| Payroll & Related | - | - | - | - | - |
| Capital Investments | - | - | - | - | - |
| Loan Payments | - | - | - | - | - |
| Other Operating Expenses | (0.6) | (1.1) | (1.4) | (0.5) | (3.6) |
| Unknown | (988.9) | (1,918.8) | (499.0) | - | (3,406.7) |
| **TOTAL OPERATING DISBURSEMENTS** | $(989.5) | $(1,919.9) | $(500.5) | $(0.5) | $(3,410.4) |
| **RELATED PARTY TRANSACTIONS** | | | | | |
| (to) / from AEP | 409.6 | 1,112.7 | 228.9 | - | 1,751.2 |
| (to) / from AFR | (60.0) | (60.0) | (66.8) | - | (186.8) |
| (to) / from AEP Holdings | 567.5 | 775.0 | 324.5 | 0.7 | 1,667.7 |
| (to) / from AEP Asset Holdings | - | (118.2) | - | - | (118.2) |
| (to) / from Invictus | - | - | - | - | - |
| (to) / from Jerod Furr | - | - | - | - | - |
| (to) / from Dustin Etter | - | - | - | - | - |
| (to) / from Thomas Wayne LLC | - | - | - | - | - |
| (to) / from J Parker Construction | - | - | - | - | - |
| **TOTAL RELATED PARTY TRANSACTIONS** | $917.0 | $1,709.5 | $486.6 | $0.7 | $3,113.9 |
| **NET CASH FLOW** | $26.5 | $(14.3) | $(12.3) | $0.2 | $0.1 |
| **ENDING CASH BALANCE** | $26.5 | $12.2 | $(0.0) | $0.1 | $0.1 |



# AEP Asset Holdings, LLC

## Summary of Cash Flows

- **Transaction Volume:** Activity within this entity was limited, with only a small number of transactions recorded during the Analysis Period.

- **Funding Sources**: Inflows totaled approximately **$684K**, consisting of transfers of **$566K from AE Partners Holdings** and **$118K from Invictus.**

- **Use of Funds**: The funds transferred from related entities were primarily used to pay two counterparties:
  - Danny Williams was paid **$313K**;
  - Supreme Source Energy was paid **$375K**.

**Aggregate Cash Flows in Analysis Period**
*$ in thousands*



## Annual Cash Flows

| $ in thousands | Dec-22 | Dec-23 | Dec-24 | Apr-25 | TOTAL |
|---|---|---|---|---|---|
| **BEGINNING CASH** | - | $17.3 | $0.0 | $0.1 | - |
| **OPERATING RECEIPTS** | - | - | - | $7.5 | $7.5 |
| **OPERATING DISBURSEMENTS** | | | | | |
| Direct Expenses | - | - | - | - | - |
| Payroll & Related | - | - | - | - | - |
| Capital Investments | (312.5) | (375.0) | - | - | (687.5) |
| Loan Payments | - | - | - | - | - |
| Other Operating Expenses | (0.2) | (0.5) | (0.4) | (2.0) | (3.1) |
| Unknown | - | - | - | - | - |
| **TOTAL OPERATING DISBURSEMENTS** | $(312.7) | $(375.5) | $(0.4) | $(2.0) | $(690.6) |
| **RELATED PARTY TRANSACTIONS** | | | | | |
| (to) / from AEP | - | - | - | - | - |
| (to) / from AFR | - | - | - | - | - |
| (to) / from AEP Holdings | 330.0 | 240.0 | 0.5 | (4.5) | 566.0 |
| (to) / from AEP Asset Holdings | - | - | - | - | - |
| (to) / from Invictus | - | 118.2 | - | - | 118.2 |
| (to) / from Jerod Furr | - | - | - | - | - |
| (to) / from Dustin Etter | - | - | - | - | - |
| (to) / from Thomas Wayne LLC | - | - | - | - | - |
| (to) / from J Parker Construction | - | - | - | - | - |
| **TOTAL RELATED PARTY TRANSACTIONS** | $330.0 | $358.2 | $0.5 | $(4.5) | $684.2 |
| **NET CASH FLOW** | $17.3 | $(17.3) | $0.1 | $1.0 | $1.1 |
| **ENDING CASH BALANCE** | $17.3 | $0.0 | $0.1 | $1.1 | $1.1 |








# Potential Preference & Avoidance Actions

DRAFT

DRAFT

# Payments within 90 Days of Petition Date

The below payments were made by the two debtor entities within 90 days of their respective Petition Dates and does not include transfers to Insiders. Data is presented on an unconsolidated basis by payment and is not on an aggregate basis by recipient as contemplated by question #3 in the Statement of Financial Affairs.

## Alliance Farm and Ranch

**Petition Date: January 7, 2025**

*EXCLUDING PAYMENTS TO INSIDERS*

| Date | Amount | Recipient |
|------|--------|-----------|
| 11/22/24 | ($100,000.00) | Weaver Law Firm |
| 10/07/24 | ($20,000.00) | Popular Ag Finance |
| 12/31/24 | ($8,480.00) | Rejas, Hua & Hoang, PLLC |
| 02/04/25 | ($4,439.29) | Safeco Corporation |
| 10/09/24 | ($4,200.00) | Texans Water Heaters |
| 11/22/24 | ($3,500.00) | Chamberlain Hrdlicka |
| 10/07/24 | ($2,500.00) | Steel Fox Designs |
| 11/01/24 | ($2,430.00) | Jacob Mitchell |
| 12/12/24 | ($1,612.00) | Jacob Mitchell |
| 10/07/24 | ($1,440.00) | Jacob Mitchell |

## Alliance Energy Partners

**Petition Date: April 7, 2025**

*EXCLUDING PAYMENTS TO INSIDERS*

| Date | Amount | Recipient |
|------|--------|-----------|
| 01/17/25 | ($7,074.11) | Quickbooks Payroll |
| 01/09/25 | ($6,500.00) | Unknown ACH Payment |
| 01/10/25 | ($6,401.47) | Blue Cross Blue Shield of Texas |
| 02/18/25 | ($5,750.00) | Rodney Rice |
| 01/21/25 | ($4,857.53) | Brittany Lopez CPA PC |
| 02/05/25 | ($4,500.00) | Unknown ACH Payment |
| 02/18/25 | ($4,500.00) | Unknown ACH Payment |
| 01/13/25 | ($4,294.73) | Mercedes Benz Finance |
| 02/11/25 | ($4,294.73) | Mercedes Benz Finance |
| 01/22/25 | ($3,254.79) | Champion Energy |
| 02/03/25 | ($3,125.00) | Unknown ACH Payment |
| 01/13/25 | ($2,861.88) | Sandstone Ridge Apartments |
| 01/15/25 | ($2,162.58) | Internal Revenue Service |
| 01/21/25 | ($2,052.67) | Ferretville Investments LLC |


HARNEY PARTNERS

# Transfers to Insiders within 1 Year of Petition Date

The below payments were made by the two debtor entities within 90 days of their respective Petition Dates and does not include transfers to Insiders. Data is presented on an unconsolidated basis by payment and is not on an aggregate basis by recipient as contemplated by question #3 in the Statement of Financial Affairs.

## Alliance Farm and Ranch

**Petition Date: January 7, 2025**

| Insider | Amount Transferred | Number of Transfers |
|---|---|---|
| Jerod Furr | $201,900.00 | 25 |
| Nathan Furr | 11,000.00 | 1 |
| AE Partner Holdings | $ 7,500.00 | 2 |
| | **$220,400.00** | |

## Alliance Energy Partners

**Petition Date: April 7, 2025**

| Insider | Amount Transferred | Number of Transfers |
|---|---|---|
| AE Partner Holdings | $417,500.00 | 15 |
| J Parker Construction | 340,000.00 | 2 |
| Alliance Farm and Ranch | 55,000.00 | 3 |
| Invictus | 30,000.00 | 1 |
| Thomas Wayne LLC | 25,000.00 | 1 |
| | **$867,500.00** | |


HARNEY PARTNERS

**Draft – Subject to ongoing investigation –**
**For purposes related to the combination plan and disclosure statement only**

Case 25-90383   Document 637   Filed in TXSB on 12/02/25   Page 91 of 97

# Payments to Principals

The charts below depict the transfers from AEP, AFR and AE Partners Holdings to the two principals, Furr and Etter, during the Analysis Period. The below charts do not include any w-2 wages paid to Furr and Etter. HP understands, but has not verified, that AE Partner Holdings employed and paid salaries to both Furr and Etter during at least part of the Analysis Period.







# Intercompany Transactions from Debtor Accounts

Below table illustrates the intercompany transfers between the two Debtors and the three non-debtor entities included in this forensic analysis:

| Entity | 2022 | 2023 | 2024 | 2025 | Total |
|---|---|---|---|---|---|
| **AEP** | | | | | |
| (to) / from AEP | - | - | - | - | - |
| (to) / from AFR | ($85,000) | ($240,000) | ($115,000) | - | ($440,000) |
| (to) / from AE Partners Holdings | ($1,085,000) | ($1,631,000) | ($762,500) | $39,000 | ($3,439,500) |
| (to) / from AEP Asset Holdings | - | - | - | - | - |
| (to) / from Invictus | ($409,570) | ($1,112,694) | ($228,924) | - | ($1,751,187) |
| **AFR** | | | | | |
| (to) / from AEP | $85,000 | $240,000 | $115,000 | - | $440,000 |
| (to) / from AFR | - | - | - | - | - |
| (to) / from AE Partners Holdings | - | ($100,000) | $237,500 | - | $137,500 |
| (to) / from AEP Asset Holdings | - | - | - | - | - |
| (to) / from Invictus | $120,000 | $220,000 | $86,800 | - | $426,800 |



**Draft – Subject to ongoing investigation –**
**For purposes related to the combination plan and disclosure statement only**

Case 25-90885   Document 637   Filed in TXSB on 02/02/25   Page 93 of 97

# Transfers to J Parker Construction

HP identified eighteen (18) transfers totaling **over $968K** to J Parker Construction from AEP, a potential insider of the Debtors, during the Analysis Period.

Many of the transfers were booked in QuickBooks as "Member 1 Draws" and reflected as payments to Jerod P Furr. Bank records (below) reflect these as transferred to Truist account ending 3493, which is owned by J Parker Construction (as reflected in the wire detail below on the right).

**$60K** was also transfer to J Parker Construction by AE Partners Holdings via wire transfer in September 2022 (see snapshot below on the right).

### Snapshot from 2022 General Ledger

| Date | Memo | Payee | Distribution | Contribution |
|---|---|---|---|---|
| **Member 1 Draws** | | | | |
| 01/01/2022 | | | | 100.00 |
| 01/01/2022 | | | | 76,000.00 |
| 01/04/2022 | Draw | Jerod P Furr | 60,000.00 | |
| 01/26/2022 | ACH | Internal Revenue Service | 47,566.00 | |
| 02/03/2022 | Draw | Jerod P Furr | 30,000.00 | |
| 02/15/2022 | | Jerod P Furr | 718.61 | |
| 03/17/2022 | | Jerod P Furr | 30,000.00 | |
| 04/08/2022 | Draw | Jerod P Furr | 30,000.00 | |
| 05/11/2022 | Draw | Jerod P Furr | 30,000.00 | |
| 06/13/2022 | Draw | Jerod P Furr | 75,000.00 | |
| 07/08/2022 | Draw | Jerod P Furr | 100,000.00 | |
| 08/01/2022 | Draw | Jerod P Furr | 75,000.00 | |
| 08/22/2022 | Draw | Jerod P Furr | 75,000.00 | |
| 09/14/2022 | Draw | Jerod P Furr | 45,000.00 | |
| 10/17/2022 | Draw | Jerod P Furr | 25,000.00 | |
| 11/17/2022 | Draw | Jerod P Furr | 30,000.00 | |
| 12/02/2022 | | J. Parker Construction | 500.00 | |
| 12/05/2022 | | J. Parker Construction | 2,000.00 | |
| **Total Member 1 Draws** | | | **655,784.61** | **76,100.00** |

### TRANSFERS TO J PARKER CONSTRUCTION

| Date | Stmt Amount | Account Name | Account Entity | Description | Accounting Treatment |
|---|---|---|---|---|---|
| 01/04/22 | -$60,000.00 | Truist 3728 | Alliance Energy Partners | M - APP TRANSFER TRANSFER TO CHECKING 1440003583493 | Member 1 Draws |
| 02/03/22 | -$30,000.00 | Truist 3728 | Alliance Energy Partners | M - APP TRANSFER TRANSFER TO CHECKING 1440003583493 | Member 1 Draws |
| 03/17/22 | -$30,000.00 | Truist 3728 | Alliance Energy Partners | M - APP TRANSFER TRANSFER TO CHECKING 1440003583493 | Member 1 Draws |
| 04/08/22 | -$30,000.00 | Truist 3728 | Alliance Energy Partners | M - APP TRANSFER TRANSFER TO CHECKING 1440003583493 | Member 1 Draws |
| 05/11/22 | -$30,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST APP TRANSFER TRANSFER TO CHECKING 1440003583493 | Member 1 Draws |
| 06/13/22 | -$75,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST APP TRANSFER TRANSFER TO CHECKING 1440003583493 | Member 1 Draws |
| 07/08/22 | -$100,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST APP TRANSFER TRANSFER TO CHECKING 1440003583493 | Member 1 Draws |
| 08/01/22 | -$75,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST APP TRANSFER TRANSFER TO CHECKING 1440003583493 | Member 1 Draws |
| 08/22/22 | -$75,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST APP TRANSFER TRANSFER TO CHECKING 1440003583493 | Member 1 Draws |
| 09/14/22 | -$45,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST APP TRANSFER TRANSFER TO CHECKING 1440003583493 | Member 1 Draws |
| 10/17/22 | -$25,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST ONLINE TRANSFER MOBILE TO **** 3493 - | Member 1 Draws |
| 11/17/22 | -$30,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST ONLINE TRANSFER MOBILE TO **** 3493 - | Member 1 Draws |
| 11/21/22 | -$15,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST ONLINE TRANSFER MOBILE TO **** 3493 - | Rent Expense (AFR) |
| 12/02/22 | -$500.00 | Truist 3728 | Alliance Energy Partners | TRUIST ONLINE TRANSFER MOBILE TO **** ** : 3493 - | Member 1 Draws |
| 12/05/22 | -$2,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST ONLINE TRANSFER MOBILE TO **** 3493 - | Member 1 Draws |
| 11/06/23 | -$6,600.00 | Truist 3728 | Alliance Energy Partners | TRUIST ONLINE TRANSFER MOBILE TO **** 3493 - | Member 1 Equity - Jerod |
| 12/27/24 | -$40,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST ONLINE TRANSFER MOBILE TO **** 3493 - | Member 1 Draws |
| 02/03/25 | -$300,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST ONLINE TRANSFER MOBILE TO **** 3493 - | Unknown - do not have GL |
| 02/28/25 | $1,000.00 | Truist 3728 | Alliance Energy Partners | TRUIST ONLINE TRANSFER MOBILE FROM **** 3493 - | Unknown - do not have GL |
| | **-$968,100.00** | | | | |
| | | | | | |
| 09/27/22 | -$60,000.00 | Frost 7404 | AE Partners Holding | WIRE TRANSFER FROST BANK WIRE OUT 02914 | Unknown - do not have GL |

### Wire from AE Partners Holdings for $60,000 in September 2022

```
TRN REF #: 20220927-00002914
-----------------------------------------------------------------
    **** MESSAGE ENVELOPE ****              ( Bank : FNB )

SRC:BLT CALLER:                                      SND DATE: 22/09/27
                                                     EXT:

RPT#                       AMT:60,000.00             CUR#        TRDR#
TEST: DUE:                            TYP:FTR/1000 FNDS:S CHG:DB:1 CD:0 COM:N CBL:N

DBT D/503207404/                    CDT A/111017694          ADV:FED
DEBIT VAL: 22/09/27                 CREDIT VAL: 22/09/27
DEPT:0020143                        DEPT:0020143
AE PARTNERS HOLDINGS INC            TRUIST BANK
20008 CHAMPION FOREST DR STE 1203   2021 W MCDERMOTT DR
SPRING TX 77379                     ALLEN TX
SNDR REF NUM:2546316                COUNTRY OF RESIDENCY: US
                                    BNF:/1440003583493      CHG:  BK?N
                                    J Parker Construction
                                    10011 Cypresswood Dr.
                                    Houston, TX 77070
                                    COUNTRY OF RESIDENCY: US
                                    ORIG TO BNF INFO:
                                    payment
```



**Draft – Subject to ongoing investigation –**
**For purposes related to the combination plan and disclosure statement only**

Case 25-33855   Document 637   Filed in TXSB on 02/02/25   Page 94 of 97

# Unverified Transfers

HP was not provided sufficient documentation or detail to assess the business purpose and / or counterparty to the below transactions:

## Alliance Farm and Ranch

| Date | Amount | Recipient | Description |
|------|--------|-----------|-------------|
| 08/09/23 | $100,000.00 | Stephen Drew Bonner | WIRE TRANSFER FROST BANK WIRE IN 04043 |
| 11/22/24 | ($100,000.00) | Weaver Law Firm | WIRE TRANSFER FROST BANK WIRE OUT 06592 |
| 11/09/22 | ($32,074.68) | Jason Stewart | WIRE TRANSFER FROST BANK WIRE OUT 02575 |

## Alliance Energy Partners

| Date | Amount | Recipient | Description |
|------|--------|-----------|-------------|
| 05/26/22 | ($26,960.00) | Gulf Coast Exotic Auto LLC | 2022 MOKE Electric |
| 01/09/25 | ($6,500.00) | Unverified | ACH SETTLEMENT |
| 02/04/25 | $4,500.00 | Unverified | ACH REVERSAL SETTLEMENT |
| 02/05/25 | ($4,500.00) | Unverified | ACH RETURN |
| 02/18/25 | ($4,500.00) | Unverified | ACH SETTLEMENT |
| 02/03/25 | ($3,125.00) | Unverified | ACH SETTLEMENT |

## Invictus

| Date | Amount | Recipient | Description |
|------|--------|-----------|-------------|
| 01/19/24 | ($306,205.20) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 03/16/23 | ($263,703.12) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 08/23/22 | ($200,596.35) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 06/14/23 | ($139,802.73) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 02/03/23 | ($137,759.60) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 10/17/22 | ($129,124.35) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 10/31/23 | ($109,557.25) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 06/01/23 | ($97,501.58) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 08/30/23 | ($96,567.42) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 08/01/23 | ($95,438.24) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 07/18/23 | ($93,292.27) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 09/29/22 | ($88,789.55) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 08/01/22 | ($87,475.00) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 12/30/22 | ($86,705.60) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 04/03/23 | ($85,313.29) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 12/20/23 | ($76,027.46) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 11/22/23 | ($70,325.19) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 01/11/23 | ($66,491.03) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 05/03/23 | ($64,893.56) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 05/17/23 | ($64,004.75) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 10/25/23 | ($58,706.00) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 02/16/23 | ($56,665.51) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 01/05/24 | ($56,393.23) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |
| 03/01/23 | ($54,251.13) | Unverified | ACH ORIGINATION DEBITS INVICTUS DRILLIN CORP PAY -SETT |

*Note*: this is only a partial listing of the largest ACH payments made by Invictus.



# Payroll

AEP and AP Partners Holdings paid employees through payroll services during the Analysis Period.

Case 25-90126   Document 187   Filed in TXSB on 12/02/25   Page 95 of 97

## AEP Employees during Analysis Period

### Employees paid by AEP through QuickBooks Payroll Service

- Amy M Fisher
- Binh Thai
- Candace Cantu
- Christopher P Hargrave
- Darrin E Batchelor
- Jeana Hurley
- Jeraime H Yeager
- Jose P Velasquez Alfaro
- Joseph R Salazar
- Julio A Espinoza
- Martin E Herrera
- Nathan Furr
- Richard McNabb
- Travis W Daily

## AE Partners Holdings payroll decreased in Q4 2023



Net Pay Remitted to Intuit Payroll Service

## Snapshots from June 15, 2023 Pay Stubs

**Employee**
Dustin T Etter, 141 County Road 439, Lindsay, TX 76250

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Salary | | | 17,500.00 | 192,500.00 |
| **Taxes** | | | **Current** | **YTD Amount** |
| Medicare Employee Addl Tax | | | 0.00 | 0.00 |
| Federal Withholding | | | -4,314.00 | -47,454.00 |
| Social Security Employee | | | 0.00 | -9,932.40 |
| Medicare Employee | | | -253.75 | -2,791.25 |
| | | | -4,567.75 | -60,177.65 |
| **Net Pay** | | | **12,932.25** | **132,322.35** |

**Employee**
Jerod P Furr, 5450 Honea Egypt Rd, Montgomery, TX 77316

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Salary | | | 10,000.00 | 130,000.00 |
| **Taxes** | | | **Current** | **YTD Amount** |
| Medicare Employee Addl Tax | | | 0.00 | 0.00 |
| Federal Withholding | | | -1,573.00 | -22,103.00 |
| Social Security Employee | | | -620.00 | -8,060.00 |
| Medicare Employee | | | -145.00 | -1,885.00 |
| | | | -2,338.00 | -32,048.00 |
| **Net Pay** | | | **7,662.00** | **97,952.00** |



# Capital Investments

The below table shows the various capital investments made by AEP and AP Asset Holdings during the Analysis Period.

| Payee | Capital Investments | | | | |
|---|---|---|---|---|---|
| | 2022 | 2023 | 2024 | 2025 | Total |
| Property - 5450 Hanea Egypt Rd. | $ 995,515 | $ - | $ - | $ - | $ 995,515 |
| Danny T. Williams | 20,833 | - | - | - | 20,833 |
| Supreme Source Energy Services Inc | 811,203 | - | - | - | 811,203 |
| Motorshop Investment Subtotal | 832,036 | - | - | - | 832,036 |
| Applied Machinery Corp | 65,000 | - | - | - | 65,000 |
| DAVM, LLC | - | - | 3,540 | - | 3,540 |
| Dyna-Drill Technologies | 232,752 | - | - | - | 232,752 |
| Freedom Drilling Tools | 67,000 | - | - | - | 67,000 |
| Isodrill | - | 50,000 | 50,000 | - | 100,000 |
| Keystone Manufacturing | - | - | 18,300 | - | 18,300 |
| North South Properties | 100,000 | - | - | - | 100,000 |
| San Joaquin Tractor Co | 25,694 | - | - | - | 25,694 |
| Tellez Machine | - | - | 6,571 | - | 6,571 |
| Tensor Energy Services LTD | 115,824 | - | - | - | 115,824 |
| **AEP Subtotal** | **$ 2,433,822** | **$ 50,000** | **$ 78,411** | **$ -** | **$ 2,562,233** |
| | | | | | |
| Supreme Source Energy Services Inc | $ 125,000 | $ 250,000 | $ - | $ - | $ 375,000 |
| Danny Williams | 187,500 | 125,000 | - | - | 312,500 |
| **AEP Asset Holdings Subtotal** | **312,500** | **312,500** | **312,500** | **312,500** | **312,500** |



**Draft – Subject to ongoing investigation –**
**For purposes related to the combination plan and disclosure statement only**

Case 25-90085   Document 637   Filed in TXSB on 12/02/25   Page 97 of 97

# Asset Transfer

In June 2022, entries were made in AEP's accounting system to transfer the fixed assets from AEP to AEP Asset Holdings in exchange for an intercompany receivable.

The accounting entries shown below removed all fixed assets from AEP's balance sheet and, as of December 31, 2022, left only an intercompany receivable from AEP Asset Holdings in the amount of **$2,953,042.02.**

| Asset | Date | Num | Debit | Credit |
|---|---|---|---|---|
| 2021 Mercedes | 06/02/2022 | CPA2022 | | 335,440.25 |
| 2021 TUA 1000EFI UTV | 06/02/2022 | CPA2022 | | 25,694.00 |
| 2022 MOKE Electric | 06/02/2022 | CPA2022 | | 26,960.00 |
| Drilling Motors | 06/02/2022 | CPA2022 | | 227,528.00 |
| Dustin's 2022 F350 | 06/02/2022 | CPA2022 | | 94,802.00 |
| F150 Truck - 6103 | 06/02/2022 | CPA2022 | | 53,070.41 |
| Ford F550 Flatbed Truck | 06/02/2022 | CPA2022 | | 65,000.00 |
| Ford Truck - Dustin - 5943 | 06/02/2022 | CPA2022 | | 74,000.00 |
| Furniture and Equipment | 06/02/2022 | CPA2022 | | 6,116.99 |
| Golf Cart | 06/02/2022 | CPA2022 | | 10,000.00 |
| Rotors and Stators | 06/02/2022 | CPA2022 | | 299,752.20 |
| Server | 06/02/2022 | CPA2022 | | 11,752.33 |
| Torque Master Breakout machine | 06/02/2022 | CPA2022 | | 100,000.00 |
| Investment - Isodrill | 06/02/2022 | CPA2022 | | 1,125,000.00 |
| Investment - Motor Shop | 06/02/2022 | CPA2022 | | 812,500.00 |
| R&D | 06/02/2022 | CPA2022 | | 50,000.00 |
| Due from AEP Asset Holdings, LL | 06/02/2022 | CPA2022 | 2,738,369.93 | |
| Accumulated Depreciation | 06/02/2022 | CPA2022 | 579,246.25 | |
| | | | | |
| Due from AEP Asset Holdings, LL | 12/31/2022 | CPA2022 | 214,672.09 | |
| Transportation (Tools) | 12/31/2022 | CPA2022 | | 214,672.09 |



*Assets & Liabilities as recorded in AEP's general ledger*



Asset Transfer