

909 Fannin Street, Suite 2700
Houston, Texas 77010

713.588.7000 | vorys.com

Founded 1909

Steven R. Rech
Direct Dial   (713) 588-7017
Direct Fax    (713) 588-7017
Email srech@vorys.com

February 3, 2026

<u>**VIA E-MAIL**</u>

Deborah L. Crain
Law Office of Deborah L. Crain, P.C.
10707 Corporate Drive, Suite 126
Stafford, Texas  77477
dcrain@e-merger.law
sfrizzell@e-merger.law

William James Hotze
Dykema Gossett, PLLC
5 Houston Center
1401 McKinney St.
Suite 1625
Houston, TX 77010
whotze@dykema.com

Thomas A. Howley
Eric Terry
Howley Law, PLLC
700 Louisiana St.
Suite 4220
Houston, TX 77002
tom@howley-law.com
eric@howley-law.com

Noah E. Meek
Irelan Stephens, PLLC
2520 Caroline St.
2nd Floor
Houston, TX 77004
nmeek@irelanlaw.com



February 3, 2026
Page 2

Re:   Isodrill, Inc. – matters pertaining to the Mediated Settlement Agreement
(the "MSA") between Jerod Furr, Dustin Etter, the Chapter 11 Trustee,
and the committee of unsecured creditors in Cause No. 25-30155, In Re
Alliance Farm and Ranch, LLC, et al., dated December 11, 2025.

Dear Counsel:

Yesterday we were provided copies of two emergency motions (the "Abatement Motion"
and the "Temporary Injunction Motion", respectively) filed with the Court in connection with the
above matter.  In light of the hearing scheduled in just two days, I am writing in advance to
highlight certain matters in these motions that are factually inaccurate, or that are based on certain
incorrect assumptions. These include:

- Both motions incorrectly state that Mr. Furr signed Isodrill's third amended and restated
stockholders' agreement (the "SHA") in late December 2025 in which, among other things,
the general transfer restriction period was extended. This is not true.  The SHA was
approved unanimously by the Board of Directors (which does not include Mr. Furr) and by
stockholders holding the requisite ownership percentage to amend the SHA.  The amended
SHA was approved by its terms *without* Mr. Furr's signature or approval, whether for
himself or on behalf of AE Partners Holders, Inc. (AEPH). It is unclear to me how an
unsigned signature block somehow morphed into "Mr. Furr signed."  A simple phone call
or email to me before these filings were made would have confirmed that Mr. Furr was in
no way involved in the amendment.
- The Company's amendment of its SHA in December, including extending the general
restrictive date, was neither "extraordinary" or "inappropriate." In fact, it has occurred
numerous times over the Company's history.  For example, the initial stockholders'
agreement of the Company in February 2016 had a restrictive date of January 1, 2019,
which was subsequently extended to January 1, 2023, and then again later to January 1,
2026.  This latest amendment extending the restrictive date and making other changes was
planned prior to the parties entering the MSA, and was done in contemplation of a potential
financing where any new investor will require that existing shares have limited transfer
rights for an extended period.  The amendments were done in accordance with past practice
and are consistent with the Company's long-held rule that no transfers among the
Company's limited shareholder base should occur absent compliance with its terms.
- As Mr. Furr did not execute or approve of the amended SHA (and as noted, his approval
or execution was not needed), he did not "quickly enter into" the new SHA.

**VORYS**

February 3, 2026
Page 3

- The movants seem to imply that some plan was orchestrated by Mr. Furr to obfuscate the share transfer proposed in the MSA, and that he supposedly should have been able to secure the Company's approval of the transfer.  Again, this is not correct.  The MSA clearly stated that any transfer of shares was subject to and conditioned on the Company's approval.  The Board of the Company unanimously rejected the proposed transfer in its own right. Moreover, the fact that the SHA was amended in December had no effect overall – the transfer as proposed under the MSA was not allowed under the terms of either SHA unless the Board approved (in its sole discretion) and/or the rights of first refusal are honored.  The Shares were subject to restrictions before, and the Shares remain subject to restrictions now.

- The motions seem to imply that had the restrictive date not been extended then stockholders (such as AEPH) could unilaterally transfer and sell their shares.  This is also incorrect.  In addition to Section 2.1 of the SHA, the movants fail to reference Section 2.2 of the SHA that states that any proposed transfer, regardless of the restrictive date, is subject to the further transfer restrictions and rights of first refusal set-forth in detail therein.

- In the Abatement Motion, the movants state that they only "recently" learned that a number of the Isodrill shares owned by AEHP were originally paid for by Debtor AEP – in 2021. Since AEPH was not even formed until 2022 it would make sense that another related entity purchased the initial shares.  Moreover, the transfer is referenced in Harney Partners September 30, 2025 Report (Doc. 187 at p. 27) – so it can hardly be a surprise as to where or when the initial funds came from.

The Company is not a party to this protracted dispute, but it has tried to be helpful.  We provided the full suite of records so all parties could be informed.  We promptly provided a response from its Board of Directors not approving any transfer but offering to repurchase the shares on the same economic terms that we understood were otherwise agreeable to the Trustee and the Creditors' Counsel.  And the Company offered a further explanatory update by letter dated January 13th on the status of the Company to help all parties understand its current state.

So in response, despite the Company's efforts to point out the clear restrictions, it now seems the parties, by filing these two motions, are trying to implicate or impugn the Company, or at least imply the Company acted in some untoward manner in adopting standard amendments to its SHA, or that Mr. Furr had some involvement in how the Company has responded.  The Company has not interfered with or obfuscated the share transfer proposed under the MSA – it has simply not agreed to the transfer as proposed as is its right.  Worse, sensitive documents with detailed personal information that were provided with an understanding that they would be kept confidential have now been made a matter of public record.  There was no justifiable reason for



February 3, 2026
Page 4

these documents to be publicly filed without clearance by the Company or at least redacted for sensitive matters regarding numerous parties not involved.

I remain available to discuss, but believe that, at a minimum, the motions should be refiled or amended to reflect the actual facts as pointed out above.

Sincerely,

Steven R. Rech

SRR/mms