IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DUSTIN ETTER, *Plaintiff*, | § § § | |
| v. | § § | Adversary No. 25-03382 |
| JEROD P. FURR, et al., *Defendants.* | § § § | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF DUSTIN ETTER'S MOTION TO DISQUALIFY
DEBORAH L. CRAIN AND E-MERGER.LAW, PLLC AS COUNSEL**

TO THE HONORABLE ALFREDO R. PÉREZ, UNITED STATES BANKRUPTCY JUDGE:

Defendant Jerod P. Furr and the related non-debtor entities, by and through undersigned counsel, file this Response in Opposition to Plaintiff Dustin Etter's Motion to Disqualify Deborah L. Crain and E-Merger.Law, PLLC as Counsel (Dkt. No. 71) (the "Motion to Disqualify" or "Motion"), and respectfully state as follows:

**I.**

**INTRODUCTION**

1. Etter waited fifteen months to file the Motion to Disqualify. On February 28, 2025, Etter's counsel sent Ms. Crain a letter expressly asserting that Ms. Crain should not represent Furr or the related entities, identifying the alleged conflict in writing, citing the Texas Disciplinary Rules of Professional Conduct, and citing *Caplin & Drysdale v. United States*, 491 U.S. 617 (1989). *See* Exhibit 1, Etter notice letter. From February 28, 2025 through May 27, 2026, which is a period of approximately fifteen months. This is in spite of the fact that Etter's counsel litigated alongside Ms. Crain through the Trustee appointment, plan negotiation, contested confirmation, mediation, the April 16–17, 2026 bench determination that "the Trustee cannot sell what the Debtors' estates

*Defendants' Response in Opposition to Motion to Disqualify Deborah L. Crain and E-Merger, PLLC as Counsel*

do not own," and the entry of the Confirmation Order on April 30, 2026. At no point during that fifteen-month period did Etter file the Motion he now brings. Under settled Texas law, this delay constitutes waiver as a matter of law.

2. The Motion overreaches its own premise. Etter is the post-confirmation successor of AEP and AFR pursuant to the Plan, and Ms. Crain has contemporaneously filed a consensual withdrawal from any continuing representation of those Debtor entities to address that limited successor status. The Motion fails, however, as to Ms. Crain's continuing representation of Furr individually and the related non-debtor entities, because Etter's successor status does not and cannot extend beyond AEP and AFR. The Confirmation Order at paragraph 61 expressly provides: "This Confirmation Order does not vest in Etter, the Liquidating Trust, or any other person any asset or interest that was not property of the Debtors' Estates." Confirmation Order ¶ 61. At paragraph 69, the Court expressly preserved the open questions concerning non-debtor property and equity interests as unadjudicated. Furr individually and the non-debtor entities did not pass to Etter at confirmation. He acquired no privilege as to them, and no successor-in-interest theory under Rule 1.09 can reach them.

3. Ms. Crain's representation of Furr and the non-debtor entities has been continuously documented in the public record since April 28, 2025, when she filed a Notice of Co-Counsel in the underlying state-court matter (Cause No. 24-07-11639) identifying her as co-counsel for Furr and the related entities. Upon removal, this Court also showed Ms. Crain representing those entities on the public docket. No party, not Etter, not his counsel, not the Trustee, not the Committee, filed any conflict-of-interest objection at any time prior to May 27, 2026. Disqualifying Furr's counsel now, with confirmation barely closed and the Court's preserved questions awaiting adjudication, would inflict the kind of "immediate and palpable harm" the Texas Supreme Court has held

disqualification must avoid. *See In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002). The Motion should be denied.

## II.

### ETTER WAIVED THE DISQUALIFICATION CLAIM AS A MATTER OF LAW

A. **Disqualification Is a Severe Remedy, and the Movant Must Act Promptly After the Alleged Conflict Becomes Apparent.**

4.      Disqualification is a "severe remedy." *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990); *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 400 (Tex. 1989). "In considering a motion to disqualify, the trial court must adhere to an exacting standard to prevent a party from using a motion to disqualify as a dilatory trial tactic." *In re Users Sys. Servs., Inc.*, 22 S.W.3d 331, 337 (Tex. 1999). A party who does not file a motion to disqualify opposing counsel in a timely manner waives the complaint. *Id.* (citing *Grant v. Thirteenth Court of Appeals*, 888 S.W.2d 466, 468 (Tex. 1994); *Vaughan v. Walther*, 875 S.W.2d 690, 690 (Tex. 1994)).

5.      The Texas Supreme Court has consistently enforced this waiver doctrine and has held that disqualification relief may be denied for lack of diligence "even if an opposing party does not assert lack of diligence as a ground for denying relief." *In re Users Sys. Servs.*, 22 S.W.3d at 337. Even an unexplained four-month delay warrants denial of relief. *See Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (denying mandamus for "unexplained delay of over four months"). The courts of appeals have applied the rule consistently. *See, e.g., HECI Exploration Co. v. Clajon Gas Co.*, 843 S.W.2d 622, 628–29 (Tex. App.—Austin 1992, writ denied) (eleven-month delay during active litigation warrants waiver); *In re Trujillo*, 511 S.W.3d 726, 729 (Tex. App.—El Paso 2015, orig. proceeding) (sixteen-month delay warrants waiver; "The status of the suit is irrelevant because the basis of the motion to disqualify is [counsel's] alleged access to and use of the confidential information").

6.      The Texas Supreme Court has likewise held that six-and-a-half-month and seven-month delays warrant a finding of waiver as a matter of law. *Vaughan*, 875 S.W.2d at 690 (six-and-a-half months); *Buck v. Palmer*, 381 S.W.3d 525, 528 (Tex. 2012) (seven months, unexplained). The doctrine reflects the equitable principle that disqualification "results in immediate and palpable harm" and must not be deployed by a movant who has acquiesced in opposing counsel's representation through extended periods of active litigation. *In re Nitla*, 92 S.W.3d at 422. "Mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice under this standard." *Id.*

B.   **The Alleged Conflict Was Apparent to Etter No Later Than February 28, 2025, and Ms. Crain's Representation Was Continuously Documented.**

7.      Etter's own correspondence establishes that the alleged conflict was apparent to him no later than February 28, 2025. On that date, Etter's counsel sent Ms. Crain a letter expressly asserting that her representation of Furr and the related entities was improper. The letter identified the alleged conflict, cited Texas Disciplinary Rule of Professional Conduct 1.15, cited *Caplin & Drysdale v. United States*, 491 U.S. 617, 626 (1989), and advised Ms. Crain that any funds Furr or any related entity might pay her were funds in which Etter claimed an interest. The letter put Etter created a documentary record in writing, articulating the asserted basis for challenging Ms. Crain's representation. This is not a case in which the movant later discovered a conflict; the movant articulated his theory in writing on February 28, 2025.

8.      On April 1, 2025, approximately one month after the February 28 letter, Etter filed a formal objection to Ms. Crain's employment under 11 U.S.C. § 327, again invoking Rule 1.15 and *Caplin & Drysdale*. The objection was not granted. Meek had actual notice in writing of Ms. Crain's representation of Furr and the related entities no later than April 28, 2025, when Ms. Crain filed a Notice of Co-Counsel in the underlying state-court matter (Cause No. 24-07-11639), served

*Defendants' Response in Opposition to Motion to Disqualify Deborah L. Crain and E-Merger, PLLC as Counsel*

on all parties of record, including Etter through his counsel, identifying her as co-counsel for Furr and the related non-debtor entities. The bankruptcy court's register of actions has documented Ms. Crain's representation of Furr and the non-debtor entities and thus has been part of the public docket.

9.      From April 1, 2025 through May 27, 2026, a period of approximately fourteen months, Etter raised no further objection of any kind to Ms. Crain's representation. During that period, the bankruptcy and adversary proceedings progressed continuously and substantially: AEP filed for Chapter 11 protection and the cases were jointly administered; a Chapter 11 Trustee was appointed and counsel retained; an Official Committee of Unsecured Creditors was formed and counsel retained; the Counterclaim authored by Ms. Crain was filed and remained on the public docket for approximately eight months; the parties litigated contested confirmation, including the April 16–17, 2026 bench determination that "the Trustee cannot sell what the Debtors' estates do not own"; and the Plan was confirmed on April 30, 2026. Throughout, Etter's counsel was counsel of record, opposite Ms. Crain in multiple proceedings, and at no time filed or otherwise asserted any motion or objection on the conflict grounds now raised. The first formal disqualification motion came on May 27, 2026.

### C.   The Fifteen-Month Delay Matches or Exceeds Every Texas Case to Find Waiver.

10.    Etter's delay exceeds every Texas case in which a court has found waiver of a disqualification motion. The Texas Supreme Court has held seven-month, six-and-a-half-month, and four-month delays untimely. *Buck*, 381 S.W.3d at 528 (seven months); *Vaughan*, 875 S.W.2d at 690 (six-and-a-half months); *Rivercenter*, 858 S.W.2d at 367 (four months). The courts of appeals have followed the rule consistently. *HECI*, 843 S.W.2d at 628 (eleven months); *Trujillo*, 511 S.W.3d at 729 (sixteen months). Etter's fifteen-month delay falls at the high end of this

spectrum, matched only by the sixteen-month delay in *Trujillo*, where the court found waiver as a matter of law and granted relief reversing the disqualification order.

11. HECI controls. There, the court held that an eleven-month delay during which the movant litigated alongside opposing counsel constituted waiver as a matter of law, reasoning that "had HECI been seriously concerned about its confidences being disclosed by [counsel], it would have moved for disqualification before allowing [counsel] to depose witnesses and otherwise continue its representation." *HECI*, 843 S.W.2d at 629. A movant's silence during active litigation makes the resulting disqualification motion a "negotiating tool" rather than a sincere effort to protect confidences. *Id.* at 628–29. The facts here are more aggravated: Etter not only litigated alongside Ms. Crain for fourteen months after his April 2025 § 327 objection, but affirmatively articulated his conflict theory in writing on February 28, 2025 and then went silent. Affirmative articulation followed by sustained silence is the most aggravated form of the waiver fact pattern Texas courts have addressed.

12. The Motion's timing confirms its tactical character. After fifteen months of silence, Etter filed three matters in a single five-day window: a motion to lift the abatement and a motion concerning the scope of the temporary relief on May 22, 2026, followed on May 27, 2026 by an email from his counsel to a third party (Viper) asserting Etter's ownership of non-debtor assets, and hours later that same day Etter files the present Motion to Disqualify. A true and correct copy of the May 27, 2026 email is attached as Exhibit 2, the Viper Notice Email. A motion to disqualify filed in immediate response to an opponent's procedural maneuvering is the hallmark of a tactical weapon rather than a sincere effort to protect confidences. *See In re Trujillo*, 511 S.W.3d at 729; *HECI*, 843 S.W.2d at 628–29. It's clear that Etter wants Mr. Furr and his non-debtor entities to

have no representation while they attempt to take non-debtor assets.  This is exactly the kind of tactical maneuver that the Courts disallow.

### D.  Texts Law Forecloses the Excuses Etter Might Offer for His Delay.

13.   *Trujillo* forecloses on any excuse for the delay in this matter: "The status of [the] suit is irrelevant because the basis of the motion to disqualify is [counsel's] alleged access to and use of the confidential information." 511 S.W.3d at 729. The substantive basis for a disqualification motion does not depend on the procedural posture of any one proceeding; it depends on when the alleged conflict became apparent to the movant. Etter himself articulated that conflict on February 28, 2025 and formally invoked it on April 1, 2025. The clock began then.

14.   Etter may also argue that his successor-in-interest theory did not exist until plan confirmation on April 30, 2026, and that his Motion was therefore timely from that date. This fails on two levels. First, Texas law measures waiver from when the underlying facts giving rise to the alleged conflict were apparent to the movant, not from when the movant later devises a particular legal theory. *See HECI*, 843 S.W.2d at 628; *Vaughan*, 875 S.W.2d at 690. Etter knew the underlying facts, i.e., Ms. Crain's representation of Furr, his own claimed interest in AEP, and the related-entity structure, on February 28, 2025. Having twice asserted that Ms. Crain's representation gave rise to a conflict, Etter cannot now claim that the conflict only "became apparent" more than a year later under a new legal theory.

### E.  Conclusion: The Motion Is Waived as a Matter of Law.

15.   Etter knew of and articulated his conflict theory in writing fifteen months before filing the Motion. He formally objected to Ms. Crain's employment fourteen months before filing the Motion. Her representation was documented in the public record from April 28, 2025 forward and embodied in the Counterclaim filed September 26, 2025. During the intervening period, Etter

litigated continuously alongside Ms. Crain, participated in mediation and contested confirmation, and obtained the relief he sought at confirmation on April 30, 2026. The delay matches or exceeds every Texas case to find waiver. The Motion is waived as a matter of law and should be denied on that ground alone. *See In re Users Sys. Servs.*, 22 S.W.3d at 337; *Trujillo*, 511 S.W.3d at 729; *HECI*, 843 S.W.2d at 628–29.

### III.
### THE MOTION FAILS ON ITS OWN TERMS
#### A.  Etter's Successor Status Cannot Extend Beyond AEP and AFR.

16.    The Motion rests on the proposition that, by virtue of the Confirmation Order, Etter "now owns and controls AEP and AFR and is their successor-in-interest in most if not all respects including with respect to their attorney-client privileges." Motion ¶ 1. The proposition is half right. Etter is the post-confirmation successor of AEP and AFR. He is not, and cannot become under any reading of the Confirmation Order, the successor of any non-debtor entity. The Motion's failure is its attempt to extend that premise to reach representations the Confirmation Order expressly placed beyond Etter's reach.

17.    At paragraph 61, the Confirmation Order is unambiguous: "This Confirmation Order does not vest in Etter, the Liquidating Trust, or any other person any asset or interest that was not property of the Debtors' Estates." Confirmation Order ¶ 61. At paragraph 69, the Court was equally precise, providing that the Retained Causes of Action consist only of the Debtors' and the Estates' own claims and rights, and that nothing in the Confirmation Order shall be construed as an adjudication of any claim to non-debtor property or equity interests preserved as unadjudicated. Confirmation Order ¶ 69.

18.    The Court's framing tracks 11 U.S.C. § 541, which defines property of the estate. Whatever passed to Etter under the Plan was bounded by what was actually property of the Estates

*Defendants' Response in Opposition to Motion to Disqualify Deborah L. Crain and E-Merger, PLLC as Counsel*

under § 541. Property never owned by AEP or AFR could not become property of their Estates and could not pass to Etter. The Court's April 16–17, 2026 bench determination reaffirmed the principle: "the Trustee cannot sell what the Debtors' estates do not own." Paragraphs 61 and 69 of the Confirmation Order reflect that determination in the order itself.

19.    The implication for the Motion is dispositive. Whatever post-confirmation privilege Etter may have acquired with respect to AEP and AFR, which is assuming the most generous reading of the authority on which the Motion relies, it is the privilege of AEP and AFR only. It is not the privilege of the non-debtor entities, and it is not the privilege of Furr individually. None of those parties was a Debtor, and none of them transferred any privilege to Etter at confirmation.

### B.    The Non-Debtor Entities and Furr Individually Hold Distinct Privileges That Did Not Pass to Etter.

20.    Ms. Crain's continuing representation is only of Furr individually and of the non-debtor entities. Furr individually was never a Debtor in this case. The non-debtor entities were never Debtors. Each holds its own attorney-client privilege, distinct from any privilege the Debtors may have held. Etter's successor-in-interest theory, even taken at face value, reaches only AEP and AFR. It does not reach Furr individually or any non-debtor entity. The Motion does not even attempt to bridge that gap.

21.    Rule 1.09 forbids a former-client conflict where a lawyer's subsequent representation is "substantially related" to the prior representation and adverse to the former client. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09(a). The substantial-relationship test requires the movant to identify the specific subject matter of the prior representation and demonstrate its substantial relationship to the current representation. *In re American Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992) (movant must show "the matters embraced within the pending suit are substantially related to the matters or cause of action wherein the attorney previously represented

Adversary No. 25-03382 *Dustin Etter v. Jerod P. Furr, et al*                                          Page **9** of **14**

*Defendants' Response in Opposition to Motion to Disqualify Deborah L. Crain and E-Merger, PLLC as Counsel*

him"). The Motion identifies no specific subject matter of any prior representation; it asserts only that Ms. Crain "represented various parties in this action before the bankruptcy was filed." Motion ¶ 2. That is a conclusory assertion that fails the *American Airlines* standard on its face.

### C.  The Authority Cited in the Motion Does Not Carry Etter's Burden.

22.  The Motion's authorities do not supply what it lacks. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985), addresses whether a trustee may waive the privilege of a corporation in bankruptcy; it does not hold that a third-party acquirer of a debtor's assets steps into the privilege held by the debtor's affiliated non-debtor entities, and it does not address the substantial-relationship test under Rule 1.09. The remaining authorities address successor-to-the-debtor situations within a single corporate family; none addresses the situation here, where the Confirmation Order itself bars any vesting of non-debtor property or privilege in Etter.

23.  Disqualification is not a default remedy that follows from a successor-in-interest assertion. It is a severe remedy that requires specific, articulated grounds. "Mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice under this standard." *In re Nitla*, 92 S.W.3d at 422. The Motion identifies no specific confidential information at risk, no specific matter substantially related to the current representation, no specific reason why disqualification rather than narrower measures is appropriate, and no specific basis for extending disqualification to representations of Furr individually or of non-debtor entities. The Motion does not carry Etter's burden.

### IV.

MS. CRAIN'S CONSENSUAL WITHDRAWAL ADDRESSES
THE LEGITIMATE SCOPE OF ETTER'S SUCCESSOR STATUS

24.  Contemporaneously with this Response, Ms. Crain has filed a consensual withdrawal from any continuing representation of AEP or AFR. The withdrawal is unconditional and addresses

*Defendants' Response in Opposition to Motion to Disqualify Deborah L. Crain and E-Merger, PLLC as Counsel*

the legitimate aspect of Etter's argument: that, by virtue of the post-confirmation transfer of the Debtors' equity and privileges under the Plan, continuing representation of those Debtor entities would be contrary to Rule 1.09. Going forward, Ms. Crain will represent only Furr individually and the related non-debtor entities in connection with their distinct interests in matters the Confirmation Order expressly declined to adjudicate to Etter.

25.    The consensual withdrawal moots the portion of Etter's Motion seeking to disqualify Ms. Crain as to AEP or AFR. What remains for the Court to decide is whether Etter has shown grounds to disqualify Ms. Crain from her continuing representation of Furr individually and the non-debtor entities. As demonstrated in Sections II and III above, he has not. The Confirmation Order at paragraphs 61 and 69 expressly forecloses any extension of Etter's successor status to reach those clients.

## V.

DISQUALIFICATION WOULD CAUSE FURR IMMEDIATE AND PALPABLE HARM

26.    The Texas Supreme Court has held that disqualification "results in immediate and palpable harm" to the party deprived of chosen counsel and may be granted only on a showing that satisfies an "exacting standard." *In re Nitla*, 92 S.W.3d at 422; *Spears*, 797 S.W.2d at 656. The harm inquiry is concrete: it asks whether disqualification would deprive a party of counsel at a critical juncture. *See In re Columbia Valley Reg'l Med. Ctr.*, 320 S.W.3d 819, 824–25 (Tex. 2010).

27.    Furr faces precisely such a critical juncture. The Plan was confirmed on April 30, 2026. The Confirmation Order at paragraphs 61 and 69 preserves the open questions concerning non-debtor equity and property for separate adjudication. Furr is contemporaneously moving to remand the underlying matter to the 457th Judicial District Court of Montgomery County, Texas, where it originated. That proceeding requires continuity of counsel who has represented Furr through the bankruptcy and adversary and who authored the Counterclaim (Dkt. No. 40).

*Defendants' Response in Opposition to Motion to Disqualify Deborah L. Crain and E-Merger, PLLC as Counsel*

28.    Disqualifying Ms. Crain at this juncture would deprive Furr of counsel at the precise moment when continuity is essential. It would force Furr to retain replacement counsel mid-stream, with no time to absorb the procedural history, the asset structure, or the documentary record. The hardship is concrete and immediate, not theoretical. *See In re Nitla*, 92 S.W.3d at 422. Etter has identified no specific confidential information at risk, no specific matter substantially related to Ms. Crain's ongoing representation, and no specific harm to him from her continued representation of Furr individually and the non-debtor entities. The Motion fails the *Nitla* balancing test independently of waiver and independently of its substantive defects.

**VI.**

CONCLUSION AND PRAYER

29.    Etter waited fifteen months to file a motion he had affirmatively articulated in writing on February 28, 2025 and formally invoked in a court filing on April 1, 2025. The delay matches or exceeds every Texas case to find waiver and is most analogous to the sixteen-month delay in *Trujillo*. Independently, the Motion fails on its own terms. Etter is the post-confirmation successor of AEP and AFR, and Ms. Crain has consensually withdrawn from any continuing representation of those Debtor entities. But the Confirmation Order at paragraphs 61 and 69 expressly forecloses any extension of Etter's successor status to reach the non-debtor entities and Furr individually, who are the subjects of Ms. Crain's continuing representation. The Motion identifies no specific subject matter substantially related to the current representation, no specific confidential information at risk, and no specific harm to Etter. Disqualification at this juncture would inflict the immediate and palpable harm *Nitla* forbids.

WHEREFORE, Defendant Jerod P. Furr respectfully prays that this Court DENY Plaintiff Dustin Etter's Motion to Disqualify Deborah L. Crain and E-Merger.Law, PLLC as Counsel (Dkt. No. 71) in all respects; recognize Ms. Crain's contemporaneous consensual

*Defendants' Response in Opposition to Motion to Disqualify Deborah L. Crain and E-Merger, PLLC as Counsel*

withdrawal as to AEP and AFR; permit Ms. Crain to continue representing Furr individually and the related non-debtor entities; and grant such other and further relief, at law or in equity, to which Defendant may be justly entitled.

Dated: June 1, 2026   Respectfully submitted,

           E-MERGER.LAW, PLLC

By: */s/ Deborah L. Crain*

         Deborah L. Crain
         SBN: 24067319
         1334 Brittmoore, Suite 2314
         Houston, Texas 77043
         dcrain@e-merger.law
         (346) 535-0818

         Counsel for Defendant Jerod P. Furr, et al

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2026, a true and correct copy of the foregoing response was served upon all parties via the Court's CM/ECF electronic filing system in compliance with the Federal Rules of Bankruptcy Procedure.


*/s/ Deborah L. Crain*

Deborah L. Crain