United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 18, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 25-30155** |
| **ALLIANCE FARM AND RANCH, LLC, *et al.*,** | § | |
| | § | **CHAPTER 11** |
| | § | |
| **Debtors.** | § | |
| | § | **RE: ECF Nos. 361, 363, 366 & 367** |
| | § | |
| **DUSTIN ETTER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 25-3382** |
| | § | |
| **JEROD P FURR, *et al.*,** | § | **RE: ECF Nos. 69, 71, 74, 75, 76, 80, 81, 87, 102, 103, 109 & 115** |
| **Defendants.** | | |

## MEMORANDUM OPINION AND ORDER GRANTING AND DENYING (I) ATTORNEY DISQUALIFICATION AND WITHDRAWAL MOTIONS, (II) DISMISSAL AND REMAND MOTIONS, AND (III) DOCUMENT TURNOVER AND PROTECTIVE ORDER MOTIONS

## INTRODUCTION

Before the Court are a variety of motions by the Parties in both the Debtors' main bankruptcy case and the related adversary proceeding.

## JURISDICTION

28 U.S.C. § 1334 provides the District Courts with jurisdiction over this proceeding. 28 U.S.C. § 157(b)(1) states "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under

subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." This Court has jurisdiction over this proceeding as it is a core proceeding the Court can consider under 28 U.S.C. § 157(b)(2)(A), (B), (E), (F), (H) & (L). The Court has post-confirmation jurisdiction over this matter as it "pertains to the implementation or execution of the plan." *Craig's Stores of Tex., Inc. v. Bank of La. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001); 11 U.S.C. § 1142(b). The Court also has the inherent jurisdiction to determine its own jurisdiction. *Scherbatsky v. Halliburton Co.*, 125 F.3d 288, 290 (5th Cir. 1997) (citing *U.S. v. United Mine Workers of Am.*, 330 U.S. 258 (1947)). Moreover, to the extent this Memorandum Opinion and Order requires interpreting and enforcing this Court's prior Confirmation Order, the Court retains continuous jurisdiction to interpret and enforce its own orders. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009). This proceeding has been referred to the Bankruptcy Court under General Order 2012-6. The Court has constitutional authority to enter final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011). And venue is proper in this District pursuant to 28 U.S.C. § 1408.

## ATTORNEY DISQUALIFICATION AND WITHDRAWAL MOTIONS

### I. BACKGROUND.

On May 27, 2026, Dustin Etter[1] filed Plaintiff's Motion to Disqualify, seeking disqualification of Deborah Crain, Alyssa Cuellar,

[1] In accordance with the Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Alliance Farm and Ranch, LLC and Alliance Energy Partners, LLC Proposed by the Chapter 11 Trustee and the Official Committee of Unsecured Creditors (the "Modified Plan"), a copy of which is attached as Exhibit 2 to the Order Confirming Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Alliance Farm and Ranch, LLC and Alliance Energy Partners, LLC Proposed by the Chapter 11 Trustee and the Official Committee of Unsecured Creditors (the "Confirmation Order") [Case No. 25-30155, ECF No. 338], Dustin Etter now owns Debtors Alliance Energy Partners, LLC ("AEP") and Alliance Farm and Ranch, LLC ("AFR" and together with "AEP," the "Debtors"), along with all of both Debtors' non-cash assets.

and Randal Bays from representing any party in the adversary proceeding or the Debtor's main bankruptcy cases due to their prior representation of the Debtors and current representation of Jerod Furr and certain non-debtor entities.[2]

On June 1, 2026, Jerod P. Furr, AE Partners Holdings, Inc., AEP Asset Holdings, LLC, and Invictus Drilling Motors, LLC (collectively the "Furr Defendants") filed a Response in Opposition to Plaintiff Dustin Etter's Motion to Disqualify Deborah L. Crain and E-Merger Law, PLLC as Counsel.[3] In the response, the Furr Defendants argue Mr. Etter's Motion to Disqualify should be denied because (i) Mr. Etter's motion was filed fifteen months after Noah Meek—counsel for Mr. Etter—sent Ms. Crain a letter advising her of the conflict; therefore he has since waived any conflict-based arguments for disqualification, (ii) the motion is overbroad because the Modified Plan and Confirmation Order did not determine ownership over non-debtor entities or their assets, (iii) disqualification pursuant to TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09(a) is unwarranted because Mr. Etter's motion does not identify any specific subject matter of any prior representation requiring disqualification, (iv) a portion of the Motion to Disqualify is effectively moot because Ms. Crain had agreed to voluntarily withdraw from her representation of the Debtors, and (v) disqualification of her representation of Mr. Furr at this time would cause him "immediate and palpable" harm in the adversary proceeding.[4]

On June 1, 2026, the Furr Defendants filed the Expedited Motion to Withdraw as Counsel for Debtors Alliance Farm and Ranch, LLC and

Since the Modified Plan went effective [Case No. 25-30155, ECF No. 357], Mr. Etter, through Mr. Meek, has begun filing motions in this case on behalf of the Debtors. Ms. Crain has been the historical counsel of record for the Debtors since May of 2025. Case No. 25-30155, ECF No. 87. Ms. Crain also represents Jerod Furr, the former partial owner and former debtor-in-possession of the Debtors. Messrs. Etter and Furr are adversaries in this bankruptcy case and its related adversary proceeding. Case No. 25-3382.

[2] Case No. 25-3382, ECF No. 71.

[3] Case No. 25-3382, ECF No. 73.

[4] Case No. 25-3382, ECF No. 73.

Alliance Energy Partners, LLC.[5] Also on June 1, 2026, the Furr Defendants filed a similar Expedited Motion to Withdraw as Counsel for Debtors Alliance Farm and Ranch, LLC and Alliance Energy Partners, LLC in the Debtors' main bankruptcy case.[6] In each of the motions, the Furr Defendants requests authorization for Ms. Crain to withdraw as attorney for the Debtors, but omits any request for withdrawal of her representation of Mr. Furr or any related non-debtor entities.

On June 2, 2026, Mr. Etter filed a Reply in Support of Plaintiff's Motion to Disqualify, arguing Ms. Crain's disqualification is warranted as to all Parties pursuant to TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05, 1.06, and 1.09.[7] In the reply, Mr. Etter argues Ms. Crain's conduct in the Debtors' main bankruptcy case, this adversary proceeding, and the former State Court Case[8] demonstrate her former representation of the Debtors and current representation of Mr. Furr are "substantially related" to one another within the meaning of TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09(a). Mr. Etter also argues the Court should not conclude he waived his right to disqualify Ms. Crain on timing grounds because informal and formal abatements to the adversary proceeding had been in place since May and July of 2025, respectively. Mr. Etter appears to suggest that injunctions toll the waiving of arguments. Mr. Etter also argues the letter Mr. Meek sent Ms. Crain fifteen months ago was meant merely to advise her that she should be cautious of receiving funds from Mr. Furr that may have been misappropriated from the Debtors. Mr. Etter argues Mr. Meek did not put Ms. Crain on notice of a conflict through the letter. Moreover, he argues that the current circumstances represent a material change from the time of that letter, because Mr. Etter now owns all non-cash assets of the Debtors.

On June 19, 2026, the Furr Defendants filed Defendant's Motion to Disqualify Plaintiff's Counsel from the Representation of Alliance

---

[5] Case No. 25-3382, ECF No. 74. A duplicate motion was filed at ECF No. 75.
[6] Case No. 25-30155, ECF No. 361.
[7] Case No. 25-3382, ECF No. 79.
[8] 457th Judicial District Court of Montgomery County, Texas styled *Dustin Etter,* et al. *v. Jerod P. Furr,* et al., Case No. 24-07-11639 (the "State Court Case").

Energy Partners, LLC and Alliance Farm & Ranch, LLC.[9] In the motion, the Furr Defendants requests that the Court disqualify Mr. Meek from representing the Debtors in the adversary and bankruptcy cases, based on the reasoning that Mr. Etter was previously adverse to the Debtors before buying them.

## II. Discussion.

Before the Court are three pending motions: (i) Ms. Crain's Motion to Withdraw; (ii) Mr. Etter's Motion to Disqualify; and (iii) Ms. Crain's Motion to Disqualify.

### A. Ms. Crain's Motion to Withdraw.

First, the Court finds Ms. Crain's continued representation of the Debtors and Mr. Furr simultaneously within the same cases constitutes an obvious conflict of interest. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 105(a), 105(b)(2), 1.06(a), 1.06(b), 1.09(a). The Rules generally bar her from representing opposing parties in the same litigation. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.06(a). Now that the Modified Plan has gone effective and Mr. Etter has amended his complaint in the adversary proceeding to reflect avoidance claims against Mr. Furr and related non-debtor entities, it is apparent Ms. Crain's two sets of clients—the Debtors, and the group of individuals the Debtors are pursuing avoidance claims against—are opposing parties. As such, Ms. Crain's voluntary withdrawal of her representation of the Debtors in the adversary and main bankruptcy cases is most indeed appropriate and shall be granted. Accordingly, Mr. Etter's Motion to Disqualify Ms. Crain as to her representation of the Debtors is moot and therefore denied.

### B. The Motion to Disqualify Ms. Crain, Ms. Cuellar, and Mr. Bays.

Second, the Court shall address the issue of Ms. Crain's continued representation of the Furr Defendants in the adversary proceeding and

[9] Case No. 25-3382, ECF No. 87.

the Debtors' main bankruptcy cases. As stated by the Texas Supreme Court, "Rules 1.06(b) and 1.09[(a)] forbid a lawyer from taking on a representation that is adverse to a current or former client in a *substantially related* matter . . . [L]awyers who violate the conflict-of-interest rules must be disqualified because there is an irrebuttable presumption that a lawyer obtains a client's confidential information during representation." *In re Thetford*, 574 S.W.3d 362, 373 (Tex. 2019) (citing *In re Columbia Valley Healthcare Sys., L.P.*, 320 S.W.3d 819, 824 (Tex. 2010)) (emphasis added); *see also Phx. Founders, Inc. v. Marshall*, 887 S.W.2d 831, 833 (Tex. 1994); *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 400 (Tex. 1989).

"A motion to disqualify is the proper procedural vehicle to challenge an attorney's representation that is adverse to a former client." *In re Gunn*, No. 14-13-00566-CV, 2013 WL 5631241 at *2 (Tex. App.—Houston [14th Dist.] Oct. 15, 2013, orig. proceeding) (per curiam (mem. op.) (citing *Coker*, 765 S.W.2d at 399). "Disqualification is a severe remedy, which can result in immediate harm by depriving a party of the right to have counsel of its choice." *Id.* (citing *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 423 (Tex. 2002). "The movant bears the burden to prove that the attorney should be disqualified," and the Texas Disciplinary Rules of Professional Conduct guide, rather than determine, a court's decision regarding disqualification. *Id.* at *3 (citations omitted). Importantly, "[a] party who fails to file its motion to disqualify opposing counsel in a timely manner waives the complaint." *Vaugh v. Walther*, 875 S.W.2d 690, 690 (Tex. 1994) (citations omitted).

As noted in the Furr Defendants' response to Mr. Etter's Motion to Disqualify, the motion makes facial allegations Ms. Crain's continued representation of Mr. Furr and certain related non-debtor entities in an adverse capacity to the Debtors is substantially related to her former representation of the Debtors in this bankruptcy proceeding, the state foreclosure action, and the pre-removal State Court Case. The Court may take judicial notice of the docket in the Debtors' bankruptcy case, the related adversary proceeding, the state foreclosure action, and the

pre-removal state court action, *See* FED. R. EVID. 201, which demonstrate Ms. Crain's history of simultaneously representing the Furr Defendants and the Debtors despite those entities' interests diverging over time. The facts of this case demonstrate Ms. Crain's current representation of the Furr Defendants is substantially related to her past representation of the Debtors and the Furr Defendants in a joint capacity. *See In re Thetford*, 574 S.W.3d at 374 (quoting TEX. DISCIPLINARY R. PROF'L CONDUCT 109 cmt. 4B (substantially related "primarily involves situations where a lawyer could have acquired confidential information concerning a prior client that could be used either to that prior client's disadvantage or for the advantage of the lawyer's current client or some other person.")); *In re Columbia Valley Healthcare Sys., L.P.*, 320 S.W.3d 819, 824 (Tex. 2010) ("If the lawyer works on a matter, there is an irrebuttable presumption that the lawyer obtained confidential information during the representation.").

However, regardless of the Court's answer to the "substantially related" inquiry, Mr. Etter waived this complaint by failing to raise it timely.

On January 7, 2025, an involuntary chapter 7 bankruptcy petition was filed against Debtor AFR.[10]

On January 8, 2025, Mr. Meek filed a notice of appearance on behalf of Mr. Etter in AFR's bankruptcy case.[11]

On February 28, 2025, Mr. Meek sent Ms. Crain a letter acknowledging her representation of Mr. Furr in the yet-to-be-removed State Court Case between Messrs. Etter and Furr and advising her that fees paid to her by Mr. Furr may have been misappropriated from the Debtors.[12] As such, the contents of the February 28, 2025, letter demonstrate Mr. Meek understood Mr. Furr and the Debtors may be adverse to one another.

---

[10] Case No. 25-30155, ECF No. 1.
[11] Case No. 25-30155, ECF No. 2.
[12] Case No. 25-3382, ECF No. 73-1.

On April 1, 2025, Ms. Crain filed an employment application in the Debtors' main bankruptcy case seeking authorization from this Court to act as "special counsel" to the Debtors.[13]

On May 20, 2025, the state court action was removed to this Court.[14]

Also on May 20, 2025, Ms. Crain filed a notice of appearance on behalf of AFR in the Debtors' main bankruptcy case.[15]

On July 22, 2025, slightly two months after the State Court Case was removed, Ms. Crain made an appearance before this Court in what became the adversary proceeding.[16]

Accordingly, Mr. Meek must have been aware of the current basis for alleging the conflict within Ms. Crain's representation of Mr. Furr and the Debtors as of or before April 1, 2025, when Ms. Crain filed her employment application for AFR. Mr. Meek could have filed the Motion to Disqualify back in April of 2025 but chose not to. Mr. Meek only filed the Motion to Disqualify once Mr. Etter purchased all the Debtors' non-cash assets and the Modified Plan went effective—thirteen and a half months after it became apparent Ms. Crain was performing services for both Mr. Furr and the Debtors simultaneously.

Mr. Meek's purported justification for not filing the motion earlier was that the adversary was abated and temporary injunctions were in place for the majority of the time after the state court proceeding was removed to this Court. But this adversary proceeding was only partially abated,[17] and the temporary injunctions only enjoined Messrs. Etter and Furr from taking action against the property of AEP, AFR, AEPH, Invictus, or any subsidiary of any of those entities at any time on or after October 1, 2023 without the written consent of the Trustee or the

[13] ECF No. 31. The Court never granted this motion, but Ms. Crain proceeded to file motions on behalf of the Debtors regardless.

[14] Case No. 25-3382, ECF No. 1.

[15] Case No. 25-30155, ECF No. 87.

[16] Case No. 25-3382, ECF No. 24.

[17] Case No. 25-3382, ECF No. 32

Court.[18] True the adversary proceeding had not progressed until the bankruptcy case was confirmed and the Modified Plan went effective, but the temporary injunctions did not prevent Mr. Meek from filing the Motion to Disqualify at any point over the last thirteen and a half months. Rather, moving to disqualify an attorney—whose potentially-conflicted representation was tolerated for over a year—only after the assets of that attorney's client have been transferred to that attorney's other client's adversary suggests a dilatory trial tactic. Mr. Meek did not provide a reasonable justification for the thirteen-and-a-half-month delay in filing the motion.

This delay constitutes waiver sufficient to warrant denial of the Motion to Disqualify Ms. Crain from representing the Furr Defendants in this adversary proceeding. *In re Trujillo*, 511 S.W.3d 726, 729 (Tex. App.—El Paso 2015, orig. proceeding) (denying motion to disqualify based on *inter alia* unexplained sixteen-month delay in filing); *Buck v. Palmer*, 381 S.W.3d 525, 528 (Tex. 2012) (denying motion to disqualify based on unexplained seven-month delay in filing); *Vaughan*, 875 S.W.2d 690, (holding basis for disqualifying attorney waived due to unexplained 6-and-a-half-month delay in filing motion to disqualify); *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (denying mandamus relief of trial court's denial of motion to disqualify based on unjustified four-month delay in filing); *HECI Exploration Co. v. Clajon Gas Co.*, 843 S.W.2d 622, 629 (Tex. App.—Austin 1992, writ denied) (upholding trial court's denial of motion to disqualify based on eleven-month delay in filing which evidenced dilatory motive).

Ms. Cuellar and Mr. Bays never filed any document or made any appearance in the adversary proceeding or the Debtors main bankruptcy cases. Accordingly, the Court declines to rule on the requested disqualification of Ms. Cuellar and Mr. Bays and shall preserve that issue for adjudication in the State Court Case.

### C. The Motion to Disqualify Mr. Meek.

[18] ECF Nos. 22, 63.

Third, the Court shall address the issue of whether Mr. Meek should be disqualified from representing Mr. Etter and the Debtors after Mr. Etter received all the Debtors assets under the terms of the Modified Plan and Partial Mediated Settlement Agreement. This issue can be dealt with in short order.

Mr. Etter and the Debtors are not currently opposing parties within the meaning of the Rules. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.06(a). The adversary proceeding complaint reflects various avoidance actions against Mr. Furr and other non-debtor entities. Those actions seek to recover assets of the Debtors. Mr. Etter now stands to benefit from the recovery of the Debtors' assets because he owns all the Debtors' non-cash assets under the terms of the Modified Plan.

Ms. Crain suggests that Mr. Meek cannot represent both Mr. Etter and the Debtors because Mr. Meek's representation of Mr. Etter in the Debtors' bankruptcy cases has been adverse against both Mr. Furr and the Debtors. The record does not support any finding that Mr. Etter was adverse to the Debtors. Instead, the record demonstrates Mr. Etter has consistently been adverse to Mr. Furr, who allegedly caused the Debtors to engage in various asset transfers which harmed Mr. Etter. Regardless, Mr. Etter's interests are now aligned with the Debtors based on his purchase of all their non-cash assets under the terms of the Modified Plan.

Even if the Court concluded Mr. Etter's conduct in the Debtors' bankruptcy case demonstrated Mr. Etter's interests were materially adverse to those of the Debtors at the time, the Rules provide that if Mr. Etter consents in writing to Mr. Meek's current representation of the Debtors in the adversary proceeding, no ethical violation arises. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09(a); *see also* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.06(c).

Ms. Crain should be aware that this motion had no basis within the Texas Disciplinary Rules of Professional Conduct; and that this

motion was in no way "symmetrical" to the one filed against her by Mr. Meek. The motion to disqualify Mr. Meek is denied.

## AMEND, DISMISSAL, AND REMAND MOTIONS

### I. BACKGROUND.

On June 1, 2026, the Furr Defendants filed Defendants' and Counter-Plaintiffs' Emergency Motion to Remand the Removed Adversary Proceeding and Motion for Expedited Consideration.[19] In the motion, Defendants seek to remand this adversary proceeding in its entirety back to the state court from which it was originally removed.

On June 2, 2026, Mr. Etter filed Plaintiff's Expedited Motion for Leave to Amend.[20] In the Motion, Mr. Etter sought to add to his adversary complaint certain avoidance claims under the Bankruptcy Code against the Defendants.

On June 23, 2026, Mr. Etter filed a response to the Furr Defendants' Motion to Remand.[21]

On July 7, 2026, the Court held a hearing where it orally granted Mr. Etter leave to amend the adversary complaint to add the Bankruptcy Claims (defined below).[22]

On July 13, 2026, Mr. Etter filed his Amended Complaint.[23]

On July 15, 2026, Mr. Etter filed Debtors' Motion to Dismiss Debtors' Direct Claims.[24] In the motion, Mr. Etter sought Court approval of the Debtors' voluntary dismissal of any counterclaims which had been filed by the Debtors against Mr. Etter, because Mr. Etter now owns any causes of action the Debtors owned and would not want to pursue any claims against himself.

---

[19] Case No. 25-3382, ECF No. 76.
[20] Case No. 25-3382, ECF No. 80.
[21] Case No. 25-3382, ECF No. 91.
[22] Case No. 25-3382, ECF No. 97.
[23] Case No. 25-3382, ECF No. 99.
[24] Case No. 25-3382, ECF No. 102.

Also on July 15, 2026, Mr. Etter filed Plaintiff's Motion to Dismiss under Rule 12(b)(6).[25] In the motion, Mr. Etter sought dismissal of all counterclaims asserted by Mr. Furr against Mr. Etter, including those claims Mr. Furr was pursuing derivatively based on his prior relationship with the Debtors, and those claims Mr. Furr was pursuing in his individual capacity.

## II. DISCUSSION.

### A. Motion to Amend.

During the hearing on July 7, 2026, the Court orally granted Mr. Etter's Motion to Amend his adversary complaint to assert the Debtors' bankruptcy claims.[26] The Court also stated it would give Ms. Crain seven days following entry of the Tenth Amended Complaint (the "Amended Complaint") to *respond* to the Motion to Amend.[27] The Court later clarified at a subsequent status conference that if Ms. Crain wanted to file any such response to the Motion to Amend, despite this Court already having granted the motion, she may do so and her response will be treated as a motion to reconsider.[28] Regardless, Ms. Crain never made any subsequent filings with respect to the Motion to Amend. Accordingly, for the avoidance of doubt, the Court has granted Mr. Etter leave to amend his adversary complaint. For the remaining purposes of this Memorandum Opinion and Order, the Court shall reference the newly filed Amended Complaint for purposes of ruling on the pending Motions to Dismiss and Motion to Remand.

### B. Debtors' and Plaintiff's Motions to Dismiss.

The Counterclaim asserts a total of 10 claims. It is asserted by five entities: (i) Mr. Furr, (ii) Debtor AEP, (iii) AE Partners Holdings, Inc., (iv) AEP Asset Holdings, LLC, and (v) Invictus Drilling Motors, LLC. The Counterclaim is poorly pled and does not differentiate which

[25] Case No. 25-3382, ECF No. 103.
[26] Case No. 25-3382, ECF No. 97.
[27] Case No. 25-3382, ECF No. 97.
[28] Case No. 25-3382, ECF No. 112.

entities are suing for which relief with respect to each individual claim. Rather, the Counterclaim references AEP, Mr. Furr, or the collective "Defendants" (or, as referred to in this Memorandum Opinion, the Furr Defendants) seemingly interchangeably.

Parsing the Counterclaim reveals at least three types of claims: (i) claims asserted solely on a derivative basis on behalf of AEP,[29] (ii) claims asserted on both a derivative basis of behalf of AEP, and also asserted individually by the Furr Defendants,[30] and (iii) claims asserted solely on an individual basis by the Furr Defendants.[31]

Mr. Etter purchased all the Debtors' non-cash assets, including any claims belonging to AEP or AFR. Accordingly, Mr. Etter now has the authority to voluntarily dismiss any claims purportedly asserted by AEP against himself. To the extent Mr. Furr seeks to pursue any claims derivatively on behalf of AEP, he lacks standing to do so. Moreover, Mr. Etter has authority to dismiss those claims based on his ownership of all AEP's claims.

Accordingly, those claims asserted derivatively on behalf of AEP shall be dismissed, including the Breach of Fiduciary Duty claim (count A), the Conversion claim (count B), the Tortious Interference with Existing Contracts claim (count C), and the Misappropriation of Trade Secrets claim (count D).

Again, those claims are dismissed to the extent the Furr Defendants have pursued them on a derivative basis. The pleadings suggest Mr. Furr has sought to pursue the Tortious Interference with Existing Contracts claim (count C) and the Misappropriation of Trade Secrets claim (count D) on an individual basis as well. This Court's dismissal ruling does not apply to those claims to the extent Mr. Furr

[29] These claims include the Breach of Fiduciary Duty claim (count A), and the Conversion claim (count B).

[30] These claims include the Tortious Interference with Existing Contracts claim (count C), and the Misappropriation of Trade Secrets claim (count D).

[31] These claims include the Defamation claim (count E), and the Business Disparagement claim, which appears subsumed within the Defamation claim.

has pursued them on an individual basis, nor does it apply to the Defamation and/or Business Disparagement claim (count E).

Based on the analysis below, the Court has concluded that remand is appropriate with respect to all Nonbankruptcy State Law Claims (defined below) asserted between Mr. Etter and the Furr Defendants. Accordingly, the Court declines to rule on Mr. Etter's Motion to Dismiss to the extent it seeks dismissal of the Tortious Interference with Existing Contract claim asserted individually by Mr. Furr (count C), the Misappropriation of Trade Secrets claim asserted individually by Mr. Furr (count D), and the Defamation and/or Business Disparagement claim (count E).

Because neither the Debtors nor Mr. Etter moved for dismissal as to any claims against Third-Party Defendants Travis Daily, Trinidad Pena, Specialized Energy Services, LLC, L&L Ventures, and TD Drilling Motors, LLC (*i.e.*, counts F through J), this Order does not rule on dismissal as to claims against those entities because such issue is not ripe for review.

**C. Defendants' Motion to Remand.**

Bankruptcy courts may permissively abstain from hearing a proceeding pursuant to 28 U.S.C. § 1334(c)(1). The statute provides:

> "Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

28 U.S.C. § 1334(c)(1).

Bankruptcy courts may equitably remand a removed proceeding back to state court pursuant to 28 U.S.C. § 1452(b). That statute provides: "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b).

"Bankruptcy courts have broad discretion to permissively abstain and equitably remand a suit." *Lain v. Watt (In re Dune Energy, Inc.)*, 575 B.R. 716, 731 (Bankr. W.D. Tex. 2017) (citations omitted). "Such discretion is not limited by the type of proceeding. Rather, the bankruptcy court may permissively abstain from both 'core' and 'non-core' bankruptcy proceedings." *Id.* (citation omitted).

Courts in the Fifth Circuit consider the same set of fourteen non-exclusive factors when determining if permissive abstention and/or equitable remand of a bankruptcy proceeding is appropriate. Those factors include:

> (1) the effect or lack thereof on the efficient administration of the estate if the court remands or abstains;
>
> (2) extent to which state law issues predominate over bankruptcy issues;
>
> (3) difficult or unsettled nature of applicable law;
>
> (4) presence of related proceedings commenced in state court or other nonbankruptcy proceedings;
>
> (5) jurisdictional basis, if any, other than 28 U.S.C. § 1334;
>
> (6) degree of relatedness or remoteness to main bankruptcy case;
>
> (7) the substance, rather than the form, of an asserted core proceeding;
>
> (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy court;
>
> (9) the burden of the court's docket;
>
> (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
>
> (11) the existence of a right to a jury trial;
>
> (12) the presence in the proceeding of non-debtor parties;

(13) comity; and

(14) the possibility of prejudice to other parties in the action.

*Id.* (citations omitted).

For purposes of the Court's remand ruling, the Court shall refer to two types of claims in the Amended Complaint and Counterclaim: (i) the "Bankruptcy Claims",[32] and (ii) the "Nonbankruptcy State Law Claims."[33]

In sum, with respect to the Bankruptcy Claims, nine factors weigh against abstaining and remanding, four are neutral, and one weighs in favor. With respect to the Nonbankrutpcy State Law Claims, eight factors weigh in favor of abstaining and remanding, and six are neutral. Therefore, the Court declines to abstain and remand from the Bankruptcy Claims and remands[34] the Nonbankruptcy State Law Claims.

***(1) Neither set of claims affect the efficient administration of the estate.***

[32] Counts V.A through V.H of the Amended Complaint. To the extent the Vicarious and Participatory Liability claim in the Amended Complaint pertains to the bankruptcy claims, it shall be construed as a Bankruptcy Claim for purposes of this Court's remand ruling.

[33] Counts V.I through V.L of the Amended Complaint; the Application for Wind-Up and Termination and Receivership in the Amended Complaint; the non-dismissed portions of counts C and D in the Counterclaim; and counts E through J in the Counterclaim. To the extent the Vicarious and Participatory Liability claim in the Amended Complaint pertains to the Nonbankruptcy State Law Claims, it shall be construed as a Nonbankruptcy State Law Claim for purposes of this Court's remand ruling.

[34] Mr. Etter in his response to the Motion to Remand raised concerns about the effect this Court's abstention might have on his Nonbankruptcy State Law Claims, given the underlying conduct giving rise to the claims potentially occurred beyond certain limitations periods. Accordingly, for the avoidance of doubt, the Court concludes only that ***remand*** of the Nonbankruptcy State Law Claims back to the State Court Case is appropriate. Nothing in this Court's remand ruling shall be construed as concluding that the Court has abstained from or dismissed Mr. Etter's Nonbankruptcy State Law Claims.

The Debtors' bankruptcy estate dissolved after the Modified Plan was confirmed and went effective. Given the lack of effect both sets of claims might have on the non-existent estate, this factor weighs in favor of abstaining and remanding, with greater weight relating to the Nonbankruptcy State Law Claims.

***(2) State law issues predominate over the Nonbankruptcy State Law Claims; bankruptcy issues predominate over the Bankruptcy Claims.***

The Nonbankruptcy State Law Claims are each based on Texas common law and statutory theories of liability, and therefore state law issues predominate. The Bankruptcy Claims are brought pursuant to various avoidance and asset turnover provisions under the Bankruptcy Code, and therefore bankruptcy issues predominate.

This factor weighs in favor of abstaining and remanding from the Nonbankruptcy State Law Claims. It weighs against abstaining and remanding with respect to the Bankruptcy Claims.

***(3) Neither set of claims' applicable areas of law are difficult or unsettled.***

Both sets of claims asset more or less routine actions against the respective Defendants and counter defendants in the applicable areas of law. While practitioners often view bankruptcy law as arcane due to its niche nature, avoidance and asset turnover claims are common in many commercial bankruptcies. Accordingly, factor three is neutral with respect to both sets of claims.

***(4) The Nonbankruptcy State Law Claims originated in state court, while the Bankruptcy Claims originated in the adversary proceeding related to the Debtors' bankruptcy proceeding.***

Many if not most of the currently pled Nonbankruptcy State Law Claims were originally plead in the state court proceeding, prior to the adversary being removed to this Court during the pendency of the Debtors' bankruptcy. Mr. Etter amended the adversary complaint post-

confirmation to reflect the Debtors' Bankruptcy Claims, asserted by Mr. Etter in his successor-in-interest status. It is true there is currently no parallel proceeding to this adversary in a state court. It is worth noting, however, that many of the state law claims could have been and were asserted independent of the pendency of the bankruptcy case. Factor four is therefore neutral as to both sets of claims.

#### *(5) The Bankruptcy Claims are core; the Nonbankruptcy State Law Claims may be core and related to, but this Court cannot enter final judgment under* **Stern.**

The Bankruptcy Claims are undoubtedly core. 28 U.S.C. § 157(b)(2)(A), (E), (F), (G), (H). The claims both arise under title 11 and arise in the context of the Debtors' bankruptcy cases. 28 U.S.C. § 1334(b). This Court would have, did, and continues to have jurisdiction to hear the Bankruptcy Claims because jurisdiction existed at the time the adversary proceeding was removed. *See Newby v. Enron Corp. Secs. (In re Enron Corp. Secs.)*, 535 F.3d 325, 335 (5th Cir. 2008) (citing *In re Celotex Corp.*, 124 F.3d 619, 626 (4th Cir. 1997) (subsequent events cannot not divest District Court of jurisdiction that actually existed at the time of removal)). They are pre-confirmation claims based on pre-confirmation conduct. *Id.* (distinguishing *Craig's Stores*' regarding the diminishing of a bankruptcy court's post-confirmation jurisdiction). Mr. Etter is correct that the claims remain core despite the Debtors' Modified Plan being confirmed, because preference claims constitute estate property which may be sold, and subsequently asserted by the purchaser. *Briar Cap. Working Fund Cap., L.L.C. v. Remmert (In re S. Coast Supply Co.)*, 91 F.4th 376, 382–83 (5th Cir. 2024). This factor weighs heavily against abstaining and remanding the Bankruptcy Claims.

With respect to certain Nonbankruptcy State Law Claims, it is unclear from the Amended Complaint whether the relief sought is on behalf of Mr. Etter individually, or Mr. Etter through the Debtors. If the current relief sought is on behalf of Mr. Etter individually—and could have been asserted regardless of his eventual ownership of the

Debtors—those claims would not be core *or* related to because those claims would not have had any conceivable effect on the administration of the Debtors' bankruptcy estate as of the commencement of the Debtors' case. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987) (adopting the *Pacor* test for related to jurisdiction, that a claim is related to if it "could conceivably have any effect on the estate being administered in bankruptcy."). If the current relief sought is on behalf of Mr. Etter through his ownership of the Debtors, those claims may be both related to *and* core. *See* 28 U.S.C. § 157(b)(2)(A), (B), (C), (E). However, regardless of the "core-ness" of those claims, under *Stern* this Court could not enter final judgement on them because they are independent of the federal bankruptcy law. 564 U.S. at 487. This factor weighs in favor of abstaining and remanding the Nonbankruptcy State Law Claims.

***(6) The Bankruptcy Claims are highly related to the main bankruptcy case; the Nonbankruptcy State Law Claims may be related.***

The Bankruptcy Claims "relate to" the Debtors' main bankruptcy case, both in the colloquial sense of the term, and the jurisdictional sense. Again, the claims are pre-confirmation claims based on pre-confirmation conduct. Mr. Etter had not filed these claims at the time of removal, but now, standing in the shows of the Debtors as to those claims, he has amended his adversary complaint to assert claims this Court would have had related to jurisdiction over if they had been filed at the time the case was removed. *In re Wood*, 825 F.2d at 93; *In re Enron Corp. Secs.*, 535 F.3d at 335; *In re S. Coast Supply Co.*, 91 F.4th at 382–83. The conduct alleged in the claims precipitated the eventual involuntary chapter 7 bankruptcy petition filed against the Debtors. This factor weighs heavily against abstaining and remanding the Bankruptcy Claims.

With respect to the Nonbankruptcy State Law Claims, much of the conduct alleged there also may have a preceptive effect on the involuntary petition filed against the Debtors. To the extent the claims

seek relief on behalf of Mr. Etter through his ownership interest in the Debtors, the claims would be related to for the same reason the Bankruptcy Claims are. The claims, however, were brought independently in the State Court Case nine month prior to the Debtors entering bankruptcy. From that point of view, the factor is neutral as to the Nonbankruptcy State Law Claims.

***(7) The Bankruptcy Claims are core in substance; the Nonbankruptcy State Law Claims may be core, but in form only.***

As provided above, the Bankruptcy Claims are core in substance, *see* 28 U.S.C. § 1334(b), as well as form, *see* 28 U.S.C. § 157(b)(2)(A), (E), (F), (G), (H). Certain Nonbankruptcy State Law Claims may be core but are *Stern* regardless. 564 U.S. at 487. This factor weighs against abstaining and remanding the Bankruptcy Claims, and in favor with respect to the Nonbankruptcy State Law Claims.

***(8) The Nonbankruptcy State Law Claims can feasibly be severed from the Bankruptcy Claims.***

The Nonbankruptcy State Law Claims can feasibly be severed from the core Bankruptcy Claims. The Bankruptcy Claims are based on a narrow set of legal and factual issues. As counsel for Mr. Etter has stated on the record at various hearings, Mr. Etter feels only a limited set of discovery is necessary before a summary judgment motion is filed on the Bankruptcy Claims, and a disposition is achieved. According to counsel, those claims are "just math." The Nonbankruptcy State Law Claims involve more substantive legal issues and require factual findings based on conduct which occurred outside of this bankruptcy. A state court can enter final judgment as to them. This court cannot. This factor weighs in favor of severing the claims, remanding the Nonbankruptcy State Law Claims and keeping the Bankruptcy Claims.

***(9) There is no evidence that either set of claims would burden this or the state court's docket.***

This factor is neutral as to both sets of claims.

***(10) There is no evidence or indicia of forum shopping as to both sets of claims.***

"For forum shopping to become a significant factor in an abstention analysis, 'it must rise to a level demonstrating an attempt to abuse or manipulate the judicial process.'" *In re Dune Energy, Inc.*, 575 B.R. at 734 (quoting *Official Comm. of Unsecured Creditors of Schlotzsky's Inc. v. Grant Thornton, L.L.P. (In re Schlotzsky's, Inc.)*, 351 B.R. 430, 435–36 (Bankr. W.D. Tex. 2006)). According to Mr. Etter, this adversary proceeding was removed to this Court in order to prevent further alleged misconduct by Mr. Furr and Ms. Crain in the state foreclosure action which nearly resulted in the absconding of Debtor assets from their estates. This does not constitute a manipulation of the judicial process because the Debtors' bankruptcy cases were proceeding during the time Mr. Furr and Ms. Crain's alleged conduct occurred. Had the Debtors filed the Bankruptcy Claims prior to the sale of their assets to Mr. Etter, those claims would have to be adjudicated before this Court. The Nonbankruptcy State Law Claims have not proceeded due to the aforementioned partial abatement and temporary injunctions partially staying the proceeding. There has been no indicia of abusive forum shopping by Mr. Etter. This factor weighs against abstaining and remanding the Bankruptcy Claims and is neutral as to the Nonbankruptcy State Law Claims.

***(11) A jury trial may exist with respect to the Nonbankruptcy State Law Claims, but none exists with respect to the Bankruptcy Claims.***

This court generally cannot order a jury trial in an adversary proceeding based without the consent of all parties. As such, no jury trial right exists with respect to either set of claims if they are kept here. The Furr Defendants have demanded a jury trial with respect to certain of his counterclaims, specifically relating to the Nonbankruptcy State Law Claims. Accordingly, this factor is neutral as to the Bankruptcy Claims but weighs in favor of abstaining and remanding the Nonbankruptcy State Law Claims.

***(12) Mr. Etter stands in the shoes of the Debtors, but certain claims are solely between non-debtor parties.***

While Mr. Etter is himself a non-debtor, the Bankruptcy Claims he has asserted are based on his successor-in-interest status of the Debtors. With respect to the Nonbankruptcy State Law Claims, there are certain counterclaims filed by the Furr Defendants against Mr. Etter individually. This factor weighs against abstaining from and remanding the Bankruptcy Claims, and in favor with respect to the Nonbankruptcy State Law Claims.

***(13) Abstaining and remanding the Nonbankruptcy State Law Claims would not be a comity nightmare.***

Any final judgments this Court enters would have res judicata effect as to issues or claims it rules on, assuming no appeal has been taken—indeed, no appeal was taken of the Confirmation Order. In the event Mr. Furr attempts to collaterally attack this Court's Confirmation Order or rulings as to certain claims in the adversary proceeding, his Rule 60(b) or 60(d) motion would be ruled on accordingly by a reviewing court. Remanding the Nonbankruptcy State Law Claims would not be a "comity nightmare" as Mr. Etter describes. The evidentiary hearings this Court has held may be relevant to both sets of Bankruptcy and Nonbankruptcy Claims, but its review of and ruling on the Debtors' bankruptcy proceedings make it better situated to adjudicate the Bankruptcy Claims rather than the nonbankruptcy ones. Considerations of comity weigh against abstaining and remanding from the Bankruptcy Claims and are neutral as to the Nonbankruptcy State Law Claims.

***(14) No party is likely to suffer prejudice in the event the court either abstains and remands or declines to do so.***

Mr. Etter filed his Bankruptcy Claims here and removed the Nonbankruptcy State Law Claims here under the presumption this Court would adjudicate them. He filed his Nonbankruptcy State Law

Claims in state court, under the presumption he would have them heard there. Abstaining and remanding the Nonbankruptcy State Law Claims, while keeping the Bankruptcy Claims, is unlikely to prejudice Mr. Etter. The Furr Defendants similarly filed counterclaims in the adversary proceeding while it was pending before this Court and was an active participant in the Debtors bankruptcy proceeding. Now he moves in favor of remanding all claims. This factor therefore weighs against abstaining and remanding the Bankruptcy Claims, and in favor with respect to the Nonbankruptcy State Law Claims.

## DOCUMENT TURNOVER AND PROTECTIVE ORDER MOTIONS

### I. BACKGROUND.

On June 1, 2026, Okin Adams Bartlett Curry LLP ("Okin Adams"), former counsel for the Debtors, filed the Notice of Intent to Comply with Request for Turnover of Files (the "Notice of Intent to Comply") in the Debtors' main bankruptcy case.[35] In the notice, Okin Adams states it had received a letter from Mr. Etter on May 29, 2026, formally demanding turnover of Okin Adams' files relating to its representation of the Debtors. Okin Adams stated it believed the demand was made in compliance with the Modified Plan and Confirmation Order, and that it would turnover the files on June 5, 2026, unless a party-in-interest filed an objection to turnover such property prior to June 5, 2026.

On June 2, 2026, Mr. Etter, jointly with the Debtors, filed the Emergency Motion to Determine Ownership of File in the Debtors' main bankruptcy case.[36] In the motion, Mr. Etter requests that the Court order Ms. Crain to provide him with all legal files for AEP and AFR in her possession.

[35] Case No. 25-30155, ECF No. 360.
[36] Case No. 25-30155, ECF No. 363.

On June 2, 2026, the Furr Defendants filed an objection to Okin Adams' Notice of Intent to Comply.[37]

Also on June 2, 2026, the Furr Defendants filed the Emergency Motion for Protective Order and to Stay Turnover of Privileged Files and Request for Expedited Hearing in the adversary proceeding.[38] In the motion, the Furr Defendants reiterates their position laid out in the objection to Okin Adams' Notice of Intent to Comply, filed in the Debtors' main bankruptcy case.

On June 3, 2026, Mr. Etter filed a response to the Furr Defendants objection to the Notice of Intent to Comply.[39]

Also on June 3, 2026, Mr. Etter filed a response to the Furr Defendants Motion for Protective Order in the adversary.[40]

Also June 3, 2026, Mr. Etter filed the Amended Motion to Determine Ownership of File.[41]

On June 4, 2026, Mr. Etter filed the Motion for Turnover of File of Randal Bays.[42]

On June 23, 2026, the Furr Defendants filed the Response in Opposition to Dustin Etter's Motions to Determine Ownership of File and For Turnover of Files of Deborah Crain and Randal Bays.[43]

On July 28, 2026, Mr. Etter filed another response in relation to the document turnover filings.[44]

---

[37] Case No. 25-30155, ECF No. 364.
[38] Case No. 25-3382, ECF No. 81.
[39] Case No. 25-30155, ECF No. 365.
[40] Case No. 25-3382, ECF No. 82.
[41] Case No. 25-30155, ECF No. 366.
[42] Case No. 25-30155, ECF No. 267.
[43] Case No. 25-30155, ECF No. 376.
[44] Case No. 25-30155, ECF No. 393.

On August 5, 2026, the Court held a hearing where it granted the Parties until August 10, 2026, to file any additional responses with respect to the pending document turnover motions.[45]

On August 10, 2026, the Furr Defendants filed an additional response with respect to his originally filed Motion for Protective Order.[46]

Also on August 10, 2026, Mr. Etter and the Debtors filed an additional reply to the originally filed Motion for Protective Order.[47]

## II. DISCUSSION.

After purchasing all the Debtors' non-cash assets, Mr. Etter has sought the Debtors' files from their three previous counsels: (i) Okin Adams, (ii) Ms. Crain, and (iii) Mr. Bays. Turnover of each of these files are subject to the same areas of law. This Court's document turnover ruling, Order, and turnover framework apply the same to each of the three former counsel's files.

It is uncontroversial that "when control of a corporation passes to [a successor-in-interest], the authority to assert and waive the corporation's attorney-client privilege passes as well." *Commodity Futures Trading Com'n. v. Weintraub*, 471 U.S. 343, 349 (1985). Mr. Etter as successor-in-interest to the Debtors succeeds to their privileges with Okin Adams, Ms. Crain, and Mr. Bays. Mr. Etter as successor-in-interest to the Debtors has a right to the Debtors' client file with each counsel created in connection with that privilege; and, to a certain extent, any work product created in connection with or in anticipation of litigation. These rights include matters solely with respect to representation of the Debtors, as well as joint-privileges the Debtors held. Accordingly, to the extent Okin Adams, Ms. Crain, and Mr. Bays jointly represented Mr. Furr or any related non-debtor entity and the Debtors together, Mr. Etter as successor-in-interest to the Debtors has

[45] Case No. 25-3382, ECF No. 112.
[46] Case No. 25-3382, ECF No. 114.
[47] Case No. 25-3382, ECF No. 116.

a right to the Debtors' client files generated in connection with that joint representation. Mr. Etter would not succeed to and would not have any right to files generated which did not involve such a joint representation of the Debtors and some other party (*i.e.*, a representation which excluded the Debtors).

Mr. Etter's succession to the Debtors' joint privileges is qualified however, as were the joint privileges in the hands of the Debtors. In a joint representation between, for example, the Debtors and Mr. Furr, by consenting to the joint-representation the Debtors and Mr. Furr enter into a joint-privilege but also consent to waiver of that privilege in the event they became adverse *to one another*. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 75 cmt. e (2000) (describing the "adverse interest" exception to the joint privilege). But the privilege remains in effect *to the outside world*. Regardless of the Debtors or Mr. Furr having waived the privilege as to disputes between themselves within the scope of the joint-representation, one may still unilaterally *enforce* the privilege against the other if either sought to use the privilege information in a proceeding involving third parties not privy to the joint-representation. *See e.g., In re Crescent Res., LLC*, 457 B.R. 506 (Bankr. W.D. Tex. 2011) (holding a successor-in-interest trust may not unilaterally waive the joint-client privilege and use jointly privileged information in proceedings involving third parties, absent waiver by co-client). Stated another way, the Debtors and Mr. Furr would have waived the privilege as to disputes between themselves, but neither could unilaterally waive the privilege to the extent either sought to use the privileged information in a proceeding involving third parties not privy to the joint representation.

Ms. Crain appears confused on this point, however, as she purports that the presence of *Mr. Etter* or *Mr. Meek* are the theoretical "third parties" which trigger the privilege, and therefore Mr. Furr should be able to enforce the privilege *on the Debtors* and prevent their disclosure of jointly privileged information *to Mr. Etter*. This is plainly wrong. Mr. Etter has succeeded to all the Debtors' assets under the

terms of the Confirmation Order, including the Debtors joint-client representation with Ms. Crain. He is the successor-in-interest to the Debtors and has stepped into their shoes with respect to that representation and privilege. Attempting to differentiate him as the supposed "third party" sufficient to trigger the privilege is a distinction with no meaning.

With respect to any work product generated in connection with Okin Adams', Ms. Crain's, or Mr. Bays' prior representation of the Debtors—whether that representation be a sole or joint representation, Mr. Etter as successor-in-interest to the Debtors is entitled to that, too. The attorney work product doctrine is meant to protect material prepared for in connection with or in anticipation of litigation from opposing parties in such litigation. FED. R. CIV. P. 26(b)(3); *Spivey v. Zant*, 683 F.2d 881 (5th Cir. 1982). It is a privilege assertable solely by counsel on behalf of their client. "[T]he work product doctrine *does not* apply to the situation in which *a client* seeks access to documents or other tangible things created or amassed by *his attorney* during the course of the representation." *Spivey*, 683 F.2d at 885 (emphasis added). In Texas, the client owns the entire file. *See* Texas Ethics Op. 570 (2006).

Accordingly, because Mr. Etter has succeeded to all the Debtors' non-cash assets, Mr. Etter has a right to the Debtors' client files because they are the Debtors' client property. The discovery protections outlined in FED. R. CIV. P. 26(b)(3) would not apply to those files, even if they were work product, because those files are now Mr. Etter's property.[48] An important nuance, however, is that the respective counsel *are* allowed to invoke the work product doctrine to protect their former and current clients from disclosure of documents or tangible things pertaining to representations *outside* the scope of the Debtors'.

[48] The Court cannot locate any authority which stands for the proposition that Mr. Etter, as successor to the Debtors, is entitled to any intangible attorney work product, such as Ms. Crain's literal mental impressions or beliefs not otherwise reduced to tangible writings

In sum, Mr. Etter is entitled both to the Debtors' client file with Okin Adams, Ms. Crain, and Ms. Bays, including both privileged information and attorney work product (excluding intangibles). Despite Mr. Etter's entitlement to privileged information, he may not unilaterally waive any joint privileges the Debtor previously held and use such jointly privileged information in connection with proceedings against third parties not privy to the privilege. Mr. Etter's entitlement to privileged information and work product extends only to the extent of the Debtors' prior representations. Any representation which did not involve the Debtors would fall outside Mr. Etter's current entitlement.

The Amended Complaint asserts claims against Mr. Furr, Corrina Furr, AE Partners Holdings, Inc., AEP Asset Holdings, Inc., Invictus Drilling Motors, LLC, J Parker Construction, LLC, Connect Realty.com, Inc., Heaven Lee Properties, LLC d/b/a Lux Group TX, E-Merger Law, PLLC, and Ms. Crain. As noted above, the Court is aware that Ms. Crain has previously jointly represented the Debtors and Mr. Furr at certain previous points in state court proceedings, the adversary proceeding, and the Debtors' main bankruptcy case.[49] Ms. Crain in her papers also argues that Okin Adams previously had a joint representation of the Debtors and Mr. Furr. Mr. Meek in his disqualification motion against Mr. Bays argues Mr. Bays jointly represented Mr. Furr and the Debtors. Due to the number of different entities involved in this dispute and convoluted array of joint representations throughout this case, the Court is currently unaware of exactly which counsel was representing which parties, and in what capacity.

Nonetheless, the unambiguous law in this area mandates documents must be turned over to Mr. Etter, including both privileged information and attorney work product in the Debtors' client files. The Court shall oversee this information flow.

[49] Again, the Court never approved Ms. Crain's employment application in the Debtors' main bankruptcy case, but she has appeared to conduct work for the Debtors throughout their bankruptcy nonetheless.

Okin Adams, Ms. Crain, and Mr. Bays are required to submit privilege and work product logs to both Mr. Etter and the Court. Such privilege and work product logs must be made in compliance with the requirements of FED. R. CIV. P. 26(b). Such privilege and work product logs must provide a brief description of the type of document in each discrete log entry, along with the asserted basis for the privilege or work product claim.

Upon notice of a document production request by Mr. Etter, the recipient of the document production request must all turn over all privileged information from the Debtors' prior sole or joint representations, along with all tangible work product within the scope of the Debtors' sole or joint client file, including but not limited to documents and other tangible things.

Seven days after such notice of document production request is received, the recipient may object to such request, but solely with respect to the document production request issued to the recipient, respectively. The objecting party must file such objection with the Court and provide notice to Mr. Etter.

The objecting party shall submit any disputed documents, files, or other tangible things to the Court for in camera review within five days of filing the objection.

Mr. Etter *may not* use any privileged information obtained from the Debtors' prior joint representations in proceedings against third parties not privy to such joint representations. Okin Adams', Ms. Crain's, and Mr. Bays' rights to object to the use of such privileged information in proceedings against third parties is fully reserved.

## TEMPORARY INJUNCTION MOTIONS

On May 22, 2026, Mr. Etter and the Debtors filed the Plaintiff's Motion to Clarify Temporary Injunctions.[50] In the Motion, Mr. Etter and the Debtors requested the Court to confirm that the temporary

[50] Case No. 25-3382, ECF No. 69.

injunctions do not prevent them from exercising dominion and control over and disposing of assets Mr. Etter obtained from the Debtors' bankruptcy estates under the terms of the Modified Plan, the Partial Mediated Settlement Agreement, and the Confirmation order.

On July 28, 2026, the Furr Defendants filed the Agreed Amended Temporary Injunction.[51] In the filing, the Furr Defendants propose an order to clarify the existing temporary injunction and seeks to resolve certain property disputes between the Parties following entry of the Confirmation Order. It does not appear this filing was submitted on an agreed basis.

On August 10, 2026, the Furr Defendants filed the Motion for Civil Contempt Sanctions and Request for Order to Show Cause.[52] In the motion, the Furr Defendants make allegations Mr. Etter has violated the terms of the existing temporary injunction and Confirmation Order by exerting control over non-debtor property not transferred to him under the terms of the Modified Plan.

The existing temporary injunction provides *inter alia*:

> Jerod Furr and Dustin Etter—and all persons acting in privity or in concert with them as well as their officers, agents, servants, employees, and attorneys—are in all things PROHIBITED and ENJOINED from spending, transferring, encumbering, or otherwise disposing of, or entering into or approving any restriction on the transfer or sale of, leasing, expending, or otherwise impairing any funds, drilling motors, patents, investment interests, vehicles (including but not limited to automobiles), or other property of or received from or substantially funded by AEP, AFR, AEPH, Invictus, or any subsidiary of any of those entities at any time on or after October 1, 2023 without the written consent of the Trustee or the Court.

Case No. 25-3382, ECF No. 63; *see also* Case No. 25-3382, ECF No.22.

[51] Case No. 25-3382, ECF No. 109.
[52] Case No. 25-3382, ECF No. 115.

Because Mr. Etter has succeeded to all of the Debtors assets under the terms of the Modified Plan, it does not appear necessary that the existing temporary injunction prevent him from using or controlling any of the Debtors' property. The Modified Plan does not specify what is or is not the Debtors' property, so the Parties continue to dispute the extent to which the temporary injunction must remain in place to protect assets which may belong to either the Debtors or certain non-debtor entities. Because of the ambiguity of what constitutes the Debtors' property transferred to Mr. Etter, the Furr Defendants also allege the existing temporary injunction has since been violated by either Messrs. Etter or Furr.

The Court shall conduct an evidentiary hearing on each of the temporary injunction motions to determine what constitutes the Debtors' property transferred to Mr. Etter as of the date of entry of the Confirmation order. The Court shall reserve judgment on the temporary injunction motions, Ms. Crain's request for a show cause hearing, and her request for sanctions until the date of that evidentiary hearing.

## CONCLUSION[53]

Based on the foregoing reasons, and consistent with the terms of this Memorandum Opinion, the Court hereby:

1. **GRANTS** in full the Expedited Motion to Withdraw as Counsel for Debtors Alliance Farm and Ranch, LLC and Alliance Energy Partners, LLC, filed in Case No. 25-3382, at ECF No. 74, with a duplicate copy filed at ECF No. 75.

2. **GRANTS** in full the Expedited Motion to Withdraw as Counsel for Debtors Alliance Farm and Ranch, LLC and Alliance Energy Partners, LLC, filed in Case No. 25-30155, at ECF No. 361.

3. **DENIES** in part the Motion to Disqualify, filed in Case No. 25-3382, at ECF No. 71.

---

[53] This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

4. **DENIES** in full the Motion to Disqualify Plaintiff's Counsel from the Representation of Alliance Energy Partners, LLC and Alliance Farm & Ranch, LLC, filed in Case No. 25-3382, at ECF No. 87.

5. Confirms the Expedited Motion for Leave to Amend, filed in Case No. 25-3382, at ECF No. 80, was granted on the record at the July 7, 2026, hearing.

6. **GRANTS** in full the Motion to Dismiss Debtors' Direct claims, filed in Case No. 25-3382, at ECF No. 102.

7. **GRANTS** in part the Motion to Dismiss Under Rule 12(b)(6), filed in Case No. 25-3382, at ECF No. 103.

8. **GRANTS** in part the Emergency Motion to Remand the Removed Adversary Proceeding and Motion for Expedited Consideration, filed in Case No. 25-3382, at ECF No. 76.

9. **GRANTS** in part the Expedited Motion to Determine Ownership of File, filed in Case No. 25-30155, at ECF No. 363, and the Amended Expedited Motion to Determine Ownership of File and Motion for Turnover, filed in Case No. 25-30155, at ECF No. 366.

10. **GRANTS** in part the Expedited Motion for Turnover of File of Randal Bays, filed in Case No. 25-30155, at ECF No. 367.

11. **ORDERS** Okin Adams comply with the Court's ruling as to turnover of privileged information and attorney work product, consistent with the terms of the Memorandum Opinion attached to this Order (relates to the filing in Case No. 25-30155, at ECF No. 360).

12. **DENIES** in part the Expedited Motion of Jerod P. Furr and Non-Debtor Entities for Protective Order and to Stay Turnover of Privileged Files and Request for Expedited Hearing, filed in Case No. 25-3382, at ECF No. 81.

13. **ORDERS** the Parties to reach out to the Court to schedule an evidentiary hearing on the remaining temporary injunction motions pending in Case No. 25-3382. Those motions include (i) the Motion to

Clarify Temporary Injunctions, at ECF No. 69, (ii) the Agreed Amended Temporary Injunction, at ECF No. 109, and (iii) the Motion for Civil Contempt Sanctions, at ECF No. 115.

SIGNED 08/17/2026

Alfredo R Pérez
United States Bankruptcy Judge