E-MERGER LAW

1334 Brittmoore Rd | Suite 2314 | Houston, Texas 77043 | 346-535-0818

DEBORAH L. CRAIN
Admitted in Texas and Louisiana

Direct Dial: 346-535-0818
E-mail: dcrain@e-merger.law

September 4, 2026

**RE:** Adversary No. 25-03382; DUSTIN ETTER, et al v. JEROD P. FURR, et al

**NOTICE OF COMPLIANCE, STATUS UPDATE REGARDING DOCUMENT REVIEW AND PRODUCTION, AND REQUEST FOR CLARIFICATION CONCERNING "DISPUTED MATERIALS"**

TO THE HONORABLE ALFREDO R. PÉREZ, UNITED STATES BANKRUPTCY JUDGE:

Deborah L. Crain respectfully submits this Notice of Compliance, Status Update Regarding Document Review and Production, and Request for Clarification concerning the document-turnover framework in the Court's Memorandum Opinion and Order, Adv. ECF No. 119 (the "Order"). This Notice is submitted in good faith to document the measures undertaken to identify, review, organize, and produce responsive materials, to explain the remediation undertaken after discovery of gaps in the Clio email-file structure, and to request focused direction concerning the treatment of what your Order refers to as "disputed materials".

**I.**

Purpose of This Notice

1. This filing is not intended to provide a transparent account of the firm's compliance and to obtain direction that permits compliance without inadvertently surrendering objections that the Order expressly preserves.

2. The firm recognizes that the Order requires former counsel to provide privilege and work-product logs to Mr. Etter and the Court, identifying the type of document in each discrete entry and the asserted basis for any privilege or work-product claim. The firm has

prepared the accompanying production logs with that directive in mind. It is in Excel, so the undersigned has emailed it to Mr. Laws and it is incorporated in the Production Folder given to Mr. Meek.

**II.**

Firm Review Process and Compliance Measures

3. After entry of the Order and receipt of the turnover request, E-Merger Law convened multiple internal team meetings to establish a disciplined review process. The purpose of those meetings was to understand the scope of the requested production, identify the applicable representations and time periods, distinguish sole and joint representations from representations involving only non-Debtor clients, and establish procedures to prevent omission of responsive records.

4. The firm initially prepared a document inventory identifying potentially responsive records and folders. That inventory was then reviewed against the dates and scope of the relevant representations. During that review, the firm identified documents and folders that predated or otherwise fell outside the time period and scope of the firm's representation at issue. Those items and folder designations were updated accordingly so that the production process would focus on materials actually within the Order's scope.

5. The firm did not rely solely on folder names or an initial inventory. It implemented additional review protocols, including cross-checking the document inventory against the underlying folder structure, reviewing communications separately from other client-file materials, and confirming that documents identified for production or objection were assigned to the proper representation and time period.

6. The firm's objective has been completeness and accuracy, not speed at the expense of a document-specific review. The firm has therefore worked to distinguish among: (a) nonprivileged documents that should be produced; (b) materials from the Debtors' former sole or joint representations that are subject to the turnover framework; and (c) materials arising from representations that did not include either Debtor.

**III.**

**Communications Review and Remediation of the Clio Email File**

7. The firm uses Clio to manage matter records and communications. When emails are filed into Clio, the platform creates and populates an "Original Emails" folder structure organized by month.

8. During the firm's inspection of the Original Emails folders, the firm discovered that the folders did not contain emails from March 2025 or April 2025. That result required further investigation because E-Merger Law began work in March 2025 for Alliance Farm and Ranch and the firm expected communications from that period to exist.

9. Rather than assume the absence of the March and April 2025 folders meant that no communications existed, the undersigned returned to the underlying email accounts and conducted a message-by-message review. The firm then filed additional emails from the relevant period into Clio so that the responsive communications would be included in the matter record and subject to the same review protocols as other matter materials.

10. Because Clio placed the newly filed historical messages into the month in which they were filed rather than their original message month, the resulting folder placement did not accurately reflect the dates of the communications. The firm's information-technology personnel then moved the newly filed emails, one by one, into folders corresponding to the appropriate historical month. That remedial work was necessary to restore date-appropriate organization and permit a reliable review of the relevant period.

**IV.**

**Production and Privilege-Log Methodology**

11. The firm has produced materials it determined to be nonprivileged and within the applicable scope. It has also prepared a production log for the emails, text messages and hearing notebooks intended to comply with Rule 26(b)(5) and the Order. The logs identify the date, author, recipients, general subject matter, literal subject line, privilege basis, basis notes, current folder, and file name for each discrete entry.

12. In revising the log, the firm applied the known roles of the participants. Communications with Noah Meek, opposing counsel; Len Walker and Tres Gibbs, nonprivileged third parties; and the trustee, Tom Howley, Eric Terry, and trustee personnel are identified as nonprivileged communications to be produced.

13. Communications involving Timothy Wentworth and Okin Adams, Thaison Hua, and the Randy Bays office, including Alyssa Cuellar, have been identified as communications involving former co-counsel for AFR and/or AEP, subject to the document-specific review of whether the item falls within the former Debtor sole or joint client file.

14. Communications between Jerod Furr and E-Merger Law have been identified as attorney-client communications. The firm has preserved specific objections where appropriate. It is important to note that Jerod Furr, individually, hired the firm first and then Alliance Farm and Ranch hired the firm on March 26, 2025.

## V.

## Request for Clarification

15. The firm respectfully seeks clarification of the following portion of the Order: "The objecting party shall submit any disputed documents, files, or other tangible things to the Court for in camera review within five days of filing the objection."

16. The firm understands that the Order requires turnover of privileged information and tangible work product within the Debtors' former sole or joint client files, and that it allows a recipient to object within seven days after notice of a document-production request. The firm also understands that the Order reserves the right to object to the use of jointly privileged information in proceedings against persons or entities who were not privy to the joint representation. **We have turned over our whole file. A copy of the updated Document Inventory is attached as Exhibit 1 to this correspondence.**

17. The specific uncertainty is procedural: when a former counsel identifies a discrete item as outside the scope of the Debtors' former sole or joint representation, or asserts a permitted objection regarding the requested disclosure or use of such material, is the item to be delivered to Mr. Etter before the Court resolves the objection, or is it instead to be tendered to the Court for in-camera review pending resolution of the objection? To avoid all doubt, we turned over everything.

18. The firm respectfully requests confirmation whether the required in-camera submission is intended to preserve the status quo for disputed, document-specific materials while the Court determines the objection, or whether the Order requires simultaneous

delivery of those same disputed materials to Mr. Etter notwithstanding the pending objection and in-camera review.

19. The firm further requests guidance as to the mechanics of the submission: whether disputed items should be submitted under seal, whether the Court prefers an index keyed to the production log, and whether materials subject to a use objection should be separately designated to distinguish them from items that are objected to as outside the scope of the Debtors' former sole or joint client files. It seems more practical that if Mr. Meek intends to use a document he should inform counsel who then can make the appropriate objection, if any.

20. I also want to update the court on the litigious conduct of Mr. Meek since the Court's Order, causing delays in being able to timely focus on this enormous project. My team, including IT staff, have spent countless hours on this matter to comply with the court's order. Since entry of the Court's August 17, 2026 Memorandum Opinion and Order, Plaintiff's counsel has pursued overlapping turnover, merits, discovery, and third-party records activity on an accelerated schedule. Within sixteen days, he sent a broad file-turnover demand; filed three summary-judgment motions (two here and one in state court); sought expedited case-management and turnover relief; filed an amended complaint; served 39 written discovery requests and interrogatories; filed motions seeking clarification concerning discovery of former counsel's mental impressions in both the adversary and main case; and served a third-party bank subpoena (and other subpoenas) seeking records dating to January 2022. This chronology is offered to provide context for the volume and pace of post-order litigation activity, not to challenge Plaintiff's right to pursue properly authorized discovery or motion practice. Nonetheless, it has been a significant impediment to finalizing this document production.

Respectfully submitted,

/s/ Deborah L. Crain

Deborah L. Crain

cc: Noah Meek via Pacer e-filing system and email